UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO.

MAHMOUD CHARR,

    Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation, EPIC SPORTS AND
ENTERTAINMENT, INC., a Florida
corporation, and JOHN DOES 1 - 5,

    Defendants.

_____/

## COMPLAINT

Plaintiff, Mahmoud Charr, by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 8(a), files this action against Defendants, Don King, individually, Don King Productions, Inc., a foreign corporation, Epic Sports and Entertainment, Inc., a Florida corporation, and John Does 1 – 5, and alleges:

### PARTIES

1. Plaintiff, Mahmoud Charr, is *sui juris,* a Syrian citizen and German resident.

2. Defendant, Don King, is *sui juris*, a United States citizen and Florida resident.

3. Defendant, Don King Productions, Inc., is a foreign corporation with its principal address at 501 Fairway Drive, Deerfield Beach, Florida 33441.

4. Defendant, Epic Sports and Entertainment, Inc., is a Florida corporation with its principal address at 81 Via Di Mello, Henderson, Nevada 89011.



CASE NO.

5. Defendants, John Does 1 - 5, are unkown at this time but expected to be identified through discovery.

## JURISDICTION

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs, and the claims in dispute are between United States citizens and a citizen of Syria.

7. The Court has personal jurisdiction over Defendant, Don King ("King"), as King resides and regularly conducts business in the State of Florida, including in Broward County, where the claims against King accrued.

8. The Court has personal jurisdiction over Defendant, Don King Productions, Inc. ("DKP"), as DKP is located and regularly conducts business in the State of Florida, including in Broward County, where the claims against DKP accrued.

9. The Court has personal jurisdiction over Defendant, Epic Sports and Entertainment, Inc. ("Epic"), as Epic is incorporated and regularly conducts business in the State of Florida, including in Broward County, where the claims against Epic accrued.

10. The Court has personal jurisdiction over Defendants, John Does 1 – 5 ("Does 1 – 5"), as Does 1 – 5 are believed to reside and/or regularly conduct business in the State of Florida, including in Broward County, where the claims against Does 1 – 5 accrued.

## VENUE

11. Venue is proper with this Court pursuant to 28 U.S.C. § 1391 as Defendants reside, are located, and/or regularly conduct business in the Southern District where the events giving rise to this lawsuit occurred. The parties also agreed by contract that the "exclusive forum for any

2

CASE NO.

disputes shall be the courts located in the State of Florida." *See* May 26, 2019 Promoter Agreement, Par. 5, Exhibit A.[1]

## GENERAL ALLEGATIONS

### I. Mahmoud Charr

12. Charr is a heavyweight boxer with a distinguished professional record of 32 wins, four losses, and one tie. In November of 2017, Charr was crowned the World Boxing Association ("WBA") Regular Heavyweight Champion.

13. The WBA stripped Charr of his title in January of 2021 after promoter King and other unknown co-conspirators exerted undue influence on the WBA to prevent Charr from defending his title against King's own fighter, Trevor Bryan ("Bryan"), who then replaced Charr as the WBA Regular Heavyweight Champion.

14. Charr's current title is "Champion in Recess" which the WBA bestows on reigning champions who "for health, legal, or compelling reasons" are prevented from defending their title. *See* Aug. 30, 2018 Letter re: WBA Heavyweight Interim Title, Exhibit D.

### II. Don King and DKP

15. King is a prominent promoter and among the most controversial figures in professional boxing. King owns and operates the boxing promotions company Don King Promotions, Inc. ("DKP") in Deerfield Beach, Florida.

---

[1] Because the signed May 26, 2019 Promoter Agreement attached as Exhibit A is difficult to read as a result of having been transmitted numerous times, an identical albeit more legible blank copy of the same Promoter Agreement is also attached for reference as Exhibit B.

CASE NO.

16. King has been the subject of negative publicity throughout his career[2] due to his unscrupulous business practices and reputation for mistreating and taking advantage of unwitting boxers for his own personal gain.

17. Over the years, King has been sued countless times by former business partners and fighters such as Muhammad Ali, Lennox Lewis, and Mike Tyson who, like many others, accused King of failing to honor his contracts and even defrauding his own fighters out of millions of dollars.[3]

### III. Charr/Bryant Bout

18. On March 6, 2019, the WBA issued a resolution requiring Charr to defend his title against King's fighter, Bryan, who the WBA inexplicably promoted to the title of Interim Champion prior to arranging the bout. The WBA ordered a purse bid for the fight ("the Charr/Bryan Bout") that was scheduled for May 28, 2019 (the "May 28, 2019 purse bid").

19. The purse bid process requires promoters to submit a bid for the rights to a title fight. Where a purse bid is ordered, the reigning champion generally receives 75% of the total bid for the fight with the remaining 25% paid to the challenger.

---

[2] King's reputation for mistreating fighters has been the subject of books including Jack Newfield's "Only in America: The Life and Crimes of Don King," as well as negative television documentaries and teledramas featured on the PBS-sponsored "Frontline", ESPN's "Sports Century", and HBO (John Herzfeld's television film "Only in America" based on Newfield's book by the same name).

[3] The Associated Press, *Tyson Reaches a Settlement with King*, The New York Times (June 26, 2004), available at https://www.nytimes.com/2004/06/26/sports/tyson-reaches-a-settlement-with-king.html.

4



CASE NO.

20.     The WBA uses a standard form "Purse Bid Bout Contract" ("Bout Contract"), which fighters and their respective camps are required to sign and return to the WBA ahead of a title fight whenever a purse bid is ordered. *See* WBA Purse Bid Contract, Exhibit C.

**IV.     Promoter Agreement**

21.     Prior to the May 29, 2019 purse bid, DKP and Epic, another promotions company operating in South Florida, created a partnership. DKP and Epic then approached Charr to enter a promoter agreement, which was signed May 26, 2019 ("the Promoter Agreement") in Broward County, Florida. *See* Pomoter Agreement, Exhibit A.

22.     Under the Promoter Agreement, DKP and Epic agreed to serve as Charr's co-promoters "for a minimum period of two years or as long as Charr [was] world champion of the WBA, WBC, IBF and/or WBO . . . plus two years after [Charr] cease[d] to be a world champion." *Id.* at Par. 2, Exhibit A. DKP and Epic also promised "to offer Charr a minimum of two bouts during each year" for the term of the contract. *Id.*

23.     The Promoter Agreement provided that, "while Charr [was] world champion, his purse for his bouts [would] be . . . not less than $750,000.00, unless otherwise agreed upon by the parties." *Id.* at Par. 2. The contract also stated that DKP would bid "at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* at Par. 4.

24.     Pursuant to the Promoter Agreement, if DKP won the purse bid, Charr promised to "accept his purse share as determined by the WBA; provided, however that if such purse bid share [was] less than $1,000,000.00 . . . then [DKP and Epic would] supplement Charr's purse to One Million Dollars." *Id.* at Par. 3.

**V.     Breach of Promoter Agreement**

5

CASE NO.

25. Within days of entering the Promoter Agreement, DKP and Epic caused the WBA to cancel the May 28, 2019 purse bid by failing to submit on Charr's behalf an executed Bout Contract to the WBA. Prior to the cancellation, DKP and Epic never provided Charr with a Bout Contract to sign.

26. While DKP and Epic have since claimed there was an agreement with Charr to cancel the bid, this is false. Charr did not consent to the cancellation nor learn that DKP and Epic failed to submit the requisite paperwork, including the Bout Contract, until after the bid was cancelled.

27. By not providing Charr with a Bout Contract to sign, and in turn, causing the WBA to cancel the bid and postpone the Charr/Bryan Bout, DKP and Epic breached the Promoter Agreement by failing to "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout". *Id.* at Par. 4.

28. DKP and Epic committed a further breach of the Promoter Agreement by then failing to "offer Charr a minimum of two bouts during each year of the term" of the Promoter Agreement. *Id.* at Par. 2.

29. As a result of DKP and Epic's breaches, Charr sustained damages, including, but not limited to, $1 million in lost income that DKP and Epic were obligated to pay Charr for his purse in the Charr/Bryan Bout. *Id.* at Par. 3.

**VII.   Charr/Bryan Bout (Rescheduled)**

30. By resolution dated February 19, 2020 ("the WBA resolution"), the WBA called for another purse bid to take place on March 2, 2020 for the rescheduled Charr/Bryan Bout, which was now set for January 29, 2021. *See* Feb. 19, 2020 WBA Resolution No. 202002191702, Sec. III. Decision, Par. A, Exhibit E.

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305.358-2006

CASE NO.

31. The resolution provided that if the parties could not agree on their own terms for a purse bid contract, they should "submit a signed copy of the basic standard bout contract suggested by the WBA" within twenty (20) days pursuant to WBA rules. *Id.* at Section III. Decision, Par. B, Exhibit E.

32. Charr's counsel was informed that this language was specifically included in the resolution by the WBA to clarify what information needed to be submitted to the WBA ahead of the title fight in light of DKP and Epic's prior defaults and delays that caused the WBA to cancel the initial purse bid and postpone the original Charr/Bryan Bout.

33. On March 2, 2020, the purse bid went forward. DKP won the rights to the rescheduled Charr/Bryan Bout with a bid of a $2 million. Pursuant to the WBA resolution, Charr, as reigning champion, was to receive 75% of the total bid amount or $1.5 million. *Id.* at Section III. Decision, Par. A, Exhibit E.

**VIII.   DKP Bout Contract**

34. Despite winning the bid, DKP once again never provided Charr with a standard WBA Bout Contract to sign. As a result, Charr took it upon himself to execute a standard WBA Bout Contract, which Charr sent to DKP to countersign and return to the WBA consistent with the terms of the WBA resolution. *See* December 19, 2020 Email, Exhibit I.

35. DKP received the signed WBA Bout Contract from Charr, but instead submitted a different unsigned "Don King Productions, Inc. - Bout Agreement" ("DKP's Bout Contract") to the WBA for approval. DKP's Bout Contract did not conform with the standard WBA Bout Contract. *See* Don King Productions, Inc. Bout Agreement, Exhibit F; and WBA Purse Bid Bout Contract, Exhibit C.



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO.

36. DKP's Bout Contract was essentially an option agreement providing, in summary, that DKP would honor its obligations to promote the Charr/Bryan Bout only if certain contingencies occurred such as DKP securing a location for the fight as well as television rights.

37. DKP refused to sign the standard WBA Bout Contract after realizing the $2 million bid was excessive compared to the income the Charr/Bryan Bout was expected to generate. DKP knew the standard WBA Bout Contract did not allow DKP to opt out and/or extend the terms of the Charr/Bryan Bout purse bid whereas DKP's Bout Contract potentially provided such outs. *See* Don King Productions, Inc. Bout Agreement, Sec. VII, Force Majeure and Other Postponements, Exhibit E.

38. Charr initially objected to signing DKP's Bout Contract for this reason and because DKP's Bout Contract incorporated terms that likely violated the Muhammad Ali Act which, under 15 U.S.C. 6307b (b), prohibits promoters from demanding future promotional rights to a mandatory bout and which the DKP Bout Contract contemplated.

### IX. Revised DKP Bout Contract

39. Charr's counsel conferred with the WBA Championships Committee Chair, Carlos Chavez ("Chavez"), about these terms and DKP's refusal to sign the standard WBA Bout Contract. It was noted that, under WBA rules, DKP should have been defaulted for refusing to use the WBA Bout Contract, but this did not occur.

40. Instead, DKP, King, and other unidentified co-conspirators ("Does 1 – 5") exerted undue influence over the WBA to persuade the WBA to violate its own rules by requiring the parties to sign DKP's Bout Contract as opposed to the standard WBA Bout Contract which the WBA resolution expressly advised the parties use under the circumstances.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO.

41. During their conference, Chavez advised Charr's counsel that Charr should simply remove the objectionable portions of the DKP Bout Contract then sign and return the agreement to DKP to countersign and submit to the WBA. Charr did just that. The DKP Bout Contract was executed by Charr and transmitted via email to counsel for DKP (and King) on or about December 19, 2020. *See* December 19, 2020 Email, Exhibit I.

42. Charr's counsel reiterated in the same email that the objectionable terms of the DKP Bout Contract were removed pursuant to the WBA/Chavez's instructions and noted that, despite Charr twice signing a standard WBA Bout Contract for the fight, Charr executed the revised DKP Bout Contract to ensure he was able to defend his title after the WBA threatened to take Charr's title if he did not sign the DKP Bout Contract. *Id.*

43. Thereafter, Charr's counsel repeatedly followed up with counsel for DKP and King via email and in conversations to inquire why the DKP Bout Contract had not yet been countersigned and returned to the WBA. DKP's counsel replied each time that he did not know. In reality, DKP and King intentionally did not submit the signed DKP Bout Contract to the WBA to prevent the Charr/Bryan Bout from going forward and to avoid paying Charr the $1.5 million purse he was owed for the bout.

**X.     DKP/King Obstruction**

44. In addition to refusing to submit the signed DKP Bout Contract pursuant to WBA rules, DKP and King took further steps to prevent Charr from defending his title as the reigning WBA Regular Heavyweight Champion and to avoid paying Charr the $1.5 million sum owed for the Charr/Bryan Bout.

9

CASE NO.

45. For example, the standard WBA Bout Contract required DKP and King to assist Charr, who resided in Germany at the time, with securing the appropriate Visa necessary to travel to the United States to participate in the Charr/Bryan Bout scheduled for January 29, 2021.

46. King assured Charr, who is Muslim, that King would use his alleged connections to the Trump Administration – which had signed the so-called "Muslim Ban" into effect that made it difficult for someone of Charr's background to enter the United States – to expedite the process of obtaining the requisite Visa for Charr. This never occurred.

47. Left to his own devices after King failed to exercise his purported influence, Charr began the process of securing his P-1 Visa through the United States consulate in Frankfurt, Germany once the "Muslim ban" was lifted after President Biden took office. To obtain his P-1 Visa, Charr was required to produce to the consulate a copy of the parties' executed DKP Bout Contract as proof of his reason for traveling to the United States.

48. On January 26, 2021, Charr's counsel contacted counsel for DKP and King to request a copy of the signed DKP Bout Contract advising that Charr could not obtain his P-1 Visa without a copy of the signed DKP Bout Contract, and thus, could not participate in the Charr/Bryan Bout unless and until DKP and King produced the contract. *See* January 26, 2021 Emails re: Charr P-1 Visa, Exhibit J.

49. Despite this request, which Charr's counsel explained was made under significant time restraints given the impending fight date, DKP and King refused to produce a copy of the signed DKP Bout Contract to Charr to prevent Charr from traveling to the United States to participate in the Charr/Bryan Bout and receiving the $1.5 million purse he was owed by DKP and King for the fight.

**XI.   Charr Stripped of Title**

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO.

50. After Charr was unable to participate in the Charr/Bryan Bout after not obtaining his P-1 Visa as a result of DKP and King's obstruction, the WBA cancelled the Charr/Bryan Bout. Thereafter, DKP and King, along with unknown co-conspirators ("Does 1 -5"), exerted additional undue influence over the WBA by convincing the WBA to strip Charr of his title as a result of Charr not attending the Charr/Bryan Bout.

51. The decision violated WBA rules. Nonetheless, with Charr no longer the reigning champion, DKP and King quickly arranged a new fight for the WBA Regular Heavyweight Champion title between DKP and King's own fighter, Bryan, and a far less capable boxer, Bermane Stiverne, who was 10 years Bryan's senior and had been knocked out by his two previous opponents.

52. DKP and King's obvious intention was to ensure Bryan, who was at the time the Interim Champion and challenger for the WBA Regular Heavyweight Champion title, faced an easy opponent so Bryan could be crowned the new champion and, in return, DPK and King could maximize their profits off of the title fight as Bryan's promoters.

53. On January 30, 2021, Bryan and Stiverne fought for the WBA Regular Heavyweight Champion title in Hollywood, Florida. As expected, Bryan soundly defeated the 42-year-old Stiverne by TKO in the eleventh round to become the new WBA Regular Heavyweight Champion.

**COUNT I**
**BREACH OF CONTRACT (PROMOTER AGREEMENT)**

**Charr v. DKP and Epic**

54. Plaintiff, Manuel Charr, adopts and incorporates into Count I the general allegations in Paragraphs 1 - 53 and further alleges:

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO.

55. On May 26, 2019, Charr entered a legally valid and enforceable Promoter Agreement with DKP and Epic. *See* Exhibit A.

56. The Promoter Agreement provided that DKP and Epic would serve as Charr's promoters "for a minimum period of two years" and "offer Charr a minimum of two bouts during each year" the agreement was in effect. *Id.* at Par. 2, Exhibit A.

57. The Promoter Agreement also provided that DKP and Epic would "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* at Par. 4. Further, the Promoter Agreement stated that Charr's purses as champion in all bouts would not be "less than $750,000 unless agreed otherwise by the parties." *Id.* at Par. 2.

58. DKP and Epic breached the Promoter Agreement by failing to provide Charr with a bout contract for the Charr/Bryan Bout and, in turn, failing to submit a signed bout contract on Charr's behalf to the WBA for that fight, which caused the WBA to cancel the May 28, 2019 Charr/Bryan Bout purse bid and postpone the Charr/Bryan Bout without Charr's knowledge or consent.

59. DKP and Epic further breached the Promoter Agreement by then failing to "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout" as they were obligated to do and also as a result of having caused the WBA to cancel the May 28, 2019 purse bid.

60. Additionally, DKP and Epic committed a further breach of the Promoter Agreement by failing to "offer Charr a minimum of two bouts during each year" the Promoter Agreement was in effect beginning with the postponed Charr/Bryan Bout.

61. As a result of DKP and Epic's breaches, Charr sustained damages, including, but not limited to, $1 million in lost income that DKP and Epic were obligated to pay Charr as his

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO.

purse for the original Charr/Bryan Bout. Charr has also been forced to incur reasonable attorney's fees and costs in seeking to recover these damages.

WHEREFORE, Plaintiff, Mahmoud Charr, demands judgment against Defendants, Don King Productions, Inc. and Epic Sports and Entertainment, Inc., for actual and consequential damages in excess of one million dollars ($1,000,000.00), as well as attorney's fees, costs, and interest, in addition to any other relief the Court deems proper.

## COUNT II
## BREACH OF CONTRACT (PURSE BID AGREEMENT)

### Charr v. DKP

62. Plaintiff, Mahmoud Charr, adopts and incorporates into Count II the general allegations in Paragraphs 1 through 53 and further alleges:

63. By resolution dated February 19, 2020 ("the WBA resolution"), the WBA ordered a purse bid for the rescheduled Charr/Bryan Bout to occur March 2, 2020. The resolution provided that, unless otherwise agreed by the parties, the standard WBA Bout Contract was to be used for the fight. *See* Feb. 19, 2020 WBA Resolution No. 202002191702, Sec. III, Decision, Par. B, Exhibit E.

64. On March 2, 2020, DKP won a $2 million purse bid for the rights to the Charr/Bryan Bout, which was scheduled to take place on January 29, 2021. Pursuant to the WBA resolution, Charr was entitled to 75% of DKP's total bid amount or $1.5 million as the reigning champion at the time. *Id.*

65. DKP's $2 million bid, submitted in accordance with the terms of the WBA resolution and Charr's acceptance of those terms and the amount of DKP's bid, created a legally valid and enforceable contract between DKP and Charr.

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO.

66. This contract was supported by an offer (DKP's $2 million bid), Charr's acceptance of the offer (the amount and terms of DKP's bid), and mutual consideration (DKP's promise to pay $1.5 million of the $2 million bid to Charr and Charr's promise to fight in the Charr/Bryan Bout for the stipulated amount).

67. DKP breached this contract by refusing to sign and submit the standard WBA Bout Contract to the WBA ahead of the rescheduled Charr/Bryan Bout as was required pursuant to the WBA resolution and pursuant to WBA rules.

68. As a result of DKP's breach, Charr sustained damages, including, but not limited to, $1.5 million in lost income that DKP was obligated to pay Charr for his purse in the rescheduled Charr/Bryan Bout. Charr has also been forced to incur reasonable attorney's fees and costs in seeking to recover these damages.

WHEREFORE, Plaintiff, Mahmoud Charr, demands judgment against Defendant, Don King Productions, Inc., for actual and consequential damages in excess of one million and five hundred thousand dollars ($1,500,000.00), as well as attorney's fees, court costs, and interest, in addition to any other relief the Court deems proper.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

### Charr v. King and DKP

69. Plaintiff, Mahmoud Charr, adopts and incorporates into Count III the general allegations in Paragraphs 1 through 53 and further alleges:

70. At all times material hereto, there existed a valid business relationship between Charr and the WBA that gave Charr the legal right to participate in WBA-sanctioned bouts

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO.

including, but not limited to, the Charr/Bryan Bout. King and DKP were at all times aware of this business relationship between the WBA and Charr.

71. After winning the $2 million purse bid for the rescheduled Charr/Bryan Bout and realizing the bid was excessive, King and DKP intentionally and unjustifiably interfered with Charr's business relationship with the WBA to prevent the fight from going forward, first, by refusing to sign the standard WBA Bout Contract as was required for the fight to occur.

72. Additionally, DKP and King intentionally and unjustifiably interfered with Charr's business relationship with the WBA by coercing Charr into signing the noncompliant DKP Bout Contract, which violated WBA rules and contained terms prohibited by the Muhammad Ali Act, 15 U.S.C. 6307b(b).

73. DKP and King further intentionally and unjustifiably interfered with Charr's business relationship with the WBA by refusing to submit the executed DKP Bout Contract to the WBA and withholding a copy of the contract from Charr, despite his requests, to prevent Charr from obtaining his P-1 Visa and traveling to the United States to participate in the Charr/Bryan Bout.

74. Finally, DKP and King intentionally and unjustifiably interfered with Charr's business relationship with the WBA by exerting undue influence over the WBA after Charr was prevented from defending his title by causing the WBA to improperly strip Charr of his title as the reigning Regular Heavyweight Champion.

75. As a result of King and DKP's unlawful interference, the WBA cancelled the rescheduled Charr/Bryan Bout causing Charr to sustain damages including, but not limited to, $1.5 million in lost income that King and DKP were obligated to pay Charr for his purse in that title fight.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO.

76.     As a further result, the WBA stripped Charr of his title and gave Charr the lesser designation of WBA Regular Heavyweight Champion (in recess), which has diminished Charr's reputation, marketability, and overall value as a professional boxer such that the quality of fights, endorsement deals, and purse amounts Charr receives in the future will be significantly less.

WHEREFORE, Plaintiff, Mahmoud Charr, demands judgment against Defendants, Don King and King Productions, Inc., for actual and consequential damages in excess of one million five hundred thousand dollars ($1,500,000.00) in addition to any other relief the Court deems proper.

## COUNT IV
## CIVIL CONSPIRACY

### Charr v. King, DKP, and Does 1 - 5

77.     Plaintiff, Mahmoud Charr, adopts and incorporates into Count IV the general allegations in Paragraphs 1 through 53 and further alleges:

78.     At all times material hereto, King, DKP, and Does 1 - 5 entered an agreement to illegally exert undue influence over the WBA for the malicious purpose of persuading the WBA to strip Charr of his WBA Regular Heavyweight Champion title without cause and in violation of WBA rules.

79.     At all times material hereto, King, DKP, and Does 1 – 5 worked in concert to perpetrate the illegal and overt act of exerting undue influence on the WBA for the malicious purpose of persuading the WBA to strip Charr of his Regular Heavyweight Champion title without cause and in violation of WBA rules.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO.

80. As a result of the illegal and overt acts committed by King, DKP, and Does 1 – 5 in furtherance of this conspiracy, Charr sustained damages including, but not limited to, the loss of his title as the rightful WBA Regular Heavyweight Champion.

81. As a further result, Charr was given the lesser designation of WBA Regular Heavyweight Champion (in recess), which has diminished Charr's reputation, marketability, and overall value as a professional boxer such that the quality of fights and purse amounts Charr receives in the future will be significantly less.

WHEREFORE, Plaintiff, Mahmoud Charr, demands judgment against Defendants, Don King, Don King Productions, Inc., and John Does 1 – 5, for actual and consequential damages in excess of seventy-five thousand dollars ($75,000.00) in addition to any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Mahmoud Charr, demands a trial by jury for all issues triable.

Dated: August 10, 2021

[End]

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO.

                                      Respectfully submitted,

                                      BLACK SREBNICK, P.A.
                                      201 S. Biscayne Boulevard, Suite 1300
                                      Miami, Florida 33131
                                      305-371-6421 Telephone
                                      305-358-2006 Fax

                                      By:    /s/ Jared Lopez
                                                  Jared Lopez, Esq.
                                                  Florida Bar No. 103616
                                                  Donald Hodson, Esq.
                                                  Florida Bar 120256
                                                  JLopez@RoyBlack.com
                                                  DHodson@RoyBlack.com
                                                  civilpleadings@royblack.com

                                      *Counsel for Plaintiff Mahmoud Charr*

                                      DINES AND ENGLISH LLC
                                      685 Van Houten Avenue
                                      Clifton, New Jersey 07013
                                      973-778-7575 Telephone
                                      973-778-7633 Fax

                                      By:    /s/ Patrick C. English
                                                  Patrick English, Esq.
                                                  New Jersey Bar No. 023811978
                                                  dinesandenglish@aol.com

                                      *Counsel for Plaintiff Mahmoud Charr*

                                      ***Pro hac vice status pending**