CASE NO.:

# EXHIBIT G

25

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006



# DON KING PRODUCTIONS, INC.
501 FAIRWAY DRIVE □ DEERFIELD BEACH, FLORIDA 33441
PHONE: (954) 418-5800
FAX: (954) 418-0157

## BOUT AGREEMENT

THIS BOUT AGREEMENT (the "Agreement") is made and entered into as March 13, 2020 by and between Don King Productions, Inc., a Delaware corporation, with offices at 501 Fairway Drive, Deerfield Beach, Florida 33441 ("Promoter") and MAHMOUD CHARR ("Fighter").

WHEREAS, the parties desire to enter into an agreement pursuant to which Fighter shall engage in a professional boxing bout (the "Bout") between Fighter and TREVOR BRYAN ("Opponent") and other bouts, upon and subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and agreements hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

I. **THE BOUT.** Fighter will engage in the Bout with Opponent for the **WBA World Heavyweight Title** for **Twelve (12) rounds** to a decision to be promoted or co-promoted by Promoter **on May 30, 2020** at <u>SOUTH FLORIDA, FLORIDA</u> or at such other site as Promoter may designate. Fighter shall weigh in at no more than **HEAVYWEIGHT** lbs. The Bout will be conducted and the officials shall be designated in conformity with the rules and regulations of the applicable athletic or boxing commission and the World Boxing Association and/or any other sanctioning organization.

II. **WORLDWIDE RIGHTS TO BOUTS.** Fighter grants to Promoter all worldwide rights, title and interest to the Bout and any Future Bouts (as defined below), if applicable, promoted by Promoter (the Bout and any such Future Bouts shall be collectively referred to herein as the "Bouts") in perpetuity, including, but not limited to:

(a) The right to all site fees, live-gate receipts, sponsorship fees, and motion picture, radio, television (whether live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable or subscription), telephone, computer, CD-ROM, broadband, digital, and online services, the worldwide web and the "Internet" (as such term is commonly understood currently or in the future) (collectively, the "Internet"), video and audio cassette, virtual advertising, photograph, including raw footage, out takes and negatives, merchandising and program rights now or hereinafter invented in connection with or based upon the Bouts or the activities pertaining to the Bouts, including, but not limited to, training sessions, interviews and press conferences for the Bouts (the "Pre-Bout Events"), post-fight interviews, press conferences and other events (the "Post-Bout Events") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

(b) The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the rights granted hereunder and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the rights granted hereunder;

(c) The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted Promoter hereunder, including the right to promote, exploit and turn to account all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to said rights for the proper production and promotion of radio, television and Internet broadcasts of the Bouts, the Pre-Bout Events and the Post-Bout Events, such as announcers, commercials, artwork and other elements;

(d) All right, title and interest in and to any recordings of the television, Internet and radio broadcasts and motion picture films and video and audio cassettes of, or based upon the Bouts, the Pre-Bout Events and the Post-Bout Events, including, but not limited to, magnetic tapes, and the right to secure in its own name or that of its nominee copyright and other protection to the extent available throughout the world;

(e) The right to use in any media the name, likeness and biography of Fighter, his manager, trainers and other persons associated with him who are connected with the Bouts, for the purpose of advertising, promotion, publicity, merchandising and exploitation of the Bouts, the Pre-Bout Events and Post-Bout Events all without compensation or payment to any of the aforesaid parties, provided, however, that in no event may such names, likenesses or biographies be used as an endorsement of any commercial product or service; and

(f) The non-exclusive right to use a three minute clip of the recording of any prior bout, press conferences, interviews, training sessions or other footage in which Fighter was a participant to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights solely for the purposes of publicizing the Bouts which shall be delivered to Promoter upon request therefore.

III. **PURSE.** In consideration of Fighter's participation in the Bout and for all of the rights herein granted to Promoter, Promoter shall pay to Fighter and Fighter shall accept the sum of **One Million Five Hundred Thousand U.S. Dollars ($1,500,000.00)** per March 2, 2020 purse bid, <u>or an amount equal to the purse bid split so designated by the WBA stemming from the March 2, 2020 Purse Bid won by Promoter.</u> Such sum shall be paid to Fighter by check upon completion of the Bout. If Fighter's opponent is not the Opponent specified in the recital above, Fighter's purse at the sole option of Promoter, may be renegotiated in good faith by Promoter and Fighter.

IV. **TRAINING.** If Promoter shall so request, Fighter will commence training at the site of the Bouts at suitable training facilities to be provided by Promoter to Fighter, no less than **Five -5-** days prior to the date the Bout is scheduled.

V. **AIR FARE, ROOM AND BOARD.** Promoter shall furnish to Fighter **FIVE -5-** round-trip coach airline tickets from **GERMANY** to the site

Initials: Promoter _____  Fighter _____  Manager _____

EXhibit F

of the Bout. Promoter shall also furnish Fighter with FIVE -5- hotel rooms and three meals per day for FIVE -5- persons for a period of FIVE -5- days preceding and including the date of the Bout. It is expressly understood, however, that Promoter shall have no obligation for the cost of long-distance telephone calls, alcoholic beverages, entertainment or similar expenses, all of which shall be borne solely by Fighter, and Fighter shall be required to provide satisfactory credit or cash security to the hotel for such personal expenses. Promoter shall have the right at its option to withhold ten percent of the purse and to pay such expenses there from if Fighter fails to do so. Upon presentation by Fighter to Promoter of satisfactory evidence by Fighter of payment of such expenses, any remaining portion of the withheld amount shall be paid to Fighter. Fighter agrees to conduct himself (to cause his manager, trainers and other persons associated with him at the Bouts to conduct themselves) reasonably while traveling to and from a Bout and while on or about the site of the Bout and the site hotel. Any physical damage to hotel rooms or property of others caused by Fighter or such persons shall be charged to Fighter's account, and Fighter shall assist Promoter in promptly collecting the cost of such damage from Fighter or such persons.

**VI. TRAINING SESSIONS/PROMOTIONAL ACTIVITIES.** Fighter agrees that Promoter may charge admission to Fighter's training sessions and that such proceeds shall be the property of Promoter. Fighter agrees that without additional consideration or compensation he will cooperate and assist in the advertising, publicity, and promotion of the Bouts, including his appearance at such reasonable number of press conferences, interviews and other promotional activities as Promoter may designate. Fighter agrees and acknowledges that a breach of this provision would cause harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay to Promoter as liquidated damages, and not as a penalty, $150,000 if the Bout is being televised or $50,000 if the Bout is non-televised.

**VII. FORCE MAJEURE AND OTHER POSTPONEMENTS.**

(a) Only in the event that the Bout is postponed or prevented from taking place by any reason of any Act of God (natural disaster/disease/epidemic/pandemic/quarantine), act of government related to said Act of God (i.e. travel restrictions), fire, flood, riot, war, public disaster or any other cause beyond the direct and immediate control of the Promoter, or if Fighter or Opponent shall become disabled or incapacitated by reason of any physical or mental disability, injury or illness which prevents or interferes with his or their participation in such Bout as scheduled, AND a physician licensed by the governmental authority having jurisdiction over such Bout shall certify that Fighter or Opponent cannot participate in such bout as scheduled, then Promoter may, at its sole option, either (a) postpone such Bout to a date no later than 90 days after the originally scheduled date, in which event all of the provisions of this Agreement shall remain in full force and effect and shall apply to the rescheduled date or (b) cancel this Agreement as it relates to such Bout or terminate this Agreement. If a Bout which is the subject matter of this Agreement is on the undercard to any main event and that main event is postponed or canceled for any reason whatsoever, then Promoter may at its sole option either postpone such Bout to a date to coincide with the postponed date of the main event or another main event, in which event all of the provisions of this Agreement, including the provisions of this paragraph, shall remain in full force and effect and shall apply to the rescheduled date or else cancel this Agreement as it relates to such Bout or terminate this Agreement.

(b) In the event Fighter's opponent for any of the Bouts shall for any reason fail or refuse to participate in such Bout, or shall withdraw therefrom and Promoter shall so notify Fighter, Promoter may at its sole option cancel this Agreement as it relates to such Bout or terminate this Agreement.

(c) Fighter acknowledges that Promoter's obligations with respect to the Bouts are contingent upon Promoter's entering into agreements satisfactory to Promoter for the live television broadcast of the Bouts and for the site of the Bouts. In furtherance thereof, Fighter agrees that if Promoter shall not enter into such agreements for any reason, or if such agreements grant to a contracting entity the right or option to terminate any such agreement by reason of any cause, act or event beyond the direct and immediate control of Promoter, including, without limitation, any act or omission on the part of Fighter, Opponent, or any other person, and the entity exercises such right, Promoter may, at its sole option, cancel this Agreement as it relates to such Bout or terminate this Agreement. Nothing contained herein shall be deemed to grant to Fighter any right of approval over any agreement Promoter may negotiate with respect to the television broadcast of the Bouts or the sites.

(d) In the event Promoter exercises its right to cancel this Agreement as it relates to a Bout or terminate this Agreement pursuant to any of the preceding provisions of this paragraph 7, Fighter shall thereupon immediately return to Promoter all sums theretofore advanced or paid to Fighter by Promoter in connection with such Bout, and neither party shall have any further rights or obligations hereunder with respect to such Bout or this Agreement, as applicable.

**VII. FURTHER ASSURANCES.** Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, a standard boxing contract in such form as may be required by the governmental authority with jurisdiction over the Bout and/or the organization(s) sanctioning the Bout if applicable. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby. <u>Additionally, Fighter agrees to be subject to random anti-doping testing pursuant to VADA (collecting blood and urine samples AND at anytime prior to the Bout, including post Bout testing) or any other agent designated by the sanctioning body.</u>

**IX. ATTIRE/CLEARANCES.**

(a) Fighter agrees that no advertising or promotional material (including, but not limited to, permanent or temporary tattoos or body art) shall appear on the body of or on any item of clothing worn by Fighter, his trainers, seconds, assistants or other members of his team or entourage during and/or at the Bouts, press conferences, training sessions open to the public or press, or while at the site of the Bouts, without the prior written approval of Promoter. If Promoter does not, in its sole discretion, grant such approval, Fighter and/or his trainers, seconds, assistants or team members, as the case may be, shall promptly either take corrective action to remove or cover the disapproved material or shall substitute therefor clothing or equipment provided by Promoter. Fighter agrees and acknowledges that a breach of this provision would cause substantial harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay Promoter (or such third party designated by Promoter) as liquidated damages, and not as a penalty, an amount

Initials: Promoter _____ Fighter _____ Manager _____

equal to (i) Eighty_five percent (85%) of the purse of Fighter if the Bout is not televised or (ii) Five Hundred Thousand U.S. Dollars ($500,000) if the Bout is televised.

(b) From the date of this Agreement through the date of the Bout and any Future Bouts promoted by Promoter, Fighter agrees that he will not (and will cause his manager, trainers, seconds, assistants and other members of his team not to) attend or participate in any special events or other activities sponsored by, held in, hosted or otherwise affiliated with any casino, hotel or arena without Promoter's prior written approval in its sole and absolute discretion. Fighter further agrees that he will obtain prior to each of the Bouts on behalf of himself and his manager, trainers, assistants and other persons associated with him who are connected with the Bouts, all without compensation or payment whatsoever by Promoter to any person or entity, any and all required clearances, consents and licenses as is necessary with respect to Promoter's and its licensees' and assignees' worldwide exploitation in perpetuity of the Bouts as permitted in paragraph 2 above, including, without limitation, (i) any music clearances for Fighter's ring walk, (ii) footage licenses for Fighter's prior bouts, training sessions, interviews and other Fighter footage provided to Promoter hereunder by Fighter or third parties on behalf of Fighter, (iii) all consents, permissions and/or approvals for Fighter or his agents to wear, display, mention or exploit during, or in connection with, the Bouts (including, without limitation, during training sessions, press conferences or interviews) any name, logo, copyright, trademark or service mark, common law or other right (including, without limitation, any literary, dramatic, comedic, musical or photoplay right) of any person, firm or corporation, (iv) any performer residuals and consents and/or payments payable to any persons appearing in or rendering services in connection with the Bouts which are engaged by Fighter or his agents, and (v) all copyright clearances and permissions with respect to any of the foregoing.

X. ASSIGNMENT. Promoter shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, without limitation, the right to co-promote the Bouts in association with any one or more persons or entities of its choosing.

XI. FUTURE BOUTS.

(a) During the twelve (12) month period from the date hereof (the "Future Period"), the parties agree with respect to each of Fighter's bouts following the Bout (each a "Future Bout" and collectively the "Future Bouts") as follows:

(i) Fighter shall not participate in any Future Bouts during the Future Period, except as in accordance with the provisions of this Paragraph 11;

(ii) At any time following the Bout or Future Bout, as the case may be, either party shall have the right to notify the other party in writing that he or it desires to commence negotiations with respect to Fighter's next succeeding Future Bout (the "Next Future Bout");

(iii) During the 60 day period following the other party's receipt of such written notice, Fighter shall negotiate exclusively and in good faith with Promoter with respect to such Next Future Bout (the "Exclusive Period"), it being understood that Promoter shall have the right to designate the date (but not later than the expiration of the Future Period, unless otherwise mutually agreed upon by the parties herein), site and opponent for such Next Future Bout;

(iv) (A) So long as Fighter wins the Bout and each subsequent Future Bout hereunder, Fighter's purse for such Next Future Bout shall be negotiated between Promoter and Fighter but shall not be less than PER PROMOTIONAL U.S. Dollars ($PER PROMOTIONAL) in full consideration for all of Fighter's services and all rights with respect to such Next Future Bout, unless otherwise mutually agreed upon by the parties herein.

(B) In the event that Fighter (x) does not win the Bout or (y) does not win any individual Future Bout hereunder (regardless of the outcome of the Bout or any Future Bout prior or subsequent to such individual Future Bout), Fighter's purse for such Next Future Bout shall be negotiated between Promoter and Fighter but shall not be less than the purse that Fighter received in his last bout against an opponent who was not ranked or rated at the time of such last bout in the top 10 by any of the WBA, WBC, IBF or WBO in full consideration for all of Fighter's services and all rights with respect to such Next Future Bout, unless otherwise mutually agreed upon by the parties herein.

(C) For purposes of this Subparagraph 11(a)(iv), the phrase "does not win" encompasses any outcome other than a win, including, without limitation, a loss, draw, no decision, no contest or disqualification.

(v) In the event that Fighter and Promoter are unable to reach agreement during the Exclusive Period with respect to such Next Future Bout and provided Promoter has not offered Fighter the applicable minimum purse amount for such Next Future Bout as provided in Subparagraph 11(a)(iv) above, Fighter shall be free to negotiate with any other party with respect to such Next Future Bout, including, without limitation, the date, site, and Fighter's opponent; provided, however, that (x) in the event that Fighter receives an offer (the "Competing Offer") from any other party (the "Offeror") with respect to such Next Future Bout that is acceptable to Fighter, Fighter shall not accept the Competing Offer without first providing a written document containing the terms and conditions of the Competing Offer signed by the Offeror to Promoter and giving Promoter an opportunity to match the amount of Fighter's purse as contained in the Competing Offer within 15 business days and (y) in the event that Promoter makes an offer (the "Matching Offer") to Fighter which matches the amount of Fighter's purse as contained in the Competing Offer, Fighter must enter into an agreement with Promoter with respect to such Next Future Bout on the terms and conditions set forth in the Matching Offer, including, without limitation, date, site, opponent and all rights therein (it being understood that the date, site and opponent in the Matching Offer may be different from those originally designated by Promoter in Subparagraph 11(a)(iii) above and from those set forth in the Competing Offer);

Initials: Promoter _____ Fighter _____ Manager _____

(vi) In the event that Promoter does not make a Matching Offer, Fighter shall be free to participate in such Next Future Bout in accordance with the terms and conditions of the Competing Offer; provided, however, that Fighter shall in no event grant the Offeror or any other party any rights to subsequent Future Bouts during the Future Period; and

(vii) Promoter's failure to make a Matching Offer as provided above with respect to such Next Future Bout shall not relieve Fighter from his obligations hereunder with respect to subsequent Future Bouts during the Future Period.

(b) During the three (3) month period preceding the expiration of the Future Period (the "Expiration Period"), Fighter shall negotiate exclusively and in good faith with Promoter with respect to the extension of the term of the Future Period for an additional period of twelve (12) months. In the event that Fighter and Promoter are unable to reach agreement during the Expiration Period with respect to an extension of the Future Period, Fighter shall, subsequent to the expiration of the Expiration Period, be free to negotiate with any other party with respect to Fighter's future bouts; provided, however, that (i) in the event that Fighter receives an offer from any other party with respect to such future bouts that is acceptable to Fighter, Fighter, at Fighter's option, shall be free to provide Promoter with the right to match the amount of Fighter's purse as contained in such other party's offer within 15 business days and (ii) in the event that Promoter makes Fighter an offer which matches the amount of Fighter's purse as contained in such other party's offer, Fighter must enter into an agreement with Promoter with respect to such future bouts on the terms and conditions of such matching offer, including, without limitation, the date, site and opponent.

(c) Notwithstanding the foregoing, in the event that Fighter and Promoter are parties to a Promotional Agreement, the terms and conditions of the Promotional Agreement shall govern the rights and obligations of the parties with respect to Fighter's bouts following the Bout; provided, however, that if the Promotional Agreement expires, terminates, is challenged or is found unenforceable during the Future Period (or an extension of the Future Period in accordance with Subparagraph 11(b) above), the parties' rights during the Future Period (as the same may be extended) or any portion thereof that may extend past the date of the expiration or termination of the Promotional Agreement shall be governed by Subparagraphs 11(a) and (b) above.

(d) Notwithstanding the foregoing, in the event that (i) Opponent, in accordance with Title 15 United States Code ("USC") §6307b(a)(1)(A)(ii), came under contract to Promoter pursuant to a coercive provision described in Title 15 USC §6307b(a)(1)(B), (ii) this Paragraph 11 would not be enforceable against Fighter pursuant to Title 15 USC §6307b(a)(3) or (iii) the Bout is a "mandatory bout" within the meaning of Title 15 USC §6307b(b), the parties understand and agree that this Paragraph 11 shall be null and void.

XII. **EXCLUSIVITY.** Fighter will not, except upon the prior written consent of Promoter, which consent Promoter shall be free to withhold in its sole and absolute discretion, engage in any professional boxing bout or exhibition or enter into any contract with any other promoter, between the date hereof and the date of the Bout, including any date to which the Bout may be postponed or rescheduled.

XIII. **INDEPENDENT CONTRACTOR.** Nothing herein contained shall be construed to constitute Fighter as an employee of Promoter. Fighter is an independent contractor, responsible for his own actions and expenses and except as otherwise expressly set forth herein, Fighter shall be solely responsible for the payment of any and all costs and expenses incurred by him in connection with the Bouts, including, without limitation, payment of all fees to his manager, trainers, seconds, assistants, sparring partners, maintenance and training expenses, medical bills, sanctioning fees, taxes, boxing licenses, permits and fees, rights clearances, insurance, and travel, food and accommodations in excess of the amounts provided by Promoter pursuant to paragraph 5 above. Fighter shall, at his own cost and expense, be solely responsible for obtaining all licenses, permits, privileges, immunities, approvals, visas and other authorizations from governmental authorities which are necessary to entitle him to participate in the Bouts hereunder. Fighter hereby authorizes Promoter to deduct from his purse any of the foregoing costs and expenses to the extent paid by Promoter, required by law or authorized by the applicable athletic or boxing commission or sanctioning organization(s).

XIV. **EQUITABLE RELIEF.** Fighter acknowledges that his services as a professional boxer are special, unique, extraordinary, irreplaceable, and of peculiar value, and that in the event of his breach or threatened breach of this Agreement, Promoter would suffer irreparable damage which would not reasonably or adequately be compensated solely by an action at law. Accordingly, Fighter expressly agrees that in the event of such breach or threatened breach, Promoter shall be entitled, in addition to all other rights and remedies available to it, to obtain equitable relief, including, but not limited to, an injunction against such breach in any court of competent jurisdiction, and that he will not assert as a defense in any such action that Promoter has an adequate remedy at law.

XV. **REPRESENTATIONS, WARRANTIES AND COVENANTS.**

(a) Fighter represents, warrants and covenants to Promoter that he has the full power, right and authority and is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, agreement or understanding, whether oral or written, which conflicts in any material respect with the provisions hereof or which purports to grant similar or conflicting rights to any person, firm, or entity other than Promoter, or which would or might interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by Promoter of any of the rights granted to Promoter under this Agreement. Fighter further represents and warrants to Promoter that there are no claims pending or threatened or any litigations affecting Fighter which would or might interfere with the full and complete exercise or enjoyment by Promoter of any rights granted hereunder.

(b) Fighter further acknowledges that Promoter is entering into this Agreement in reliance upon the warranties, representations and covenants herein, and Fighter agrees to indemnify, defend and hold Promoter and its affiliates harmless from and against any and all liability, cost, or expense, including reasonable attorney's fees, Promoter or its affiliates may sustain or incur as a result of the breach or inaccuracy of any of said warranties, representations and covenants.

Initials: Promoter _____ Fighter _____ Manager _____

(c) Fighter will submit to medical examination(s) requested by Promoter within five (5) days of Promoter's request, including, without limitation, examinations required by Promoter or its licensees to obtain insurance or to determine Fighter's ability or inability to participate in a Bout. Fighter agrees and acknowledges that a breach of this provision would cause substantial harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay Promoter as liquidated damages, and not as a penalty, an amount equal to (i) Eighty-five percent (85%) of the purse of Fighter if the Bout is not televised or (ii) Five Hundred Thousand U.S. Dollars ($500,000) if the Bout is televised.

XVI   FORUM SELECTION/GOVERNING LAW. Fighter irrevocably submits to the jurisdiction of the United States District Court, Southern District of New York ("New York Federal Court") over any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined only in such New York Federal Court. Alternatively, if the New York Federal Court shall not have jurisdiction over the subject matter of the action or proceeding, then the action or proceeding may be brought in any State Court of New York in New York County having jurisdiction over the subject matter ("New York State Court"), and Fighter hereby irrevocably submits to the jurisdiction of the New York State Court. As an alternative method of personal service, Fighter irrevocably consents to the service of any and all process in any such action or proceeding by the mailing of copies at the address specified for the mailing of notices in this Agreement. Fighter agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any manner provided by law. Fighter further waives any objection to venue in such New York Federal Court or New York State Court and any objection to any action or proceeding in such New York Federal Court or New York State Court on the basis of forum non conveniens. Except as provided in the last sentence of this paragraph, Fighter further agrees that any such action or proceeding brought hereunder shall be brought only in a New York Federal Court or New York State Court. Nothing in this paragraph shall affect the right of Promoter to serve legal process in any other manner permitted by law. This Agreement shall be governed, construed and enforced in accordance with the substantive law of contracts of the State of New York and without regard to New York choice of law principles or conflicts of law principles. When and if a site for the Bout or any Future Bout pursuant to this Agreement is selected within the State of New York, the parties further mutually agree to, and shall, execute all documents required by the Rules and Regulations of the New York State Athletic Commission pertaining to the conduct of boxing in New York (19 N.Y.C.R.R. Part 205 et seq.) in a timely fashion, and mutually agree to, and shall, fully comply with all other requirements of the New York State Athletic Commission and its applicable Rules and Regulations. The parties further agree that, except by appropriate application to the New York State Athletic Commission pursuant to its Rules and Regulations, neither party shall assert any claim that non-compliance with the Rules and Regulations of the New York State Athletic Commission shall render this contract void or unenforceable.

XVII.   PROMOTIONAL AGREEMENT. In the event that Fighter has entered into a Promotional Agreement with Promoter, the terms and conditions of that agreement shall remain in full force and effect.

XVIII.   SEVERABILITY. Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any law, rule or regulation of any governmental authority, and if there shall exist any conflict between any provision of this Agreement and any such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect.

XIX.   WAIVER. No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced. The payment of any monies by any party shall not be deemed a waiver. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the permitted assigns, successors and affiliated entities of the parties hereto.

XX.   CONFIDENTIALITY. Fighter shall not disclose to any third party (other than his employees and agents (including consultants), in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event(s) Fighter shall so notify Promoter as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to his banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this paragraph, and (iii) in order to enforce his rights pursuant to this Agreement. Promoter shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement. Promoter shall have the sole right to file this Agreement with any applicable athletic or boxing commissions and sanctioning organizations.

XXI.   BENEFIT. The provisions of this Agreement are for the exclusive benefit of the parties who are signatories hereto and their permitted successors and assigns, and no third party shall be a beneficiary of, or have any rights by virtue of, this Agreement (whether or not such third party is referred to herein).

XXII.   ENTIRE AGREEMENT. This Agreement sets forth and integrates the entire understanding between Fighter and Promoter, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof. It may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto. Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. Any ambiguities shall be resolved without reference to which party may have drafted this Agreement.

XXIII.   COUNTERPARTS/FACSIMILE.   This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

Initials: Promoter ____   Fighter ____   Manager ____

XXIV   NOTICES. Any notice required or desired to be given hereunder shall be in writing and sent (i) postage prepaid by certified mail, return receipt requested, (ii) by a recognized overnight courier, or (iii) by confirmed facsimile, addressed as follows:

(a) To Promoter

Don King Productions, Inc.
501 Fairway Drive
Deerfield Beach, FL 33441
FAX: (954) 427-0157

(b) To Fighter

**MAHMOUD CHARR** _____

_____

_____

FAX: (    )    -
Social Security No.: \_\_\_\_ - \_\_ - \_\_\_\_

All such notices shall be deemed given when mailed, delivered to the overnight courier or sent by confirmed facsimile.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

DON KING PRODUCTIONS, INC.

By _____

Its: _____

Fighter _____
**MAHMOUD CHARR**

Manager _____

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING. NEITHER PARTY IS REQUIRED TO ACCEPT ANY OF THE TERMS AND CONDITIONS IN THIS AGREEMENT. TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS, OBJECTIVES AND BARGAINING POSITIONS OF ALL INTERESTED PERSONS.

Initials: Promoter _____   Fighter _____   Manager _____

# World Boxing Association

# Purse Bid Bout Contract

This Agreement, dated the 19th day of March, 2020, is made between Don King Productions, Inc. a duly commission-licensed boxing promoter ("Promoter") who is a registered and in good standing with World Boxing Association ("WBA") in good standing having paid all licenses and fees, and Mahmoud Charr ("Boxer") with Federal Tax Identification No. _____, represented by Christian Jaeger, his duly authorized manager pursuant to a manager agreement on file with the local boxing commission located in Germany.

The parties hereto agree to hold a WBA Championship title contest in the Heavyweight Division within the maximum weight limit of __N/A__ lbs between Boxer and his opponent, Trevor Bryant, ("Bout") under the following terms and conditions:

1. The Bout will be twelve (12) rounds and held at South Florida on the 30th day of May, 2020.

2. The WBA Rules and Regulations ("Rules") govern the Bout and are hereby incorporated and made a part of this Agreement. All Boxers and Promoters are deemed to be aware of the Rules. The Bout will also be conducted in compliance with the local boxing commission rules. As long as the local commission is recognized by the WBA, the WBA will defer to the local rules, when they conflict with the Rules, however, in cases where the local contest rules deviate from the WBA contest rules, the ABC's Unified Rules will govern the bout.

Boxer and Promoter shall comply with the Rules, including payment of all fees and expenses. Any violation of the Rules may result in withdrawal of Bout sanction, disqualification of the Boxer or Promoter, loss of the WBA Championship title, lowered ratings, or other penalties as provided under the Rules, including loss of recognition. Boxer shall comply with all WBA championship defense obligations in the Rules.

3. Boxer and Promoter understand and agree that the Bout, as sanctioned by the WBA, and the designation of a boxer as a WBA Champion, are titles which are the property of, and belong exclusively to, the WBA. Such designations are not rights, vested or otherwise, held, owned or enjoyed by Boxer, except as provided in the Rules. The WBA reserves the right, in its discretion and pursuant to its rules, to suspend or withdraw recognition of any champion, or withhold sanction of the Bout, for failure to comply with the Rules.

4. As full compensation for all claims and demands and for the services and performances rendered by Boxer hereunder, Promoter shall pay Boxer, and Boxer accepts the sum of U.S. one million five hundred thousand Dollars ($1,500,000.00) as Boxer's Purse as defined in WBA Rule A(6). Boxer shall pay any and all of Boxer's representatives or agents, including, but not limited to, his promoter, manager, trainer, etc. from said purse.





5. For the champion, Promoter shall provide a minimum of five (5) round trip coach air travel to the site of the Bout (unless local to the fighter), accommodations for not less than five (5) persons for seven (7) nights, payment for all required visas, and for the reasonable cooperation of the contestants to promote the Bout. For the challenger, Promoter shall provide a minimum of four (4) round trip coach air travel to the site of the Bout (unless local to the fighter), accommodations for not less than four (4) persons for seven (7) nights, payment for all required visas, and for the reasonable cooperation of the contestants to promote the Bout. Reasonable cooperation may include, but is not be limited to, those pre fight events required by the winning promoter's contracts with broadcasters, site owners and sponsors, including press conferences or announcements.

6. Boxer understands that, pursuant to the Rules, a sanction fee in the amount of three percent (3%) of Boxer's purse as defined in WBA Rule A(6), including amounts received for training expenses and monies paid to Boxer's manager, promoter, etc., is due and owing to the WBA for sanction of the Bout. Boxer agrees the aforesaid sanction fee will be withheld by Promoter from the purse otherwise payable to Boxer for the Bout, and paid to the WBA by the Promoter. Boxer and Promoter agree that the Bout will not be recognized as a WBA Championship Bout if the aforesaid sanction fee is not paid in full prior to the Bout.

7. Boxer shall submit to such medical, illicit drug, and antidoping tests required by the local commissions, the Rules, and as agreed to between the parties, and understands and agrees that Boxer may be disqualified, fined, suspended or otherwise disciplined if Boxer fails to take such tests or if the results of Boxer's illicit drug or antidoping test are positive. Boxer will not take, imbibe or have administered to Boxer any illicit drug, prohibited substance or any other substance that will or could possibly affect his performance in the ring, or physical and mental capabilities, and represents that he has not done so during the six (6) months prior to the date of this Agreement. Boxer has registered with VADA as required by the WBA.

8. The parties acknowledge that the WBA reserves the right to withdraw sanction of the Bout as a Championship Bout if Boxer refuses or fails to submit the above mentioned reports, documents or fails to submit to the required or agreed upon drug, antidoping or medical tests.

9. The non-scoring referee and three judges for the Bout will be selected, designated, and approved by the WBA in accordance with the Rules and in cooperation with the local commission.

10. Each Boxer may choose the brand and model of commercially reasonably available gloves subject to the approval of the WBA and the local commission. Each Boxer shall advise Promoter of the brand and style of gloves to be used at least twenty-one (21) days prior to the scheduled Bout. If Boxer fails to do so, Boxer shall be provided the same brand and style used by the opponent. Promoter shall provide the requested and approved gloves for each Boxer in factory sealed packaging at the Rules meeting. The weight of the gloves must comply with the weights stated in the Rules or the rules of the local commission.

11. Boxer shall cooperate and assist Promoter in publicizing, advertising and promoting of the Bout, and agrees to arrive at the site of the Bout at least seven (7) days prior to the Bout, including participating in press conferences as reasonably scheduled by Promoter at Promoter's expense.

12. Boxer represents, warrants and agrees that Boxer is free to enter into this Agreement and has not heretofore entered into, and will not prior to the Bout, enter into any contracts or agreements which might interfere with the performance of Boxer's obligations under this Agreement, and that Boxer is not a party to any pending claims, litigation or impediments that might affect the obligations and rights of the parties under this Agreement.

13. Promoter represents and warrants that it is a duly registered promoter in good standing that will pay all applicable fees and expenses in accordance with the WBA Rules and fee schedule, and that Promoter holds a valid boxing commission promoter's license from a recognized boxing jurisdiction

14. In the event of a disagreement or controversy regarding this Agreement, Boxer and Promoter shall submit the same to the WBA for determination with a fee to be determined by the WBA. The parties agree to be bound by the Rules and decisions of the WBA concerning any such disagreement or controversy.

15. Promoter will ensure that there will be a minimum of one ambulance and two doctors present at the Bout at all times.

16. Promoter shall pay life and hospital insurance policies for the Bout participants and the card as required by the local commission.

17. Boxer shall enter the ring for the Bout displaying the championship belt (if recognized as WBA Champion), and to participate in any championship belt ceremony.

18. All visas and other governmental documentation necessary for Boxer to participate in the Bout shall be the responsibility of Promoter, provided, however, that Boxer shall fully and timely cooperate in the obtaining of such visa.

19. This Agreement shall also be signed by Boxer's duly authorized manager if a current valid Manager/Boxer contract has been registered with his local commission, federation and/or the WBA.

20. Boxer shall engage in a good faith exhibition of Boxer's skills, compete to the best of Boxer's ability, and immediately disclose to the WBA and Promoter any impediment to doing so, including but not limited to any injury.

21. The WBA will not recognize the Bout as a Championship Bout until this Agreement is fully executed by all parties and approved by the President and Championships Chairman.

22. Boxer and Promoter may voluntarily agree to additional terms or conditions regarding the Bout. In the event a local commission form of contract is required, Boxer agrees to execute same.

IN WITNESS WHEREOF, the parties have freely and voluntarily executed this Agreement on the day and year first above written.

| PROMOTER | BOXER'S LICENSED MANAGER |
|---|---|
| | *(signature)* |
| | Christian Jaeger |
| By: _____ | |
| Date: _____ | Date: 19.03.2020 |
| Address: _____ | Address: Panoramaweg 623 |
| _____ | AT-6100 Seefeld/Tirol |
| Email: _____ | Email: cj@ugj,biz |
| Phone: _____ | Phone: +436677500000 |

| BOXER | WBA SANCTION APPROVAL |
|---|---|
| *(signature)* | |
| Mahmoud Charr | |
| Date: 19.03.2020 | Date: _____ |