UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 21-cv-61654-WPD

MAHMOUD CHARR,

    Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation, EPIC SPORTS AND
ENTERTAINMENT, INC., a Florida
corporation, and JOHN DOES 1 - 5,

    Defendants.
_____/

**DEFENDANTS DON KING AND DON KING PROMOTIONS,
INC.'S MOTION TO DISMISS COMPLAINT AND MOTION
TO STRIKE AND INCORPORATED MEMORANDUM OF LAW**

    Defendants, Don King and Don King Promotions, Inc., by and through undersigned counsel and pursuant to Rules 12(b)(6), 12(b)(7) and 12(f) of the Federal Rules of Civil Procedure, hereby file this Motion to Dismiss Plaintiff's Complaint [DE 1] and Motion to Strike, as follows:

**I.    Preliminary Statement**

    In this action, Plaintiff Mahmoud Charr (hereinafter referred to as "Charr"), who is a heavyweight boxer, has alleged that Defendants Don King ("King"), Don King Productions, Inc. ("DKP") and Epic Sports and Entertainment, Inc. ("Epic Sports") engaged in conduct designed to breach contracts that Charr claims he had with DKP and Epic Sports and also to interfere with the business relationship that Charr claims he possesses with the World Boxing Association ("WBA"). As more fully alleged in the Complaint, Charr alleges that Defendants were trying to prohibit Charr from participating in a heavyweight boxing match by failing to comply with the terms of a contract between DKP, Epic Sports and Charr and also by

exerting influence over the WBA so that the WBA would strip Charr of his heavyweight title as a result of Charr's failure to participate in the boxing match. To that end, Charr has alleged the following causes of action:

| | | |
|---|---|---|
| Count I | Breach of Contract | Against DKP and Epic Sports |
| Count II | Breach of Contract | Against DKP |
| Count III | Tortious Interference with Business Relationship | Against King and DKP |
| Count IV | Civil Conspiracy | King, DKP and Does 1-5 |

For the reasons set forth below, King and DKP submit that the Complaint should be dismissed as a result of Charr's failure to join a necessary and indispensable party. In addition, to the extent that the entire Complaint is not dismissed, King and DKP contend that Counts II and IV of the Complaint should be dismissed for failure to state a claim upon which relief can be granted. Finally, King and DKP submit that Charr's claims for an award of attorney's fees and for consequential damages should be stricken.

**II.   Argument**

    **A.   Failure to Join Necessary and Indispensable Party**

Charr's Complaint is subject to dismissal pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure on the grounds that he has failed to join the WBA, which is a necessary and indispensable party. To determine whether dismissal is appropriate under Rule 12(b)(7) based on a plaintiff's failure to join an indispensable party, a court is to apply the criteria set forth in Rule 19. *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982). Rule 19 provides that a person or entity must be joined as party to an action where, in its absence, a court cannot afford complete relief among the parties, or where the absent party has an interest in the subject matter of the action and its absence subjects an existing party to the action to a substantial risk of incurring double, multiple, or inconsistent obligations. *Fed.R.Civ.P.* 19(a).

In the present case, a review of the allegations and claims contained in the Complaint demonstrate that the WBA is a necessary and indispensable party. Namely, through the allegations of the Complaint, Charr claims that after DKP was successful in winning a purse bid which granted DKP the right to promote a WBA sanctioned bout involving Charr and an opponent (Trevor Bryan ("Bryan")), DKP engaged in conduct which, *inter alia*, "intentionally and unjustifiably interfered with Charr's business relationship with the WBA by exerting undue influence over the WBA after Charr was prevented from defending his title by causing the WBA to improperly strip Charr of his title as the reigning Regular Heavyweight Champion." *See* Doc. 1, p. 15, ¶74. Charr then alleges that:

> 75. As a result of King and DKP's unlawful interference, the WBA cancelled the rescheduled Charr/Bryan Bout causing Charr to sustain damages including, but not limited to, $1.5 million in lost income that King and DKP were obliged to pay Charr for his purse in that title fight.
>
> 76. As a further result, the WBA stripped Charr of his title and gave Charr the lesser designation of WBA Regular Heavyweight Champion (in recess), which has diminished Charr's reputation, marketability, and overall value as a professional boxer such that the quality of fights, endorsement deals, and purse amounts Charr receives in the future will be significantly less.

*Id.* at ¶75-76.

The Complaint also makes numerous additional allegations relating to the WBA's decisions regarding Charr and how those decisions by the WBA constitute breaches of the contracts alleged to exist between Charr and DKP. *Id.* at ¶¶ 25-29, 34-38, 40, 43, 44, 50-53. Indeed, Charr goes as far as to allege that the WBA's decision to cancel the bout between Charr and Bryan "violated WBA Rules." *Id.* at ¶¶50-51. Presumably, conduct engaged in by the WBA which resulted in an alleged violation of the WBA Rules could lead to legal action by Charr against the WBA. Moreover, given that Charr claims that DKP interfered with Charr's relationship with the WBA, it stands to reason that the WBA could likewise make

3

such a claim against DKP, *i.e.*, that DKP's conduct interfered with the WBA's relationship with Charr, which would expose DKP to "substantial risk of incurring double, multiple, or inconsistent obligations." *Fed.R.Civ.P.* 19(a). The plain allegations of the Complaint demonstrate that the WBA's involvement in this action as a party is necessary. As a result of Charr's failure to join the WBA in this case, this Court should dismiss this action.

      B.      **Count II – Breach of Contract (Purse Bid Agreement)**

Count II alleges a claim which is entitled "Breach of Contract (Purse Bid Agreement)." *See* Doc. 1, p. 13. Count II is defective and subject to dismissal given that pursuant to the exhibits attached to the Complaint, it is clear that the Purse Bid Agreement was never executed and, therefore, a claim for breach of that contract cannot survive. Namely, attached to the Complaint as Exhibit C is a document entitled Purse Bid Bout Contract which, on its face, demonstrates that it was never signed by any of the parties. *See* Doc. 1, Exhibit C. No allegation is made in the Complaint that the parties agreed to the terms of this written Agreement. As such dismissal is appropriate.

To the extent that Charr is alleging that some other oral agreement was formed between Charr and DKP with respect to the purse bid alleged in the Complaint, such an allegation is belied by: (a) the allegations in the Complaint, and (b) the terms of the written Purse Bid Bout Contract.

***First***, in the Complaint, Charr describes how a purse bid works. Namely in paragraphs 19 and 20, Charr describes the "purse bid *process*" as follows:

> 19.    The purse bid process requires promoters to submit a bid for the rights to a title fight. Where a purse bid is ordered, the reigning champion generally receives 75% of the total bid for the fight with the remaining 25% paid to the challenger.
>
> 20.    The WBA uses a standard form "Purse Bid Bout Contract" ("Bout Contract"), which fighters and their respective camps are required to sign and return to the WBA ahead of a title fight whenever a purse bid is ordered. *See* WBA Purse Bid Contract, Exhibit C.

*See* Doc. 1, pp. 4-5.

Simply stated, a purse bid is akin to an auction wherein promoters can submit an offer to the WBA to acquire the rights to promote a WBA sanctioned title bout. As alleged in the Complaint, the instant purse bid was ordered by the WBA pursuant to its resolution dated February 19, 2020 ("the WBA Resolution") and that "unless otherwise agreed by the parties, the standard WBA Bout Contract was to be used for the fight." *See* Doc. 1, p. 13, ¶63. As alleged in the Complaint and as further demonstrated by Exhibit C to the Complaint, once a purse bid is won, a written agreement is then entered into by and between: (a) the winning bidder/promoter, (b) the boxer, (c) the boxer's licensed manager, and (d) the WBA. *See* Doc. 1, Exhibit C, p. 4. In the face of these allegations and written instrument, Charr attempts to allege that once DKP submitted and won the purse bid, an oral contract was somehow formed between Charr and DKP that is different than "the standard form 'Purse Bid Bout Contract'" alleged by Charr to be the required instrument that memorializes the process. Specifically, paragraph 65 of the Complaint alleges that "DKP's $2 million bid, submitted in accordance with the terms of the WBA resolution and Charr's acceptance of those terms and the amount of DKP's bid, created a legally valid and enforceable contract between DKP and Charr." *See* Doc. 1, p. 13. To the extent that this allegation seeks to create an oral agreement, such an allegation is insufficient as a matter of law. The allegations in the Complaint and the exhibits attached thereto demonstrate that a contract is not formed between the promoter and the boxer once the promoter wins a purse bid, but rather that the promoter has simply won the opportunity to promote the bout, the documentation of which is "unless otherwise agreed by the parties, the standard WBA Bout Contract …" *See* Doc. 1, p. 13, ¶63. Simply stated, Charr has no standing to allege a claim for a breach of an oral contract arising from the purse bid since he was not a party to that auction process.

***Second***, the terms of the unsigned Purse Bid Bout Contract further support dismissal because absent such an agreement being entered into by Charr and DKP, no actual bout can take place that would permit Charr to participate in the bout and earn his purse. By way of reference, the Purse Bid Bout Contract states, *inter alia*:

> 2. The WBA Rules and Regulations ("Rules") govern the Bout and are hereby incorporated and made a part of this Agreement. … Any violation of the Rules may result in withdrawal of Bout sanction, disqualification of boxer or Promoter, loss of the WBA Championship title, lowered ratings, or other penalties as provided under the Rules, including loss of recognition.
>
> 3. Boxer and Promoter understand and agree that the Bout, as sanctioned by the WBA, and the designation of the boxer as WBA Champion, are titles which are the property of, and belong exclusively to, the WBA. Such designations are not rights, vested or otherwise, held, owned or enjoyed by Boxer, except as provided in the Rules. The WBA reserves the right, in its discretion and pursuant to its rules, to suspend or withdraw recognition of any champion, or withhold sanction of the Bout, for failure to comply with the Rules.
>
> 4. As full compensation for all claims and demands and for the services and performances rendered by Boxer hereunder, Promoter shall pay Boxer, and Boxer accepts the sum of **U.S. _____ Dollars ($_____.00) as Boxer's Purse as defined in WBA Rule A(6).**
>
> \*   \*   \*
>
> 8. The parties acknowledge that the WBA reserves the right withdraw sanction of the Bout as Championship Bout if Boxer refuses or fails to submit the above mentioned reports, documents or fails to submit to required or agreed upon drug, antidoping or medical tests.
>
> \*   \*   \*
>
> 21. The WBA will not recognize the Bout as Championship Bout until this Agreements is fully executed by all parties and approved by President and Championships Chairman.

*See* Doc. 1, Exhibit C, pp. 1-3.

These provisions make clear that, despite Charr's attempts to characterize the purse bid process as his entitlement to receive 75% of the purse bid under an alleged oral contract, this is simply not the case. The Purse Bid Bout Contract must be signed in order to grant Charr any rights to receive payment, which such rights may be revoked if he does not comply with the terms of the Purse Bid Bout Contract. Under Charr's allegations, Charr would automatically be entitled to receive 75% of the $2,000,000 purse bid once DKP won the purse bid, irrespective of Charr's actual participation in the subject bout, whether by voluntary act (such as violating the terms of the anti-doping provisions) or by virtue of the WBA withdrawing its sanctioning of the bout. Simply stated, the allegations in the Complaint are belied by the terms of the unsigned, written agreement and, as a result, dismissal is appropriate.

      C.      **Count IV – Civil Conspiracy**

Count IV alleges a claim of civil conspiracy against King and DKP arising from Charr's allegation that King, DKP, and "Does 1-5" persuaded the WBA to strip Charr of his heavyweight title "without cause." *See* Doc. 1, ¶¶78-79. Once again, the allegations in the Complaint are belied by the exhibits to the Complaint. As more fully discussed in Exhibit E to the Complaint, Charr was suspended by the WBA for testing positive for banned substances and once he was re-instated, he failed to participate in a bout within the prescribed time as required by the WBA. *See* Doc. 1, Ex. E, pp. 1-2. As such, the allegation that the WBA's decision to strip Charr of his title is demonstrably false.

More importantly for purposes of a motion to dismiss, Count IV is flawed as a matter of law. It is well settled that "[t]he elements of civil conspiracy include: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the

common scheme." *In re Chiquita Brands Intern., Inc. Alien Tort Statute and Shareholder Derivative Litigation*, 690 F.Supp.2d 1296, 1311 (S.D. Fla. 2010).

In Count IV, Charr alleges that King and Charr and Does 1-5 entered into an agreement with one another for purposes of exerting undue influence over the WBA. *See* Doc. 1, ¶¶78-79. This civil conspiracy claim is subject to dismissal on the grounds that the intra-corporate conspiracy doctrine plainly bars such a claim. Specifically, "[t]he intra-corporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000) (en banc). "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.*; *see also Canova v. Snipes*, 2021 WL 2652699 *4 (S.D. Fla. May 4, 2021) ("Simply, a corporation (or, for this matter, a public entity) cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."). As alleged in paragraph 15 of the Compliant "King owns and operates the boxing promotions company Don King Promotions, Inc. ("DKP") in Deerfield Beach, Florida." *See* Doc. 1, ¶15. As such, a claim that purports to allege that King and DKP entered into a conspiracy with one another is barred as a matter of law. As a result, Count IV should be dismissed.

        **D.**     **Motion to Strike Claim for Attorney's Fees**

Counts I and II of the Complaint seek an award of attorney's fees. "Under the "American rule," parties are presumed to bear their own fees and costs unless a statute or contract supports an independent claim to attorney's fees and costs." *Costa v. Datapro, Inc.*, 2012 WL 591307 *2 (S.D. Fla., Feb. 22, 2012). "Florida law allows the recovery of attorney's fees as damages or costs to the prevailing party only when provided for by statute

or contract." *Associated Industries Ins. Co., Inc. v. Advanced Management Services, Inc.*, 2013 WL 1176252 *3 (S.D. Fla., March 20, 2013). In *Associated Industries*, the Court granted defendants' motion to strike plaintiff's demand for attorney's fees because plaintiffs failed to allege or cite any applicable statute or contract provision allowing for the recovery of attorney's fees under the claims alleged in the complaint. *See Id*.; *see also CC-Aventura, Inc. v. Weitz Co., LLC*, 2007 WL 2264617 *1 (S.D. Fla., Aug. 6, 2007).

Here, Charr attempts to claim entitlement to an award of attorney's fees pursuant to the terms of the Promoter Agreement and the oral Purse Bid Agreement. However, Charr neither alleges nor points to any provision in the Promoter Agreement (much less to an agreement or understanding within the "oral Purse Bid Agreement") that would entitle him to an award of attorney's fees. Charr's inability to provide any basis for the recovery of attorney's fees subjects these claims to being stricken or dismissed.

E.     **Motion to Strike Claim for Consequential Damages**

In all counts in the Complaint, Charr seeks an award of consequential damages. Rule 9(g) of the Federal Rules of Civil Procedure provides that "[i]f an item of special damage is claimed, it must be specifically stated." *Fed.R.Civ.P*. 9(g). Special damages are considered to be the natural but not the necessary result of an alleged wrong or breach of contract. *DeMello v. Buckman*, 916 So. 2d 882, 888-89 (Fla. 4th DCA 2005). Special damages consist of items of loss which are peculiar to the party against whom the breach was committed and would not be expected to occur regularly to others in similar circumstances. *Id.* at 888. In other words, they are such damages as do not follow by implication of law merely upon proof of the breach. *Id.* Alternatively, general damages are those which the law presumes actually and necessarily result from the alleged breach or wrong, and need not be specifically pled. *Id*.; *Hardwick Properties, Inc. v. Newbern*, 711 So.2d 35, 39-40 (Fla. 1st DCA 1998); *Hutchison v. Tompkins,* 259 So.2d 129, 132 (Fla.1972).

"Rule 9(g) requires the heightened pleading of special damages for the purpose of informing the defendant about damages that the defendant may not otherwise expect so that the defendant is not

9

taken by surprise. It also serves to inform the court about the substance of the complaint." *Luyi Zhang v. Progressive Select Ins. Co.*, 2020 WL 1265361, *2 (S.D. Fla. 2020) (*citing Landsman v. City of Vero Beach*, 2015 WL 10960951, *1—2 (S.D. Fla. 2015)). This requirement is not permissive and failure to comply with this Rule will lead to the exclusion of any evidence proffered in support of special damages. "If special damages are not specially pleaded, evidence of them is inadmissible." *Alderman v. Murphy,* 486 So.2d 1334, 1336 (Fla. 4th DCA 1986). Evidence of special damages is inadmissible if those damages are not pled in the complaint. *See DeMello at 888-889* (disallowing award of damages for, *inter alia,* loss of investment income, because disallowed items were all elements of special damages, which plaintiffs had failed to specifically allege).

In the present case, Charr has failed to allege with requisite specificity how any conduct which he claims serves as the basis for his claims resulted in any particular special, As such, Charr's claims for special damages should be stricken.

### III. Conclusion

**WHEREFORE**, Defendants, Don King and Don King Promotions, Inc., respectfully request that this Court enter an Order: (a) dismissing the Complaint as a result of Charr's failure to join a necessary and indispensable party, or alternatively (b) to the extent that the entire Complaint is not dismissed, dismissing Counts II and IV of the Complaint for failure to state a claim upon which relief can be granted, (c) striking Charr's claims for an award of attorney's fees and for consequential damages, and (d) granting such other and further relief that this Court deems appropriate.

Respectfully submitted,

**ZARCO EINHORN SALKOWSKI & BRITO, P.A.**
*Counsel for Defendants Don King and Don King Promotions, Inc.*
One Biscayne Tower
2 South Biscayne Boulevard
34th Floor
Miami, FL 33131

By: /s/ Alejandro Brito
ALEJANDRO BRITO
Florida Bar No. 098442
abrito@zarcolaw.com
apiriou@zarcolaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 21, 2021 the foregoing Defendants Don King And Don King Promotions, Inc.'s Motion To Dismiss Complaint And Motion To Strike And Incorporated Memorandum Of Law was served via the Court's CM/ECF System upon:

Patrick English, Esq.
New Jersey Bar No. 023811978
DINES AND ENGLISH, LLC
685 Van Houten Avenue
Clifton, New Jersey 07013
dinesandenglish@aol.com

Jared Lopez, Esq.
Florida Bar No. 103616
Donald Hodson, Esq.
Florida Bar 120256
BLACK SREBNICK, P.A.
201 S. Biscayne Boulevard,
Suite 1300 Miami, Florida 33131
JLopez@RoyBlack.com
DHodson@RoyBlack.com
civilpleadings@royblack.com

*Counsel for Plaintiff Mahmoud Charr*

By: /s/ *Alejandro Brito*  _____