UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO. 21-CV-61654-WPD

MAHMOUD CHARR,

      Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation, EPIC SPORTS AND
ENTERTAINMENT, INC., a Florida
corporation, and JOHN DOES 1 - 5,

      Defendants.

_____/

## MEMORANDUM IN OPPOSITION TO THE MOTION OF THE KING DEFENDANTS TO DISMISS

      Plaintiff, Mahmoud Charr ("Charr"), respectfully submits this Memorandum in Opposition to the Motion to Dismiss filed on behalf of Defendants, Don King and Don King Productions, Inc. ("King" and "DKP"), for failure to join an indispensable party and for failure to state a cause of action under Fed. R. Civ. P. 12 (b)(6), 12 (b)(7)[1] and 12(f)[2].

---

[1] Rule 12(b)(7) enables a motion to dismiss for failure to join an indispensable party. Thus, we will be analyzing Defendants' motion under the standards set forth in Rule 19, but the Rule 19 arguments apply equally to Rule 12(b)(7).

[2] Though Defendants' motion references Rule 12(f), that rule allows the Court to strike scandalous material and is a disfavored rule. We can find no analysis of Rule 12(f) in Defendants' Memorandum of Law or how it applies here and thus we need not respond to it separately.



CASE NO. 21-CV-61654-WPD

## Introduction

When ruling on a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations in the Complaint as true and construe those allegations in the light most favorable to the non-moving party. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The requirements of Fed. R. Civ. P. 19 (governing the required joinder of parties) are as follows:

> "(a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.
>
> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."
>
> Fed. R. Civ. P. 19.

Where a party moves to dismiss an action for failure to join an indispensable party, the burden lies with the party seeking dismissal to prove the party is indispensable. *See American General Life and Accident Insurance Company v. Wood*, 429 F.3d 83, 92  (4th Cir. 2005); *W. Penninsular Title Co. v. Palm Beach County*, 41 F.3d 1490, 1492 (11th Cir. 1995); and *BFI Waste Systems of North America, Inc. v Broward County*, 209 F.R.D. 509, 514 (S.D. Fla. 2002). If the Court concludes a non-party is unnecessary, that is the end of the inquiry. *See U.S. v. Rigel Ship Agencies, Inc*., 432 F.3d 1282, 1281 (11th Cir. 1999).

Additionally, even if DKP and King were to allege the WBA is a joint tortfeasor in this action, "it is not necessary for all joint tortfeasors to be joined as defendants in a single lawsuit . .



CASE NO. 21-CV-61654-WPD

. .” *Temple v. Synthes Corp. Limited*, 498 U.S. 5, 7 (1990); *DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006); and *Raimbeault v Accurate Machine and Tool LLC*, 302 F.R.D. 675 (S.D. Fla. 2014). We must therefore turn first to the allegations in the Complaint so they may be analyzed under the appropriate standards. As pled, the relevant allegations read:

**"I.      Mahmoud Charr**

12.      [3] Charr is a professional heavyweight boxer with a distinguished professional record of 32 wins, four losses, and one tie. In November of 2017, Charr was crowned the World Boxing Association ("WBA") Regular Heavyweight Champion.

13.      The WBA stripped Charr of his title in January of 2021 after promoter King exerted undue influence on the WBA to prevent Charr from defending his title against King's own fighter, Trevor Bryan ("Bryan"), who then replaced Charr as the WBA Regular Heavyweight Champion.

14.      Charr's current title is "Champion in Recess" which the WBA bestows on reigning champions who "for health, legal, or compelling reasons" are prevented from defending their title. *See* Aug. 30, 2018 Letter re: WBA Heavyweight Interim Title, Exhibit D.

**II.      Don King and DKP**

15.      King is a prominent promoter and among the most controversial figures in professional boxing. King owns and operates the promotions company Don King Promotions, Inc. ("DKP") in Deerfield Beach, Florida.

---

[3] The numbered paragraphs herein correspond to the numbered paragraphs of the Complaint.

3



CASE NO. 21-CV-61654-WPD

16.     King has been the subject of negative publicity throughout his career[4] due to his unscrupulous business practices and reputation for mistreating and taking advantage of unwitting fighters for his own personal gain.

17.     Over the years, King has been sued countless times by former business partners and fighters such as Muhammad Ali, Lennox Lewis, and Mike Tyson who, like many others, accused King of failing to honor his contracts and even defrauding his own fighters out of millions of dollars. [5]

### III.     Charr/Bryant Bout

18.     On March 6, 2019, the WBA issued a resolution requiring Charr to defend his title against King's fighter, Bryan, who the WBA inexplicably promoted to the title of Interim Champion prior to arranging the bout. The WBA ordered a purse bid for the fight ("the Charr/Bryan Bout") that was scheduled for May 28, 2019 (the "May 28, 2019 purse bid").

19.     The purse bid process requires promoters to submit a bid for the rights to a title fight. Where a purse bid is ordered, the reigning champion generally receives 75% of the total bid for the fight with the remaining 25% paid to the challenger.

---

[4] King's reputation for mistreating fighters has been the subject of books including Jack Newfield's "Only in America: The Life and Crimes of Don King," as well as negative television documentaries and teledramas featured on the PBS-sponsored "Frontline", ESPN's "Sports Century", and HBO (John Herzfeld's television film "Only in America" based on Newfield's book by the same name).

[5] The Associated Press, *Tyson Reaches a Settlement with King*, The New York Times (June 26, 2004), available at https://www.nytimes.com/2004/06/26/sports/tyson-reaches-a-settlement-with-king.html.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

20.     The WBA uses a standard form "Purse Bid Bout Contract" ("Bout Contract"), which fighters and their respective camps are required to sign and return to the WBA ahead of a title fight whenever a purse bid is ordered. *See* WBA Purse Bid Contract, Exhibit C.

### IV.     Promoter Agreement

21.     Prior to the May 29, 2019 purse bid, DKP and Epic, another promotions company operating in South Florida, created a partnership. DKP and Epic then approached Charr to enter a promoter agreement, which was signed May 26, 2019 ("the Promoter Agreement") in Broward County, Florida. *See* Promoter Agreement, Exhibit A.

22.     Under the Promoter Agreement, DKP and Epic agreed to serve as Charr's co-promoters "for a minimum period of two years or as long as Charr [was] world champion of the WBA, WBC, IBF and/or WBO . . .  plus two years after [Charr] cease[d] to be a world champion." *Id.* at Par. 2, Exhibit A. DKP and Epic also promised "to offer Charr a minimum of two bouts during each year" for the term of the contract. *Id.*

23.     The Promoter Agreement provided that, "while Charr [was] world champion, his purse for his bouts [would] be . . . not less than $750,000.00, unless otherwise agreed upon by the parties." *Id.* at Par. 2. The contract also stated that DKP would bid "at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* at Par. 4.

24.     Pursuant  to the Promoter Agreement, if DKP won the purse bid, Charr promised to "accept his purse share as determined by the WBA; provided, however that if such purse bid share [was] less than $1,000,000.00 . . . then [DKP and Epic would] supplement Charr's purse to One Million Dollars." *Id.* at Par. 3.

### V.     Breach of Promoter Agreement

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

25.     Within days of entering the Promoter Agreement, DKP and Epic caused the WBA to cancel the May 28, 2019 purse bid by failing to submit on Charr's behalf an executed Bout Contract to the WBA. Prior to the cancellation, DKP and Epic never provided Charr with a Bout Contract to sign.

26.     While DKP and Epic have since claimed there was an agreement with Charr to cancel the bid, this is false. Charr did not consent to the cancellation nor learn that DKP and Epic had failed to submit the requisite paperwork, including the Bout Contract, until after the bid was cancelled.

27.     By not providing Charr a Bout Contract to sign, and in turn, causing the WBA to cancel the bid and postpone the Charr/Bryan Bout, DKP and Epic breached the Promoter Agreement by failing to "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout". *Id.* at Par. 4.

28.     DKP and Epic committed a further breach of the Promoter Agreement by then failing to "offer Charr a minimum of two bouts during each year of the term" of the Promoter Agreement. *Id.* at Par. 2.

29.     As a result of DKP and Epic's breaches, Charr sustained damages, including, but not limited to, $1 million in lost income that DKP and Epic were obligated to pay Charr for his purse in the Charr/Bryan Bout. *Id.* at Par. 3.

**VII.    Charr/Bryan Bout (Rescheduled)**

30.     By resolution dated February 19, 2020 ("the WBA resolution"), the WBA called for another purse bid to take place on March 2, 2020 for the rescheduled Charr/Bryan Bout, which was now set for January 29, 2021. *See* Feb. 19, 2020 WBA Resolution No. 202002191702, Sec. III. Decision, Par. A, Exhibit E.

6

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

31.     The resolution provided if the parties could not agree on their own terms for a purse bid contract, they should "submit a signed copy of the basic standard bout contract suggested by the WBA" within twenty (20) days pursuant to WBA rules. *Id.* at Section III. Decision, Par. B, Exhibit E.

32.     Charr's counsel was informed that this language was specifically included in the resolution by the WBA to clarify what information needed to be submitted to the WBA ahead of the title fight in light of DKP and Epic's prior defaults and delays that caused the WBA to cancel the initial purse bid and postpone the original Charr/Bryan Bout.

33.     On March 2, 2020, the purse bid went forward. DKP won the rights to the rescheduled Charr/Bryan Bout with a bid of a $2 million. Pursuant to the WBA resolution, Charr, as reigning champion, was to receive 75% of the total bid amount or $1.5 million. *Id.* at Section III. Decision, Par. A, Exhibit E.

### VIII.   DKP Bout Contract

34.     Despite winning the bid, DKP once again never provided Charr with a standard WBA Bout Contract to sign. As a result, Charr took it upon himself to execute a standard WBA Bout Contract, which Charr sent to DKP to countersign and return to the WBA consistent with the terms of the WBA resolution. *See* December 19, 2020 Email, Exhibit I.

35.     DKP received the signed WBA Bout Contract from Charr, but instead submitted a different unsigned "Don King Productions, Inc. - Bout Agreement" ("DKP's Bout Contract") to the WBA for approval. DKP's Bout Contract did not conform with the standard WBA Bout Contract. *See* Don King Productions, Inc. Bout Agreement, Exhibit F; and WBA Purse Bid Bout Contract, Exhibit C.

CASE NO. 21-CV-61654-WPD

36.     DKP's Bout Contract was essentially an option agreement providing, in summary, that DKP would honor its obligations to promote the Charr/Bryan Bout only if certain contingencies occurred such as DKP securing a location for the fight as well as television rights.

37.     DKP refused to sign the standard WBA Bout Contract after realizing the $2 million bid was excessive compared to the income the Charr/Bryan Bout was expected to generate. DKP knew the standard WBA Bout Contract did not allow DKP to opt out and/or extend the terms of the Charr/Bryan Bout purse bid whereas DKP's Bout Contract provided such outs. *See* Don King Productions, Inc. Bout Agreement, Sec. VII, Force Majeure and Other Postponements, Exhibit E.

38.     Charr initially objected to signing DKP's Bout Contract for this reason and because DKP's Bout Contract incorporated terms that likely violated the Muhammad Ali Act which, under 15 U.S.C. 6307b (b), prohibits promoters from demanding future promotional rights to a mandatory bout and which the DKP Bout Contract contemplated.

**IX.     Revised DKP Bout Contract**

39.     Charr's counsel conferred with the WBA Championships Committee Chair, Carlos Chavez ("Chavez"), about these terms and DKP's refusal to sign the standard WBA Bout Contract. It was noted that, under WBA rules, DKP should have been defaulted for refusing to use the WBA Bout Contract, but this did not occur.

40.     Instead, DKP, King, and other unidentified co-conspirators ("Does 1 – 5") exerted undue influence over the WBA to persuade the WBA to violate its own rules by requiring the parties to sign DKP's Bout Contract as opposed to the standard WBA Bout Contract which the WBA resolution expressly advised the parties to use under the circumstances.

41.     During their conference, Chavez advised Charr's counsel that Charr should simply remove the objectionable portions of the DKP Bout Contract then sign and return the agreement



CASE NO. 21-CV-61654-WPD

to DKP to countersign and submit to the WBA. Charr did just that. The DKP Bout Contract was executed by Charr and transmitted via email to counsel for DKP (and King) on or about December 19, 2020. *See* December 19, 2020 Email, Exhibit I.

42.     Charr's counsel reiterated in the same email that the objectionable terms of the DKP Bout Contract were removed pursuant to the WBA/Chavez's instructions and noted that, despite Charr twice signing a standard WBA Bout Contract for the fight, Charr executed the revised DKP Bout Contract to ensure he was able to defend his title after the WBA threatened to take Charr's title if he did not sign the DKP Bout Contract. *Id.*

43.     Thereafter, Charr's counsel repeatedly followed up with counsel for DKP and King via email and in conversations to inquire why the DKP Bout Contract had not yet been countersigned and returned to the WBA. DKP's counsel replied each time that he did not know. In reality, DKP and King intentionally did not submit the signed DKP Bout Contract to the WBA to prevent the Charr/Bryan Bout from going forward and to avoid paying Charr the $1.5 million purse he was owed for the bout.

**X.      DKP/King Obstruction**

44.     In addition to refusing to submit the signed DKP Bout Contract pursuant to WBA rules, DKP and King took further steps to prevent Charr from defending his title as the reigning WBA Regular Heavyweight Champion and to avoid paying Charr the $1.5 million sum owed for the Charr/Bryan Bout.

45.     For example, the standard WBA Bout Contract required DKP and King to assist Charr, who resided in Germany at the time, with securing the appropriate Visa necessary to travel to the United States to participate in the Charr/Bryan Bout scheduled for January 29, 2021.

9

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

46.     King assured Charr, who is Muslim, that King would use his alleged connections to the Trump Administration – which had signed the so-called "Muslim Ban" into effect that made it difficult for someone of Charr's background to enter the United States – to expedite the process of obtaining the requisite Visa for Charr. This never occurred.

47.      Left to his own devices after King failed to exercise his purported influence,  Charr personally began the process of securing his P-1 Visa through the United States consulate in Frankfurt, Germany once the "Muslim ban" was lifted soon after President Biden took office. To obtain his P-1 Visa, Charr was required to produce to the consulate a copy of the parties' executed DKP Bout Contract as proof of his reason for traveling to the United States.

48.     On January 26, 2021, Charr's counsel contacted counsel for DKP and King to request a copy of the signed DKP Bout Contract, advising that Charr could not obtain his P-1 Visa without a copy of the signed DKP Bout Contract, and thus, could not participate in the Charr/Bryan Bout unless and until DKP and King produced the contract. *See* January 26, 2021 Emails re: Charr P-1 Visa, Exhibit J.

49.     Despite this request, which Charr's counsel explained was made under significant time restraints given the impending fight date, DKP and King refused to produce a copy of the signed DKP Bout Contract to Charr to prevent Charr from traveling to the United States to participate in the Charr/Bryan Bout and receiving the $1.5 million purse he was owed by DKP and King for the fight.

**XI.     Charr Stripped of Title**

50.     After Charr was unable to participate in the Charr/Bryan Bout after not obtaining his P-1 Visa as a result of DKP and King's obstruction, the WBA cancelled the Charr/Bryan Bout. Thereafter, DKP and King, along with their unknown co-conspirators ("Does 1 -5"), exerted

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

additional undue influence over the WBA by convincing the WBA to strip Charr of his title as a result of Charr not attending the Charr/Bryan Bout.

51.     The  decision violated WBA rules. Nonetheless, with Charr no longer the reigning champion, DKP and King quickly arranged a new fight for the WBA Regular Heavyweight Champion title between DKP and King's own fighter, Bryan, and a far less capable boxer, Bermane Stiverne, who was 10 years Bryan's senior and had been knocked out by his two previous opponents.

52.     DKP and King's obvious intention was to ensure Bryan, who was at the time the Interim Champion and challenger for the WBA Regular Heavyweight Champion title, faced an easy opponent so Brayn could be crowned the new champion and, in return, DKP and King could minimize their profits off of the title fight as Bryan's promoters.

53.     On January 30, 2021, Bryan and Stiverne fought for the WBA Regular Heavyweight Champion title in Hollywood, Florida. As expected, Bryan soundly defeated the 42-year-old Stiverne by TKO in the eleventh round to become the new WBA Regular Heavyweight Champion." Dkt. No. 1, Complaint, Par. 12 – 53.

<b>Argument</b>

**I.      Count I is a Run-of-the-Mill Breach of Contract Claim That Satisfies Rule 12(b)(6), and the World Boxing Association ("WBA") Is Not a Party to the Contract**

On May 26, 2019, Charr entered a legally binding and enforceable contract with DKP and Epic Sports. *See* Dkt. No. 1, Complaint, Exhibit A. Charr alleges DKP and Epic breached this contract in numerous ways, including by failing to bid on the Charr/Bryan bout, failing to promote the Charr/Bryan Bout, and failing to timely offer additional bouts to Plaintiff as required under the agreement. Notably, the WBA is not – nor ever was – a party to this contract and there are no

11

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

allegations lodged against the WBA in the Complaint to even suggest otherwise. Charr seeks to recover damages only against DKP and Epic Sports as a result of the aforesaid breaches.

Hence, DKP fails to establish why this simple breach of contract count should be dismissed, either due to the failure to join the WBA as a party or due to the alleged failure of Charr to state a claim under Fed. R. Civ. P. 12(b)(6). DKP does not articulate why, in the absence of the WBA, the Court cannot accord complete relief among the existing parties to this lawsuit. Certainly, it is not even alleged by DKP that the WBA claims an interest relating to the subject of this action and is so situated that disposing of this action in the WBA's absence may as a practical matter impair or impede the WBA's ability to protect this alleged interest[6]; or, alternatively, will leave DKP and/or King subject to a substantial risk of incurring double, multiple, or inconsistent obligations because of this alleged interest as is required for a party to be deemed indispensable under Fed. R. Civ. P. 19. Accordingly, DKP's and King's argument in favor of dismissing Count I is without merit.

**II.   Count II Does Not Require Joinder of the WBA; While the WBA Set the Bid Terms, Any Claim for Breach of Contract Lies with the Breaching Party – Defendant, DKP**

Count II is, similarly, a simple breach of contract count. It is for the breach of a separate contract formed in March 2020. This contract arose out of what is known as a purse bid. Although the WBA sets the parameters of the purse bid, the contract is between the Fighter (Plaintiff/Charr) and the winning Promoter (Defendant/DKP). It is alleged in the complaint that submission of the purse bid by DKP created a binding contract and that DKP failed to live up to its obligations under this contract. Somehow, DKP and King conflate this with an oral agreement in their Motion to

---

[6] Our experience in this regard is that this aspect of Rule 19 is most common in injunctive relief cases. Here, only damages are being sought.

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

Dismiss. *See* Dkt. No. 12, Defs.' Mot. at 5. In short, it is not an oral agreement. The terms of the purse bid are written. *See* Dkt. No. 1, Complaint, at Par. 63. Though the Complaint does not mention the obvious, this is not in dispute. Plaintiff specifically alleges that "DKP's $2 million bid, submitted in accordance with the terms of the WBA resolution, and Charr's acceptance of those terms constituted and the amount of DKP's bid, created a legally valid and enforceable contract between DKP and Charr," *id.*, which Defendant breached. *Id.* at Par. 67.

The WBA, despite authoring the rules of the purse bid, was not itself a party to the contract between DKP and Charr. Accordingly, Count II adequately sets forth a viable claim for breach of contract based on these allegations under Fed. R. Civ. P. 12(b)(6). Moreover, Plaintiff seeks to recover damages from DKP, not the WBA, as a result of DKP's breach of the aforesaid agreement. Where only money damages are sought (as is the case here with respect to Count II), the Court can grant complete relief to Charr because "money is fungible; the recipient cared not whence it came . . . ." *Helix Investment Management LP v. Privilige Direct, Corp.*, 364 F. Supp. 3d 1343, 1352 (M.D. Fla. 2019) (quoting *United States v. Townhomes of Kings Lake HOA, Inc.*, No. 8:12-cv-2298-T-33TGW, 2013 WL 807152, at *4 (M.D. Fla. Mar. 5, 2013)).

DKP and King, as far as we can tell, never clearly articulate why this simple breach of contract count should be dismissed, either due to the alleged failure to join the WBA or to state a claim under Fed. R. Civ. P. 12(b)(6). They do not articulate why in the absence of the WBA the court cannot accord complete relief among existing parties. Certainly, it is not even alleged that the WBA claims  an interest relating to the subject of the action and is so situated that disposing of the action in the WBA's absence may as a practical matter impair or impede the WBA's ability to protect any such interest; or, alternatively, will leave DKP and/or King subject to a substantial risk of incurring double, multiple, or inconsistent obligations because of the WBA's alleged

13

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

interest as is required to be an indispensable party under Fed. R. Civ. P. 19. Hence, DKP's and King's argument in favor of dismissing Count II is also without merit.

**III.    Charr Need Not Join As a Party the Entity Who's Relationship Was Interfered With (i.e. the WBA) In Order to State a Viable Claim for Tortious Interference**

Count III of the Complaint asserts a claim for tortious interference with a business relationship. This count alleges DKP and King deliberately refused to provide Charr with the necessary contract to participate in a WBA title bout. It was also DKP and King – not the WBA – who attempted to extort future rights to any such bout from Charr in violation of the Muhammad Ali Act, specifically, 15 U.S.C 6307 (b), which prohibits the coercion of future rights in the context of a mandatory bout. *See* Dkt. No. 1, Complaint, Par. 72. As alleged in the Complaint, when this attempt was thwarted, DKP and King then refused to provide Charr with a copy of an executed bout contract so as to prevent Charr from obtaining a Visa while he was living in Germany and traveling to the United States to participate in the scheduled championship bout which was to occur in Florida. *Id.* at 73. The WBA had, as far as Char is aware, no part in this obstructionist plot.

It is further alleged that DKP and King asserted undue influence over the WBA to ensure Charr was stripped of his title when Charr was unable to travel to the United States to participate in the mandatory bout. *Id.* at 74. Since DKP and King have both moved under Fed. R. Civ. P. 12 (b)(6) for dismissal of the Complaint, we will do a two-part analysis of the arguments supporting each defendant's argument here.

Under Florida law, to state a claim for tortious interference, the claimant must plead four elements: (1) the existence of a business relationship under which the plaintiff has legal rights, not necessarily evidenced by an enforceable contract; (2) proof of the defendant's knowledge of such relationship; (3) an intentional and unjustified interference with said relationship by the defendant;

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

and (4) damage to the plaintiff as a result of the defendant's interference. *See Hodges v. Buzzeo*, 193 F. Supp. 2d 1279, 1284 (M.D. Fla. 2002); *Nautica Int'l. v. Intermarine USA, L.P.,* 5 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998); and *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 385 (Fla. 4th DCA 1999).

Under Fed. R. Civ. P. 12(b)(6), the Court must determine if the elements are sufficiently pled. There is no question they are. As an initial matter, the business relationship between Charr and the WBA is amply pled. *See* Dkt. No. 1, Complaint, Par. 12 and 70. It is also apparent from the allegations that DKP and King had knowledge of this relationship. As a prominent promoter in the world of professional boxing, *id.* at Par. 15, and as a participant in the WBA purse bid for Charr's title defense, *id.* at Par. 30, in addition to the other WBA-related activities set forth in the Complaint, DKP and King cannot plausibly argue they were without such knowledge of the business relationship between Charr and the WBA. *See, e.g.,* Dkt No. 1, Complaint at Par. 1, 25, 27, 30, 33, and 70. The Complaint also alleges in no uncertain terms that the interference by DKP and King, which is spelled out in detail, was intentional and unjustified. *Id.* at Par. 71 - 74. The resulting damages are alleged and specified as well. *Id.* at Par. 75 - 76. Thus, Count III is properly pled and DKP's and King's Rule 12(b)(6) motion is unavailing.

We now return to an analysis of DKP's and King's arguments under Fed. R. Civ. P. 19, which similarly fail. The Court will look in vain for any logical explanation from DKP and King as to why the Court cannot accord relief to the existing parties to this lawsuit. No injunctive relief is being sought against the WBA. For that matter, Charr does not seek any relief in this action against the WBA. This is simply a claim for monetary damages by Charr against DKP and King. Thus, the Court can, indeed, accord relief among the existing parties. *See* Fed. R. Civ. P. 19(a)(1)(A).

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

Similarly, the Court will look in vain for an explanation why Fed. R. Civ. P. 19(a)(1)(b) would apply. First, the WBA claims no "interest relating to the subject matter" of this action. This is required under Rule 19(a)(1)(b) even before reaching the additional requirements of that subsection. Apart from being unable to establish that the WBA has an interest in this litigation, DKP and King cannot and have not shown that the WBA's absence as a party may impair or impede "the [DKP's and King's] ability to protect their interest" or that there can be "inconsistent obligations" or "multiple obligations" *See* Fed. R. Civ. P. 19(a)(1)(b)(i) – (ii). Indeed, representatives of the WBA may very well be witnesses in this action, but there is no allegation by DKP and King that the WBA's absence as a party in any way impairs the WBA's ability to defend itself. Moreover, since the WBA has made no claim against DKP and King, there is no possibility of either party incurring "inconsistent" or "multiple" obligations. Accordingly, because the Court can render full relief on this claim in the form of monetary damages and the WBA has no claim against DKP and/or King, any argument for dismissing Charr's lawsuit based upon Fed. R. Civ. P. 19 should be rejected out of hand.

## IV. Plaintiff's Claim For Civil Conspiracy (Count IV) Requires Additional Discovery

DKP's and King's argument regarding Count IV is void by any analysis under either Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 19. Indeed, neither is expressly mentioned. The elements of a claim for civil conspiracy are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). There is no requirement that each co-conspirator commit acts in furtherance of the conspiracy; it is sufficient

16

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

if each conspirator knows of the scheme and assists in some way. *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008).

"The gist of a civil action for conspiracy is not the conspiracy itself, but the ***civil wrong*** which is done pursuant to the conspiracy and which results in damage to the plaintiff." *Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So.2d 949, 951 (Fla. 3d DCA 1984); *see also Phelan v. Lawhon,* 229 So. 3d 853 (Fla. 3d DCA 2017) (holding that a civil conspiracy claim must show independent wrong that would be an actionable wrong if it was committed by one person); *Philip Morris USA Inc. v. Richard Boatright*, 217 So. 3d 166 (holding that a civil conspiracy claim holds co-conspirators liable for "harm caused by other members of a conspiracy to commit an intentional tort."); *Walters v. Blankenship*, 931 So. 2d 137 (Fla. 5th DCA 2006) (holding that an action for civil conspiracy generally requires an underlying wrong or tort).

Technically,  civil conspiracy is not an independent cause of action but a device allowing a plaintiff to spread liability to those involved in the underlying tort. *See Lorillard Tobacco Co. v. Alexander*, 123 So. 2d. 67, 80 (2013) (observing that a "conspiracy is not a separate or independent tort but a vehicle for imputing the tortious acts of one coconspirator with another"). Thus, the conspiracy is inextricably linked to the underlying tort. *See Blatant v. Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 950 - 952 (1984); and *Teheran v Lincoln Lending Services, LLC,* 271 So. 2d 97, 103 (2019). This is precisely the manner in which Count IV is pled. Ever mindful of the existing Rule 11 responsibilities, Charr does not simply name individuals and/or entities as parties to this lawsuit without first having the information to support such allegations – evidence Charr anticipates will be produced through discovery. Hence, Charr has resorted to naming these defendants as "Does 1 – 5" pending discovery in this case.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

Returning to the factual allegations, the unlawful tortious acts necessary for Charr to state a claim for civil conspiracy are well-plead throughout the Complaint. These allegations include that DKP and King attempted to violate 15 U.S.C. 7307(b) (i.e. that portion of the Muhammad Ali Act prohibiting a promoter from demanding future rights in a mandatory situation) (Dkt. No. 1, Complaint, Par. 38), as well as the allegations supporting Charr's underlying claim for tortious interference in Count III, in addition to the other tortious acts mentioned. Likewise, Charr adequately pleads that he sustained damages as a result of the conspiracy amongst DKP, Charr, and Does 1 – 5 such that the pleading requirements to state a claim for civil conspiracy based on the parties' collective tortious interference with Charr's business relationship with the WBA have been met.

With respect to one particular statement made in DKP's and King's Memorandum: DKP and King assert on page 7 of their Motion to Dismiss, quite blithely, that Charr was stripped of his title because "he failed to participate in a bout within the prescribed time as required by the WBA." *See* Dkt. No. 12, Defs.' Mot. at Par. 7. This logic is entirely circular. The Complaint makes abundantly clear that Charr tried desperately to defend his title and that it was DKP and King (along with other co-conspirators) who prevented him from doing so, first by violating a contract to provide a bout (Count I), then by refusing to honor the purse bid requirements (Count II), and later by deliberately and unlawfully interfering with Charr's title status (Count III). DKP's and King's assertion, quoted above, is merely a frail attempt to blame the victim (i.e. Charr) for DKP's and King's very own unlawful acts, which is completely ludicrous.

DKP and King also contend, in support of dismissing Count IV, that a corporation cannot be alleged to have conspired with an employee. Yet, this point is not at all the gravamen of Count IV. The allegations in Paragraphs 78 and 79 of the Complaint make abundantly clear that DKP

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

and King acted in concert with unidentified third parties (i.e. Does 1 – 5) to "illegally exert undue influence over the WBA for the malicious purpose of persuading the WBA to Strip Charr . . . without cause" (Dkt. No. 1, Complaint, Par. 78 – 79) and similarly, worked in concert with these individuals to unjustifiably strip Charr of his title. *Id.* In other words, the conspiracy alleged is not between DKP and King, but rather, between DKP and/or King and Does 1 – 5. While discovery is necessary to identify Does 1 – 5, this does not render Count IV subject to dismissal.

**V.      Plaintiff Withdraws Attorneys' Fee Claim <u>Without Prejudice</u> At This Time**

There is one *ad danum* clause which requests attorneys' fees. At present, Plaintiff does not believe this will be the final version of the Complaint given the anticipated need to amend the Complaint at least once in the future when discovery reveals the identities of Does 1 – 5. Plaintiff concedes the present known facts do not sustain a claim for attorneys' fees at this time and thus respectfully withdraws his claim for attorneys' fees, without prejudice.

**VI.     The Claim For Consequential Damages is Amply Supported By the Allegations**

Defendants claim that consequential damages cannot be awarded, asserting that Fed. R. Civ. P. 9(g) requires the elements of consequential damages to be spelled out in the pleadings. Among the problems with this argument is that the elements of consequential damages are in fact incorporated and well-pled in the Complaint. Plaintiff respectfully refers the Court to Paragraph 76 of the Complaint to evidence this point. Here it is alleged that because Charr was stripped of his title as a result of Defendants' actions, "Charr's reputation, marketability, and overall value as a professional boxer [was adversely impacted] such that quality of fights, endorsement deals and purse amounts Charr receives in the future will be significantly less." Dkt. No. 1, Complaint, Par. 76. These allegations describe damages that were foreseeable at the time the parties contracted. The overall value of which (as in similar cases) will be established at trial through expert

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

testimony. In short, these allegations concerning Charr's consequential damages are sufficient to satisfy the pleadings requirements of Fed. R. Civ. P. 9(g).

Indeed, federal courts have applied Florida law in the same way with respect to determining this issue. In *T.D.S. Inc. v. Shelby Mut. Ins. Co.,* a Florida trial court instructed that the jury could award consequential damages resulting from the defendant/carrier's breach of an insurance contract with the plaintiff/insured if the plaintiff had shown that the consequential damages were foreseeable at the time the parties entered the insurance contract. The Eleventh Circuit Court of Appeals approved the instruction, holding that Florida courts allowed consequential damages, even where the consequential damages were not a covered policy benefit. *See T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F. 2d 1520 (11th Cir. 1985). Similarly, in *Rondolino v. Northwestern Mutual Life Insurance Co.*, 788 F. Supp. 553 (M.D. Fla. 1992), the Court held "[i]f a party can prove loss of profits [from breach of an insurance contract] with reasonable certainty, then damages will be awarded." *Id.* at 555. Because consequential damages occurred due to a breach of the insurance contract, Florida courts at the time did not limit damages to the terms of the contract. The key issue was whether the consequential damages were foreseeable at the time the policy was created. Here, the damages were entirely foreseeable as is supported by the factual allegations.

**VII.   Joining the WBA Would Create Significant Venue Issues**

As pled, DKP has its principal offices in Deerfield Beach, Florida. See Dkt. No. 1, Complaint, Par. 3. Similarly, King is a Florida resident. *Id.* at Par. 2. The contract upon which Count I is based alleges that the courts in Florida shall be the "exclusive forum" for any disputes between the parties and cites the specific forum clause in the parties' Promoter Agreement stating as much. *Id.* at Par. 11 and Exhibit A, May 26, 2019 Promoter Agreement. However, the Rules of the WBA, at Paragraph  F. 18, provide that the laws of the State of Washington shall govern any

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

such disputes involving the WBA and that, to the extent the WBA is a party to any such dispute, litigation shall be instituted only in the Courts of Pierce County, Washington. https://www.wbaboxing.com/wp-content/uploads/2020/10/World-Boxing-Association-Rules.pdf. In other words, joining the WBA to this action could very well create a procedural morass whereby WBA would undoubtedly claim that Florida is the wrong venue. This is yet another reason why joinder of the WBA in this action is unwise and disfavored.[7]

### VIII.   If The Court Believes Joinder of The WBA is Required, the Correct Remedy is Not Dismissal But Entry of an Order Directing the WBA to be Joined

Finally, it seems DKP and King, in moving for dismissal, have overlooked the correct remedy provided by Fed. R. Civ. P. 19 (a)(2) which states that "[i]f a person has not been joined as required, the court must order that the person be made a party" and that "[a] person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff." Hence, pursuant to Fed. R. Civ. P. 19,  if the Court believes the WBA is an indispensable party, the appropriate remedy is to enter an order requiring WBA to be added. The appropriate remedy is *not* to outright dismiss this lawsuit as-is apparent under a plain reading of Fed. R. Civ. P. 19. *See, e.g., Delgado-Caraballo v. Hospital Pavia Hato Rey, Inc.* 889 F.3d 30, 34 (1st Cir 2018) ("Case law generally prefers that judges not dismiss suits" under Rule 19) (citing Richard D. Freer, Moore's Federal Practice – Civil § 19.02[3][c] & n.54 (3d ed. 2017) ("The phrase 'good conscience,' in 19(b) contemplates that very few cases should be terminated due to the absence of

---

[7] We note that Fed. R. Civ. P. 19(a)(3) provides that "if a party joined party objects to venue and the joinder would make the venue improper the Court must dismiss that party". Hence joinder of the  WBA  may , after extensive motion practice, be meaningless. In determining a Rule 19 motion, the Courts must consider pragmatic concerns. *Sierra Club v. Leathers* , 754 F.2nd 952, 954 (11th Cir 1985); *Raimbeault v. Accurate Machine and Tool, LLC*, 302 FRD 675 (S.D. Fla. 2014. Certainly pragmatic concerns mitigate against a joinder of the WBA.

CASE NO. 21-CV-61654-WPD

non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible."); and *Fort Yates Public School District 4 v. Murphy, ex rel C.M.B*, 786 F.3d 662, 671 (8th Cir. 2015).

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety as Plaintiff's claims satisfy all pleading requirements and Defendants have failed to demonstrate that the WBA is an indispensable party.

Dated: October 26, 2021

Respectfully submitted,

BLACK SREBNICK, P.A.
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
305-371-6421 Telephone
305-358-2006 Fax

By:   /s/ Jared Lopez
     Jared Lopez, Esq.
     Florida Bar No. 103616
     Donald J. Hodson, Esq.
     Florida Bar No. 120256
     JLopez@RoyBlack.com
     DHodson@RoyBlack.com
     civilpleadings@royblack.com
*Counsel for Plaintiff Mahmoud Charr*

DINES AND ENGLISH LLC
685 Van Houten Avenue
Clifton, New Jersey 07013
973-778-7575 Telephone
973-778-7633 Fax

By:   /s/ Patrick C. English
     Patrick English, Esq.
     New Jersey Bar No. 023811978
     dinesandenglish@aol.com
     *Counsel for Plaintiff Mahmoud Charr*
     22

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY a true and correct copy of the foregoing was filed with the Court this <u>26th</u> day of October 2021 and electronically served via the CM/ECF system on: Mr. Alejandro Brito, Esq., Zarco Einhorn Salkowski & Brito, P.A., One Biscayne Tower, 2 South Biscayne Blvd., 34th Floor, Miami, Florida 33131, abrito@zarcolaw.com and apirious@zarcolaw.com.

By: <u>/s/ Jared Lopez</u>
        Jared Lopez, Esq.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006