UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MAHMOUD CHARR,   CASE NO. 21-cv-61654-WPD

    Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation, EPIC SPORTS AND
ENTERTAINMENT, INC., a Florida
corporation, and JOHN DOES 1 - 5,

    Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS COMPLAINT AND MOTION TO STRIKE

THIS CAUSE came before the Court on Defendants Don King ("King") and Don King Promotions, Inc. ("DKP") (collectively, "Defendants")'s Motion to Dismiss and Motion to Strike ("Plaintiff's Motion"), filed September 21, 2021. [DE 12]. The Court has carefully considered Motion [DE 12], Plaintiff Mahmoud Charr ("Plaintiff" or "Charr")'s Response [DE 15], notes that Defendants did not file a Reply, and is otherwise fully advised in the premises.

### I. BACKGROUND

On August 10, 2021, Plaintiff filed this action against Defendants King, DPK, Epic Sports and Entertainment, Inc. ("Epic"), and John Does 1-5.[1] *See* [DE 1].

According to the factual allegations in the Complaint, which the Court accepts as true for the purposes of the motion to dismiss:

---

[1] A clerk's entry of default was entered against Defendant Epic, and Defendants John Does 1-5 were dismissed without prejudice. *See* [DE's __, 20].

Plaintiff Charr is a Syrian citizen and German resident. ¶ 1.  Charr is a heavyweight boxer with a distinguished professional record of 32 wins, four losses, and one tie. ¶ 12.  In November of 2017, Charr was crowned the World Boxing Association ("WBA") Regular Heavyweight Champion. ¶ 12.

Defendant King is a United States citizen and Florida resident. ¶ 2.  King is a prominent promoter and among the most controversial figures in professional boxing. ¶ 15.  King owns and operates the boxing promotions company Defendant DPK, which is a foreign corporation with its principal address in Deerfield Beach, Florida. ¶¶ 3, 15.

On March 6, 2019, the WBA issued a resolution requiring Charr to defend his title against King's fighter, Trevor Bryan ("Bryan"), who the WBA inexplicably promoted to the title of Interim Champion prior to arranging the bout. ¶ 18.  The WBA ordered a purse bid for the fight ("the Charr/Bryan Bout") that was scheduled for May 28, 2019 (the "May 28, 2019 purse bid"). ¶ 18.  The purse bid process requires promoters to submit a bid for the rights to a title fight. ¶ 19.  Where a purse bid is ordered, the reigning champion generally receives 75% of the total bid for the fight with the remaining 25% paid to the challenger. ¶ 19.  The WBA uses a standard form "Purse Bid Bout Contract" ("Bout Contract"), which fighters and their respective camps are required to sign and return to the WBA ahead of a title fight whenever a purse bid is ordered. ¶ 20; [DE 1] at Ex. C.

Prior to the May 29, 2019 purse bid, DKP and Epic, another promotions company operating in South Florida[2], created a partnership. ¶ 21.  DKP and Epic then approached Charr to enter a promoter agreement, which was signed May 26, 2019 ("the Promoter Agreement") in Broward County, Florida. ¶ 21; [DE 1] at Ex. A, B.  Under the Promoter Agreement, DKP and

---

[2] Defendant Epic is a Florida corporation with its principal address in Henderson, Nevada. ¶ 4.

Epic agreed to serve as Charr's copromoters "for a minimum period of two years or as long as Charr [was] world champion of the WBA, WBC, IBF and/or WBO . . . plus two years after [Charr] cease[d] to be a world champion." ¶22. DKP and Epic also promised "to offer Charr a minimum of two bouts during each year" for the term of the contract. ¶22.  The Promoter Agreement provided that, "while Charr [was] world champion, his purse for his bouts [would] be . . . not less than $750,000.00, unless otherwise agreed upon by the parties." ¶23. The contract also stated that DKP would bid "at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." ¶23.  Pursuant to the Promoter Agreement, if DKP won the purse bid, Charr promised to "accept his purse share as determined by the WBA; provided, however that if such purse bid share [was] less than $1,000,000.00 . . . then [DKP and Epic would] supplement Charr's purse to One Million Dollars." ¶24.

      Within days of entering the Promoter Agreement, DKP and Epic caused the WBA to cancel the May 28, 2019 purse bid by failing to submit on Charr's behalf an executed Bout Contract to the WBA. ¶25.  Prior to the cancellation, DKP and Epic never provided Charr with a Bout Contract to sign. ¶25.  While DKP and Epic have since claimed there was an agreement with Charr to cancel the bid, this is false. ¶26.  Charr did not consent to the cancellation nor learn that DKP and Epic failed to submit the requisite paperwork, including the Bout Contract, until after the bid was cancelled. ¶26.  By not providing Charr with a Bout Contract to sign, and in turn, causing the WBA to cancel the bid and postpone the Charr/Bryan Bout, DKP and Epic breached the Promoter Agreement by failing to "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." ¶27. DKP and Epic committed a further breach of the Promoter Agreement by then failing to "offer Charr a minimum of two bouts during each year of the term" of the Promoter Agreement. ¶28.  As a result of DKP and Epic's breaches, Charr

sustained damages, including, but not limited to, $1 million in lost income that DKP and Epic were obligated to pay Charr for his purse in the Charr/Bryan Bout. ¶29.

By resolution dated February 19, 2020 ("the WBA resolution"), the WBA called for another purse bid to take place on March 2, 2020 for the rescheduled Charr/Bryan Bout, which was now set for January 29, 2021. ¶30. The resolution provided that if the parties could not agree on their own terms for a purse bid contract, they should "submit a signed copy of the basic standard bout contract suggested by the WBA" within twenty (20) days pursuant to WBA rules. ¶31. Charr's counsel was informed that this language was specifically included in the resolution by the WBA to clarify what information needed to be submitted to the WBA ahead of the title fight in light of DKP and Epic's prior defaults and delays that caused the WBA to cancel the initial purse bid and postpone the original Charr/Bryan Bout. ¶ 32.

On March 2, 2020, the purse bid went forward. ¶33. DKP won the rights to the rescheduled Charr/Bryan Bout with a bid of a $2 million. Pursuant to the WBA resolution, Charr, as reigning champion, was to receive 75% of the total bid amount or $1.5 million. ¶33.

Despite winning the bid, DKP once again never provided Charr with a standard WBA Bout Contract to sign. ¶34. As a result, Charr took it upon himself to execute a standard WBA Bout Contract, which Charr sent to DKP to countersign and return to the WBA consistent with the terms of the WBA resolution. ¶34. DKP received the signed WBA Bout Contract from Charr, but instead submitted a different unsigned "Don King Productions, Inc. - Bout Agreement" ("DKP's Bout Contract") to the WBA for approval. ¶35. DKP's Bout Contract did not conform with the standard WBA Bout Contract. ¶35; [DE 1] at Ex. C. DKP's Bout Contract was essentially an option agreement providing, in summary, that DKP would honor its obligations to promote the Charr/Bryan Bout only if certain contingencies occurred such as DKP

securing a location for the fight as well as television rights. ¶36. DKP refused to sign the standard WBA Bout Contract after realizing the $2 million bid was excessive compared to the income the Charr/Bryan Bout was expected to generate. ¶37. DKP knew the standard WBA Bout Contract did not allow DKP to opt out and/or extend the terms of the Charr/Bryan Bout purse bid whereas DKP's Bout Contract potentially provided such outs. ¶37; [DE 1] at Ex. E.

Charr initially objected to signing DKP's Bout Contract for this reason and because DKP's Bout Contract incorporated terms that likely violated the Muhammad Ali Act which, under 15 U.S.C. 6307b (b), prohibits promoters from demanding future promotional rights to a mandatory bout and which the DKP Bout Contract contemplated. ¶38.

Charr's counsel conferred with the WBA Championships Committee Chair, Carlos Chavez ("Chavez"), about these terms and DKP's refusal to sign the standard WBA Bout Contract. ¶39. It was noted that, under WBA rules, DKP should have been defaulted for refusing to use the WBA Bout Contract, but this did not occur. ¶39. Instead, DKP, King, and others exerted undue influence over the WBA to persuade the WBA to violate its own rules by requiring the parties to sign DKP's Bout Contract as opposed to the standard WBA Bout Contract which the WBA resolution expressly advised the parties use under the circumstances. ¶40.

During their conference, Chavez advised Charr's counsel that Charr should simply remove the objectionable portions of the DKP Bout Contract then sign and return the agreement to DKP to countersign and submit to the WBA. ¶41. Charr did just that. ¶41. The DKP Bout Contract was executed by Charr and transmitted via email to counsel for DKP (and King) on or about December 19, 2020. ¶41; *See* [DE 1-13]. Charr's counsel reiterated in the same email that the objectionable terms of the DKP Bout Contract were removed pursuant to the WBA/Chavez's

instructions and noted that, despite Charr twice signing a standard WBA Bout Contract for the fight, Charr executed the revised DKP Bout Contract to ensure he was able to defend his title after the WBA threatened to take Charr's title if he did not sign the DKP Bout Contract. ¶42. Thereafter, Charr's counsel repeatedly followed up with counsel for DKP and King via email and in conversations to inquire why the DKP Bout Contract had not yet been countersigned and returned to the WBA. ¶43.  DKP's counsel replied each time that he did not know. ¶43.  In reality, DKP and King intentionally did not submit the signed DKP Bout Contract to the WBA to prevent the Charr/Bryan Bout from going forward and to avoid paying Charr the $1.5 million purse he was owed for the bout. ¶43.

In addition to refusing to submit the signed DKP Bout Contract pursuant to WBA rules, DKP and King took further steps to prevent Charr from defending his title as the reigning WBA Regular Heavyweight Champion and to avoid paying Charr the $1.5 million sum owed for the Charr/Bryan Bout. ¶44.  For example, the standard WBA Bout Contract required DKP and King to assist Charr, who resided in Germany at the time, with securing the appropriate Visa necessary to travel to the United States to participate in the Charr/Bryan Bout scheduled for January 29, 2021. ¶45.  King assured Charr, who is Muslim, that King would use his alleged connections to the Trump Administration – which had signed the so-called "Muslim Ban" into effect that made it difficult for someone of Charr's background to enter the United States – to expedite the process of obtaining the requisite Visa for Charr. ¶46.  This never occurred. ¶46.

Left to his own devices after King failed to exercise his purported influence, Charr began the process of securing his P-1 Visa through the United States consulate in Frankfurt, Germany once the "Muslim ban" was lifted after President Biden took office. ¶47.  To obtain his P-1 Visa, Charr was required to produce to the consulate a copy of the parties' executed DKP Bout

Contract as proof of his reason for traveling to the United States. ¶47. On January 26, 2021, Charr's counsel contacted counsel for DKP and King to request a copy of the signed DKP Bout Contract advising that Charr could not obtain his P-1 Visa without a copy of the signed DKP Bout Contract, and thus, could not participate in the Charr/Bryan Bout unless and until DKP and King produced the contract. ¶48; *see* [DE 1-14]. Despite this request, which Charr's counsel explained was made under significant time restraints given the impending fight date, DKP and King refused to produce a copy of the signed DKP Bout Contract to Charr to prevent Charr from traveling to the United States to participate in the Charr/Bryan Bout and receiving the $1.5 million purse he was owed by DKP and King for the fight. ¶49.

After Charr was unable to participate in the Charr/Bryan Bout after not obtaining his P-1 Visa as a result of DKP and King's obstruction, the WBA cancelled the Charr/Bryan Bout. ¶50. Thereafter, DKP and King, along with unknown co-conspirators, exerted additional undue influence over the WBA by convincing the WBA to strip Charr of his title as a result of Charr not attending the Charr/Bryan Bout. ¶50. The decision violated WBA rules. ¶51. Nonetheless, with Charr no longer the reigning champion, DKP and King quickly arranged a new fight for the WBA Regular Heavyweight Champion title between DKP and King's own fighter, Bryan, and a far less capable boxer, Bermane Stiverne, who was 10 years Bryan's senior and had been knocked out by his two previous opponents. ¶51. DKP and King's obvious intention was to ensure Bryan, who was at the time the Interim Champion and challenger for the WBA Regular Heavyweight Champion title, faced an easy opponent so Bryan could be crowned the new champion and, in return, DPK and King could maximize their profits off of the title fight as Bryan's promoters. ¶52.

On January 30, 2021, Bryan and Stiverne fought for the WBA Regular Heavyweight Champion title in Hollywood, Florida. ¶53.  As expected, Bryan soundly defeated the 42-year-old Stiverne by TKO in the eleventh round to become the new WBA Regular Heavyweight Champion. ¶53.  Charr's current title remains "Champion in Recess" which the WBA bestows on reigning champions who "for health, legal, or compelling reasons" are prevented from defending their title. ¶ 14.

Based on the foregoing factual allegations, the Complaint alleges claims against Defendants as follows:  Count I:  Breach of Contract (Promoter Agreement) against DKP and Epic; Count II:  Breach of Contract (Purse Bid Agreement) against DKP; Count III:  Tortious Interference with Business Relationship against King and DKP; Count IV:  Civil Conspiracy against King and DKP.

Defendant DKP and King filed the instant Motion to Dismiss and Motion to Strike, seeking to dismiss the entire Complaint for failure to join an indispensable party, or alternatively to dismiss two of the claims pled against them and to strike the requests for attorneys' fees and for consequential damages. *See* [DE 12].

## II.   STANDARD OF REVIEW

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . ." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

### III.   DISCUSSION

Defendants King and DKP have moved the Court for an order dismissing the Complaint as a result of Plaintiff's failure to join the WBA as an allegedly necessary and indispensable party, or alternatively, dismissing Counts II and IV of the Complaint for failure to state a claim upon which relief can be granted and striking Charr's claims for an award of attorney's fees and for consequential damages.  The Court addresses these grounds, in turn.

#### a.  Failure to Join Necessary and Indispensable Party

First, Defendants argue that the Complaint should be dismissed in its entirely pursuant to Fed. R. Civ. P. 12(b)(7) based on Plaintiff's failure to join the WBA, an indispensable party. The two-step approach courts in the Eleventh Circuit employ in order to determine whether a party is indispensable is as follows:

> First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined

> but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982)).

In the present case, a review of the allegations and claims contained in the Complaint demonstrate that the WBA is not a necessary and indispensable party pursuant to Rule 19(a)(1). There is nothing to indicate that, in the WBA's absence, the Court cannot accord complete relief among existing parties. *See* Rule 19(a)(1)(A). No relief, injunctive or otherwise, is being sought against the WBA in this action. Nor are there facts indicating that the WBA claims an interest relating to the subject of Plaintiff's claims. *See* Rule 19(a)(1)(B). Counts I and II are simple breach of contract claims against DKP and Epic (Count I) and against DKP (Count II), and there are no allegations indicating that the WBA was also a party to the contract(s) at issue in those Counts. As to Count III, a claim against King and DKP for tortious interference with a business relationship between Charr and the WBA, the allegations indicate only that the WBA is a possible witness to the factual bases for the claim, not a party. Defendants' argument of risk of exposure to double or inconsistent obligations is without merit; whether the WBA might also have possible claims against DKP and/or King based on the events alleged in Charr's Complaint does not require the WBA's presence as a party in this case under the criteria set forth in Rule 19(a)(1)(A) or (B) based on the claims alleged by Charr in the operative pleading.

As the WBA is not an indispensable party under Rule 19)(a), the motion to dismiss pursuant to Rule 12(b)(7) shall be denied.

**b. Failure to State a Claim as to Count II – Breach of Contract (Purse Bid Agreement)**

Count II alleges a claim which is entitled "Breach of Contract (Purse Bid Agreement)" against Defendant DKP. *See* [DE 1] at ¶¶62-68. Defendants argue that Count II is defective and subject to dismissal given that, pursuant to the exhibits attached to the Complaint, it is clear that the Purse Bid Agreement was never executed and, therefore, a claim for breach of that contract as pled cannot survive. The Court agrees. Significantly, it is unclear from the allegations in this Count what contract Plaintiff is attempting to allege that DKP breached. It is not plausible that DKP violated the standard WBA Bout Contract by refusing to sign and submit the standard WBA Bout Contract. *See* ¶¶ 63-67. At most, Plaintiff alleges that DKP violated a March 2, 2020 WBA resolution by refusing to agree to use a standard WBA Bout Contract. *See id.* Accordingly, the Court will dismiss Count II for failure to state a claim.

**c. Failure to State a Claim as to Count IV – Civil Conspiracy**

Count IV alleges a claim of civil conspiracy against King and DKP arising from Charr's allegations that King, DKP, and five unknown entities or individuals persuaded the WBA to strip Charr of his heavyweight title without cause. Defendants argue, and the Court agrees, that the intra-corporate conspiracy doctrine, which "holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy," bars the claim as a matter of law, as Defendant King is alleged to own and operate Defendant DPK. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000); [DE 1] at ¶15. Count IV shall be dismissed, without prejudice to bringing such a claim at a later time in the event Plaintiff identifies third parties with whom DKP and/or King wrongfully conspired.

### d. Motion to Strike Claim for Attorney's Fees

Counts I and II of the Complaint seek an award of attorney's fees in their claims for relief. *See* [DE 1]. Defendants' move to strike those claims as unsupported by any contract or statute. In response, Plaintiff concedes the allegations do not support a claim for attorneys' fees and thus withdraws his claim for attorneys' fees, without prejudice. *See* [DE 15] at p. 19. Accordingly, the Court will strike the claim for attorney's fees from the Complaint.

### e. Motion to Strike Claim for Consequential Damages

In all counts in the Complaint, Charr seeks an award of both actual and consequential damages. *See* [DE 1]. Defendants argue that the Court should strike the requests for consequential damages on the grounds that they cannot be awarded because the Complaint fails to adequately set forth the consequential damages as required by Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). The Court disagrees. The Complaint sufficiently sets forth factual allegations supporting consequential damages at this stage of the litigation. *See, e.g.,* [DE 1] at ¶76 ("As a further result, the WBA stripped Charr of his title and gave Charr the lesser designation of WBA Regular Heavyweight Champion (in recess), which has diminished Charr's reputation, marketability, and overall value as a professional boxer such that the quality of fights, endorsement deals, and purse amounts Charr receives in the future will be significantly less."). Accordingly, the motion to strike the claims for consequential damages shall be denied.

## IV.   CONCLUSION

Based upon the foregoing it is hereby **ORDERED and ADJUDGED** that:

1. Defendants' Motion to Dismiss and Motion to Strike [DE 12] is **GRANTED IN PART AND DENIED IN PART**;

2. Count II and Count IV are **DISMISSED** for failure to state a claim pursuant to Rule 12(b)(6);

3. The claims for attorney's fees are **STRICKEN**;

4. The remainder of the Motion [DE 12] is **DENIED**;

5. Defendants shall file their answer(s) within fourteen (14) days.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Broward County, Florida this 30th day of November, 2021.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of Record