UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO. 21-CV-61654-WPD

MAHMOUD CHARR,

      Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation,
EPIC SPORTS AND ENTERTAINMENT,
INC., a Florida corporation,
WORLD BOXING ASSOCIATION, INC., a
foreign corporation, and
GILBERTO MENDOZA, JR., individually,

      Defendants.

_____/

## **AMENDED COMPLAINT**

      Plaintiff, Mahmoud Charr, by and through his undersigned counsel and pursuant to Fed.

R. Civ. P. 8(a), files this Amended Complaint against Defendants, Don King, Don King

Productions, Inc., Epic Sports and Entertainment, Inc., World Boxing Association, Inc., and

Gilberto Mendoza, Jr., and in support thereof alleges:

## **PARTIES**

      1.     Plaintiff, Mahmoud Charr ("Charr"), is *sui juris,* a German citizen and German

resident. When this litigation began, Charr was a Syrian citizen and a German resident.

5

CASE NO. 21-CV-61654-WPD

2.      Defendant, Don King ("King"), is *sui juris*, a United States citizen and Florida resident.

3.      Defendant, Don King Productions, Inc. ("DKP"), is a foreign corporation with its principal address at 501 Fairway Drive, Deerfield Beach, Florida 33441.

4.      Defendant, Epic Sports and Entertainment, Inc. ("Epic"), is a Florida corporation with its principal address at 81 Via Di Mello, Henderson, Nevada 89011.

5.      Defendant, World Boxing Association, Inc. ("WBA") is a foreign corporation with its principal address at Ave. Aquilino de la guardia c/c Calle 47, Ocean Business Plaza, 14th Floor, Office 14-05, Panama City, Panama 0816-01091 PA.

6.      Defendant, Gilberto Mendoza, Jr. ("Mendoza"), is *sui juris* and believed to be a dual citizen of the United States and Venezuela.[1]

## **JURISDICTION**

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C.§ 1331 as certain claims in this action arise under the laws of the United States.

8.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs, and the claims in this action are between United States citizens and a citizen of Germany.

9.      The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the claims asserted herein derive from a common nucleus of operative facts and judicial economy,

---

[1] Mendoza's nationality has not been confirmed but will be established in discovery.



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

convenience, and fairness to the litigants weigh in favor of the Court exercising supplemental jurisdiction.

10.     The Court has personal jurisdiction over Defendant, King, who resides and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against King also accrued.

11.     The Court has personal jurisdiction over Defendant, DKP, which is located and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against DKP also accrued.

12.     The Court has personal jurisdiction over Defendant, Epic, which is incorporated in the State of Florida and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against Epic also accrued.

13.     The Court has personal jurisdiction over Defendant, WBA, which maintains a registered address in the State of Florida and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against the WBA also accrued.

14.     The Court has personal jurisdiction over Defendant, Mendoza, who is believed to maintain a residence in the State of Florida and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against Mendoza also accrued.

## **VENUE**

15.     Venue is proper in the United States District for the Southern District of Florida pursuant to 28 U.S.C. § 1391 as Defendants reside, are located, and/or regularly conduct business in Broward County, Florida, where the events giving rise to this lawsuit occurred.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

16.     Additionally, Plaintiff, Charr, and Defendants, DKP and Epic, have stipulated by contract that the "exclusive forum for any disputes shall be the courts located in the State of Florida." *See* May 26, 2019 Promoter Agreement, Par. 5, Exhibit A.[2]

17.     Venue is also proper under 18 U.S.C § 1965(a), which provides that "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."

<u>**GENERAL ALLEGATIONS**</u>

**I.     Mahmoud Charr**

18.     Charr is a professional heavyweight boxer with a record of 32 wins, four losses, and one draw. In November of 2017, Charr was crowned the WBA Regular Heavyweight Champion.

19.     The WBA stripped Charr of his title in January of 2021 after promoter King exerted undue influence on the WBA to prevent Charr from defending his title against King's own fighter, Trevor Bryan ("Bryan"), who replaced Charr as the WBA Regular Heavyweight Champion.

20.     At the time this action was filed, Charr's title was that of Champion in Recess which the WBA bestows on reigning champions who "for health, legal, or compelling reasons" are prevented from defending their title. *See* Aug. 30, 2018 Letter re: WBA Heavyweight Interim Title, Exhibit D.

---

[2] Because the signed May 26, 2019 Promoter Agreement attached as Exhibit A is difficult to read as a result of having been transmitted numerous times, an identical albeit more legible blank copy of the same Promoter Agreement is also attached for reference as Exhibit B.

8



CASE NO. 21-CV-61654-WPD

21.     The WBA has since stripped Charr of his Champion in Recess title at King's behest as hereinafter alleged.

**II.     Don King and DKP**

22.     King is a prominent promoter and among the most controversial figures in professional boxing. King owns and operates the promotions company Don King Productions, Inc. ("DKP") in Deerfield Beach, Florida.

23.     King has been the subject of negative publicity throughout his career[3] due to his unscrupulous business practices and reputation for mistreating and taking advantage of unwitting fighters for his own personal gain.

24.     King has been sued countless times over the years by fighters such as Muhammad Ali, Lennox Lewis, and Mike Tyson who, like many others, have accused King of failing to honor contracts and defrauding his own fighters, in some instances out of more than $100 million.[4]

25.     At all times material hereto, King and DKP were (and are) legally separate and distinct entities who were associated with the WBA by virtue of doing business with the WBA (i.e. promoting fighters in WBA-sanctioned bouts).

---

[3] King's reputation for mistreating fighters has been the subject of books including Jack Newfield's "Only in America: The Life and Crimes of Don King," as well as negative television documentaries and teledramas featured on the PBS-sponsored "Frontline", ESPN's "Sports Century", and HBO (John Herzfeld's television film "Only in America" based on Newfield's book by the same name).

[4] The Associated Press, *Tyson Reaches a Settlement with King*, The New York Times (June 26, 2004), available at https://www.nytimes.com/2004/06/26/sports/tyson-reaches-a-settlement-with-king.html.

9



CASE NO. 21-CV-61654-WPD

### III.   The WBA and Gilberto Mendoza, Jr.

26.      The WBA is one of four ratings associations in professional boxing. It is  generally considered a corrupt organization. This is in large part due to the WBA's practice of accepting payments and/or gifts from promoters and "fixers" in exchange for fraudulently improving the rankings of fighters.

27.      This pay-to-play scheme enables less talented or unqualified fighters to participate in more profitable bouts (including, in some cases, title bouts), which in turn increases the profits collected by their promoters and/or "fixers" who engage in these illicit back-door dealings with WBA officials.

28.      Upon information and belief, this fraudulent ranking scheme has been in effect at least since Gilberto Mendoza, Jr. ("Mendoza") assumed his current position as the WBA's president in 2015 following the death of Mendoza's father who was the former president of the WBA.

29.      Mendoza has since played a central role in facilitating the ongoing corrupt practices of the WBA upon taking over as president of the organization including, but not limited to, the WBA's well-known pay-to-play fighter ranking scheme.

30.      At all times material hereto, Mendoza and the WBA were (and are) legally separate and distinct entities who were associated by virtue of Mendoza's role as the current president of the WBA.

### IV.   Racketeering Activity

31.      The WBA by-laws purport that the organization operates under an "Executive Committee" structure in which WBA executives make decisions about fighter rankings and other

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

matters. In reality, these decisions are made at the sole discretion of Mendoza in direct violation of the WBA by-laws.

32.     The WBA also claims its decisions and fighter rankings are merit-based, but this is also false. The WBA's decisions and rankings are frequently the result of illicit deals between WBA officials and promoters, "fixers" and others who provide economic incentives to WBA officials in exchange for the WBA issuing favorable decisions or higher rankings for their fighters.

33.     These illicit deals are executed in many forms: In some cases, promoters and "fixers" make payments (or provide things of value) directly to WBA officials. In other instances, promoters and "fixers" will disguise such economic incentives as "donations" or "gifts" to third-parties, which in turn launder these incentives to WBA officials.

34.     Although Mendoza purports to take no salary or emoluments as president of the WBA, this is false: Mendoza is among the WBA officials who have and continue to receive economic incentives through illicit back-door deals with promoters and "fixers" participating in this scheme—this includes King and DKP.

35.     Upon information and belief, King and DKP have engaged in these deals with Mendoza since at least 2015 by making payments and/or providing gifts to Mendoza through at least one third-party: Sports Consulting Services, LLC ("SCS"). Mendoza's son and at least one other WBA employee are believed to have been employed by and/or maintained an ownership interest in SCS since August 2018.

36.     In other words, it is believed that all payments and/or gifts provided to SCS by King and DKP from August 2018 to the present have been passed along to Mendoza and other

11



CASE NO. 21-CV-61654-WPD

WBA officials in exchange for Mendoza and the WBA fraudulently improving the ranking of King's and DKP's fighters during this period.

37.     Additionally, King and DKP have participated in this ongoing pay-to-play scheme by providing economic incentives directly to Mendoza under false pretenses: For example, in one instance, King and DKP disguised payments (or other economic incentives) to Mendoza as "wedding gifts" that were given by King and DKP to Mendoza in or about February of 2020 in exchange for Mendoza and the WBA continuing to improve the rankings of King's and DKP's fighter, Bryan.

38.     Furthermore, King and DKP have executed these illicit back-door deals by allowing the WBA to retain money "deposited" by King and DKP for scheduled bouts, which should otherwise have been returned by the WBA to King and DKP under league rules. Additionally, other "fixers" have also admittedly supplied female companionship to WBA officials to "sweeten" these deals.

39.      King and DKP at all times knowingly provided these incentives in exchange for Mendoza and the WBA fraudulently elevating the ranking of King's and DKP's fighters including, but not limited to, Bryan, which in turn directly increased the profits King and DKP received as Bryan's promoters in any WBA-sanctioned bouts and/or endorsement deals.

40.     Upon information and belief, King and DKP began providing the aforesaid illicit economic incentives to Mendoza and the WBA at least as early as the Summer of 2017 shortly

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

before the WBA inexplicably began accelerating Bryan's WBA fighter ranking from 10th place in September of 2017 to 1st place in July of 2018.[5]

41.     As part of this scheme, Mendoza and the WBA then prepared and disemminated on a monthly basis fraudulent WBA fighter rankings containing Bryan's elevated ranking. These fraudulent rankings were at all times distributed by Mendoza and the WBA via U.S. Mail and the internet (via WBA's website)[6] such that Mendoza and the WBA have committed and continue to commit the crimes of mail and wire fraud by distributing these fraudulent rankings each month.

42.     At all times material hereto, King, DKP, Mendoza, and the WBA knew that such action by Mendoza and the WBA was illegal yet King and DKP deliberately provided the aforesaid incentives to Mendoza and the WBA with the specific intent for Mendoza and the WBA to disseminate the fraudulent rankings containing Bryan's elevated ranking via U.S. mail and the internet from September 2017 to the present.

43.     As a result of these illicit activities committed by King, DKP, Mendoza, and the WBA pursuant to this criminal enterprise (i.e. perpetuated through the WBA organization), Charr has sustained injury to his business and/or property including, but not limited to, a loss of career earnings and endorsement deals.

44.     Additionally, and as hereinafter alleged, the aforesaid illicit activities committed by King, DKP, Mendoza, and the WBA pursuant to this criminal enterprise (i.e. perpetuated through the WBA organization) have resulted in the WBA stripping Charr of his title as the

---

[5] World Boxing Association, *Trevor Bryan, Pro Boxing Record* (available at: https://www.wbaboxing.com/wba-boxer-profile?e=1363651484848486a6f4b2f6c7237796742686e6735673d3d (June 29, 2022).

[6] *Id.*

**BlackSrebnick**
CIVIL | CRIMINAL
www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

WBA Regular Heavyweight Champion and fraudulently selecting King's and DKP's fighter, Bryan, to replace Charr as the new WBA Regular Heavyweight Champion.

### III.    Charr/Bryan Bout

45.    On March 6, 2019, the WBA issued a resolution requiring Charr to defend his title against King's fighter, Bryan, who the WBA, contrary to its own rules and procedures,  promoted to the title of "Interim Champion" after informing the Association of Boxing Commissions ("ABC") in writing that Bryan would not be in line for a mandatory title shot.

46.    The WBA ordered a purse bid for this title fight between Charr and Bryan ("the Charr/Bryan Bout") with the purse bid originally scheduled for May 28, 2019 (the "May 28, 2019 purse bid").

47.    Under WBA rules, the purse bid process requires promoters to submit a bid for the rights to a title fight. Where a purse bid is ordered, the reigning champion typically receives 75% of the total bid with the remaining 25% paid to the challenger.

48.    The WBA uses a standard form "Purse Bid Bout Contract" ("Bout Contract"), which fighters and their respective camps are must sign and return to the WBA ahead of a title fight when a purse bid is ordered. *See* WBA Purse Bid Contract, Exhibit C.

### V.    Promoter Agreement

49.    Shortly before the May 28, 2019 purse bid, DKP and Epic created a partnership and then asked Charr to enter a promoter agreement ("the Promoter Agreement") with both defendants. The Promoter Agreement was signed by Epic and King (on behalf of DKP) in Broward County, Florida on May 26, 2019. *See* Promoter Agreement, Exhibit A.

50.    Under the Promoter Agreement, DKP and Epic agreed to serve as Charr's co-promoters "for a minimum period of two years or as long as Charr [was] world champion of the

14

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

WBA, WBC, IBF and/or WBO . . . plus two years after [Charr] cease[d] to be a world champion." *Id.* at Par. 2. DKP and Epic also promised "to offer Charr a minimum of two bouts during each year" for the term of the contract. *Id.*

51.     The Promoter Agreement also provided that, "while Charr [was] world champion, his purse for his bouts [would] be . . . not less than $750,000.00, unless otherwise agreed upon by the parties." *Id.* The contract stated as well that DKP would bid "at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* at Par. 4.

52.     The Promoter Agreement further provided that if DKP won the purse bid for the Charr/Bryan Bout, Charr would "accept his purse share as determined by the WBA; provided, however that if such purse bid share [was] less than $1,000,000.00 . . . then [DKP and Epic would] supplement Charr's purse to One Million Dollars." *Id.* at Par. 3.

### VI.     Breach of Promoter Agreement

53.     Within days of entering the Promoter Agreement, King, DKP, and Epic caused the WBA to cancel the May 28, 2019 purse bid despite the terms of the Promoter Agreement expressly providing that this bid would be held. King, DKP, and Epic had no legal right to cause the WBA to cancel the May 28, 2019 purse bid.

54.     Although DKP and Epic have since claimed that there was an agreement with Charr to cancel the May 28, 2019 purse bid, this is plainly false. Charr did not consent to the cancellation of this purse bid, and the terms of the Promoter Agreement required DKP and Epic to participate in this purse bid.

55.     By not providing Charr a Bout Contract to sign, and in turn, causing the WBA to cancel the May 28, 2019 purse bid and postpone the Charr/Bryan Bout, DKP and Epic breached

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

the Promoter Agreement with Charr by failing to "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout" as was required by the terms of the contract. *Id.* at Par. 4.

56.     Additionally, DKP and Epic committed a further breach of the Promoter Agreement by failing to "offer Charr a minimum of two bouts during each year of the term" of the agreement beginning with the postponement of the Charr/Bryan Bout. *Id.* at Par. 2.

57.     As a result of DKP and Epic's breaches of the Promoter Agreement, Charr sustained economic damages, including, but not limited to, approximately $1 million in lost income that DKP and Epic were obligated to pay Charr for his purse in the Charr/Bryan Bout in addition to other monies Charr would have received from endorsement deals as a result of participating in that bout. *Id.* at Par. 3.

**VII.   Charr/Bryan Bout (Rescheduled)**

58.     By resolution dated February 19, 2020 ("the WBA resolution"), the WBA called for another purse bid to take place on March 2, 2020 for the rescheduled Charr/Bryan Bout, which was now set for January 29, 2021. *See* Feb. 19, 2020 WBA Resolution No. 202002191702, Sec. III. Decision, Par. A, Exhibit E.

59.     The WBA resolution provided that if the parties could not agree on their own terms for a purse bid contract, the parties were to "submit a signed copy of the basic standard bout contract suggested by the WBA" within twenty (20) days, which was consistent with the WBA rules. *Id.* at Section III. Decision, Par. B.

60.     Charr's counsel was informed that this language was specifically included in the WBA resolution to clarify what information needed to be submitted to the WBA ahead of the title fight due to DKP and Epic's prior defaults and delays that caused the WBA to cancel the initial purse bid and postpone the original Charr/Bryan Bout.



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

61.     On March 2, 2020, the purse bid went forward as planned: DKP won the rights to the rescheduled Charr/Bryan Bout with a bid of a $2 million. Pursuant to the WBA resolution, Charr, as reigning champion, was to receive 75% of the total bid amount or $1.5 million of DKP's $2 million bid. *Id.* at Section III. Decision, Par. A.

**VIII.    Bout Contract**

62.     Despite winning the bid, DKP once again never provided Charr with a standard WBA Bout Contract to sign. *See* DKP Bout Agreement, Exhibit F. As a result, Charr took it upon himself to (twice) execute a standard WBA Bout Contract, which he sent to DKP to countersign and return to the WBA consistent with league rules. *See* Mar. 19, 2020 WBA Purse Bid Contract, Exhibit G; Dec. 8, 2020 WBA Purse Bid Contract, Exhibit H; and December 19, 2020 Email, Exhibit I.

63.     Although DKP received the signed WBA Bout Contract from Charr, DKP submitted a different unsigned "Don King Productions, Inc. - Bout Agreement" ("DKP's Bout Contract") to the WBA for approval in violation of WBA rules. The bout contract submitted by DKP to the WBA did not conform with the standard WBA Bout Contract.

64.     DKP's Bout Contract was instead an option agreement providing, in short, that DKP would only honor its contractual obligations to promote the Charr/Bryan Bout if certain contingencies occurred. This included DKP securing a location for the title fight as well as television rights for the bout.

65.     DKP refused to sign the standard WBA Bout Contract after realizing the $2 million bid for the bout was excessive compared to the income the Charr/Bryan Bout was expected to generate. The standard WBA Bout Contract did not allow DKP to opt out of the purse bid and/or extend the terms of the purse bid for the Charr/Bryan Bout such that DKP used

CASE NO. 21-CV-61654-WPD

its own contract, which provided these outs. *See* DKP Bout Agreement, Sec. VII, Force Majeure and Other Postponements, Exhibit F.

66.     Charr initially objected to signing DKP's Bout Contract for all of these reasons as well as because DKP's Bout Contract incorporated terms that violated the Muhammad Ali Act which, under 15 U.S.C. § 6307b (b), prohibits promoters (i.e. King and DKP) from demanding future promotional rights to a mandatory bout as was contemplated by the terms in the DKP Bout Contract. *Id.* at Exhibit F.

**IX.     Revised DKP Bout Contract**

67.     Recognizing the glaring problems with DKP's Bout Contract, Charr's counsel conferred with the WBA Championships Committee Chair, Carlos Chavez ("Chavez"), about the terms in the contract as well as about DKP's refusal to sign the standard WBA Bout Contract in accordance with WBA rules, to no avail. Under league rules, the WBA should have defaulted DKP for refusing to use the WBA Bout Contract: This did not occur.

68.     Instead, DKP and King continued to exert undue influence over the WBA to persuade the WBA to violate its own rules by requiring the parties to sign DKP's Bout Contract as opposed to the standard WBA Bout Contract, which contradicted the terms in the WBA resolution that expressly recommended the parties use the standard WBA Bout Contract.

69.     Nonetheless, Chavez advised Charr's counsel that Charr should simply remove the "objectionable" portions of the DKP Bout Contract then sign and return it to DKP to countersign and submit to the WBA. With no other choice, Charr did just that. The DKP Bout Contract was executed by Charr and transmitted via email to counsel for DKP (and King) on or about December 19, 2020. *See* December 19, 2020 Email, Exhibit I.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

70.     Charr's counsel reiterated in the December 19, 2020 email that the objectionable terms of the DKP Bout Contract were removed pursuant to the WBA/Chavez's instructions and noted that, despite Charr twice signing a standard WBA Bout Contract, Charr executed the revised DKP Bout Contract to ensure he was able to defend his title after the WBA threatened to strip Charr of his title if he did not sign the DKP Bout Contract. *Id.*

71.     Thereafter, Charr's counsel repeatedly followed up with counsel for DKP and King via email and in conversations to inquire why the DKP Bout Contract had not been countersigned and returned to the WBA by King and DKP. DKP's counsel replied each time that he did not know. In reality, DKP and King were intentionally sitting on the DKP Bout Contract to prevent the Charr/Bryan Bout from going forward in order to avoid paying Charr the $1.5 million purse he was owed for the bout.

## X.     DKP/King Obstruction

72.     In addition to refusing to submit the signed DKP Bout Contract to the WBA as was required under WBA rules, DKP and King took further steps to prevent Charr from defending his title as the reigning WBA Regular Heavyweight Champion and to avoid paying Charr the $1.5 million sum he was owed for the Charr/Bryan Bout.

73.     For example, the standard WBA Bout Contract required DKP and King to assist Charr, who resided in Germany at the time, with securing the appropriate Visa necessary to travel to the United States to participate in the Charr/Bryan Bout scheduled for January 29, 2021.

74.     Although King assured Charr, who is Muslim, that he would use his "connections" to the Trump Administration – which had signed into law the so-called "Muslim Ban" that made it difficult for Charr to enter the United States at the time – to expedite the

19

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

process for obtaining the required Visa for Charr to travel to the United States for the fight, this never occurred.

75.     As a result, Charr was left to his own devices and personally began the process of securing his P-1 Visa through the United States consulate in Frankfurt, Germany as soon as the "Muslim ban" was lifted upon President Biden taking office. To obtain his P-1 Visa, Charr was required to produce to the consulate a copy of the parties' executed DKP Bout Contract as proof of his reason for traveling to the United States.

76.     On January 26, 2021, Charr's counsel contacted counsel for DKP and King to request a copy of the signed DKP Bout Contract while explaining that Charr could not obtain his P-1 Visa without it, and thus, could not participate in the Charr/Bryan Bout unless and until DKP and King forwarded a copy of the signed contract to Charr. *See* January 26, 2021 Emails re: Charr P-1 Visa, Exhibit J.

77.     Despite this request, which Charr's counsel expressly noted was made under significant time restraints given the impending fight date, DKP and King deliberately failed to produce a copy of the signed contract in order to prevent Charr from participating in the Charr/Bryan Bout and receiving the $1.5 million purse he was entitled to from DKP and King under the Promoter Agreement.

**XI.     Charr Stripped of Regular Heavyweight Champion Title**

78.     When Charr was unable to travel to the United States as a result of not obtaining his P-1 Visa due to DKP's and King's obstruction tactics, the WBA cancelled the Charr/Bryan Bout. Thereafter, DKP and King once more exerted undue influence over the WBA by convincing the organization to strip Charr of his title as a result of the cancelled bout.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

79.     The WBA ratings chair directly informed Charr's counsel that all applicable decisions concerning the WBA stripping Charr of his title as the WBA Regular Heavyweight Champion were made by Mendoza—these decisions at all times violated WBA rules, and were made as a result of the aforesaid back-door dealings between King, DKP, Mendoza, and the WBA, which aimed to elevate Bryan as the new WBA Regular Heavyweight Champion.

80.     And indeed, with Charr no longer holding his title as the WBA Regular Heavyweight Champion, DKP, King, Mendoza, and the WBA quickly arranged a new fight for the WBA Regular Heavyweight Championship title between Bryan and a far less capable boxer, Bermane Stiverne ("Stiverne"), who was 10 years Bryan's senior and had been knocked out by his two previous opponents.

81.     Mendoza and the WBA worked in concert with DKP and King to organize this fraudulent bout and position Bryan as the new WBA Regular Heavyweight Champion by artificially inflating Stiverne's ranking to make it appear as though Stiverne was qualified to face Bryan in the title bout under the WBA fighter ranking system and league rules. In reality, this was a scam, and the WBA knowingly violated its own rules by arranging for Stiverne to face Bryan in the title bout.

82.     The reason for this matchup was obvious: DKP, King, Mendoza, and the WBA worked in concert to ensure that Bryan faced an opponent he could easily defeat (i.e. the much older, less qualified Stiverne) so that Bryan could be crowned the new WBA Regular Heavyweight Champion. In turn, Bryan's elevated ranking would (and did) maximize the profits paid to DKP and King as Bryan's promoters in that fight and in all fights thereafter as long as Bryan retained his title.

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

83.     On January 30, 2021, Bryan and Stiverne fought for the WBA Regular Heavyweight Champion title in Hollywood, Florida. As expected, Bryan easily defeated the 42-year-old Stiverne by TKO in the eleventh round to become the new WBA Regular Heavyweight Champion. King and DKP were directly enriched as a result enjoying the profits of Bryan's WBA Regular Heavyweight title win.

84.     Later that same year, on December 9, 2021, the WBA then held another purse bid for a rescheduled Charr/Bryan Bout. This time, the purse bid was held in Miami, Florida with the purse for the fight split significantly in favor of Bryan in light of the fact that Bryan was now the reigning WBA Regular Heavyweight Champion—a position that rightfully belonged to Charr at the time.

85.     Once again, Mendoza and the WBA worked in concert with King and DKP to prevent the fight from going forward recognizing full well that Bryan could not defeat Charr. To do this, King and DKP incorporated additional terms in the purse bid contract for the fight that made it impossible for Charr to qualify for the bout. For example, jettisoning the original terms of the standard WBA purse bid contract, the new terms required Charr to obtain his own P-1 Visa by or before December 29, 2021 or Charr would be stripped of the opportunity to fight Bryan.

86.     In short, it was impossible for Charr to obtain his P-1 Visa by this date as he was living in Germany at the time and there were no appointments available at the United States Consulate in Germany as a result of the holiday season, which King and DKP were well aware of at the time these new terms were incorporated.

87.     More significantly, the new terms also required DKP to submit a dually executed bout contract to the WBA by December 29, 2021. However, it is generally true that foreign

22



CASE NO. 21-CV-61654-WPD

fighters in Charr's position (who seek to travel to the United States to participate in a bout) are required to produce a copy of the signed bout contract as part of their application for a P-1 Visa such that these terms also made it impossible for Charr to comply with the contract.

88.      Despite Charr's counsel (Mr. English) promptly notifying DKP (prior to the December 29, 2021 deadline) that Charr needed a copy of the signed bout contract in order to obtain his P-1 Visa from the United States Consulate in Germany to participate in the bout and subsequently requesting multiple times that DKP forward a copy of the contract immediately, DKP willfully failed to do so.

89.      When Charr, through his undersigned counsel (Mr. English), then requested additional time from the WBA to obtain Charr's P-1 Visa given the circumstances and the delay caused by DKP's refusal to timely provide a copy of the signed contract to Charr, the WBA, at DKP and King's behest, denied the request and thus violated Charr's rights under the December 9, 2021 purse bid contract.

90.      The WBA's refusal to grant Charr additional time to obtain the P-1 Visa marked yet another example of the organization's corrupts practices and selective enforcement of its rules as Mendoza and the WBA completely ignored the organization's rules requiring DKP to be defaulted for refusing to use the standard WBA Bout Contract.

## COUNT I
## VIOLATIONS OF 15 U.S.C. § 6308 ("THE MUHAMMAD ALI ACT")

### Charr v. King, DKP, Epic, WBA, and Mendoza

91.      Plaintiff, Charr, adopts and incorporates into Count I the general allegations in Paragraphs 1 – 90 and further alleges:

92.      Charr is a "Boxer" as defined in 15 U.S.C. § 6301(1).

23

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

93.     King, DKP, and Epic are "Promoters" as defined in 15 U.S.C. § 6301(9).

94.     The WBA is a "Sanctioning Organization" as defined in 15 U.S.C. § 6301(14).

95.     The WBA purports to have a criteria for rankings, which the WBA does not follow in violation of 15 U.S.C. § 6307.

96.     Upon information and belief, the WBA has failed to file the disclosures required under 15 U.S.C. § 6307d despite this statute clearly mandating the WBA do so prior to receiving any compensation.

97.     15 U.S.C. § 6308(c) specifically provides that no officer or employee of a sanctioning organization may receive compensation, gifts, or benefits, directly or indirectly, from a promoter, boxer, or manager except as part of a published sanctioning fee charge that is reported to a commission. This section is intended to prohibit such compensation, gifts or benefits not only to officers and employees of the sanctioning organization, but also to the sanctioning organization itself (i.e. the WBA).

98.     The WBA and its officers and employees regularly violate 15 U.S.C. § 6308(c). Indeed, monetary gifts have been openly solicited by WBA officers and employees including, but not limited to, WBA president Mendoza, and monetary payments have been made to entities of which Mendoza's son and another WBA employee were part (i.e. Sports Consulting Services, LLC).

99.     Certain "fixers" have also openly bragged about their relationships with WBA officers and employees including, but not limited to, Mendoza, and the benefits they claim to have paid and/or provided to Mendoza and other officers and employees of the WBA.

100.    King, DKP, and Epic are thus believed to have violated 15 U.S.C. § 6308(c) by paying compensation, providing gifts, and/or providing other benefits to officers and employees

24

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

of the WBA, directly and/or indirectly, and by otherwise exerting undue influence over Mendoza and the WBA.

101.    Furthermore, DKP and King, with the assistance of the WBA, attempted to extort future rights in a mandatory bout situation from Charr by changing the terms of the standard WBA Bout Contract, which is expressly prohibited by 15 U.S.C. § 6307b(b). When Charr resisted these attempts, DKP took action to bypass Charr as is shown throughout this Amended Complaint.

102.    Charr has been harmed as a result of these violations of the Muhammad Ali Act by King, DKP, Epic, and Mendoza as aforesaid.

103.    15 U.S.C. § 6309(d) grants a private right of action to boxers for violation of the Muhammad Ali Act.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, King, DKP, Epic, WBA, and Mendoza, for actual and consequential damages in excess of two million dollars ($2,000,000.00), as well as attorney's fees, costs, and interest, in addition to any other relief the Court deems just and proper.

### COUNT II
### VIOLATION OF 18 U.S.C. § 1962, RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")

### Charr v. King, DKP, Mendoza, and WBA

104.    Plaintiff, Charr, adopts and incorporates into Count II the general allegations in Paragraphs 1 – 103 and further alleges:

105.    The WBA is an "Enterprise" within the meaning of 18 U.S.C. § 1962.

106.    DKP is a "Person" within the meaning of 18 U.S.C. § 1962.

107.    Mendoza is a "Person " within the meaning of 18 U.S.C. § 1962.

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

108.    King is a "Person" within the meaning of 18 U.S.C. § 1962.

109.    At all times material hereto, the WBA disseminated fighter rankings via wire (i.e. on the WBA's public website) and U.S. Mail, which purport to be fair and unbiased and grant entitlements to the boxers who are ranked.

110.    For example, a champion-ranked boxer is entitled to a higher percentage of the total purse bid for a bout under WBA rules. A boxer ranked as a mandatory contender is entitled to fight for a championship title, and a non-champion ranked boxer is entitled to fight for the title in what is known as a "voluntary defense".

111.    At all times material hereto, the rankings issued and disseminated by the WBA via wire (internet) and U.S. Mail have been fraudulent in that Mendoza and the WBA intentionally manipulate these rankings to favor the fighters of promoters and "fixers" who pay for improved rankings as opposed to reflecting the merits of the boxers listed or, as the case may be, prevented from being listed.

112.    At all times material hereto, Mendoza and the WBA intentionally and fraudulently manipulated the WBA's rankings to favor King's and DKP's fighter, Bryan, over Charr in exchange for King and DKP making ongoing payments and/or providing gifts to Mendoza and the WBA through at least one third-party: Sports Consulting Services, LLC.

113.    King and DKP have also engaged in these illicit deals with Mendoza and the WBA by making payments and/or providing items of value directly to Mendoza including (in at least one instance) in the form of "wedding gifts" given by King and DKP to Mendoza in or about February 2020.

26

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

114.     Furthermore, King, DKP, Mendoza, and the WBA have executed these deals in the form of King and DKP allowing the WBA to retain "deposit money" for bouts that should otherwise have been returned to King and DKP pursuant to league rules.

115.     As part of this ongoing scheme, Mendoza and the WBA then prepared and disemminated on a monthly basis fraudulent WBA fighter rankings containing Bryan's elevated ranking, which were distributed by Mendoza and the WBA via U.S. Mail and the internet (via WBA's website)[7].

116.     The issuance of the WBA's fraudulent rankings—specifically with respect to King's and DKP's fighter, Bryan—has occurred each month since at least September 2017 and constitutes mail and wire fraud in interstate commerce in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343; furthermore, the acts committed by King, DKP, Mendoza, and the WBA are in violation of 18 U.S.C. § 1346 in that these acts are part of a scheme to defraud.

117.     Additionally, the acts of giving and taking monies and other things of value by King, DKP, Mendoza, and the WBA also violate 18 U.S.C. § 224 ("Bribery in sporting contests") in that these acts were committed with the intent to influence the outcome of sporting events—another aspect of the illegal scheme perpetrated by King, DKP, Mendoza, and the WBA as set forth above.

118.     The aforesaid criminal acts constitute a pattern of activity within the contemplation of 18 U.S.C. § 1962 Racketeer Influenced Corrupt Organizations Act ("RICO") and, as a proximate result of these activities, Charr has sustained a loss of career earnings.

---

[7] *Id.*

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, King, DKP, Mendoza, and the WBA, for actual and consequential damages in excess of two million dollars ($2,000,000.00), as well as attorney's fees, costs, interest, and treble damages, in addition to any other relief the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT (PROMOTER AGREEMENT)

### Charr v. DKP and Epic

119.     Plaintiff, Charr, adopts and incorporates into Count III the allegations in Paragraphs 1 - 118 and further alleges:

120.     On May 26, 2019, Charr entered a legally valid and enforceable Promoter Agreement with DKP and Epic. *See* Exhibit A.

121.     The Promoter Agreement provided that DKP and Epic would serve as Charr's promoters "for a minimum period of two years" and "offer Charr a minimum of two bouts during each year" the agreement was in effect. *Id.* at Par. 2, Exhibit A.

122.     The Promoter Agreement also provided that DKP and Epic would "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* at Par. 4, Exhibit A. Further, the Promoter Agreement stated that Charr's purses as champion in all bouts would not be "less than $750,000 unless agreed otherwise by the parties." *Id.* at Par. 2, Exhibit A.

123.     DKP and Epic breached the Promoter Agreement by failing to provide Charr with a bout contract for the Charr/Bryan Bout and, in turn, failing to submit a signed bout contract on Charr's behalf to the WBA for that fight, which caused the WBA to cancel the May 28, 2019 Charr/Bryan Bout purse bid and postpone the Charr/Bryan Bout without Charr's knowledge or consent.

28

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

124.    DKP and Epic further breached the Promoter Agreement by then failing to "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout" as they were obligated to do and also as a result of having caused the WBA to cancel the May 28, 2019 purse bid.

125.    Additionally, DKP and Epic committed a further breach of the Promoter Agreement by failing to "offer Charr a minimum of two bouts during each year" the Promoter Agreement was in effect beginning with the postponed Charr/Bryan Bout.

126.    As a result of DKP and Epic's breaches, Charr sustained damages, including, but not limited to, $1 million in lost income that DKP and Epic were obligated to pay Charr as his purse for the original Charr/Bryan Bout. Charr has also been forced to incur reasonable attorney's fees and costs in seeking to recover these damages.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, DKP and Epic, for actual and consequential damages in excess of one million dollars ($1,000,000.00), as well as attorney's fees, costs, and interest, in addition to any other relief the Court deems just and proper.

**COUNT IV**
**BREACH OF CONTRACT (PURSE BID AGREEMENT)**

**Charr v. DKP**

127.    Plaintiff, Charr, adopts and incorporates into Count IV the general allegations in Paragraphs 1 - 126 and further alleges:

128.    By resolution dated February 19, 2020 ("the WBA resolution"), the WBA ordered a purse bid for the rescheduled Charr/Bryan Bout to occur March 2, 2020. The resolution provided that, unless otherwise agreed by the parties, the standard WBA Bout Contract was to be used for the fight. *See* Feb. 19, 2020 WBA Resolution No. 202002191702, Sec. III, Decision, Par. B, Exhibit E.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

129.    The bid by DKP constituted an acceptance of the purse bid terms and an offer to promote a bout pursuant to the terms of the referenced resolution.

130.    On March 2, 2020, DKP won a $2 million purse bid for the rights to the Charr/Bryan Bout, which was scheduled to take place on January 29, 2021. Pursuant to the WBA resolution, Charr was entitled to 75% of DKP's total bid amount or $1.5 million as the reigning champion at the time. *Id.*

131.    Charr accepted the terms of the offer manifested by the bid of DKP.

132.    DKP's $2 million bid, submitted in accordance with the terms of the WBA resolution and Charr's acceptance of those terms and the amount of DKP's bid, created a legally valid and enforceable contract between DKP and Charr.

133.    This contract was supported by an offer (DKP's $2 million bid), Charr's acceptance of the offer (the amount and terms of DKP's bid), and mutual consideration (DKP's promise to pay $1.5 million of the $2 million bid to Charr and Charr's promise to fight in the Charr/Bryan Bout for the stipulated amount).

134.    DKP breached this contract by refusing to sign and submit the standard WBA Bout Contract as was required by the purse bid terms to the WBA ahead of the rescheduled Charr/Bryan Bout as was required pursuant to the WBA resolution and pursuant to WBA rules.

135.    As a result of DKP's breach, Charr sustained damages, including, but not limited to, the $1.5 million in lost income that DKP was obligated to pay Charr for his purse in the rescheduled Charr/Bryan Bout. Charr has also been forced to incur reasonable attorney's fees and costs in seeking to recover these damages.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendant, DKP, for actual and consequential damages in excess of one million and five hundred thousand dollars

30

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

($1,500,000.00), as well as attorney's fees, court costs, and interest, in addition to any other relief the Court deems proper.

## COUNT V
## <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP</u>

### Charr v. King and DKP

136.    Plaintiff, Charr, adopts and incorporates into Count V the general allegations in Paragraphs 1 - 135 and further alleges:

137.    At all times material hereto, there existed a valid business relationship between Charr and the WBA that gave Charr the legal right to participate in WBA-sanctioned bouts including, but not limited to, the Charr/Bryan Bout. King and DKP was at all times aware of this business relationship between the WBA and Charr.

138.    After winning the $2 million purse bid for the rescheduled Charr/Bryan Bout and realizing the bid was excessive, King and DKP intentionally and unjustifiably interfered with Charr's business relationship with the WBA to prevent the fight from going forward, first, by refusing to sign the standard WBA Bout Contract as was required for the fight to occur.

139.    Additionally, DKP and King intentionally and unjustifiably interfered with Charr's business relationship with the WBA by coercing Charr into signing the noncompliant DKP Bout Contract, which violated WBA rules and contained terms prohibited by the Muhammad Ali Act, 15 U.S.C. § 6307b(b).

140.    DKP and King further intentionally and unjustifiably interfered with Charr's business relationship with the WBA by refusing to submit the executed DKP Bout Contract to the WBA and withholding a copy of the contract from Charr, despite his requests, to prevent



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

Charr from obtaining his P-1 Visa and traveling to the United States to participate in the Charr/Bryan Bout.

141.    Finally, DKP and King intentionally and unjustifiably interfered with Charr's business relationship with the WBA by exerting undue influence over the WBA after Charr was prevented from defending his title by causing the WBA to improperly strip Charr of his title as the reigning Regular Heavyweight Champion.

142.    As a result of King and DKP's unlawful interference, the WBA cancelled the rescheduled Charr/Bryan Bout causing Charr to sustain damages including, but not limited to, $1.5 million in lost income that King and DKP were obligated to pay Charr for his purse in that title fight.

143.    As a further result, the WBA stripped Charr of his title and gave Charr the lesser designation of WBA Regular Heavyweight Champion (in recess), which has diminished Charr's reputation, marketability, and overall value as a professional boxer such that the quality of fights, endorsement deals, and purse amounts Charr receives in the future will be significantly less.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, King and DKP, for actual and consequential damages in excess of two million dollars ($2,000,000.00) in addition to any other relief the Court deems just and proper.

## COUNT VI
## <u>BREACH OF CONTRACT (WBA RULES AND DECREES)</u>

### Charr v. WBA

144.    Plaintiff, Charr, adopts and incorporates into Count VI the general allegations in Paragraphs 1 – 143 and further alleges:

145.    The WBA is a private organization that purports to operate on a non-profit basis.

32

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

146.    It is established law that a private organization owes an obligation to act fairly and in accordance with its rules and by-laws with respect to those which it governs.

147.    This has been expressly extended to boxing sanctioning organizations such as the WBA to fighters governed by these organizations such as Charr.

148.    Hence, the rules and the legitimate decrees of the WBA at all times constituted an independent and legally enforceable contract between Charr and the WBA as both parties agreed to abide by the terms provided therein as pertaining to all WBA-sanctioned bouts.

149.    More specifically, the WBA was at all times obligated under its rules and decrees to ensure that DKP used the standard WBA Bout Contract with respect to the rescheduled Charr/Bryan Bout.

150.    The WBA violated its rules and decrees and thereby breached its contract with Charr by allowing DKP to use a bout contract different from the WBA Bout Contract instead of defaulting DKP in response to its refusal to use the required standard bout contract.

151.    The WBA further violated its rules and decrees and thereby breached its contract with Charr by selectively enforcing its rules and decrees against Charr but not against DKP with respect to the rescheduled Charr/Bryan Bout.

152.    As a result of the WBA's breach, Charr was prevented from participating in the resheduled Charr/Bryan Bout and sustained damages.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendant, WBA, for actual and consequential damages in excess of two million ($2,000,000.00) in addition to any other relief the Court deems proper.

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

## COUNT VII
## <u>CIVIL CONSPIRACY</u>

### Charr v. King, DKP, Mendoza, the WBA

153.    Plaintiff, Mahmoud Charr, adopts and incorporates into Count VII the general allegations in Paragraphs 1 - 152 and further alleges:

154.    At all times material hereto, King, DKP, Mendoza, and WBA officials entered an agreement to illegally exert undue influence over the WBA for the malicious purpose of causing the WBA to strip Charr of his WBA Regular Heavyweight Champion title without cause and in violation of WBA rules.

155.    At all times material hereto, King, DKP, Mendoza, and WBA officials worked in concert to perpetrate the illegal and overt act of exerting undue influence on the WBA for the malicious purpose of persuading the WBA to strip Charr of his Heavyweight Championship title without cause and in violation of WBA rules.

156.    In major part, this was because Charr declined to give future promotion rights to King and DKP, something which he was not obligated to do under 15 U.S.C. § 6307b(b).

157.    As a result of the illegal and overt acts committed by King, DKP, Mendoza, and WBA officials in furtherance of this conspiracy, Charr sustained damages including, but not limited to, the loss of his title as the rightful WBA Heavyweight Champion.

158.    As a further result, Charr was given the lesser designation of WBA Regular Heavyweight Champion (in recess) and then, ultimately, this lesser title was removed entirely, which has diminished Charr's reputation, marketability, and overall value as a professional boxer such that the quality of fights and purse amounts Charr receives in the future will be significantly less.

34

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, King, DKP, Mendoza, and the WBA for actual and consequential damages in excess of two million dollars ($2,000,000.00) in addition to any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Mahmoud Charr, demands a trial by jury for all issues triable.

Dated: August 8, 2022

BLACK SREBNICK, P.A.
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
305-371-6421 Telephone
305-358-2006 Fax

By:   /s/ Jared Lopez
      Jared Lopez, Esq.
      Florida Bar No. 103616
      Donald Hodson, Esq.
      Florida Bar 120256
      JLopez@RoyBlack.com
      DHodson@RoyBlack.com
      civilpleadings@royblack.com



CASE NO. 21-CV-61654-WPD

DINES AND ENGLISH LLC
685 Van Houten Avenue
Clifton, New Jersey 07013
973-778-7575 Telephone
973-778-7633 Fax

By: /s/ Patrick C. English
            Patrick English, Esq.
            New Jersey Bar No. 023811978
            dinesandenglish@aol.com

*Counsel for Plaintiff Mahmoud Charr*

36

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006