UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

MAHMOUD CHARR,                                    CASE NO. 21-cv-61654-WPD

    Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation, EPIC SPORTS AND
ENTERTAINMENT, INC., a Florida
corporation, WORLD BOXING
ASSOCIATION, INC., a foreign corporation,
and GILBERTO MENDOZA, JR., individually,

    Defendants.
_____/

**DEFENDANTS DON KING, DON KING PROMOTIONS, INC. AND EPIC SPORTS AND ENTERTAINMENT, INC.'S MOTION TO DISMISS AMENDED COMPLAINT AND MOTION TO STRIKE AND INCORPORATED MEMORANDUM OF LAW**

Defendants, Don King, Don King Promotions, Inc., and Epic Sports and Entertainment, Inc., by and through undersigned counsel and pursuant to Rules 12(b)(6), 12(b)(7) and 12(f) of the Federal Rules of Civil Procedure, hereby file this Motion to Dismiss Plaintiff's Amended Complaint [DE 45] and Motion to Strike, as follows:

**I.    Preliminary Statement**

In this action, Plaintiff Mahmoud Charr (hereinafter referred to as "Charr"), who is a heavyweight boxer, has alleged that Defendants Don King ("King"), Don King Productions, Inc. ("DKP") and Epic Sports and Entertainment, Inc. ("Epic Sports") engaged in conduct, along with two new defendants, World Boxing Association, Inc. ("WBA") and Gilberto Mendoza ("Mendoza"), designed to breach contracts that Charr claims he had with DKP and Epic Sports and also to interfere with the business relationship that Charr claims he possesses with the WBA.

As more fully alleged in the Amended Complaint, Charr alleges that Defendants were trying to prohibit Charr from participating in a heavyweight boxing match by failing to comply with the terms of a contract between DKP, Epic Sports and Charr and also by exerting influence over the WBA so that the WBA would strip Charr of his heavyweight title as a result of Charr's failure to participate in the boxing match. To that end, Charr has alleged the following causes of action:

| | | |
|---|---|---|
| Count I | Violations of 15 USC §6308 | All Defendants |
| Count II | Violation of 18 USC §1962 | King, DKP, Mendoza and WBA |
| Count III | Breach of Contract | DKP and Epic Sports |
| Count IV | Breach of Contract | DKP |
| Count V | Tortious Interference with Business Relationship | King and DKP |
| Count VI | Breach of Contract | WBA |
| Count VII | Civil Conspiracy | King, DKP, Mendoza and the WBA |

For the reasons set forth below, King, DKP and Epic Sports contend that Counts I and II should be dismissed as a result of the specific pleading deficiencies identified below. King and DKP further contend that Counts IV and VII should be dismissed for the same reasons that they were previously dismissed by this Court in its prior Order of dismissal. Finally, King, DKP and Epic Sports submit that Charr's claims for an award of attorney's fees as to Counts III and IV should be stricken for the reasons that this Court previously struck such claims.

**II.     Applicable Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations contained in

the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *see also Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

**III.     Argument**

   **A.     Count I – Violation of the Muhammad Ali Act**

In the instant case, Charr alleges that King, DKP, and Epic have all violated the Muhammad Ali Act, 15 USC §6308 (the "Ali Act") by paying compensation or providing benefits to WBA personnel (or exerting influence over them.  Separately, Charr alleges that King and DKP (but not Epic Sports) have violated the Ali Act by attempting to extort Charr into agreeing to providing rights to future bouts as a condition to participating in a specific mandatory bout. Charr contends that such factual allegations violate 15 USC §6308(c) and 15 USC §6307b(b), respectively.

Charr's claim that 15 USC §6308(c) has been violated by King, DKP, and Epic Sports is subject to dismissal on the grounds that 15 USC §6308(c) is specifically and solely directed at activities in engaged in by an "officer or employee of a sanctioning organization." 15 USC §6308(c). Specifically, 15 USC §6308(c) provides as follows:

   (1)     Prohibition on receipts

> Except as provided in paragraph (2), no officer or employee of a sanctioning organization may receive any compensation, gift, or benefit, directly or indirectly, from a promoter, boxer, or manager.
>
> (2)   Exceptions
>
> Paragraph (1) does not apply to—
>
> (A)   the receipt of payment by a promoter, boxer, or manager of a sanctioning organization's published fee for sanctioning a professional boxing match or reasonable expenses in connection therewith if the payment is reported to the responsible boxing commission; or
>
> (B)   the receipt of a gift or benefit of de minimis value.

15 USC §6308(c).

The Amended Complaint alleges that "King, DKP, and Epic are thus believed to have violated 15 USC §6308(c) by paying compensation, providing gifts, and/or providing other benefits to officers and employees of the WBA, directly and/or indirectly, and by otherwise exerting undue influence over Mendoza and the WBA." *See* D.E. 45, ¶100. The fallacy in Charr's claim is that King, DKP, and Epic are not officers or employees of any sanctioning organization, including the WBA, which the allegations of the First Amended Complaint make clear. *Id.* at ¶¶26-30. Based upon a plain reading of the applicable statute, to the extent that a claim can be advanced under 15 USC §6308(c), such a claim would need to be directed to an "officer or employee of a sanctioning organization." As a result, this claim should be dismissed.

With respect to Charr's second theory of liability, *i.e.*, that King and DKP (but no Epic Sports) attempted to extort certain contractual rights from Charr, this claim is also subject to dismissal given the language of the Ali Act. Namely, the specific provision of the Ali Act relied upon by Charr, 15 USC §6307b(b), provides: "No boxing service provider may require a boxer to grant any future promotional rights as a requirement of competing in a professional boxing match that is a mandatory bout under the rules of a sanctioning organization." The Amended Complaint

alleges that King and DKP purportedly violated this provision when they "attempted to extort future rights in a mandatory bout situation from Charr by changing the terms of the standard WBA Bout Contract . . ." *See* D.E. 45, ¶100. As made clear in the Amended Complaint, Charr and DKP never entered into the Bout Contract which had any allegedly violative language and, thus, DKP (and King) cannot be alleged to have violated 15 USC §6307b(b).  The Ali Act does not create a private right of action for the theory espoused by Charr, which is an alleged attempt to violate the Ali Act. Rather, the specific provision that Charr relies upon is intended to deem unenforceable provisions in a contract, which does not apply here given that the subject contract was never entered into by the parties.  Accordingly, Count I of the Amended Complaint should be dismissed.

      **B.**     **Count II – Violation of RICO, 18 USC §1962**

Next, Charr attempts to characterize this dispute as one that fits within the parameters of the RICO statutes. In this regard, Charr is simply wrong and the allegations of his Amended Complaint do not allege what is required to allege a RICO claim.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "To recover, a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F. 3d 1340, 1348 (11th Cir. 2016). A civil plaintiff must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Id.*

        **1.**      *Count II Fails Given Charr's Failure to Allege King and*
                  *DKP's Operation or Management of the Subject Criminal Enterprise*

"RICO defines an 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Almanza v. United Airlines, Inc.*, 851 F. 3d 1060, 1067 (11th Cir. 2017) (citing 18 U.S.C. § 1961(4)). In the present case, the "enterprise" is the WBA. *See* D.E. 45, ¶105. To conduct or participate, directly or indirectly, in the conduct of a RICO enterprise's affairs, one must participate in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (*quoting* 18 U.S.C. § 1962(c)). Charr does, and cannot, allege that King or DKP "operated or managed" the WBA. As alleged in the Amended Complaint, the WBA is "operated or managed" by Mendoza. *See* D.E. 45, ¶¶26-30. Standing alone, this pleading deficiency subjects Count II to dismissal.

        **2.**      *Charr Has Failed to Plead the Pattern of*
                  *Racketeering Activity With Any Reasonable Particularity*

Charr also fails to allege with sufficient particularity that Defendants engaged in a pattern of racketeering activity. To successfully allege a pattern of racketeering activity, Charr must allege: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts are related to one another; and (3) the predicate acts demonstrate a continuing nature of criminal conduct. *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–43 (1989); *Jackson v. Bellsouth Tel., Inc.*, 372 F.3d 1250, 1265 (11th Cir. 2004); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004) ("In order to survive a motion to dismiss in a civil RICO case, a plaintiff must show a pattern of racketeering activity by alleging that the defendants committed two qualifying predicate acts."). Continuity may be established when the defendant engaged in

repeated predicate acts over a closed but substantial period of time that demonstrates a defendant's long-term criminal activity. *H.J. Inc.*, 492 U.S. at 241–42.

In his Amended Complaint, Charr does not allege particular facts relating to the pattern of alleged racketeering activity. Given that Charr's alleged predicate acts sound in fraud, his substantive RICO allegations must comply with the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Indeed, Charr must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which the statements misled Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* (quotation marks and citation omitted). Charr's Amended Complaint fails in this regard. Rather than allege specific facts of alleged wrongdoing, Charr instead alleges that he believes that DKP and King gave the WBA and Mendoza payments or gifts including, *inter alia*, giving Mendoza a wedding gift. *See* Doc. 45, ¶100. The Amended Complaint fails to identify any specific information about any of these alleged payments or gifts (other than stating that one such payment was made presumably at Mendoza's wedding). No other specific allegedly unlawful payments, which is the basis of Charr's allegations as to the predicate acts allegedly engaged in by DKP and King, are alleged. Such a pleading failure subjects this RICO claim to dismissal.

   **C. Count IV – Breach of Contract (Purse Bid Agreement)**

In Count IV, Charr alleges a claim for breach of an oral contract arising from the Purse Bid Agreement. *See* Doc. 45, p. 29. By Order entered on November 30, 2021, this Court previously dismissed that claim. *See* D.E. 24. In the Order of Dismissal, this Court stated that "[i]t is not plausible that DKP violated the standard WBA Bout Contract by refusing to sign and submit the standard WBA Bout Contract. *See* ¶¶ 63-67. At most, Plaintiff alleges that DKP violated a March

2, 2020 WBA resolution by refusing to agree to use a standard WBA Bout Contract. *See id.*" *Id* at p. 11. Nevertheless, Charr seeks to allege that claim, once again, and alleges that DKP breached the oral purse bid agreement, yet fails to meaningfully add any allegations that would justify Charr's attempt to re-allege this claim.

Count IV seeks to cure these pleading deficiencies by including two new allegations, which are contained in paragraphs 129 and 131 of the Amended Complaint. The balance of the allegations in Count IV are identical to those set forth in the initial Complaint. Paragraphs 129 and 131 provide:

> 129. The bid by DKP constituted an acceptance of the purse bid terms and an offer to promote a bout pursuant to the terms of the referenced resolution.
>
> 131. Charr accepted the terms of the offer manifested by the bid of DKP.

*See* Doc. 45, ¶¶ 129, 131.

Despite the inclusion of these allegations, Count IV is defective and subject to dismissal for the same reasons that this Court previously dismissed the claim. Pursuant to the exhibits attached to the Amended Complaint, it is clear that the Purse Bid Agreement was never executed and, therefore, a claim for breach of that contract cannot survive. Namely, attached to the Complaint as Exhibit C is a document entitled Purse Bid Bout Contract which, on its face, demonstrates that it was never signed by any of the parties. *See* Doc. 45, Exhibit C. No allegation is made in the Amended Complaint that the parties agreed to the terms of this written Agreement. As such dismissal is appropriate.

To the extent that Charr is alleging that some other oral agreement was formed between Charr and DKP with respect to the purse bid alleged in the Complaint, such an allegation is belied

by: (a) the allegations in the Amended Complaint, and (b) the terms of the written Purse Bid Bout Contract.

*First*, in the Amended Complaint, Charr describes how a purse bid works. Namely in paragraphs 47 and 48, Charr describes the "purse bid *process*" as follows:

> 47.   Under WAB rules, the purse bid process requires promoters to submit a bid for the rights to a title fight. Where a purse bid is ordered, the reigning champion generally receives 75% of the total bid for the fight with the remaining 25% paid to the challenger.
>
> 48.   The WBA uses a standard form "Purse Bid Bout Contract" ("Bout Contract"), which fighters and their respective camps are [*sic*] must sign and return to the WBA ahead of a title fight whenever a purse bid is ordered. *See* WBA Purse Bid Contract, Exhibit C.

*See* Doc. 45, p. 14.

Simply stated, a purse bid is akin to an auction wherein promoters can submit an offer to the WBA to acquire the rights to promote a WBA sanctioned title bout. As alleged in the Amended Complaint, the instant purse bid was ordered by the WBA pursuant to its resolution dated February 19, 2020 ("the WBA Resolution") and that "unless otherwise agreed by the parties, the standard WBA Bout Contract was to be used for the fight." *See* Doc. 45, ¶58, Ex. E. As alleged in the Amended Complaint and as further demonstrated by Exhibit C to the Complaint, once a purse bid is won, a written agreement is then entered into by and between: (a) the winning bidder/promoter, (b) the boxer, (c) the boxer's licensed manager, and (d) the WBA. *See* Doc. 45, Exhibit C, p. 4. In the face of these allegations and written instrument, Charr attempts to allege that once DKP submitted and won the purse bid, an oral contract was somehow formed between Charr and DKP that is different than "the standard form 'Purse Bid Bout Contract'" alleged by Charr to be the required instrument that memorializes the process. Specifically, paragraph 132 of the Amended Complaint alleges that "DKP's $2 million bid, submitted in accordance with the terms of the WBA

resolution and Charr's acceptance of those terms and the amount of DKP's bid, created a legally valid and enforceable contract between DKP and Charr." *See* Doc. 45, p. 30. To the extent that this allegation seeks to create an oral agreement, such an allegation is insufficient as a matter of law. The allegations in the Amended Complaint and the exhibits attached thereto demonstrate that a contract is not formed between the promoter and the boxer once the promoter wins a purse bid, but rather that the promoter has simply won the opportunity to promote the bout, the documentation of which is "unless otherwise agreed by the parties, the standard WBA Bout Contract …" *See* Doc. 45, Ex. C. Simply stated, Charr has no standing to allege a claim for a breach of an oral contract arising from the purse bid since he was not a party to that auction process.

**Second**, the terms of the unsigned Purse Bid Bout Contract further support dismissal because absent such an agreement being entered into by Charr and DKP, no actual bout can take place that would permit Charr to participate in the bout and earn his purse. By way of reference, the Purse Bid Bout Contract states, *inter alia*:

> 2. The WBA Rules and Regulations ("Rules") govern the Bout and are hereby incorporated and made a part of this Agreement. … Any violation of the Rules may result in withdrawal of Bout sanction, disqualification of boxer or Promoter, loss of the WBA Championship title, lowered ratings, or other penalties as provided under the Rules, including loss of recognition.
>
> 3. Boxer and Promoter understand and agree that the Bout, as sanctioned by the WBA, and the designation of the boxer as WBA Champion, are titles which are the property of, and belong exclusively to, the WBA. Such designations are not rights, vested or otherwise, held, owned or enjoyed by Boxer, except as provided in the Rules. The WBA reserves the right, in its discretion and pursuant to its rules, to suspend or withdraw recognition of any champion, or withhold sanction of the Bout, for failure to comply with the Rules.
>
> 4. As full compensation for all claims and demands and for the services and performances rendered by Boxer hereunder, Promoter shall pay Boxer, and Boxer accepts the sum of **U.S.** _____

>    Dollars ($_____.00) as Boxer's Purse as defined in WBA Rule A(6).
>
>       \*  \*  \*
>
> 8. The parties acknowledge that the WBA reserves the right withdraw sanction of the Bout as Championship Bout if Boxer refuses or fails to submit the above mentioned reports, documents or fails to submit to required or agreed upon drug, antidoping or medical tests.
>
>       \*  \*  \*
>
> 21. The WBA will not recognize the Bout as Championship Bout until this Agreements is fully executed by all parties and approved by President and Championships Chairman.

*See* Doc. 45, Exhibit C, pp. 1-3.

These provisions make clear that, despite Charr's attempts to characterize the purse bid process as his entitlement to receive 75% of the purse bid under an alleged oral contract, this is simply not the case. The Purse Bid Bout Contract must be signed in order to grant Charr any rights to receive payment, which such rights may be revoked if he does not comply with the terms of the Purse Bid Bout Contract. Under Charr's allegations, Charr would automatically be entitled to receive 75% of the $2,000,000 purse bid once DKP won the purse bid, irrespective of Charr's actual participation in the subject bout, whether by voluntary act (such as violating the terms of the anti-doping provisions) or by virtue of the WBA withdrawing its sanctioning of the bout. Simply stated, the old and new allegations in the Amended Complaint are belied by the terms of the unsigned, written agreement and, as a result, dismissal is appropriate

   D.  **Count VII – Civil Conspiracy**

In the initial Complaint, Charr alleged that DKP and King conspired with one another and certain unnamed parties to persuade the WBA to strip Charr of his heavyweight title "without cause." *See* Doc. 1, ¶¶78-79. DKP and King moved to dismiss the civil conspiracy claim pursuant

11
**BRITO, PLLC**
2121 PONCE DE LEON BOULEVARD, SUITE 650 | MIAMI, FLORIDA 33134

to the intra-corporate conspiracy doctrine. In its Order, this Court agreed and dismissed the civil conspiracy claim. *See* D.E. 24, p. 11. Although the Court did dismiss the claim without prejudice in the event that Charr was able to bring "such a claim at a later time in the event Plaintiff identifies third parties with whom DKP and/or King wrongfully conspired," *Id.*, the manner in which Charr has alleged the civil conspiracy claim is defective. Namely, as he did in his initial Complaint, Charr alleges that King and DKP conspired with one another (and others) to engage in the violative conduct. *See* D.E. 45, ¶¶154, 155, 157. In lumping in both DKP and King into this conspiracy claim and blanketly stating that both parties agreed with one another to participate in this alleged conspiracy, even if it also involves other parties, the claim should still be dismissed (as presently plead) given that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000) (en banc); *see also Canova v. Snipes*, 2021 WL 2652699 *4 (S.D. Fla. May 4, 2021) ("Simply, a corporation (or, for this matter, a public entity) cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."). As alleged in paragraph 22 of the Amended Compliant "King owns and operates the promotions company Don King Promotions, Inc. ("DKP") in Deerfield Beach, Florida." *See* Doc. 45, ¶22. As such, a claim that purports to allege that King and DKP entered into a conspiracy with one another is barred as a matter of law. As a result, Count VII should be dismissed.

**IV.   Conclusion**

**WHEREFORE**, Defendants, Don King, Don King Promotions, Inc. and Epic Sports and Entertainment, Inc., respectfully request that this Court enter an Order: (a) dismissing Counts I, II IV and VII of the Amended Complaint for failure to state a claim upon which relief can be granted,

(b) striking Charr's claims for an award of attorney's fees in Counts III and IV, and (d) granting such other and further relief that this Court deems appropriate.

Respectfully submitted,

**BRITO, PLLC**
*Counsel for Defendants Don King, Don King Promotions, Inc. and Epic Sports and Entertainment, Inc.*
2121 Ponce de Leon Boulevard
Suite 650
Miami, FL 33134
Office:  305-614-4071
 Fax:  305-440-4385


By: /s/ *Alejandro Brito*
**ALEJANDRO BRITO**
Florida Bar No. 098442
abrito@britopllc.com
apiriou@britopllc.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 6, 2022 the foregoing Defendants Don King, Don King Promotions, Inc. and Epic Sports and Entertainment, Inc.'s Motion To Dismiss Complaint And Motion To Strike And Incorporated Memorandum Of Law was served via the Court's CM/ECF System upon:

Patrick English, Esq.
New Jersey Bar No. 023811978
DINES AND ENGLISH, LLC
685 Van Houten Avenue
Clifton, New Jersey 07013
dinesandenglish@aol.com

Jared Lopez, Esq.
Florida Bar No. 103616
Donald Hodson, Esq.
Florida Bar 120256
BLACK SREBNICK, P.A.
201 S. Biscayne Boulevard,
Suite 1300 Miami, Florida 33131
JLopez@RoyBlack.com
DHodson@RoyBlack.com
civilpleadings@royblack.com

*Counsel for Plaintiff Mahmoud Charr*

By: /s/ *Alejandro Brito*   _____