UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO. 21-CV-61654-WPD

MAHMOUD CHARR,

    Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation,
EPIC SPORTS AND ENTERTAINMENT,
INC., a Florida corporation,
WORLD BOXING ASSOCIATION, INC., a
foreign corporation, and
GILBERTO MENDOZA, JR., individually,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Mahmoud Charr ("Charr"), by and through his undersigned counsel, hereby files this Response to Defendants, Don King ("King"), Don King Productions, Inc. ("DKP"), and Epic Sports and Entertainment, Inc.'s ("Epic") (collectively "the King/Epic Defendants"), Motion to Dismiss, and in support thereof states:

## ARGUMENT

### I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When

CASE NO. 21-CV-61654-WPD

ruling on a motion to dismiss, the Court "must accept the facts as pleaded to be true and resolve them in the light most favorable to the plaintiff." *Kaloe Shipping Co. v. Goltens Serv.*, 315 F. App'x 877, 879 (11th Cir. 2009). "The [C]ourt need not engage in extensive analyses of fact-intensive inquiries." *Blue Cross Blue Shield*, 2017 WL 2797267, at *7 (quoting *In re Webkinz Antitrust Litig.*, 2010 WL 4168845, at *3 (N.D. Cal. Oct. 20, 2010)). Additionally, "[d]ismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v Samples*, 375 F. 3d. 1269, 1273 (11th Cir. 2004) (citation omitted).

**II.     Plaintiff's Claim Under the Muhammad Ali Act (Count I) Should Not Be Dismissed**

The King/Epic Defendants first attack Plaintiff's count based on the defendants' violation of the Muhammad Ali Act ("Ali Act"). To Summarize, the defendants claim that the Ali Act prohibits the receipt of "compensation, gift, or benefit, directly or indirectly" but not the giving of same. This is incorrect. The Ali Act (enacted in 2000) is an Amendment to the Professional Boxer Health and Safety Act passed in 1996. *See* 15 U.S.C. § 6301. The Ali Act is directed primarily at business practices, whereas the Professional Boxer Health and Safety Act addresses safety practices. *See* Baglio, Scott, *The Muhammad Ali Boxing Reform Act: The First Jab at Establishing Credibility in Professional Boxing,* Fordham Law Review, 7.68 (6): 2257–2259 (2000). Congress made clear the purpose of the Ali Act finding:

> "**SEC. 2. FINDINGS.**
>
> **The Congress makes the following findings:**
>
> **(1) Professional boxing differs from other major, interstate professional sports industries in the United States in that it operates without any private sector association, league, or centralized industry organization to establish uniform and appropriate business practices and ethical standards. This has led to repeated**

occurrences of disreputable and coercive business practices in the boxing industry, to the detriment of professional boxers nationwide . . .

**(3) Promoters who engage in illegal, coercive, or unethical business practices can take advantage of the lack of equitable business standards in the sport by holding boxing events in States with weaker regulatory oversight.**

**(4) The sanctioning organizations which have proliferated in the boxing industry have not established credible and objective criteria to rate professional boxers, and operate with virtually no industry or public oversight. Their ratings are susceptible to manipulation, have deprived boxers of fair opportunities for advancement, and have undermined public confidence in the integrity of the sport.**

**(5) Open competition in the professional boxing industry has been significantly interfered with by restrictive and anticompetitive business practices of certain promoters and sanctioning bodies, to the detriment of the athletes and the ticket-buying public. Common practices of promoters and sanctioning organizations represent restraints of interstate trade in the United States.**

**(6) It is necessary and appropriate to establish national contracting reforms to protect professional boxers and prevent exploitive business practices, and to require enhanced financial disclosures to State athletic commissions to improve the public oversight of the sport."** *Id.* (emphasis added).

Additionally, Congress made clear the Ali's Act purpose:

**"SEC. 3. PURPOSES.**

**The purposes of this Act are—**

**(1) to protect the rights and welfare of professional boxers on an interstate basis by preventing certain exploitive, oppressive, and unethical business practices;**

**(2) to assist State boxing commissions in their efforts to provide more effective public oversight of the sport; and**

**(3) to promote honorable competition in professional boxing and enhance the overall integrity of the industry."** *Id.* (emphasis added).

The Ali Act is also a remedial statute such that it should be liberally construed. *See Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *SEC v. CM Jenson Leasing Corp.*, 320 U.S. 344 (1943); *Pullman-Standard v. Swint*, 456 U.S. 273, 275

3



CASE NO. 21-CV-61654-WPD

(1982); and *Bechtel Constr. Co v Secretary of Labor*, 50 F3rd 926, 932 (11th Cir. 1995). Plaintiff has asserted a claim under the Ali Act pursuant to 15 U.S.C 6309 (d), which reads:

> **"(d) Private right of action**
>
> **Any boxer who suffers economic injury as a result of a violation of <u>any provision</u> of this damages suffered, court costs, and reasonable attorney's fees and expenses."** *Id.* (emphasis added).

Hence, we must examine the other relevant provisions of the Ali Act for purposes of addressing the arguments raised in the defendant's motion to dismiss. In moving to dismiss Plaintiff's claim, the King/Epic Defendants focus on 15 U.S.C. § 6308(c)(1), which reads:

> "**(1) Prohibition on receipts**
>
> **Except as provided in paragraph (2), no officer or employee of a sanctioning organization may receive any compensation, gift, or benefit, directly or indirectly, from a promoter, boxer, or manager.**" *Id.* (emphasis added).

There are exceptions to this provision, but they are not alleged by the King/Epic Defendants to apply. Instead, the defendants take the position that the Ali Act prohibits the taking of a bribe but does not prohibit giving one. This position makes no sense given the remedial nature of the statute and its purposes. Additionally, 15 U.S.C. § 6309(b)(1) reads:

> "**(b) Criminal penalties**
>
> **(1) Managers, promoters, matchmakers, and licensees**
>
> **Any manager, <u>promoter</u>, matchmaker, and licensee who knowingly <u>violates, or coerces or causes any other person to violate, any provision of this chapter</u>, other than section <u>6307a (b),[1] 6307b, 6307c, 6307d, 6307e, 6307f,</u> or <u>6307h</u> [1]of this title, shall, upon conviction, be imprisoned for not more than 1 year or fined not more than $20,000, or both.**" *Id.* (emphasis added)

---

[1] There are greater penalties for violating the other statutes cited.

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

This language establishes that DKP and King are promoters for purposes of the statute.[2] Section 15 U.S.C. § 6308 is a provision of the Ali Act and is directly cross referenced by the words "any provision of this chapter". It is alleged in ¶99 of the Amended Complaint:

> **"King, DKP, and Epic are thus believed to have violated 15 U.S.C. § 6308(c) by paying compensation, providing gifts, and/or providing other benefits to officers and employees of the WBA, directly and/or indirectly . . ."** *Id.* (emphasis added).

Thus, it is a strained and illogical interpretation to suggest (as the King/Epic Defendants have done in their motion to dismiss) that by giving consideration prohibited under 15 U.S.C. § 6308, one does not violate the prohibition in 15 U.S.C. § 6309(b)(1). Moreover, the complaint alleges an entirely different violation of the Ali Act:

> **"100. Furthermore, DKP attempted to extort future rights in a mandatory bout situation from Charr by changing the terms of the standard WBA Bout Contract, which is expressly prohibited by 15 U.S.C. § 6307b(b). When Charr resisted these attempts, DKP took action to bypass Charr as is shown throughout this Amended Complaint."** *Id.* (emphasis added).

Additionally, 15 U.S.C. §6307b(b) reads in pertinent part:

> **"(b) Promotional rights under mandatory bout contracts**
>
> **No boxing service provider may require a boxer to grant any future promotional rights as a requirement of competing in a professional boxing match that is a mandatory bout under the rules of a sanctioning organization."** *Id.* (emphasis added).

The statute defines "Boxing service provider" as:

> "**(12) Boxing service provider**
>
> **The term "boxing service provider" means a <u>promoter</u>, manager, sanctioning body, licensee, or matchmaker."** *Id.* (emphasis added).

---

[2] Even if they are not, they would be "other persons".

5



CASE NO. 21-CV-61654-WPD

Again, the King/Epic Defendants rely on a strained interpretation of this language when making their argument. The defendants attempted to coerce future rights in a mandatory situation. More specifically, they, with the assistance of the WBA, caused Charr to be stripped when Charr refused to accede. There is nothing in the Ali Act to suggest that a boxer who resists a criminal act and is injured for doing so need have signed a contract coerced in violation of the Act.[3] Accordingly, Plaintiff's claim under Count I should survive dismissal.

### III.     Plaintiff's RICO Claim (Count II) Should Not Be Dismissed

   **1.  King and DKP are an enterprise. Furthermore, the King/Epic Defendants fail to raise a coherent that, combined with the WBA, they are not an enterprise.**

The King/Epic Defendants also assert that they are not an "Enterprise" when seeking to dismiss Count II. Yet, King and DKP are no strangers to RICO actions. *See Cedric Kushner Promotions, Ltd v King, et al.*, 533 U.S. 168 (2001). The Supreme Court unanimously stated in *Cedric* that:

> **"This case focuses upon a person who is the president and sole shareholder of a closely held corporation. The plaintiff claims that the president has conducted the corporation's affairs through the forbidden "pattern," though for present purposes it is conceded that, in doing so, he acted within the scope of his authority as the corporation's employee. In these circumstances, are there two entities, a "person" and a separate "enterprise"? Assuming, as we must given the posture of this case, that the allegations in the complaint are true, we conclude that the "person" and "enterprise" here are distinct and that the RICO provision applies."** *Id.* (emphasis added); *see also* Amend. Compl. at ¶25.

---

[3] The seriousness with which Congress took the exploitation of Boxers in this regard is manifest by the enhanced criminal penalties under 15 U.S.C. § 6309(b)(2):

CASE NO. 21-CV-61654-WPD

The King/Epic Defendants do not cite this case, meaning either they are not aware of it or chose to ignore it. Nevertheless, this case is hard to miss as it comes from the highest Court of the land and is dispositive on this point. Further, the King/Epic Defendants have ignored clear and specific allegations of collusion with the World Boxing Association ("WBA") in the Amended Complaint. These allegations are addressed in the latter sections of this response, but, in summary, allege the equivalent of a "pay-to-play" scheme involving the King/Epic Defendants, Mendoza, and the WBA. *See, e.g.*, Amend Compl. at ¶44.

**2.     The Particularity Requirement of RICO Has Been Satisfied**

The King/Epic Defendants once again simply ignore the allegations of the Amended Complaint when attacking the particularity of Plaintiff's pleadings on this count. *Inter alia*, it is alleged:

> "**The WBA also claims its decisions and fighter rankings are merit-based, but this is similarly false. They are typically the result of illicit back-door deals between WBA officials and promoters who provide economic incentives to WBA officials in exchange for favorable decisions or higher rankings for fighters.**" *Id.* at ¶33 (emphasis added).
>
> "**These deals are executed in many forms: In some cases, promoters make payments (or provide things of value) directly to WBA officials or, alternatively, disguise such economic incentives as "donations" or "gifts" to third parties, which in turn launder these incentives to WBA officials.**" *Id.* at ¶34 (emphasis added).
>
> "**Although Mendoza purports to take no salary or emoluments as president of the WBA, this is false: Mendoza is among the WBA officials who have and continue to receive economic incentives through illicit back-door deals with promoters and "fixers" participating in this pay-to-play scheme—<u>this includes King and DKP.</u>[4] Complaint.**" *Id.* at ¶35 (emphasis added).

---

[4] We have underlined allegations where the King/Epic Defendants are mentioned, but obviously the entire set of allegations constitute a scheme.

"Since at least 2015, King and DKP have engaged in these deals with Mendoza often by making payments and/or providing gifts to Mendoza through at least one third-party: Sports Consulting Services, LLC ("SCS"). Mendoza's son and at least one other WBA employee are believed to have been employed by and/or maintained an ownership interest in SCS since August 2018." *Id.* at ¶36 (emphasis added).

"**In other words, upon information and belief, all payments and/or gifts provided to SCS by King and DKP from August 2018 to the present have been passed along to Mendoza and other WBA officials in exchange for Mendoza and the WBA fraudulently improving the ranking of King's and DKP's fighters during this period.**" *Id.* at ¶37 (emphasis added).

"Additionally, **King and DKP have executed these back-door deals by providing economic incentives directly to Mendoza under false pretenses: For example, King and DKP disguised payments (or other economic incentives) to Mendoza as "wedding gifts" in or about February of 2020 in exchange for Mendoza and the WBA continuing to improve the rankings of King's and DKP's fighters including Bryan.**"

**Furthermore, King and DKP have executed these illicit deals by allowing the WBA to retain money "deposited" by King and DKP for scheduled bouts, which should have been returned under league rules. King and DKP have also admittedly supplied female companionship to Mendoza and WBA officials to "sweeten" these deals.**" *Id.* at ¶38 (emphasis added).

"**King and DKP at all times knowingly provided these incentives in exchange for Mendoza and the WBA fraudulently elevating the ranking of King's and DKP's fighters including, but not limited to, Bryan, which in turn directly increased the profits King and DKP received as Bryan's promoters in any WBA-sanctioned bouts and/or endorsement deals.**" *Id.* at ¶39 (emphasis added).

"Upon information and belief, and specifically with respect to Bryan's improved WBA ranking, **King and DKP began providing illicit economic incentives to Mendoza and the WBA at least as early as the Summer of 2017 shortly before the WBA inexplicably began accelerating Bryan's WBA fighter ranking from 10th place in September of 2017 to 1st place in July of 2018.**[5]" *Id.* at ¶40 (emphasis added).

"As part of this ongoing scheme, Mendoza and the WBA prepared and disseminated on a monthly basis fraudulent WBA fighter rankings containing Bryan's elevated ranking. **These fraudulent rankings were at all times (and continue**

---

[5] World Boxing Association, *Trevor Bryan, Pro Boxing Record* (available at): https://www.wbaboxing.com/wba-boxer-profile?e=1363651484848486a6f4b2f6c7237796742686e6735673d3d (June 29, 2022).

**to be) distributed by Mendoza and the WBA via U.S. Mail and the internet (via WBA's website)**[6] **such that Mendoza and the WBA have committed the crimes of mail and wire fraud.**[7]" *Id.* at ¶41 (emphasis added).

"As a result of the aforesaid acts committed by King, DKP, Mendoza, and the WBA pursuant to this criminal enterprise, Charr has been injured in his business and/or property including, but not limited to, by sustaining a loss of career earnings, participating in fewer (and less profitable) bouts, and receiving fewer (and less profitable) endorsement deals." *Id.* at ¶42 (emphasis added).

"More specifically, and as hereinafter alleged, the aforesaid acts committed by King, DKP, Mendoza, and the WBA pursuant to this criminal enterprise have resulted in the WBA fraudulently selecting King's and DKP's fighter, Bryan, to replace Charr as the WBA Regular Heavyweight Champion." *Id.* at ¶43 (emphasis added).

There are other references into specific wrongdoing as well.[8] As delineated in Section I (see above), the defendants violated the Ali Act, which calls for serious criminal penalties. 15 U.S.C. § 6309(b)(1). Plaintiff alleges that one of the ways this occurred was via the King/Epic Defendants channeling money to the WBA through "deposits, which the WBA retained rather than returned when bouts did not occur." *Id.* at ¶114. Plaintiff further asserts that "the giving and taking of monies and other things of value by King, DKP, Mendoza, and the WBA violate 18 U.S.C. § 224 "Bribery in a Sporting Contest[9]"". *Id.* at ¶117. Hence, Plaintiff's RICO claim meets the particularity requirements.

**IV.   Plaintiff's Breach of Contract Claim (Count IV) Should Not Be Dismissed**

---

[6] *Id.*

[7] The WBA rankings are updated and sent monthly. Each issuance would constitute mail/wire fraud.

[8] In addition to allegations directed at the WBA

[9] This is worth of some brief explanation. At trial we will show that Trevor Bryan, King's fighter, was an inferior fighter artificially placed high in the rankings. King could not afford to have Charr fight him lest he lose control of his foothold in the highly lucrative Heavyweight Division. Instead, the King/Epic Defendants wanted Bryant to fight a weaker opponent to whom he could not lose. Thus his actions were designed and did influence the outcome of a sporting event. *See, e.g.*, Amend. Compl. at ¶85-86.



The King/Epic Defendants seek dismissal of Count IV stemming from a purse bid. Plaintiff's allegations under this count are sufficient to support a claim for breach of contract. Under Florida law, there are many ways a contract is created; one way is through a written agreement, signed by the parties. Oral agreements are enforceable unless barred by the statute of frauds. Most relevant here is that a contract can be formed by a bid and acceptance. *See Schloesser v. Dill*, 383 So. 2d 1129 (Fla. 3d DCA 1980) (holding where a clear bid was submitted, accepted by county commission, and the contractor was notified of the decision, a binding contract was accepted.); *see also Graham v. Clyde*, 61 So. 2d 656 (Fla.1952). While many cases arise in the context of public bidding, the principle applies in a private context as well. *See Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1295 (11th Cir. 1998) ("[U]nder Florida law, a contract exists upon the award of a bid, even though no formal writing exists . . . .").

Applying the above standard, Plaintiff alleges that a bid was held on March 2, 2020, for a heavyweight title bout involving Plaintiff. *Inter Alia*, Amend. Compl. at ¶132. The King/Epic Defendants bid $2 million during the bid process with $750,000 of this sum owed to Plaintiff. *Id.* at ¶130. Plaintiff accepted the bid. *Id.* at ¶131. Plaintiff's acceptance created a legally valid and enforceable contract between DKP and Plaintiff. *Id.* at ¶132. The King/Epic Defendants argue that because King never signed the contract for the bout, King was somehow excused. *See* Def. Mot. at 8. This is simply not in accord with Florida law. As the cases cited by Plaintiff confirm, a bid is an offer and, if accepted, constitutes a contract. The King/Epic Defendants' position is thus illogical because it would allow a party to renege on a bid simply by declining to sign the contract documents. The law is clear that this is not permitted.

CASE NO. 21-CV-61654-WPD

The King/Epic Defendants argue that Plaintiff was not a party to the purse bid. Def. Mot. at 10. However, the bid was for Plaintiff's bout as Plaintiff was to receive at least $750,000 of the $2 million bid amount. Hence, it cannot plausibly be argued that Plaintiff was not a party to the bid. Though the bid was called by the WBA, it was for Plaintiff (and Bryan). The WBA was not a party, but Plaintiff (and Bryan) were. The King/Epic Defendants also cite no law in support of their position. What's more, the King/Epic Defendants further assert that because King did not sign the contract, King had no rights under this contract. Plaintiff disposed of this argument previously (see above). Under Florida law, a defendant cannot avoid a bid obligation by failing so sign the contract. Recognition of a bout by the WBA after a purse bid is automatic.[10] The King/Epic Defendants' argument for dismissal of Count IV thus fails for these reasons.

**V.   Plaintiff's Civil Conspiracy Claim (Count VII) Should Not Be Dismissed**

Finally, with respect to Count VII, the King/Epic Defendants are correct that a similar count was dismissed earlier in this case. However, it was not dismissed on the merits, but instead because "John Doe" defendants were not specifically identified. The Court expressly stated that Plaintiff "could bring such a claim at a later time in the event that Plaintiff identifies third parties with whom DKP and/or King wrongfully conspired."[11] Those persons and entities are fully identified in the Amended Complaint as illustrated in the following allegations:

---

[10] The King defendants argue that they would not be bound if, for instance, Charr turned up positive on a drug test after the bid. But Charr did not. We can pluck a hundred "what if" scenarios under which the bout could be canceled. What if a meteorite hit one of the fighters; what if a fighter contracted a dread disease. None of that happened and is immaterial to the allegations of the complaint.

[11] The elements of a civil conspiracy in Florida are: (a) a conspiracy between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship,* 931 So.2d 137, 140 (Fla. 5th DCA 2006). The King defendants do not allege that these elements have not been pled.

CASE NO. 21-CV-61654-WPD

> "At all times material hereto, King, DKP, and Mendoza entered an agreement to illegally exert undue influence over the WBA for the malicious purpose of causing the WBA to strip Charr of his WBA Regular Heavyweight Champion title without cause and in violation of WBA rules." Amend. Compl. at ¶153.

> "At all times material hereto, King, DKP, and Mendoza worked in concert to perpetrate the illegal and overt act of exerting undue influence on the WBA for the malicious purpose of persuading the WBA to strip Charr of his Heavyweight Championship title without cause and in violation of WBA rules. In major part, this was because Charr declined to give future promotion rights to King and DKP, something which he was not obligated to do under 15 U.S.C. § 6307b(b)." *Id.* at ¶154.

> "As a result of the illegal and overt acts committed by King, DKP, and Mendoza in furtherance of this conspiracy, Charr sustained damages including, but not limited to, the loss of his title as the rightful WBA Heavyweight Champion." *Id.* at ¶155.

Even assuming, *arguendo*, that King and DKP cannot conspire with each other as asserted by the King/Epic Defendants on page 12 of their motion, King and DKP can each conspire with the WBA and Mendoza. This is clearly alleged not only in Count VII of the Amended Complaint but throughout Plaintiff's pleading. *See, e.g.*, Amend. Compl. at ¶¶ 35, 36, 40, 42, 97, 99, 100, 113, 115, and 116. The aforesaid paragraphs are also incorporated by reference into Count VII. *See* Amend Compl. at ¶153. Accordingly, the King/Epic Defendants' arguments for dismissing Count VII are also without merit.

WHEREFORE, Plaintiff, Mahmoud Charr, respectfully requests the Court enter an order denying the King/Epic Defendants' Motion to Dismiss for the foregoing reasons, in addition to any other relief the Court deems just and proper.

Dated: October 7, 2022

CASE NO. 21-CV-61654-WPD

Respectfully submitted,

| | |
|---|---|
| BLACK SREBNICK, P.A.<br>201 S. Biscayne Boulevard, Suite 1300<br>Miami, Florida 33131<br>305-371-6421 Telephone<br>305-358-2006 Fax<br><br>By:  /s/ Jared Lopez<br>    Jared Lopez, Esq.<br>    Florida Bar No. 103616<br>    Donald J. Hodson, Esq.<br>    Florida Bar No. 120256<br>    JLopez@RoyBlack.com<br>    DHodson@RoyBlack.com<br>    civilpleadings@royblack.com<br><br>*Counsel for Plaintiff Mahmoud Charr* | DINES AND ENGLISH LLC<br>685 Van Houten Avenue<br>Clifton, New Jersey 07013<br>973-778-7575 Telephone<br>973-778-7633 Fax<br><br>By:  /s/ Patrick C. English<br>    Patrick English, Esq.<br>    New Jersey Bar No. 023811978<br>    dinesandenglish@aol.com<br><br>*Counsel for Plaintiff Mahmoud Charr* |

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY a true and correct copy of the foregoing was filed with the Court this 7th day of October 2022 and electronically served via the CM/ECF Court E-Filing system on: Mr. Alejandro Brito, Esq., Brito PLLC, 2121 Ponce de Leon Boulevard, Suite 650, Miami, Florida 33134, abrito@britopllc.com.

By: /s/ Jared Lopez
   Jared Lopez, Esq.

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305.358-2006