UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

MAHMOUD CHARR,

      Plaintiff,

v.                                        Case No. 21-CV-61654-WPD

DON KING, individually,
DON KING PRODUCTIONS, INC, a
foreign corporation,
EPIC SPORTS AND ENTERTAINMENT,
INC., a Florida corporation,
WORLD BOXING ASSOCIATION, INC., a
foreign corporation, and
GILBERTO MENDOZA, JR., individually,

      Defendants.

_____

**DEFENDANT WORLD BOXING ASSOCIATIONS, INC.'S MOTION TO DISMISS
COUNTS I, II, VI, AND VII OF THE AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and 12(b)(6), Defendant

World Boxing Association, Inc. ("WBA"), by and through its undersigned counsel, respectfully

moves this Court to dismiss the claims of Plaintiff Mahmoud Charr ("Charr") against WBA, and

in support thereof states as follows:

## I.    INTRODUCTION

This case is about a boxer's dispute with promoters over a missed title fight.  Charr, a

Syrian national residing in Germany, is a 2017 WBA Regular Heavyweight Champion.  Charr's

promotion team failed to secure him a visa to come to the United States to defend his title between

2019-2021.  When a champion cannot defend a title through no fault of their own (for instance,

during the pandemic or a war), they keep their title as a Champion in Recess.  But when a

titleholder misses a bout for other reasons – including, as here, a failure to secure the necessary visa to attend and to secure a signed bout contract – WBA strips them of their title. This standard, set forth in the WBA Rules that bind both Charr and WBA, ensures that a boxer cannot win a title fight and then keep the title by refusing to ever fight again. Irrespective of the promoters' actions or inaction, WBA's role has been limited to its appropriate, neutral task of stripping a title that Charr failed to defend.

Charr understands WBA's powers and obligations under its Rules. He cites those Rules throughout his Amended Complaint. (*See*, *e.g*, Am. Cmplt., ¶¶ 45, 47, 59.) But WBA's presence in this matter is not really about anything WBA itself did or did not do. Rather, Charr joined WBA to this case in a last-ditch effort to preserve his conspiracy claims against the promoters in the face of an order of dismissal. The total absence of plausible allegations against WBA in the Complaint lays bare Charr's strategy. He alleges that WBA violated the Muhammad Ali Boxing Reform Act ("Ali Act" or the "Act"), but offers not a single allegation of remediable harm that WBA caused. He alleges that WBA violated its own Rules, but he never specifies *which* rule or *how* WBA violated it. He names WBA in three other counts (including a specious RICO claim that this Court has already dismissed) without including a *single* allegation of any acts WBA committed related to those claims.

If Charr really believes he has a claim against WBA, he must proceed under the appeals and arbitration processes set out in the very WBA Rules that he relies upon in his complaint. That is yet another reason this matter must be dismissed: disputes among WBA members (including Charr) and WBA must proceed through WBA's internal dispute resolution process. Moreover, Charr agreed to raise any post-exhaustion claims in Washington state, not Florida. Charr's joinder of WBA as a defendant based on the implausible conspiracy theories set out in the Amended

Complaint is wholly improper, and patently fails to meet the *Twombly-Iqbal* standard for pleadings.  With no plausible claims – even when resolving all facts in Charr's favor – his desperate effort to rope WBA into this action cannot continue, and the motion must be granted.

## II.    CHARR'S CLAIMS AND ALLEGATIONS[1]

Charr alleges seven causes of action against the various defendants in this action:  Count I (alleging violations of 15 USC § 6308, the Ali Act against all defendants); Count II (claiming a violation of 18 USC § 1962, the Racketeer Influenced and Corrupt Organizations Act, against King, DKP, Mendoza and WBA); Counts III and IV (breach of contract claims that do not name WBA); Count V (a tortious interference claim that does not name WBA); Count VI (a claim that WBA breached its contract with Charr); and Count VII (alleging civil conspiracy against King, DKP, Mendoza and WBA). (*See* Amended Complaint (ECF No. 45)).

As this Court has stated, "[t]he Amended Complaint alleges that Defendants were trying to prohibit Plaintiff from participating in a heavyweight boxing match by failing to comply with the terms of a contract between DKP, Epic Sports and Plaintiff and also by exerting influence over the WBA so that the WBA would strip Plaintiff of his heavyweight title as a result of Plaintiff's failure to participate in the boxing match." (*See* Order on Defendants' Motion to Dismiss Amended Complaint and Motion to Strike (ECF No. 63) at  2). Charr claims that promoters DKP (and its principal, King) and Epic caused him to lose opportunities to defend his champion title by fighting boxer Trevor Bryan (a client of the promoters) so that Bryan could instead fight a less capable boxer, Stiverne, and become the new champion, thus enriching the promoters. (*See* Am. Cmplt., ¶¶ 80-83). Charr also claims that the promoters intentionally failed to assist him in obtaining the

---

[1] This motion reflects the facts as alleged in the Amended Complaint. Charr's well-pled allegations are assumed to be true only for purposes of resolving this motion. WBA does not admit or deny, and reserves the right to challenge the veracity of, all allegations in the Amended Complaint.

visa as promised and refused to sign standard bout contracts in order to cause the fights to be canceled to avoid paying Charr his purse for those bouts.  (*See id*., ¶¶ 62-65, 70-78, 80, 82, 86-89.) Charr admits that the reason his potential bout with Bryan was canceled, causing Charr to eventually lose his title, is that Charr could not timely obtain the required visa to travel to the United States to fight during a time of heightened restrictions under the Trump administration, and Charr could not finalize acceptable bout contract terms with the promoters. (*See id*., ¶¶ 60, 72-74, 77-78). None of these allegations even remotely touch on the WBA in any way.

Charr originally sued the promoters for breach of contract, tortious interference and conspiracy, blaming them for their purported failure to help him obtain his visa, their alleged intentional refusal to sign bout contracts with agreeable terms, and their purported conspiracy to cause the WBA to strip Charr of his title. (*See* Complaint (ECF No. 1).) Charr only added WBA (and its President, Gilberto Mendoza, Jr.) to his lawsuit after the Court dismissed Charr's original conspiracy claim because he had failed to allege separate actors necessary to form a conspiracy. *See* Order on Defendants' Motion to Dismiss Complaint and Motion to Strike (ECF No. 24 at 11). Even after adding WBA as a party, the purported purpose of Charr's alleged conspiracy was to *influence WBA itself*, a nonsensical end of which to accuse WBA itself. (*See* Am. Cmplt., ¶ 155.)

As to actual allegations against WBA, Charr claims that it failed to follow or selectively enforced its own set of rules at times, including by failing to grant Charr an extension of time to obtain a visa and by failing to default DKP for refusing to use a standard bout contract. (*See id*., ¶¶ 89-90, 150-151).  Yet Charr does not identify any individual rule that WBA allegedly violated. Charr also claims that WBA, through Mendoza or other (unidentified) executives, accepted gifts or unspecified things of value intended to influence WBA ratings and decisions. (*See id*., ¶¶ 37-40).  Again, Charr does not point to an actual instance where a WBA official took a gift, a payment,

or anything of value. Further, he identifies no nexus between any putative "influence" or improper conduct and any actual harm to Charr himself, depriving him of Article III standing to proceed on such a claim in this Court.

Finally, Charr admits that WBA Rules are enforceable against him (*See id*., ¶ 148), but he does not allege that he ever pursued any of the exclusive administrative remedies set forth in the WBA rules. Under those rules, Charr must proceed through a multi-step internal WBA process to challenge WBA ratings and championship decisions.

## III.   LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss should be granted when a plaintiff has failed to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). Plaintiff's allegations must be taken as true for purposes of a motion to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334-36 (11th Cir. 1992) (citation omitted).   A court need not, however, accept allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements . . . ." *Iqbal,* 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly,* 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183 (1984)).

## IV.    ARGUMENT

### A.    <u>Counts II, VI, and VII, and Part of Count I (as Pled Against WBA) Must be Dismissed Because Charr Failed to First Exhaust His Administrative Remedies</u>

Despite framing his claims against WBA under various legal theories, Charr makes one supporting core allegation against WBA: WBA violated WBA Rules. But those same WBA Rules establish a mandatory, multi-tiered administrative process to resolve exactly the types of claims and challenges to WBA actions and decisions that Charr now attempts to bring before this Court. WBA Rules are clear: "No member, boxer, promoter, manager, agent, or other person or entity, may seek relief in any court of a matter subject to reconsideration or appeal unless said party has first exhausted the administrative remedies provided in these [WBA] Rules." *See* WBA Rules (attached as Exhibit A), F.17. Charr's failure to engage with or seek relief via the WBA's administrative remedies process is fatal to his claims. Because Charr has failed to allege (and cannot allege) that he has exhausted his administrative remedies, and has filed his claims (although barred from being raised in court at all) in the incorrect venue, his claims against the WBA in Counts II, VI, VII and part of Count I, must be dismissed.

#### 1.  WBA Rules are Properly Considered on this Motion to Dismiss

As Charr acknowledges, the WBA has established rules and decrees governing its purse bid processes, including bout contracts and terms, and boxer qualifications, ratings, and titles. (*See* Am. Cmplt., ¶¶ 47, 62-63, 67-68, 72, 79, 81, 90, 95, 110, 134, 148-151 (with each allegation invoking WBA Rules and claiming WBA violated or selectively enforced them)). Though Charr fails to attach these rules to the Amended Complaint, he invokes, references, and relies on them repeatedly, thus incorporating them by reference as a material and central component of his claims. *See id.* In fact, the WBA Rules are "the contract" on which Charr expressly bases Count VI, his

6

claim for breach of contract against WBA. (*See id.*, ¶¶ 148-151). As such, the WBA Rules are properly considered on a motion to dismiss and are attached here for consideration. *See* RULES OF WORLD BOXING ASSOCIATION (6/11/15) ("WBA Rules"), attached hereto as **Exhibit A**; *see also Kuber v. Prudential Ins. Co. of Am.*, No. 19-80151-CIV-DIMITROULEAS, 2019 WL 7899139, at *3 (S.D. Fla. May 31, 2019) (on a 12(b)(6) motion, "[t]he Court may also consult documents that are attached to the motion to dismiss under the 'incorporation by reference' doctrine," which permits the review of documents that are "central to the plaintiff's claim" and are of undisputed authenticity (*quoting Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2022)).

> **2. Charr Is Bound By the WBA Rules, Which Govern All Aspects of the Charr/WBA Relationship, Including Ratings, Bouts, Championship Rights, Titles, Contract Terms, and Any Claims By Charr and Associated Remedies**

Charr acknowledges and concedes that the WBA Rules constitute an "independent and legally enforceable contract between Charr and the WBA" as "both parties agreed to abide by the terms provided therein." (Am. Cmplt., ¶ 148). The WBA Rules "provide members and boxers the standards and obligations applicable to ratings, sanctioned bouts, and other [WBA] activities." (WBA Rules A.1). "The Rules apply to all actions and decisions of the [WBA] regarding ratings, sanctioning of bouts, conduct of bouts, requests for explanations or reconsideration, appeals, and related matters, and apply to all members, affected boxers, and their agents." (*Id.*, A.2). "[A]ny legal claim or action against the Association by a member, boxer, manager, promoter, or his or its agent is governed and limited by the[] Rules, including Rule F.18 [Entitled "**Litigation.**"]." (*Id*).

Chapter B, which incorporates the WBA Ratings Guidelines found in Appendix B, governs boxer ratings and establishes a Ratings Committee to make ratings decisions. WBA is required to publish a list of rated boxers to "be announced and posted timely on the [WBA] website." (WBA Rules, B.4). The WBA Ratings Guidelines govern WBA's actions "in including, removing,

promoting, or demoting boxers" and WBA may consider as relevant information factors including, but not limited to "ring performance, regional titles, bout activity, disqualifications, win-loss records, difficulty of bouts, technical decisions, failure to make weight, and any other relevant information." (*Id*., B.5). A boxer may be demoted "based on any relevant factor, including, but not limited to, ring performance, failure to maintain the required weight, loss to a non-rated boxer, loss of a regional title, inactivity, violation of these Rules (including failure to pay or allow to be paid sanction fees), failure to take or pass a required drug test" or "due to extraordinary events or activity, including, but not limited to, proven or alleged criminal behavior, conduct that violates boxing regulations or rules, suspension by a responsible authority, or other public behavior or statements of a type that would affect the boxer's ability to be licensed to compete or that are detrimental to public perception of the sport of boxing." (*Id*., B.6). Thus, a wide variety of information is considered in establishing boxer ratings, which are not a precise science but an art that "represent[s] the best opinion of the [WBA] as to the relative qualification of the boxers in particular weight categories at a particular time and who are available and willing to fight for the [WBA]'s title." (*See id*., B.8).

Chapter C of the WBA Rules governs the timing and manner of bouts, title matches and title defense, and championships, including the process for a boxer to challenge a bout decision, and creates a Championships Committee. Chapter C also addresses title revocation, the Champion in Recess title and rights, and special permits that allow WBA to suspend or modify strict application of rules regarding title and championship bouts, and establishes that "[a] rated boxer has no right to fight any specific boxer." (WBA Rules C.14-15, C.22-23, C.33, C. 46-C.50). Chapter D governs purse bids, including the process and contents required for bids, promoter's

deposit, the distribution of the purse, and the awarding of the bout, the contents required for bout contracts, and timing. Chapter E governs the rules and conduct of the actual bouts.

Chapter F of the WBA Rules sets forth a multi-tiered administrative procedure for challenging a rating decision. (*Id.*). "A person directly affected by a decision of the Ratings Committee may file a formal Request for Ratings Information or Request for Reconsideration, or both." (WBA Rules F.1). To request a ratings explanation (***Step 1 in the administrative remedies process***), a boxer must make a written and signed request "within ten (10) days after the latest rankings are published." (WBA Rules F.4.) "Failure to timely request an Explanation shall constitute a waiver by the boxer and his agents of any and all claims" and "[n]o additional remedy may be sought from a court of law." (*Id.*).  Within seven days of receipt of a conforming request, the WBA must "respond in writing explaining the rationale or basis for its rating of the boxer in question."  (WBA Rules F.4.c). The boxer or his agent "may then file a request for reconsideration of the rating" (***Step 2 in the administrative remedies process***), and Rule F.5 outlines the process for submitting a request for reconsideration. (WBA Rules F.4.d., F.5). WBA is required to "respond within fifteen (15) days after receipt of a request" for reconsideration "or explain why a longer time to respond is warranted." (WBA Rules F.5.d). "After receiving the answer of the [WBA] in response to the request [for reconsideration], the boxer making the requests or on whose behalf the request was made may then file an appeal of the decision" (***Step 3 in the administrative remedies process***).  (WBA Rules F.5.g). The appeal "may not be considered unless all applicable administrative procedures have been met and all administrative reviews have been exhausted." (*Id.*). WBA Rules F.6-18 set for the appeals process in detail. In general, a person may file a written appeal of any decision regarding a request for reconsideration and "[a]ny other decision not subject

to a Request for Reconsideration" with the appeal to be reviewed *de novo* by a three to five member panel of disinterested WBA members or non-members. (WBA Rules F.6-7, 13).

Importantly, "[n]o member, boxer, promoter, manager, agent, or other person or entity, may seek relief in any court of a matter subject to reconsideration or appeal unless said party has first exhausted the administrative remedies provided in these [WBA] Rules." (WBA Rules F.17). Even after the administrative remedies have been fully exhausted, the venue for any permissible court action by a boxer who is asserting "a claim or right against the [WBA]" or "request[ing] relief arising from the [WBA's] … Rules" lies exclusively "in the courts of Pierce County, State of Washington, United States of America." (WBA Rules F.18.b). In the context of such action against the WBA, [t]he sole and exclusive monetary remedy… shall be limited to a return of reasonable fees, expenses, or costs the Party has paid to the [WBA] giving rise to the Party's claim." (WBA Rules F.18.e). WBA shall not "be liable to any Party for punitive, consequential, direct, or indirect damages, including, but not limited to, lost profits, loss of earning capacity, delay, interest or attorney fees." (WBA Rules F.18.d).

### 3. Charr's Claims Against WBA are Based on Actions and Decisions Governed by WBA Rules and Supporting Allegations that WBA Violated or Failed to Enforce WBA Rules

Despite purporting to invoke various laws and theories of liability against WBA in Counts I (Ali Act), II (RICO), VI (Breach of Contract), and VII (Civil Conspiracy), each of Charr's claims against WBA is rooted in allegations that WBA violated or failed to enforce its own rules and regulations governing the purported actions and events at issue.

It cannot be disputed that Count VI, Charr's claim that WBA breached its contract with Charr, is expressly based on WBA's purported violations of the WBA Rules. (*See* Am. Cmplt., ¶¶ 148-151 (included within "**COUNT VI BREACH OF CONTRACT (WBA RULES AND**

**DECREES**)".) Although Charr fails to ever identify any specific Rule that WBA purportedly violated (which is itself a notice pleading failure that requires dismissal of Count VI), Charr claims generally that WBA violated its rules regarding the requirements for the use and content of bout contracts (Am. Cmplt. ¶¶ 149-151), which is addressed in WBA Rules Chapter D.

Count I alleges purported violations of 15 U.S.C. § 6308, The Ali Act. The supporting allegations as to WBA are statements that: (1) WBA violated its rankings criteria (Am. Cmplt., ¶ 95), (2) failed to file certain statutorily-required disclosures prior to receiving compensation (*Id.*, ¶ 96), and (3) its officers solicited unreported gifts (*Id.*, ¶ 98). The first supporting allegation is nothing more than a claim that WBA violated its WBA Rules for ratings, which are addressed in WBA Rules Chapter B and Appendix B (the WBA Ratings Guidelines). Charr's allegation that WBA violated the Act by violating its own rules is governed squarely by WBA Rules themselves, not the federal law cited by Charr, which does not even address boxer ratings.[2]

In Count II, Charr alleges that WBA violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by fraudulently "disseminat[ing] fighter rankings via wire (i.e. on the WBA's public website) and U.S. Mail" every month. Am. Cmplt., ¶¶ 109, 111. In attempting to support this claim, Charr alleges that WBA intentionally manipulates fighter rankings to favor certain promoters and retains "deposit money" that should be returned pursuant to WBA Rules. (Am. Cmplt., ¶¶ 111, 112, 114). Again, these are allegations that WBA has violated WBA Rules regarding ratings, which are addressed in WBA Rules Chapter B and Appendix B (the WBA Ratings Guidelines), and WBA Rules regarding deposit return, which are addressed in Chapter D

---

[2] Charr fails to raise a valid claim under the Ali Act for the additional reasons discussed in Section IV.B, *infra*.

(*see*, *e.g.*, WBA Rules D.7, D.10, D.14).  Additionally, this Court has already dismissed Charr's RICO allegations in this matter, as discussed further below.

Finally, in Count VII, Charr alleges that WBA conspired with the other defendants in this case to somehow illegally exert undue influence <u>over itself</u> in order to strip Charr of his title "in violation of WBA Rules." (Am. Cmplt., ¶¶ 154, 155). Charr thus expressly concedes that this claim also is rooted in a purported violation of the enforceable WBA Rules.

Each of these allegedly distinct claims could be remedied by an administrative request for reconsideration and appeal under WBA Rules, as Charr is required to do before proceeding in court.

### 4.  The Eleventh Circuit Enforces Mandatory Contractual Claim Resolution Procedures and Requires Exhaustion as a Condition Precedent to Suit

Courts within this district review a plaintiff's failure to exhaust administrative remedies pursuant to FRCP 12(b)(6) standards. *Boger v. A. Gallerani, M.D., PLLC*, Case No. 20-21987-CIV-ALTONAGA/Goodman, 2020 WL 10142134, at *1-2 (S.D.N.Y. July 20, 2020). Because Charr concedes the WBA Rules are a binding contract, he bases each count against WBA on the purported violation of the WBA Rules. Yet, still, Charr has never exhausted the administrative remedies set forth in those very WBA Rules, attempted to exercise those remedies, or alleged that any attempt to do so would be futile. Charr's claims against WBA must be dismissed for failure to state a claim under FRCP 12(b)(6) because he has made no effort to comply with the contractually required remedies contained in the WBA Rules.

A party to a contract seeking relief for a claim rooted in that contract must first exhaust any administrative remedies or arbitration procedures as set forth in the agreement prior to raising those claims in court, and failure to do so must result in dismissal of the claims. *See Jimenez v. Collier Transit Mgmt., Inc.* 337 Fed. App'x. 804, 807 (11th Cir. 2009) (affirming the district court's

dismissal where the plaintiff brought suit against former employer prior to exhausting all grievance and arbitration procedures as set forth in the collective bargaining agreement); *Springer v. Wal-Mart Assocs. Grp. Health Plan*, 908 F.2d 897, 899-900 (11th Cir. 1990) (ruling that the trial court abused its discretion in not dismissing plaintiff's suit due to a failure to exhaust the Employee Retirement Income Security Act plan's internal appeals process); *Mason v. Continental Grp., Inc.*, 763 F.2d 1219, 1222 (11th Cir. 1985) (finding that where parties fail to exhaust the an agreed-upon method for resolution, the court must dismiss a lawsuit because parties to an agreement are "bound" to the method for resolving disputes as set forth in their agreement); *Krivisto v. Nat'l Football League Players Ass'n*, No. 10-24226-CIV, 2011 WL 335420, at *1 (S.D. Fla. Jan. 31, 2011) ("The law is clear that one who has agreed to arbitration must exhaust those remedies before he can litigate the same claims in court.").

Because Counts II, VI, VIII, and Count I (in part), as raised against WBA in particular, are based on allegations that WBA failed to adhere to WBA Rules, Charr must first exhaust his administrative remedies prior to bringing these claims in a court. Charr failed to allege (and cannot allege) that this condition precedent to suit has been satisfied, which is fatal to these claims.

## B. Venue is Improper in the Southern District of Florida, Necessitating Dismissal Pursuant to FRCP 12(b)(3)

Even if Charr had exhausted his administrative remedies, the WBA Rules require that for all litigation brought by a "boxer" who "asserts a claim or right against [WBA], or requests relief arising from [WBA]'s Constitution, Bylaws, or these Rules" the "[v]enue shall lie in the courts of Pierce County, State of Washington, United States of America." (Rules F.18.b.) Where a contract's forum-selection clause uses "mandatory," as opposed to "permissive," language, "claims within the scope of the forum-selection clause must be brought in a court" in the agreed-upon jurisdiction. *Slater v. Energy Servs. Grp. Int'l., Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011). Such clauses are

"'presumptively valid and enforceable' absent a 'strong showing that enforcement would be unfair or unreasonable under the circumstances.'" *Id.* at 1331 (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)). Under Rule 12(b)(3), dismissal is an appropriate remedy for improper venue based on a forum-selection clause. *Id.* at 1333. Because venue is improper as to WBA under the express terms of the WBA Rules, Counts II, VI, VIII, and Count I against WBA must be dismissed.

      C.    <u>Count I (As Pled Against WBA) Also Must Be Dismissed Because Charr Failed to Allege any Harm Caused by WBA, an Essential Element of a Boxer's Right to Raise a Private Claim Under the Ali Act and Article III of the United States Constitution</u>

In Count I, Charr alleges that King, DKP, Epic, Mendoza and the WBA each violated the Ali Act. Charr first claims that WBA violated the Ali Act by failing to adhere to its rankings criteria, which Charr claims is a violation of 15 U.S.C. § 6307. (Am. Cmplt., ¶ 95.) Section 6307 of the Act, however, does not even address boxer ratings. Instead, it states:

> Not later than 48 business hours after the conclusion of a professional boxing match, the supervising boxing commission shall report the results of such boxing match and any related suspensions to each boxer registry.

15 U.S.C. § 6307. Charr has never alleged that WBA has ever failed to timely report the results of any boxing match. Thus, Charr has not validly alleged a violation of this statute. As discussed in Section IV.A.3, his allegations regarding ratings constitute a breach of contract claim against WBA, which cannot be raised in this Court, or any Court. It must instead proceed through the WBA administrative process under the WBA Rules.

Charr next claims that WBA violated the Act by failing to file certain statutory disclosures prior to receiving compensation (*Id.*, ¶ 96), and because its officers solicited unreported gifts (*Id.*, ¶ 98). Finally, Charr claims that King, DKP and Epic violated the Act by providing compensation and gifts to WBA's officers to exert undue influence over them (*Id.*, ¶ 100) and attempting "to

extort future rights in a mandatory bout situation from Charr by changing the terms of the standard WBA Contract" (*Id*., ¶ 101). Charr alleges that he "has been harmed as a result of these violations of the Muhammad Ali Act by King, DKP, Epic, and Mendoza as aforesaid." *Id*., ¶ 102. Charr does not allege, however, that any purported violation of the Act <u>by WBA</u> caused him any harm. Nor does Charr further explain any of the alleged "harm" that he suffered as a result of the purported Ali Act violations at all. This failing is fatal to his claims against WBA, both under the Ali Act and pursuant to Article III of the United States Constitution. Charr has no right to sue WBA under the Act unless he plausibly can show resulting harm from a WBA violation.

The private right of action granted to boxers to sue for a breach of the Act extends only insofar as the violation caused economic harm to the boxer:

> Any boxer who suffers economic injury as a result of a violation of any provision of this chapter may bring an action in the appropriate Federal or State court and recover the damages suffered, court costs, and reasonable attorney's fees and expenses.

15 U.S.C. § 6309(d). Indeed, Charr only has a potentially valid claim "if he can demonstrate that he suffered an economic injury as a result of defendant's violation of the Ali Act." *See M'Baye v. World Boxing Ass'n*, No. 05 Civ. 9581(DC), 2007 WL 844552 (S.D.N.Y. Mar. 21, 2007) (denying a defense summary judgment because, unlike Charr who fails to even attempt to allege WBA's purported violations caused him harm, boxer M'Baye had some evidence from which a jury could find that WBA's purported failure to timely post a ratings change caused him economic harm). Further, even if Charr does meet the statutory requirements to file a cause of action under the Ali Act, "the existence of a 'cause of action does not affect the Article III standing analysis.'" *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 (11th Cir. 2020) (quoting *Thole v. U.S. Bank N.A.*,140 S. Ct. 1615, 1620, (2020)).  To show standing, "[Charr] must have suffered an injury in

fact, [WBA] must have caused that injury, and a favorable decision must be likely to redress it." *Id.* at 996 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Here, Charr does not allege that any violation of the Act by WBA caused him any harm at all.  Instead, he jumps from unsupported allegations to a single conclusory statement that he "has been harmed" by the violations of the other defendants without ever explaining how any unlawful act by WBA caused him any harm, economic or otherwise.  (Am. Cmplt., ¶ 102.)  His allegations of a "bare procedural violation" without any explanation of how such violations may have harmed him fail to meet the constitutional bar to meet Article III standing requirements to invoke federal jurisdiction. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 342, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). Having failed to allege an essential element to a private cause of action for a violation of the Act as to WBA, Count I must be dismissed insofar as it is alleged against WBA.

### D.     Count II Also Must Be Dismissed Because Charr Failed to State a RICO Claim, As this Court Already Has Ruled

In response to a challenge by Defendants DKP and King (ECF No. 52), this Court already has dismissed the RICO claim from the Amended Complaint, ruling that "the Amended Complaint fails to plead the pattern of racketeering activity with the required particularity" and "fails to comply with Rule 9(b), which requires a plaintiff to allege facts with respect to each defendant's participation in the fraud. '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements mislead the Plaintiffs; and (4) what the defendants gained by the alleging the fraud.'" (*See* Order on Defendants' Motion to Dismiss Amended Complaint and Motion to Strike (ECF No. 63 at 6-7, 9) (citations omitted)).

The Court's dismissal holdings are not specific to DKP and King, the particular defendants that moved to dismiss the RICO claim. The Court's reasoning applies to equally to all other

defendants named in Count II: WBA and Mendoza. Indeed, based on the Court's order, WBA considers Count II to be dismissed from the case entirely. This Court provided Charr the opportunity to "attempt[] to replead Count II" or alternatively offered that Charr could "file a Notice stating it intends to proceed forward on the remaining claims." (ECF No. 63 at 9). Charr, however, did not select either of those options, instead unilaterally creating a third option not offered by the Court. While Charr filed a notice expressing his intent not to file a Second Amended Complaint attempting to replead Count II, he then attempted to modify that choice by stating his intent was only "with respect to Defendants, Don King and Don King Productions, Inc. and is not intended to impact Count II as to Defendants, Gilberto Mendoza, Jr. and World Boxing Association, Inc." *See* Plaintiff's Notice of Intent to Proceed Forward With Remaining Counts Pursuant to October 31, 2022 Order (ECF No. 67, at ¶¶ 3-4).

Because of Charr's apparent and unauthorized attempt to breathe new life into Count II as against Mendoza and WBA, in an abundance of caution WBA again moves to dismiss Count II for the same pleading deficiencies this Court already has identified as requiring dismissal. (ECF No. 63).  Nevertheless, the fact remains that this Court already dismissed Count II as deficient without limiting the holding to specific parties named and Charr failed to attempt to replead his claim when offered the chance. Thus, WBA requests that Count II now be dismissed with prejudice, as Charr passed on the opportunity to amend already and the defendants should be able to proceed without doubt that Count II has been dismissed completely from this case.

## V.    CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendant World Boxing Association, Inc. respectfully requests that this Court dismiss Defendant World Boxing Association as a defendant

in this case and award Defendant World Boxing Association, Inc. such other and further relief as

the Court deems proper.

Dated: January 5, 2023                                    Respectfully submitted,

                                                         */s/ Stacy J. Rodriguez*
                                                         Stacy J. Rodriguez
                                                         Fla. Bar No. 44109
                                                         James J. Ward
                                                         Fla. Bar No. 93651
                                                         ACTUATE LAW, LLC
                                                         641 W. Lake Street, 5th Floor
                                                         Chicago, Illinois 60661
                                                         Phone: 312-462-0543
                                                         stacy.rodriguez@actuatelaw.com
                                                         james.ward@actuatelaw.com

                                                         *Counsel for World Boxing Association, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 5, 2023, a true and correct copy of this Motion was furnished to all parties receiving electronic notification in this case via the Clerk of the Court's CM/ECF system, as stated on the following service list.

                                                         */s/ Stacy J. Rodriguez*
                                                         Attorney

## Service List

Donald J. Hodson, Esq.                    Patrick C. English, Esq.
Kandell, Kandell, P.A.                    Dines and English, LLC
2665 S. Bayshore Drive                    685 Van Houten Ave.
Grand Bay Plaza, Suite 603                Clifton, NJ 07013
Miami, FL 33131                           dinesandenglish@aol.com

Jared M. Lopez, Esq.                      Alejandro Brito, Esq.
Black Srebnick Kornspan & Stumpf          Brito, PLLC
201 S. Biscayne Blvd., Ste. 1300          2121 Ponce de Leon Blvd., Ste. 650
Miami, FL 33131                           Coral Gables, FL 33134
jlopez@royblack.com                       abrito@britopllc.com

Joseph J. Portuondo, Esq.
110 Merrick Way
Coral Gables, FL 33134
jjp@portuondolaw.com