# COMPOSITE EXHIBIT A

## AMENDED COMPLAINT WITH EXHIBITS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO. 21-CV-61654-WPD

MAHMOUD CHARR,

     Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation,
EPIC SPORTS AND ENTERTAINMENT,
INC., a Florida corporation,
WORLD BOXING ASSOCIATION, INC., a
foreign corporation, and
GILBERTO MENDOZA, JR., individually,

     Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, Mahmoud Charr, by and through his undersigned counsel and pursuant to Fed.

R. Civ. P. 8(a), files this Amended Complaint against Defendants, Don King, Don King

Productions, Inc., Epic Sports and Entertainment, Inc., World Boxing Association, Inc., and

Gilberto Mendoza, Jr., and in support thereof alleges:

## PARTIES

1.     **Plaintiff, Mahmoud Charr ("Charr"),** is *sui juris,* a German citizen and German

resident. When this litigation began, Charr was a Syrian citizen and a German resident.

5

CASE NO. 21-CV-61654-WPD

2.       Defendant, Don King ("King"), is *sui juris*, a United States citizen and Florida resident.

3.       Defendant, Don King Productions, Inc. ("DKP"), is a foreign corporation with its principal address at 501 Fairway Drive, Deerfield Beach, Florida 33441.

4.       Defendant, Epic Sports and Entertainment, Inc. ("Epic"), is a Florida corporation with its principal address at 81 Via Di Mello, Henderson, Nevada 89011.

5.       Defendant, World Boxing Association, Inc. ("WBA") is a foreign corporation with its principal address at Ave. Aquilino de la guardia c/c Calle 47, Ocean Business Plaza, 14th Floor, Office 14-05, Panama City, Panama 0816-01091 PA.

6.       Defendant, Gilberto Mendoza, Jr. ("Mendoza"), is *sui juris* and believed to be a dual citizen of the United States and Venezuela.[1]

## JURISDICTION

7.       The Court has subject matter jurisdiction pursuant to 28 U.S.C.§ 1331 as certain claims in this action arise under the laws of the United States.

8.       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs, and the claims in this action are between United States citizens and a citizen of Germany.

9.       The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as the claims asserted herein derive from a common nucleus of operative facts and judicial economy,

---

[1] Mendoza's nationality has not been confirmed but will be established in discovery.

6



**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

convenience, and fairness to the litigants weigh in favor of the Court exercising supplemental jurisdiction.

10.     The Court has personal jurisdiction over Defendant, King, who resides and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against King also accrued.

11.     The Court has personal jurisdiction over Defendant, DKP, which is located and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against DKP also accrued.

12.     The Court has personal jurisdiction over Defendant, Epic, which is incorporated in the State of Florida and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against Epic also accrued.

13.     The Court has personal jurisdiction over Defendant, WBA, which maintains a registered address in the State of Florida and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against the WBA also accrued.

14.     The Court has personal jurisdiction over Defendant, Mendoza, who is believed to maintain a residence in the State of Florida and regularly conducts business in Broward County, Florida, where the claims asserted by Charr against Mendoza also accrued.

### **VENUE**

15.     Venue is proper in the United States District for the Southern District of Florida pursuant to 28 U.S.C. § 1391 as Defendants reside, are located, and/or regularly conduct business in Broward County, Florida, where the events giving rise to this lawsuit occurred.

7



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

16.     Additionally, Plaintiff, Charr, and Defendants, DKP and Epic, have stipulated by contract that the "exclusive forum for any disputes shall be the courts located in the State of Florida." *See* May 26, 2019 Promoter Agreement, Par. 5, Exhibit A.[2]

17.     Venue is also proper under 18 U.S.C § 1965(a), which provides that "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."

<u>**GENERAL ALLEGATIONS**</u>

**I.      Mahmoud Charr**

18.     Charr is a professional heavyweight boxer with a record of 32 wins, four losses, and one draw. In November of 2017, Charr was crowned the WBA Regular Heavyweight Champion.

19.     The WBA stripped Charr of his title in January of 2021 after promoter King exerted undue influence on the WBA to prevent Charr from defending his title against King's own fighter, Trevor Bryan ("Bryan"), who replaced Charr as the WBA Regular Heavyweight Champion.

20.     At the time this action was filed, Charr's title was that of Champion in Recess which the WBA bestows on reigning champions who "for health, legal, or compelling reasons" are prevented from defending their title. *See* Aug. 30, 2018 Letter re: WBA Heavyweight Interim Title, Exhibit D.

---

[2] Because the signed May 26, 2019 Promoter Agreement attached as Exhibit A is difficult to read as a result of having been transmitted numerous times, an identical albeit more legible blank copy of the same Promoter Agreement is also attached for reference as Exhibit B.



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

21.     The WBA has since stripped Charr of his Champion in Recess title at King's behest as hereinafter alleged.

**II.     Don King and DKP**

22.     King is a prominent promoter and among the most controversial figures in professional boxing. King owns and operates the promotions company Don King Productions, Inc. ("DKP") in Deerfield Beach, Florida.

23.     King has been the subject of negative publicity throughout his career[3] due to his unscrupulous business practices and reputation for mistreating and taking advantage of unwitting fighters for his own personal gain.

24.     King has been sued countless times over the years by fighters such as Muhammad Ali, Lennox Lewis, and Mike Tyson who, like many others, have accused King of failing to honor contracts and defrauding his own fighters, in some instances out of more than $100 million.[4]

25.     At all times material hereto, King and DKP were (and are) legally separate and distinct entities who were associated with the WBA by virtue of doing business with the WBA (i.e. promoting fighters in WBA-sanctioned bouts).

---

[3] King's reputation for mistreating fighters has been the subject of books including Jack Newfield's "Only in America: The Life and Crimes of Don King," as well as negative television documentaries and teledramas featured on the PBS-sponsored "Frontline", ESPN's "Sports Century", and HBO (John Herzfeld's television film "Only in America" based on Newfield's book by the same name).

[4] The Associated Press, *Tyson Reaches a Settlement with King*, The New York Times (June 26, 2004), available at https://www.nytimes.com/2004/06/26/sports/tyson-reaches-a-settlement-with-king.html.

9



CASE NO. 21-CV-61654-WPD

### III.   The WBA and Gilberto Mendoza, Jr.

26.     The WBA is one of four ratings associations in professional boxing. It is generally considered a corrupt organization. This is in large part due to the WBA's practice of accepting payments and/or gifts from promoters and "fixers" in exchange for fraudulently improving the rankings of fighters.

27.     This pay-to-play scheme enables less talented or unqualified fighters to participate in more profitable bouts (including, in some cases, title bouts), which in turn increases the profits collected by their promoters and/or "fixers" who engage in these illicit back-door dealings with WBA officials.

28.     Upon information and belief, this fraudulent ranking scheme has been in effect at least since Gilberto Mendoza, Jr. ("Mendoza") assumed his current position as the WBA's president in 2015 following the death of Mendoza's father who was the former president of the WBA.

29.     Mendoza has since played a central role in facilitating the ongoing corrupt practices of the WBA upon taking over as president of the organization including, but not limited to, the WBA's well-known pay-to-play fighter ranking scheme.

30.     At all times material hereto, Mendoza and the WBA were (and are) legally separate and distinct entities who were associated by virtue of Mendoza's role as the current president of the WBA.

### IV.   Racketeering Activity

31.     The WBA by-laws purport that the organization operates under an "Executive Committee" structure in which WBA executives make decisions about fighter rankings and other

10



CASE NO. 21-CV-61654-WPD

matters. In reality, these decisions are made at the sole discretion of Mendoza in direct violation of the WBA by-laws.

32.     The WBA also claims its decisions and fighter rankings are merit-based, but this is also false. The WBA's decisions and rankings are frequently the result of illicit deals between WBA officials and promoters, "fixers" and others who provide economic incentives to WBA officials in exchange for the WBA issuing favorable decisions or higher rankings for their fighters.

33.     These illicit deals are executed in many forms: In some cases, promoters and "fixers" make payments (or provide things of value) directly to WBA officials. In other instances, promoters and "fixers" will disguise such economic incentives as "donations" or "gifts" to third-parties, which in turn launder these incentives to WBA officials.

34.     Although Mendoza purports to take no salary or emoluments as president of the WBA, this is false: Mendoza is among the WBA officials who have and continue to receive economic incentives through illicit back-door deals with promoters and "fixers" participating in this scheme—this includes King and DKP.

35.     Upon information and belief, King and DKP have engaged in these deals with Mendoza since at least 2015 by making payments and/or providing gifts to Mendoza through at least one third-party: Sports Consulting Services, LLC ("SCS"). Mendoza's son and at least one other WBA employee are believed to have been employed by and/or maintained an ownership interest in SCS since August 2018.

36.     In other words, it is believed that all payments and/or gifts provided to SCS by King and DKP from August 2018 to the present have been passed along to Mendoza and other

11



**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

WBA officials in exchange for Mendoza and the WBA fraudulently improving the ranking of King's and DKP's fighters during this period.

37.     Additionally, King and DKP have participated in this ongoing pay-to-play scheme by providing economic incentives directly to Mendoza under false pretenses: For example, in one instance, King and DKP disguised payments (or other economic incentives) to Mendoza as "wedding gifts" that were given by King and DKP to Mendoza in or about February of 2020 in exchange for Mendoza and the WBA continuing to improve the rankings of King's and DKP's fighter, Bryan.

38.     Furthermore, King and DKP have executed these illicit back-door deals by allowing the WBA to retain money "deposited" by King and DKP for scheduled bouts, which should otherwise have been returned by the WBA to King and DKP under league rules. Additionally, other "fixers" have also admittedly supplied female companionship to WBA officials to "sweeten" these deals.

39.     King and DKP at all times knowingly provided these incentives in exchange for Mendoza and the WBA fraudulently elevating the ranking of King's and DKP's fighters including, but not limited to, Bryan, which in turn directly increased the profits King and DKP received as Bryan's promoters in any WBA-sanctioned bouts and/or endorsement deals.

40.     Upon information and belief, King and DKP began providing the aforesaid illicit economic incentives to Mendoza and the WBA at least as early as the Summer of 2017 shortly

12



CASE NO. 21-CV-61654-WPD

before the WBA inexplicably began accelerating Bryan's WBA fighter ranking from 10th place in September of 2017 to 1st place in July of 2018.[5]

41.    As part of this scheme, Mendoza and the WBA then prepared and disseminated on a monthly basis fraudulent WBA fighter rankings containing Bryan's elevated ranking. These fraudulent rankings were at all times distributed by Mendoza and the WBA via U.S. Mail and the internet (via WBA's website)[6] such that Mendoza and the WBA have committed and continue to commit the crimes of mail and wire fraud by distributing these fraudulent rankings each month.

42.    At all times material hereto, King, DKP, Mendoza, and the WBA knew that such action by Mendoza and the WBA was illegal yet King and DKP deliberately provided the aforesaid incentives to Mendoza and the WBA with the specific intent for Mendoza and the WBA to disseminate the fraudulent rankings containing Bryan's elevated ranking via U.S. mail and the internet from September 2017 to the present.

43.    As a result of these illicit activities committed by King, DKP, Mendoza, and the WBA pursuant to this criminal enterprise (i.e. perpetuated through the WBA organization), Charr has sustained injury to his business and/or property including, but not limited to, a loss of career earnings and endorsement deals.

44.    Additionally, and as hereinafter alleged, the aforesaid illicit activities committed by King, DKP, Mendoza, and the WBA pursuant to this criminal enterprise (i.e. perpetuated through the WBA organization) have resulted in the WBA stripping Charr of his title as the

---

[5] World Boxing Association, *Trevor Bryan, Pro Boxing Record* (available at): https://www.wbaboxing.com/wba-boxer-profile?e=1363651484848486a6f4b2f6c7237796742686e6735673d3d (June 29, 2022).

[6] *Id.*

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

WBA Regular Heavyweight Champion and fraudulently selecting King's and DKP's fighter, Bryan, to replace Charr as the new WBA Regular Heavyweight Champion.

### III.    Charr/Bryan Bout

45.      On March 6, 2019, the WBA issued a resolution requiring Charr to defend his title against King's fighter, Bryan, who the WBA, contrary to its own rules and procedures, promoted to the title of "Interim Champion" after informing the Association of Boxing Commissions ("ABC") in writing that Bryan would not be in line for a mandatory title shot.

46.      The WBA ordered a purse bid for this title fight between Charr and Bryan ("the Charr/Bryan Bout") with the purse bid originally scheduled for May 28, 2019 (the "May 28, 2019 purse bid").

47.      Under WBA rules, the purse bid process requires promoters to submit a bid for the rights to a title fight. Where a purse bid is ordered, the reigning champion typically receives 75% of the total bid with the remaining 25% paid to the challenger.

48.      The WBA uses a standard form "Purse Bid Bout Contract" ("Bout Contract"), which fighters and their respective camps are must sign and return to the WBA ahead of a title fight when a purse bid is ordered. *See* WBA Purse Bid Contract, Exhibit C.

### V.    Promoter Agreement

49.      Shortly before the May 28, 2019 purse bid, DKP and Epic created a partnership and then asked Charr to enter a promoter agreement ("the Promoter Agreement") with both defendants. The Promoter Agreement was signed by Epic and King (on behalf of DKP) in Broward County, Florida on May 26, 2019. *See* Promoter Agreement, Exhibit A.

50.      Under the Promoter Agreement, DKP and Epic agreed to serve as Charr's co-promoters "for a minimum period of two years or as long as Charr [was] world champion of the

14



CASE NO. 21-CV-61654-WPD

WBA, WBC, IBF and/or WBO . . . plus two years after [Charr] cease[d] to be a world champion." *Id.* at Par. 2. DKP and Epic also promised "to offer Charr a minimum of two bouts during each year" for the term of the contract. *Id.*

51.     The Promoter Agreement also provided that, "while Charr [was] world champion, his purse for his bouts [would] be . . . not less than $750,000.00, unless otherwise agreed upon by the parties." *Id.* The contract stated as well that DKP would bid "at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* at Par. 4.

52.     The Promoter Agreement further provided that if DKP won the purse bid for the Charr/Bryan Bout, Charr would "accept his purse share as determined by the WBA; provided, however that if such purse bid share [was] less than $1,000,000.00 . . . then [DKP and Epic would] supplement Charr's purse to One Million Dollars." *Id.* at Par. 3.

**VI.     Breach of Promoter Agreement**

53.     Within days of entering the Promoter Agreement, King, DKP, and Epic caused the WBA to cancel the May 28, 2019 purse bid despite the terms of the Promoter Agreement expressly providing that this bid would be held. King, DKP, and Epic had no legal right to cause the WBA to cancel the May 28, 2019 purse bid.

54.     Although DKP and Epic have since claimed that there was an agreement with Charr to cancel the May 28, 2019 purse bid, this is plainly false. Charr did not consent to the cancellation of this purse bid, and the terms of the Promoter Agreement required DKP and Epic to participate in this purse bid.

55.     By not providing Charr a Bout Contract to sign, and in turn, causing the WBA to cancel the May 28, 2019 purse bid and postpone the Charr/Bryan Bout, DKP and Epic breached

15

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

the Promoter Agreement with Charr by failing to "bid at least $1,000,000 at the May 28, 2019

purse bid for the Charr/Bryan Bout" as was required by the terms of the contract. *Id.* at Par. 4.

56.     Additionally, DKP and Epic committed a further breach of the Promoter Agreement

by failing to "offer Charr a minimum of two bouts during each year of the term" of the agreement

beginning with the postponement of the Charr/Bryan Bout. *Id.* at Par. 2.

57.     As a result of DKP and Epic's breaches of the Promoter Agreement, Charr sustained

economic damages, including, but not limited to, approximately $1 million in lost income that

DKP and Epic were obligated to pay Charr for his purse in the Charr/Bryan Bout in addition to

other monies Charr would have received from endorsement deals as a result of participating in that

bout. *Id.* at Par. 3.

**VII.    Charr/Bryan Bout (Rescheduled)**

58.     By resolution dated February 19, 2020 ("the WBA resolution"), the WBA called

for another purse bid to take place on March 2, 2020 for the rescheduled Charr/Bryan Bout, which

was now set for January 29, 2021. *See* Feb. 19, 2020 WBA Resolution No. 202002191702, Sec.

III. Decision, Par. A, Exhibit E.

59.     The WBA resolution provided that if the parties could not agree on their own terms

for a purse bid contract, the parties were to "submit a signed copy of the basic standard bout

contract suggested by the WBA" within twenty (20) days, which was consistent with the WBA

rules. *Id.* at Section III. Decision, Par. B.

60.     Charr's counsel was informed that this language was specifically included in the

WBA resolution to clarify what information needed to be submitted to the WBA ahead of the title

fight due to DKP and Epic's prior defaults and delays that caused the WBA to cancel the

initial purse bid and postpone the original Charr/Bryan Bout.

16

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

61.     On March 2, 2020, the purse bid went forward as planned: DKP won the rights to the rescheduled Charr/Bryan Bout with a bid of a $2 million. Pursuant to the WBA resolution, Charr, as reigning champion, was to receive 75% of the total bid amount or $1.5 million of DKP's $2 million bid. *Id.* at Section III. Decision, Par. A.

**VIII.   Bout Contract**

62.     Despite winning the bid, DKP once again never provided Charr with a standard WBA Bout Contract to sign. *See* DKP Bout Agreement, Exhibit F. As a result, Charr took it upon himself to (twice) execute a standard WBA Bout Contract, which he sent to DKP to countersign and return to the WBA consistent with league rules. *See* Mar. 19, 2020 WBA Purse Bid Contract, Exhibit G; Dec. 8, 2020 WBA Purse Bid Contract, Exhibit H; and December 19, 2020 Email, Exhibit I.

63.     Although DKP received the signed WBA Bout Contract from Charr, DKP submitted a different unsigned "Don King Productions, Inc. - Bout Agreement" ("DKP's Bout Contract") to the WBA for approval in violation of WBA rules. The bout contract submitted by DKP to the WBA did not conform with the standard WBA Bout Contract.

64.     DKP's Bout Contract was instead an option agreement providing, in short, that DKP would only honor its contractual obligations to promote the Charr/Bryan Bout if certain contingencies occurred. This included DKP securing a location for the title fight as well as television rights for the bout.

65.     DKP refused to sign the standard WBA Bout Contract after realizing the $2 million bid for the bout was excessive compared to the income the Charr/Bryan Bout was expected to generate. The standard WBA Bout Contract did not allow DKP to opt out of the purse bid and/or extend the terms of the purse bid for the Charr/Bryan Bout such that DKP used

17



CASE NO. 21-CV-61654-WPD

its own contract, which provided these outs. *See* DKP Bout Agreement, Sec. VII, Force Majeure and Other Postponements, Exhibit F.

66.     Charr initially objected to signing DKP's Bout Contract for all of these reasons as well as because DKP's Bout Contract incorporated terms that violated the Muhammad Ali Act which, under 15 U.S.C. § 6307b (b), prohibits promoters (i.e. King and DKP) from demanding future promotional rights to a mandatory bout as was contemplated by the terms in the DKP Bout Contract. *Id.* at Exhibit F.

**IX.     Revised DKP Bout Contract**

67.     Recognizing the glaring problems with DKP's Bout Contract, Charr's counsel conferred with the WBA Championships Committee Chair, Carlos Chavez ("Chavez"), about the terms in the contract as well as about DKP's refusal to sign the standard WBA Bout Contract in accordance with WBA rules, to no avail. Under league rules, the WBA should have defaulted DKP for refusing to use the WBA Bout Contract: This did not occur.

68.     Instead, DKP and King continued to exert undue influence over the WBA to persuade the WBA to violate its own rules by requiring the parties to sign DKP's Bout Contract as opposed to the standard WBA Bout Contract, which contradicted the terms in the WBA resolution that expressly recommended the parties use the standard WBA Bout Contract.

69.     Nonetheless, Chavez advised Charr's counsel that Charr should simply remove the "objectionable" portions of the DKP Bout Contract then sign and return it to DKP to countersign and submit to the WBA. With no other choice, Charr did just that. The DKP Bout Contract was executed by Charr and transmitted via email to counsel for DKP (and King) on or about December 19, 2020. *See* December 19, 2020 Email, Exhibit I.



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

70.     Charr's counsel reiterated in the December 19, 2020 email that the objectionable terms of the DKP Bout Contract were removed pursuant to the WBA/Chavez's instructions and noted that, despite Charr twice signing a standard WBA Bout Contract, Charr executed the revised DKP Bout Contract to ensure he was able to defend his title after the WBA threatened to strip Charr of his title if he did not sign the DKP Bout Contract. *Id.*

71.     Thereafter, Charr's counsel repeatedly followed up with counsel for DKP and King via email and in conversations to inquire why the DKP Bout Contract had not been countersigned and returned to the WBA by King and DKP. DKP's counsel replied each time that he did not know. In reality, DKP and King were intentionally sitting on the DKP Bout Contract to prevent the Charr/Bryan Bout from going forward in order to avoid paying Charr the $1.5 million purse he was owed for the bout.

**X.     DKP/King Obstruction**

72.     In addition to refusing to submit the signed DKP Bout Contract to the WBA as was required under WBA rules, DKP and King took further steps to prevent Charr from defending his title as the reigning WBA Regular Heavyweight Champion and to avoid paying Charr the $1.5 million sum he was owed for the Charr/Bryan Bout.

73.     For example, the standard WBA Bout Contract required DKP and King to assist Charr, who resided in Germany at the time, with securing the appropriate Visa necessary to travel to the United States to participate in the Charr/Bryan Bout scheduled for January 29, 2021.

74.     Although King assured Charr, who is Muslim, that he would use his "connections" to the Trump Administration – which had signed into law the so-called "Muslim Ban" that made it difficult for Charr to enter the United States at the time – to expedite the



CASE NO. 21-CV-61654-WPD

process for obtaining the required Visa for Charr to travel to the United States for the fight, this never occurred.

75.     As a result, Charr was left to his own devices and personally began the process of securing his P-1 Visa through the United States consulate in Frankfurt, Germany as soon as the "Muslim ban" was lifted upon President Biden taking office. To obtain his P-1 Visa, Charr was required to produce to the consulate a copy of the parties' executed DKP Bout Contract as proof of his reason for traveling to the United States.

76.     On January 26, 2021, Charr's counsel contacted counsel for DKP and King to request a copy of the signed DKP Bout Contract while explaining that Charr could not obtain his P-1 Visa without it, and thus, could not participate in the Charr/Bryan Bout unless and until DKP and King forwarded a copy of the signed contract to Charr. *See* January 26, 2021 Emails re: Charr P-1 Visa, Exhibit J.

77.     Despite this request, which Charr's counsel expressly noted was made under significant time restraints given the impending fight date, DKP and King deliberately failed to produce a copy of the signed contract in order to prevent Charr from participating in the Charr/Bryan Bout and receiving the $1.5 million purse he was entitled to from DKP and King under the Promoter Agreement.

**XI.     Charr Stripped of Regular Heavyweight Champion Title**

78.     When Charr was unable to travel to the United States as a result of not obtaining his P-1 Visa due to DKP's and King's obstruction tactics, the WBA cancelled the Charr/Bryan Bout. Thereafter, DKP and King once more exerted undue influence over the WBA by convincing the organization to strip Charr of his title as a result of the cancelled bout.

20

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

79.     The WBA ratings chair directly informed Charr's counsel that all applicable decisions concerning the WBA stripping Charr of his title as the WBA Regular Heavyweight Champion were made by Mendoza—these decisions at all times violated WBA rules, and were made as a result of the aforesaid back-door dealings between King, DKP, Mendoza, and the WBA, which aimed to elevate Bryan as the new WBA Regular Heavyweight Champion.

80.     And indeed, with Charr no longer holding his title as the WBA Regular Heavyweight Champion, DKP, King, Mendoza, and the WBA quickly arranged a new fight for the WBA Regular Heavyweight Championship title between Bryan and a far less capable boxer, Bermane Stiverne ("Stiverne"), who was 10 years Bryan's senior and had been knocked out by his two previous opponents.

81.     Mendoza and the WBA worked in concert with DKP and King to organize this fraudulent bout and position Bryan as the new WBA Regular Heavyweight Champion by artificially inflating Stiverne's ranking to make it appear as though Stiverne was qualified to face Bryan in the title bout under the WBA fighter ranking system and league rules. In reality, this was a scam, and the WBA knowingly violated its own rules by arranging for Stiverne to face Bryan in the title bout.

82.     The reason for this matchup was obvious: DKP, King, Mendoza, and the WBA worked in concert to ensure that Bryan faced an opponent he could easily defeat (i.e. the much older, less qualified Stiverne) so that Bryan could be crowned the new WBA Regular Heavyweight Champion. In turn, Bryan's elevated ranking would (and did) maximize the profits paid to DKP and King as Bryan's promoters in that fight and in all fights thereafter as long as Bryan retained his title.

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

83.     On January 30, 2021, Bryan and Stiverne fought for the WBA Regular Heavyweight Champion title in Hollywood, Florida. As expected, Bryan easily defeated the 42-year-old Stiverne by TKO in the eleventh round to become the new WBA Regular Heavyweight Champion. King and DKP were directly enriched as a result enjoying the profits of Bryan's WBA Regular Heavyweight title win.

84.     Later that same year, on December 9, 2021, the WBA then held another purse bid for a rescheduled Charr/Bryan Bout. This time, the purse bid was held in Miami, Florida with the purse for the fight split significantly in favor of Bryan in light of the fact that Bryan was now the reigning WBA Regular Heavyweight Champion—a position that rightfully belonged to Charr at the time.

85.     Once again, Mendoza and the WBA worked in concert with King and DKP to prevent the fight from going forward recognizing full well that Bryan could not defeat Charr. To do this, King and DKP incorporated additional terms in the purse bid contract for the fight that made it impossible for Charr to qualify for the bout. For example, jettisoning the original terms of the standard WBA purse bid contract, the new terms required Charr to obtain his own P-1 Visa by or before December 29, 2021 or Charr would be stripped of the opportunity to fight Bryan.

86.     In short, it was impossible for Charr to obtain his P-1 Visa by this date as he was living in Germany at the time and there were no appointments available at the United States Consulate in Germany as a result of the holiday season, which King and DKP were well aware of at the time these new terms were incorporated.

87.     More significantly, the new terms also required DKP to submit a dually executed bout contract to the WBA by December 29, 2021. However, it is generally true that foreign

22



CASE NO. 21-CV-61654-WPD

fighters in Charr's position (who seek to travel to the United States to participate in a bout) are required to produce a copy of the signed bout contract as part of their application for a P-1 Visa such that these terms also made it impossible for Charr to comply with the contract.

88.     Despite Charr's counsel (Mr. English) promptly notifying DKP (prior to the December 29, 2021 deadline) that Charr needed a copy of the signed bout contract in order to obtain his P-1 Visa from the United States Consulate in Germany to participate in the bout and subsequently requesting multiple times that DKP forward a copy of the contract immediately, DKP willfully failed to do so.

89.     When Charr, through his undersigned counsel (Mr. English), then requested additional time from the WBA to obtain Charr's P-1 Visa given the circumstances and the delay caused by DKP's refusal to timely provide a copy of the signed contract to Charr, the WBA, at DKP and King's behest, denied the request and thus violated Charr's rights under the December 9, 2021 purse bid contract.

90.     The WBA's refusal to grant Charr additional time to obtain the P-1 Visa marked yet another example of the organization's corrupts practices and selective enforcement of its rules as Mendoza and the WBA completely ignored the organization's rules requiring DKP to be defaulted for refusing to use the standard WBA Bout Contract.

## COUNT I
## <u>VIOLATIONS OF 15 U.S.C. § 6308 ("THE MUHAMMAD ALI ACT")</u>

### Charr v. King, DKP, Epic, WBA, and Mendoza

91.     Plaintiff, Charr, adopts and incorporates into Count I the general allegations in Paragraphs 1 – 90 and further alleges:

92.     Charr is a "Boxer" as defined in 15 U.S.C. § 6301(1).

23



CASE NO. 21-CV-61654-WPD

93.     King, DKP, and Epic are "Promoters" as defined in 15 U.S.C. § 6301(9).

94.     The WBA is a "Sanctioning Organization" as defined in 15 U.S.C. § 6301(14).

95.     The WBA purports to have a criteria for rankings, which the WBA does not follow in violation of 15 U.S.C. § 6307.

96.     Upon information and belief, the WBA has failed to file the disclosures required under 15 U.S.C. § 6307d despite this statute clearly mandating the WBA do so prior to receiving any compensation.

97.     15 U.S.C. § 6308(c) specifically provides that no officer or employee of a sanctioning organization may receive compensation, gifts, or benefits, directly or indirectly, from a promoter, boxer, or manager except as part of a published sanctioning fee charge that is reported to a commission. This section is intended to prohibit such compensation, gifts or benefits not only to officers and employees of the sanctioning organization, but also to the sanctioning organization itself (i.e. the WBA).

98.     The WBA and its officers and employees regularly violate 15 U.S.C. § 6308(c). Indeed, monetary gifts have been openly solicited by WBA officers and employees including, but not limited to, WBA president Mendoza, and monetary payments have been made to entities of which Mendoza's son and another WBA employee were part (i.e. Sports Consulting Services, LLC).

99.     Certain "fixers" have also openly bragged about their relationships with WBA officers and employees including, but not limited to, Mendoza, and the benefits they claim to have paid and/or provided to Mendoza and other officers and employees of the WBA.

100.    King, DKP, and Epic are thus believed to have violated 15 U.S.C. § 6308(c) by paying compensation, providing gifts, and/or providing other benefits to officers and employees

24



CASE NO. 21-CV-61654-WPD

of the WBA, directly and/or indirectly, and by otherwise exerting undue influence over Mendoza and the WBA.

101.    Furthermore, DKP and King, with the assistance of the WBA, attempted to extort future rights in a mandatory bout situation from Charr by changing the terms of the standard WBA Bout Contract, which is expressly prohibited by 15 U.S.C. § 6307b(b). When Charr resisted these attempts, DKP took action to bypass Charr as is shown throughout this Amended Complaint.

102.    Charr has been harmed as a result of these violations of the Muhammad Ali Act by King, DKP, Epic, and Mendoza as aforesaid.

103.    15 U.S.C. § 6309(d) grants a private right of action to boxers for violation of the Muhammad Ali Act.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, King, DKP, Epic, WBA, and Mendoza, for actual and consequential damages in excess of two million dollars ($2,000,000.00), as well as attorney's fees, costs, and interest, in addition to any other relief the Court deems just and proper.

<div align="center">

**COUNT II**
**VIOLATION OF 18 U.S.C. § 1962, RACKETEER**
**INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")**

**Charr v. King, DKP, Mendoza, and WBA**

</div>

104.    Plaintiff, Charr, adopts and incorporates into Count II the general allegations in Paragraphs 1 – 103 and further alleges:

105.    The WBA is an "Enterprise" within the meaning of 18 U.S.C. § 1962.

106.    DKP is a "Person" within the meaning of 18 U.S.C. § 1962.

107.    Mendoza is a "Person " within the meaning of 18 U.S.C. § 1962.

<div align="center">25</div>



CASE NO. 21-CV-61654-WPD

108.    King is a "Person" within the meaning of 18 U.S.C. § 1962.

109.    At all times material hereto, the WBA disseminated fighter rankings via wire (i.e. on the WBA's public website) and U.S. Mail, which purport to be fair and unbiased and grant entitlements to the boxers who are ranked.

110.    For example, a champion-ranked boxer is entitled to a higher percentage of the total purse bid for a bout under WBA rules. A boxer ranked as a mandatory contender is entitled to fight for a championship title, and a non-champion ranked boxer is entitled to fight for the title in what is known as a "voluntary defense".

111.    At all times material hereto, the rankings issued and disseminated by the WBA via wire (internet) and U.S. Mail have been fraudulent in that Mendoza and the WBA intentionally manipulate these rankings to favor the fighters of promoters and "fixers" who pay for improved rankings as opposed to reflecting the merits of the boxers listed or, as the case may be, prevented from being listed.

112.    At all times material hereto, Mendoza and the WBA intentionally and fraudulently manipulated the WBA's rankings to favor King's and DKP's fighter, Bryan, over Charr in exchange for King and DKP making ongoing payments and/or providing gifts to Mendoza and the WBA through at least one third-party: Sports Consulting Services, LLC.

113.    King and DKP have also engaged in these illicit deals with Mendoza and the WBA by making payments and/or providing items of value directly to Mendoza including (in at least one instance) in the form of "wedding gifts" given by King and DKP to Mendoza in or about February 2020.

26



CASE NO. 21-CV-61654-WPD

114. Furthermore, King, DKP, Mendoza, and the WBA have executed these deals in the form of King and DKP allowing the WBA to retain "deposit money" for bouts that should otherwise have been returned to King and DKP pursuant to league rules.

115. As part of this ongoing scheme, Mendoza and the WBA then prepared and disseminated on a monthly basis fraudulent WBA fighter rankings containing Bryan's elevated ranking, which were distributed by Mendoza and the WBA via U.S. Mail and the internet (via WBA's website)[7].

116. The issuance of the WBA's fraudulent rankings—specifically with respect to King's and DKP's fighter, Bryan—has occurred each month since at least September 2017 and constitutes mail and wire fraud in interstate commerce in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343; furthermore, the acts committed by King, DKP, Mendoza, and the WBA are in violation of 18 U.S.C. § 1346 in that these acts are part of a scheme to defraud.

117. Additionally, the acts of giving and taking monies and other things of value by King, DKP, Mendoza, and the WBA also violate 18 U.S.C. § 224 ("Bribery in sporting contests") in that these acts were committed with the intent to influence the outcome of sporting events— another aspect of the illegal scheme perpetrated by King, DKP, Mendoza, and the WBA as set forth above.

118. The aforesaid criminal acts constitute a pattern of activity within the contemplation of 18 U.S.C. § 1962 Racketeer Influenced Corrupt Organizations Act ("RICO") and, as a proximate result of these activities, Charr has sustained a loss of career earnings.

---

[7] *Id.*

27



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, King, DKP, Mendoza, and the WBA, for actual and consequential damages in excess of two million dollars ($2,000,000.00), as well as attorney's fees, costs, interest, and treble damages, in addition to any other relief the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT (PROMOTER AGREEMENT)

### Charr v. DKP and Epic

119.    Plaintiff, Charr, adopts and incorporates into Count III the allegations in Paragraphs 1 - 118 and further alleges:

120.    On May 26, 2019, Charr entered a legally valid and enforceable Promoter Agreement with DKP and Epic. *See* Exhibit A.

121.    The Promoter Agreement provided that DKP and Epic would serve as Charr's promoters "for a minimum period of two years" and "offer Charr a minimum of two bouts during each year" the agreement was in effect. *Id.* at Par. 2, Exhibit A.

122.    The Promoter Agreement also provided that DKP and Epic would "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout." *Id.* at Par. 4, Exhibit A. Further, the Promoter Agreement stated that Charr's purses as champion in all bouts would not be "less than $750,000 unless agreed otherwise by the parties." *Id.* at Par. 2, Exhibit A.

123.    DKP and Epic breached the Promoter Agreement by failing to provide Charr with a bout contract for the Charr/Bryan Bout and, in turn, failing to submit a signed bout contract on Charr's behalf to the WBA for that fight, which caused the WBA to cancel the May 28, 2019 Charr/Bryan Bout purse bid and postpone the Charr/Bryan Bout without Charr's knowledge or consent.

28



**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

124. DKP and Epic further breached the Promoter Agreement by then failing to "bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout" as they were obligated to do and also as a result of having caused the WBA to cancel the May 28, 2019 purse bid.

125. Additionally, DKP and Epic committed a further breach of the Promoter Agreement by failing to "offer Charr a minimum of two bouts during each year" the Promoter Agreement was in effect beginning with the postponed Charr/Bryan Bout.

126. As a result of DKP and Epic's breaches, Charr sustained damages, including, but not limited to, $1 million in lost income that DKP and Epic were obligated to pay Charr as his purse for the original Charr/Bryan Bout. Charr has also been forced to incur reasonable attorney's fees and costs in seeking to recover these damages.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, DKP and Epic, for actual and consequential damages in excess of one million dollars ($1,000,000.00), as well as attorney's fees, costs, and interest, in addition to any other relief the Court deems just and proper.

<div align="center">

**COUNT IV**
**<u>BREACH OF CONTRACT (PURSE BID AGREEMENT)</u>**

**Charr v. DKP**

</div>

127. Plaintiff, Charr, adopts and incorporates into Count IV the general allegations in Paragraphs 1 - 126 and further alleges:

128. By resolution dated February 19, 2020 ("the WBA resolution"), the WBA ordered a purse bid for the rescheduled Charr/Bryan Bout to occur March 2, 2020. The resolution provided that, unless otherwise agreed by the parties, the standard WBA Bout Contract was to be used for the fight. *See* Feb. 19, 2020 WBA Resolution No. 202002191702, Sec. III, Decision, Par. B, Exhibit E.

<div align="center">

29



**BlackSrebnick**
CIVIL | CRIMINAL

</div>

CASE NO. 21-CV-61654-WPD

129.     The bid by DKP constituted an acceptance of the purse bid terms and an offer to promote a bout pursuant to the terms of the referenced resolution.

*130.*     On March 2, 2020, DKP won a $2 million purse bid for the rights to the Charr/Bryan Bout, which was scheduled to take place on January 29, 2021. Pursuant to the WBA resolution, Charr was entitled to 75% of DKP's total bid amount or $1.5 million as the reigning champion at the time. *Id.*

131.     Charr accepted the terms of the offer manifested by the bid of DKP.

132.     DKP's $2 million bid, submitted in accordance with the terms of the WBA resolution and Charr's acceptance of those terms and the amount of DKP's bid, created a legally valid and enforceable contract between DKP and Charr.

133.     This contract was supported by an offer (DKP's $2 million bid), Charr's acceptance of the offer (the amount and terms of DKP's bid), and mutual consideration (DKP's promise to pay $1.5 million of the $2 million bid to Charr and Charr's promise to fight in the Charr/Bryan Bout for the stipulated amount).

134.     DKP breached this contract by refusing to sign and submit the standard WBA Bout Contract as was required by the purse bid terms to the WBA ahead of the rescheduled Charr/Bryan Bout as was required pursuant to the WBA resolution and pursuant to WBA rules.

135.     As a result of DKP's breach, Charr sustained damages, including, but not limited to, the $1.5 million in lost income that DKP was obligated to pay Charr for his purse in the rescheduled Charr/Bryan Bout. Charr has also been forced to incur reasonable attorney's fees and costs in seeking to recover these damages.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendant, DKP, for actual and consequential damages in excess of one million and five hundred thousand dollars



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

($1,500,000.00), as well as attorney's fees, court costs, and interest, in addition to any other relief the Court deems proper.

### COUNT V
### <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP</u>

#### Charr v. King and DKP

136.    Plaintiff, Charr, adopts and incorporates into Count V the general allegations in Paragraphs 1 - 135 and further alleges:

137.    At all times material hereto, there existed a valid business relationship between Charr and the WBA that gave Charr the legal right to participate in WBA-sanctioned bouts including, but not limited to, the Charr/Bryan Bout. King and DKP was at all times aware of this business relationship between the WBA and Charr.

138.    After winning the $2 million purse bid for the rescheduled Charr/Bryan Bout and realizing the bid was excessive, King and DKP intentionally and unjustifiably interfered with Charr's business relationship with the WBA to prevent the fight from going forward, first, by refusing to sign the standard WBA Bout Contract as was required for the fight to occur.

139.    Additionally, DKP and King intentionally and unjustifiably interfered with Charr's business relationship with the WBA by coercing Charr into signing the noncompliant DKP Bout Contract, which violated WBA rules and contained terms prohibited by the Muhammad Ali Act, 15 U.S.C. § 6307b(b).

140.    DKP and King further intentionally and unjustifiably interfered with Charr's business relationship with the WBA by refusing to submit the executed DKP Bout Contract to the WBA and withholding a copy of the contract from Charr, despite his requests, to prevent

31

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

Charr from obtaining his P-1 Visa and traveling to the United States to participate in the Charr/Bryan Bout.

141.    Finally, DKP and King intentionally and unjustifiably interfered with Charr's business relationship with the WBA by exerting undue influence over the WBA after Charr was prevented from defending his title by causing the WBA to improperly strip Charr of his title as the reigning Regular Heavyweight Champion.

142.    As a result of King and DKP's unlawful interference, the WBA cancelled the rescheduled Charr/Bryan Bout causing Charr to sustain damages including, but not limited to, $1.5 million in lost income that King and DKP were obligated to pay Charr for his purse in that title fight.

143.    As a further result, the WBA stripped Charr of his title and gave Charr the lesser designation of WBA Regular Heavyweight Champion (in recess), which has diminished Charr's reputation, marketability, and overall value as a professional boxer such that the quality of fights, endorsement deals, and purse amounts Charr receives in the future will be significantly less.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, King and DKP, for actual and consequential damages in excess of two million dollars ($2,000,000.00) in addition to any other relief the Court deems just and proper.

<div align="center">

**COUNT VI**
**<u>BREACH OF CONTRACT (WBA RULES AND DECREES)</u>**

**Charr v. WBA**

</div>

144.    Plaintiff, Charr, adopts and incorporates into Count VI the general allegations in Paragraphs 1 – 143 and further alleges:

145.    The WBA is a private organization that purports to operate on a non-profit basis.

<div align="center">

32

**BlackSrebnick**
CIVIL | CRIMINAL

</div>

CASE NO. 21-CV-61654-WPD

146.     It is established law that a private organization owes an obligation to act fairly and in accordance with its rules and by-laws with respect to those which it governs.

147.     This has been expressly extended to boxing sanctioning organizations such as the WBA to fighters governed by these organizations such as Charr.

148.     Hence, the rules and the legitimate decrees of the WBA at all times constituted an independent and legally enforceable contract between Charr and the WBA as both parties agreed to abide by the terms provided therein as pertaining to all WBA-sanctioned bouts.

149.     More specifically, the WBA was at all times obligated under its rules and decrees to ensure that DKP used the standard WBA Bout Contract with respect to the rescheduled Charr/Bryan Bout.

150.     The WBA violated its rules and decrees and thereby breached its contract with Charr by allowing DKP to use a bout contract different from the WBA Bout Contract instead of defaulting DKP in response to its refusal to use the required standard bout contract.

151.     The WBA further violated its rules and decrees and thereby breached its contract with Charr by selectively enforcing its rules and decrees against Charr but not against DKP with respect to the rescheduled Charr/Bryan Bout.

152.     As a result of the WBA's breach, Charr was prevented from participating in the resheduled Charr/Bryan Bout and sustained damages.

WHEREFORE, Plaintiff, Charr, demands judgment against Defendant, WBA, for actual and consequential damages in excess of two million ($2,000,000.00) in addition to any other relief the Court deems proper.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

## COUNT VII
## <u>CIVIL CONSPIRACY</u>

### Charr v. King, DKP, Mendoza, the WBA

153.    Plaintiff, Mahmoud Charr, adopts and incorporates into Count VII the general allegations in Paragraphs 1 - 152 and further alleges:

154.    At all times material hereto, King, DKP, Mendoza, and WBA officials entered an agreement to illegally exert undue influence over the WBA for the malicious purpose of causing the WBA to strip Charr of his WBA Regular Heavyweight Champion title without cause and in violation of WBA rules.

155.    At all times material hereto, King, DKP, Mendoza, and WBA officials worked in concert to perpetrate the illegal and overt act of exerting undue influence on the WBA for the malicious purpose of persuading the WBA to strip Charr of his Heavyweight Championship title without cause and in violation of WBA rules.

156.    In major part, this was because Charr declined to give future promotion rights to King and DKP, something which he was not obligated to do under 15 U.S.C. § 6307b(b).

157.    As a result of the illegal and overt acts committed by King, DKP, Mendoza, and WBA officials in furtherance of this conspiracy, Charr sustained damages including, but not limited to, the loss of his title as the rightful WBA Heavyweight Champion.

158.    As a further result, Charr was given the lesser designation of WBA Regular Heavyweight Champion (in recess) and then, ultimately, this lesser title was removed entirely, which has diminished Charr's reputation, marketability, and overall value as a professional boxer such that the quality of fights and purse amounts Charr receives in the future will be significantly less.

34



CASE NO. 21-CV-61654-WPD

WHEREFORE, Plaintiff, Charr, demands judgment against Defendants, King, DKP, Mendoza, and the WBA for actual and consequential damages in excess of two million dollars ($2,000,000.00) in addition to any other relief the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, Mahmoud Charr, demands a trial by jury for all issues triable.

Dated: August 8, 2022

BLACK SREBNICK, P.A.
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
305-371-6421 Telephone
305-358-2006 Fax

By:   /s/ Jared Lopez
    Jared Lopez, Esq.
    Florida Bar No. 103616
    Donald Hodson, Esq.
    Florida Bar 120256
    JLopez@RoyBlack.com
    DHodson@RoyBlack.com
    civilpleadings@royblack.com



CASE NO. 21-CV-61654-WPD

DINES AND ENGLISH LLC
685 Van Houten Avenue
Clifton, New Jersey 07013
973-778-7575 Telephone
973-778-7633 Fax

By: /s/ Patrick C. English
      Patrick English, Esq.
      New Jersey Bar No. 023811978
      dinesandenglish@aol.com

*Counsel for Plaintiff Mahmoud Charr*

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

# EXHIBIT A

37



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

## AGREEMENT

1. Don King Productions, Inc. ("DKP") and Epic Sports & Entertainment, Inc. ("Epic") agree to collaborate and work cooperatively with respect to the "Don King's Epic Quest for Peace" (with the actual name to be determined by Don King ("DK")).

2. Mahmoud Charr ("Charr") agrees that DKP and Epic [illegible] promoters [illegible] The term of such co-promotion shall be [illegible] world champion of the WBA [illegible] world title [illegible] two years after he ceases to be a world champion. While Charr is a world champion his purse for his bouts will be negotiated and mutually agreed upon in good faith [illegible] less than $1,000,000 unless otherwise agreed upon by the parties. DKP and Epic agree to offer Charr a minimum of two bouts during each year of the term hereof. If Charr loses a bout or ceases to be world champion, then his purse for all subsequent bouts hereunder will be negotiated and mutually agreed upon in good faith based on the then prevailing market conditions for Charr's bouts.

I.G. DK purse MC.

3. For the Charr vs. Trevor Bryan ("Bryan") bout (the "Charr Bryan Bout") if DKP is the winner of the purse bid for the Charr Bryan Bout, Charr agrees to accept his purse share as determined by the WBA, provided, however, that if such purse bid share is less than $1,000,000 [illegible] supplement Charr's purse to One Million Dollars. However, if DKP and Epic promote Charr Bryan Bout [illegible] Charr agrees to accept [illegible] purse for the Charr Bryan Bout [illegible]

4. The parties further understand and agree that DKP intends to bid at least $1,000,000 at the May 2?, 2019 purse bid for the Charr Bryan Bout. The Charr Bryan Bout will be governed by [illegible] conducted in accordance with and the officials shall be designated in conformity with the WBA rules and regulations. If DKP wins such Purse Bid, then notwithstanding DKP's rights to promote the Charr Bryan Bout pursuant to the WBA rules and regulations, the WBA shall be the ultimate authority governing the Charr Bryan Bout.

I.G the WBA DK MC.

I.G by the WBA DK MC.

5. This Agreement is governed by Florida law. The exclusive forum for any disputes shall be the courts located in the State of Florida.

DON KING PRODUCTIONS, INC

By: [signature]

[signature]

Mahmoud Charr

EPIC SPORTS & ENTERTAINMENT, INC

By: [signature]

State of Florida County of BROWARD
Sworn to (or affirmed) and subscribed before me this 26 day of MAY, 2019.
By IVAYLO GOTZEV
Personally known X OR produced identification ____
Type of identification produced ____

[signature] Notary Public
My Commission Expires 08/14/2022

GRACE V. JOHANSSON
Notary Public - State of Florida
Commission # GG 245665
My Comm. Expires Aug 14, 2022
Bonded through National Notary Assn.

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

# EXHIBIT B



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

**AGREEMENT**

1.      Don King Productions, Inc. ("DKP") and Epic Sports & Entertainment, Inc. ("Epic") agree to collaborate and work cooperatively with respect to the "Don King's Epic Quest for Peace," with the actual name to be determined by Don King ("DK").

2.      Mahmoud Charr ("Charr") agrees that DKP and Epic shall be his co-promoters on an equal 50/50 basis. The term of such co-promotion shall be for a minimum period of two years or as long as Charr is world champion of the WBA, WBC, IBF and/or WBO (including if Charr ceases to be champion and regains such a world title during the two year period referred to below) plus two years after he ceases to be a world champion. While Charr is a world champion his ~~for~~ his bouts will be *purse* negotiated and mutually agreed upon in good faith, but not less than $750,000, unless otherwise agreed upon by the parties. DKP and Epic agree to offer Charr a minimum of two bouts during each year of the term hereof. If Charr loses a bout or ceases to be world champion, then his purse for all subsequent bouts hereunder will be negotiated and mutually agreed upon in good faith based on the then prevailing market conditions for Charr's bouts.

3.      For the Charr vs. Trevor Bryan ("Bryan") bout (the "Charr/Bryan Bout") if DKP is the winner of the purse bid for the Charr/Bryan Bout, Charr agrees to accept his purse share as determined by the WBA; provided, however, that if such purse bid share is less than $1,000,000 to Charr, then the promotion will supplement Charr's purse to One Million Dollars. However, if DKP and Epic promote Charr/Bryan Bout in Bulgaria, Charr agrees to accept as his purse for the Charr/Bryan Bout the sum of US$750,000.

4.      The parties further understand and agree that DKP intends to bid at least $1,000,000 at the May 28, 2019 purse bid for the Charr/Bryan Bout. The Charr/Bryan Bout will be governed by, and *by the* ~~The WBA~~ conducted in accordance with ~~and~~ the officials shall be designated ~~in~~ conformity with the WBA rules and *WBA* regulations. If DKP wins such Purse Bid, then notwithstanding DKP's rights to promote the Charr/Bryan Bout pursuant to the WBA rules and regulations, the WBA shall be the ultimate authority governing the Charr/Bryan Bout.

5.      This Agreement is governed by Florida law. The exclusive forum for any disputes shall be the courts located in the state of Florida.

DON KING PRODUCTIONS, INC.          EPIC SPORTS & ENTERTAINMENT, INC.

By _____          By _____

_____

Mahmoud Charr

Dated:  May 25, 2019

41



CASE NO. 21-CV-61654-WPD

# EXHIBIT C

42



CASE NO. 21-CV-61654-WPD

## World Boxing Association
## Purse Bid Bout Contract

This Agreement, dated the _____ day of _____, 20____, is made between _____ a duly commission-licensed boxing promoter ("Promoter") who is a registered and in good standing with World Boxing Association ("WBA") in good standing having paid all licenses and fees, and _____ ("Boxer") with Federal Tax Identification No. _____, represented by _____, his duly authorized manager pursuant to a manager agreement on file with the local boxing commission located at _____.

The parties hereto agree to hold a WBA Championship title contest in the _____ Division within the maximum weight limit of _____ lbs./ _____ kgs. between Boxer and his opponent, _____, ("Bout") under the following terms and conditions:

1.    The Bout will be twelve (12) rounds and held at _____ on the _____ day of _____, 20___.

2.    The WBA Rules and Regulations ("Rules") govern the Bout and are hereby incorporated and made a part of this Agreement. All Boxers and Promoters are deemed to be aware of the Rules. The Bout will also be conducted in compliance with the local boxing commission rules. As long as the local commission is recognized by the WBA, the WBA will defer to the local rules, when they conflict with the Rules, however, in cases where the local contest rules deviate from the WBA contest rules, the ABC's Unified Rules will govern the bout.

Boxer and Promoter shall comply with the Rules, including payment of all fees and expenses. Any violation of the Rules may result in withdrawal of Bout sanction, disqualification of the Boxer or Promoter, loss of the WBA Championship title, lowered ratings, or other penalties as provided under the Rules, including loss of recognition. Boxer shall comply with all WBA championship defense obligations in the Rules.

3.    Boxer and Promoter understand and agree that the Bout, as sanctioned by the WBA, and the designation of a boxer as a WBA Champion, are titles which are the property of, and belong exclusively to, the WBA. Such designations are not rights, vested or otherwise, held, owned or enjoyed by Boxer, except as provided in the Rules. The WBA reserves the right, in its discretion and pursuant to its rules, to suspend or withdraw recognition of any champion, or withhold sanction of the Bout, for failure to comply with the Rules.

4.    As full compensation for all claims and demands and for the services and performances rendered by Boxer hereunder, Promoter shall pay Boxer, and Boxer accepts the sum of U.S. _____ Dollars ($_____.00) as Boxer's Purse as defined in WBA Rule A(6). Boxer shall pay any and all of Boxer's representatives or agents, including, but not limited to, his promoter, manager, trainer, etc. from said purse.

1



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

5.      For the champion, Promoter shall provide a minimum of five (5) round trip coach air travel to the site of the Bout (unless local to the fighter), accommodations for not less than five (5) persons for seven (7) nights, payment for all required visas, and for the reasonable cooperation of the contestants to promote the Bout. For the challenger, Promoter shall provide a minimum of four (4) round trip coach air travel to the site of the Bout (unless local to the fighter), accommodations for not less than four (4) persons for seven (7) nights, payment for all required visas, and for the reasonable cooperation of the contestants to promote the Bout Reasonable cooperation may include, but is not limited to, those pre fight events required by the winning promoter's contracts with broadcasters, site owners and sponsors, including press conferences or announcements.

**6.      Boxer understands that, pursuant to the Rules, a sanction fee in the amount of three percent (3%) of Boxer's purse as defined in WBA Rule A(6), including amounts received for training expenses and monies paid to Boxer's manager, promoter, etc., is due and owing to the WBA for sanction of the Bout. Boxer agrees the aforesaid sanction fee will be withheld by Promoter from the purse otherwise payable to Boxer for the Bout, and paid to the WBA by the Promoter. Boxer and Promoter agree that the Bout will not be recognized as a WBA Championship Bout if the aforesaid sanction fee is not paid in full prior to the Bout.**

7.      Boxer shall submit to such medical, illicit drug, and antidoping tests required by the local commissions, the Rules, and as agreed to between the parties, and understands and agrees that Boxer may be disqualified, fined, suspended or otherwise disciplined if Boxer fails to take such tests or if the results of Boxer's illicit drug or antidoping test are positive. Boxer will not take, imbibe or have administered to Boxer any illicit drug, prohibited substance or any other substance that will or could possibly affect his performance in the ring, or physical and mental capabilities, and represents that he has not done so during the six (6) months prior to the date of this Agreement.

8.      The parties acknowledge that the WBA reserves the right to withdraw sanction of the Bout as a Championship Bout if Boxer refuses or fails to submit the above mentioned reports, documents or fails to submit to the required or agreed upon drug, antidoping or medical tests.

9.      The non-scoring referee and three judges for the Bout will be selected, designated, and approved by the WBA in accordance with the Rules and in cooperation with the local commission.

10.     Each Boxer may choose the brand and model of commercially reasonably available gloves subject to the approval of the WBA and the local commission. Each Boxer shall advise Promoter of the brand and style of gloves to be used at least twenty-one (21) days prior to the scheduled Bout. If Boxer fails to do so, Boxer shall be provided the same brand and style used by the opponent. Promoter shall provide the requested and approved gloves for each Boxer in factory sealed packaging at the Rules meeting. The weight of the gloves must comply with the weights stated in the Rules or the rules of the local commission.

2

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

11.     Boxer shall cooperate and assist Promoter in publicizing, advertising and promoting of the Bout, and agrees to arrive at the site of the Bout at least seven (7) days prior to the Bout, including participating in press conferences as reasonably scheduled by Promoter at Promoter's expense.

12.     Boxer represents, warrants and agrees that Boxer is free to enter into this Agreement and has not heretofore entered into, and will not prior to the Bout, enter into any contracts or agreements which might interfere with the performance of Boxer's obligations under this Agreement, and that Boxer is not a party to any pending claims, litigation or impediments that might affect the obligations and rights of the parties under this Agreement.

13.     Promoter represents and warrants that it is a duly registered promoter in good standing that will pay all applicable fees and expenses in accordance with the WBA Rules and fee schedule, and that Promoter holds a valid boxing commission promoter's license from a recognized boxing jurisdiction

14.     In the event of a disagreement or controversy regarding this Agreement, Boxer and Promoter shall submit the same to the WBA for determination with a fee to be determined by the WBA.  The parties agree to be bound by the Rules and decisions of the WBA concerning any such disagreement or controversy.

15.     Promoter will ensure that there will be a minimum of one ambulance and two doctors present at the Bout at all times.

16.     Promoter shall pay life and hospital insurance policies for the Bout participants and the card as required by the local commission.

17.     Boxer shall enter the ring for the Bout displaying the championship belt (if recognized as WBA Champion), and to participate in any championship belt ceremony.

18.     All visas and other governmental documentation necessary for Boxer to participate in the Bout shall be the responsibility of Promoter, provided, however, that Boxer shall fully and timely cooperate in the obtaining of such visa.

19.     This Agreement shall also be signed by Boxer's duly authorized manager if a current valid Manager/Boxer contract has been registered with his local commission, federation and/or the WBA.

20.     Boxer shall engage in a good faith exhibition of Boxer's skills, compete to the best of Boxer's ability, and immediately disclose to the WBA and Promoter any impediment to doing so, including but not limited to any injury.

21.     The WBA will not recognize the Bout as a Championship Bout until this Agreement is fully executed by all parties and approved by the President and Championships Chairman.

3

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

22.     Boxer and Promoter may voluntarily agree to additional terms or conditions regarding the Bout. In the event a local commission form of contract is required, Boxer agrees to execute same.

IN WITNESS WHEREOF, the parties have freely and voluntarily executed this Agreement on the day and year first above written.

**PROMOTER**                                    **BOXER'S LICENSED MANAGER**


_____         _____
By:_____
Date: _____        Date: _____
Address: _____        Address:_____

_____         _____
Email: _____        Email: _____
Phone: _____         Phone: _____


Witness: _____        Witness: _____


**BOXER**                                       **WBA SANCTION APPROVAL**


_____         _____
Date: _____        Date: _____
Address:_____         Address:_____

_____         _____
Email: _____        Email: _____
Phone: _____         Phone: _____

4

46

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

# EXHIBIT D



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

## SMITH | ALLING PS

ATTORNEYS AT LAW

1501 Dock Street, Tacoma, WA 98402
Tel: (253) 627-1091 | Fax: (253) 627-0123
www.smithalling.com

Chad E. Ahrens
Douglas V. Alling
Gina M. Auter
Kelly DeLaat-Maher
Barbara A. Henderson
Edward G. Hudson
Russell A. Knight
Robert E. Mack
Michael E. McAleenan
Robert L. Michaels
Thomas P. Quinlan
C. Tyler Shillito

Andrea H. Brewer
Maura S. McCoy
Matthew C. Niemela

August 30, 2018

VIA EMAIL: dinesandenglish@aol.com
AND FIRST CLASS MAIL

Mr. Patrick English
Dines & English
665 Van Houten Ave.
Clifton, NJ 07013

VIA EMAIL: MMizzuli@moheganmail.com
AND FIRST CLASS MAIL

Mr. Michael Mizzuli
Mohegan Tribe, Dept.of Athletic Regulation
Athletic Unit
One Moheganson Blvd.
Uncasville, CT 06382

RE:   *WBA Heavyweight Interim Title*

Gentlemen:

This letter is in response your various emails to the World Boxing Association ("WBA") questioning the sanction of an Interim Title bout held recently in Phoenix, Arizona between Trevor Bryan and B.J. Flores. I hope the following may be considered responsive to the questions each of you has raised in separate emails.

The current WBA rules allow, under certain circumstances, multiple titles in the same weight classification (other boxing and mixed martial arts sanctioning organizations have similar provisions). Consequently, under certain circumstances, the WBA may have a Super Champion, a Champion (regular), and an Interim Champion in any particular weight category. Although there has been an effort to reduce the number of multiple champions in any given weight category, under certain circumstances, the WBA has been requested to allow and sanction separate championships in a particular category.

The WBA rules provide that, "for exceptional circumstances," the WBA may designate a champion as "Super Champion." When a boxer is so designated, the mandatory defense period, and how and when "an official contender" is to be named, is left under the rules to the president of the WBA. At the present time, Anthony Joshua is the WBA Super Champion in the Heavyweight category. The "exceptional circumstances" that apply to Mr. Joshua include the

48



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

Mr. Patrick English
Mr. Michael Mizzuli
August 30, 2018
Page 2

fact that he also is the preeminent champion in the heavyweight category for two of the other four major sanctioning organizations, the World Boxing Organization (WBO) and the International Boxing Federation (IBF). Mr. Joshua is scheduled to defend his three unified titles next month against Alexander Povetkin, the WBA's official contender (Mr. Povetkin is rated Number 1 by both the WBA and the WBO, and Number 3 by the IBF).

The current Champion (regular) of the WBA is Manuel Charr. He is scheduled to defend his title, also next month, against Mr. Fres Oquendo.

As is true for the other sanctioning organizations, the WBA has rules allowing for authorizing an elimination bout to name a mandatory contender in any particular weight category. Under the relevant WBA rule (Rule C.30) such an elimination bout may also be designated as a bout for an Interim Championship, but only under the terms of that rule. The rule specifies that the winning boxer, who becomes the mandatory contender for the regular championship, may also be designated as an Interim Champion, but is not considered an Interim Championship under WBA Rules C.22-24. Under those rules, an Interim Champion is designated only in circumstances where, for health, legal, or other compelling reasons, the champion is prevented from defending his title. It was under Rule C.30 that the WBA authorized the elimination bout between Mr. Bryan and Mr. Flores.

The questions arising from the WBA's authorization of the Bryan-Flores bout may be attributed largely to a press release apparently issued by a promoter for that bout, suggesting that the bout was authorized because of "legal" difficulties between Mr. Charr and Mr. Oquendo, thereby suggesting that somehow Mr. Charr was a "Champion in Recess." The WBA at no time has determined that Mr. Charr is a Champion in Recess and has not invoked the provisions of Rules C.22-24. Any suggestion in a press release by a promoter to the contrary is inaccurate.

We acknowledge persistent criticisms directed at multiple titles in any particular weight classification. Although the WBA has announced that it will be reducing the number of multiple titles in appropriate circumstances, countervailing circumstances have been present in the heavyweight category. First, the defense of his title by Mr. Joshua must take into account his holding of the title of three separate organizations, and therefore the defense period for each particular organization may be extended longer than if he held only one title. Second, the defense by Mr. Charr has been delayed for a number of reasons. Finally, as a result of this, those other boxers rated in the heavyweight classification have been delayed any opportunity to move up the rankings. Under these circumstances, the sanctioning of a mandatory contender elimination bout, which also resulted in designation of the winner as an "Interim Champion" under WBA Rule C.30, was warranted.

49

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

Mr. Patrick English
Mr. Michael Mizzuli
August 30, 2018
Page 3

If you have any questions regarding any of the above, please let me know, and we will respond to them.

Sincerely,

SMITH ALLING, P.S.

Robert E. Mack

REM:jt
cc:  WBA
     George Martinez, Championships Committee

50

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD



**WORLD BOXING ASSOCIATION**
GILBERTO MENDOZA
President

**Resolution No. 202002191702**
**WBA Championships Committee**
*Heavyweight Division*
*February 19, 2020*

I. <u>**BACKGROUND**</u>

I. On November 25, 2017, Manuel Charr ("Charr") won the vacant WBA World Heavyweight Title by defeating Alexander Ustinov in Oberhausen, Germany. Charr has been inactive and has not defended the title.

II. On February 09, 2018, a purse bid was held for Charr's mandatory defense against the leading available contender in the division, Frez Oquendo ("Oquendo") in Toronto Canada. Pow Sports Entertainment ("PSE") won the purse bid with $600,000.00. The only other bid was Global Sports Management ("GSM") at $101,000.00. As part of its bid, Pow Sports Entertainment proposed a bout on April 28, 2018 in San Juan, Puerto Rico and May 04, 2018 in Chicago, USA.

III. On March 27, 2018, WBA Championship Committee issued Resolution 20180327170212 ordering a second purse bid (material terms of the bid award have not met)

IV. On April 11, 2018, PSE and GSM notify the Championship Committee that both parties reached an agreement and provide contracts dully signed by the boxers with the fight scheduled for September 29, 2018.

V. On August 31, 2018, During the pre-bout drug testing by the Voluntary Anti-Doping Association ("VADA"), Charr's "A" sample tested positive. The result of the analysis are as follows: **Adverse. Urine specimen number 4256987: epitrenbolone and drostanolone metabolites detected.**

VI. On November 12, 2018, the Championship Committee issued Resolution Nº 201811121702 suspending Charr due to his testing positive for prohibited substances. Charr timely submitted a request for reconsideration under the appropriate rules.

Edificio Ocean Business Plaza, Ave. Aquilino de la Guardia con Calle 47, Oficina 1405, Piso 14,
Apartado Postal 0816-02273, Ciudad de Panamá, Panamá // Phone: + (507) 203 7680 / 7681
E-mail: info@wbaboxing.com // Web Site: www.wbaboxing.com

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

VII.   On December 18, 2018, the Championship Committee issued Resolution No.20181218170214 reinstating Charr as Champion and must defend his title against Oquendo within sixty (60) days of the date passage of the resolution.

VIII.   On March 06, 2019, the Championship Committee issued Resolution No. 201903061702 ordering Charr to face the next leading available contender and Interim Champion Trevor Bryan ("Bryan").

IX.   On May 7, 2019, a call for purse bid was scheduled for 17, 2019. Both camps were notified on May 15 of an extension on the bidding date.

X.   Although on May 27, 2019, Don King Production ("DKP") and Epic Sports & Entertainment ("ESE") reported that they had reached an agreement for a Charr vs Bryan bout, the Committee has not received a bout contract signed by both boxers.

XI.   Since then, the Committee has communicated to the parties its intent to call a subsequent purse bid to resolve the deadlock between the two parties. Representatives of the two boxers have communicated to the Committee various reasons why a contract has not been signed, assigning blame to the other party. Regardless, neither the world champion nor the interim world champion has defended his title since the Resolution of 6 March 2019.

II.   **ANALYSIS**

A.   A champion must remain active and regularly defend his title. Within sixty (60) days of the expiration of the mandatory defense period, a champion is limited to fighting only a mandatory contender or leading available contender. WBA Rule C.13. Champions that participate in non-sanctioned bouts may lose their recognition. WBA Rule. C.10.

B.   The WBA may modify the periods for mandatory defenses for good cause, either in response to a request for a Special Permit, or on its own initiative. WBA Rule C.16.

C.   The WBA may modify or suspend the strict application of these rules when the WBA deems them justified in its sole discretion to accommodate special circumstances. WBA Rule C.46. Those reasons include to "engage in an optional title defense," to "engage in a bout of recognized importance and significance for the boxing world," or to "extend or otherwise modify a mandatory defense period." WBA Rule C.46a, e and g.

D.   When a champion is unable to defend his title within the prescribed periods for justifiable medical, legal or other reasons reasonably beyond his control, the inactive champion may be named a Champion in Recess and the committee may select official contenders who will fill for an Interim Title under Rules C.22-24.

E.   Each boxer, promoter, manager, and boxer's agent is under the obligation to know and be familiar with all Association rules, including, but not limited to, those regarding time periods concerning obligation to defend, compete for a title, and for Special Permits. If a champion fails to comply with any rule of the Association, the Chairman of the Committee may declare his



**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

# EXHIBIT E

53



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

title vacant. Likewise, failure by an official contender to comply with any of these rules can result in removal by the Chairman of recognition as official contender. WBA Rule C.14.

F.      Purse bids and notifications related thereto are covered under Chapter D of the WBA Rules.

## III.   **DECISION**

A.      In order to end the deadlock that currently exists between Charr and Bryan, the Committee again will call for purse bids. The bids must be submitted at the purse bid opening, which is scheduled for March 02, 2020 at the WBA Central office in Panama City, Panama, at 11:00 a.m, and shall be chaired by Mr. Aurelio Fiengo. This call for bids will be vacated if the Committee receives a bout contract between the parties before the date for which the bid opening is scheduled. The purse split in the case of an accepted bid shall be 75% for Charr and 25% for Bryan.

B.      If there is no qualified acceptable bid received, the Committee and the Ratings Committee may take appropriate action regarding the status of Charr and Bryan. If a qualified bid is accepted by the Committee, the parties must present a bout contract signed by both parties within the period set by the rules. If the parties cannot agree on a contract, each may submit a signed copy of the basic standard bout contract suggested by the WBA within the same period. If either boxer fails, or both boxers fail, to comply with this Resolution, appropriate action will be taken regarding the status of the non- compliant boxer.

Date: February 19, 2020

Carlos Chavez
Championship Committee Chairman

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

# EXHIBIT F

55



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD



## DON KING PRODUCTIONS, INC.
501 FAIRWAY DRIVE ☐ DEERFIELD BEACH, FLORIDA 33441
PHONE: (954) 418-5800
FAX: (954) 418-0157

### BOUT AGREEMENT

THIS BOUT AGREEMENT (the "Agreement") is made and entered into as March 13, 2020 by and between Don King Productions, Inc., a Delaware corporation, with offices at 501 Fairway Drive, Deerfield Beach, Florida 33441 ("Promoter") and MAHMOUD CHARR ("Fighter").

WHEREAS, the parties desire to enter into an agreement pursuant to which Fighter shall engage in a professional boxing bout (the "Bout") between Fighter and TREVOR BRYAN ("Opponent") and other bouts, upon and subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and agreements hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**I.    THE BOUT.**    Fighter will engage in the Bout with Opponent for the WBA World Heavyweight Title for Twelve (12) rounds to a decision to be promoted or co-promoted by Promoter on May 30, 2020 at SOUTH FLORIDA, FLORIDA or at such other site as Promoter may designate. Fighter shall weigh in at no more than HEAVYWEIGHT lbs. The Bout will be conducted and the officials shall be designated in conformity with the rules and regulations of the applicable athletic or boxing commission and the World Boxing Association and/or any other sanctioning organization.

**II.    WORLDWIDE RIGHTS TO BOUTS.** Fighter grants to Promoter all worldwide rights, title and interest to the Bout and any Future Bouts (as defined below), if applicable, promoted by Promoter (the Bout and any such Future Bouts shall be collectively referred to herein as the "Bouts") in perpetuity, including, but not limited to:

(a)    The right to all site fees, live-gate receipts, sponsorship fees, and motion picture, radio, television (whether live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable or subscription), telephone, computer, CD-ROM, broadband, digital, and online services, the worldwide web and the "Internet" (as such term is commonly understood currently or in the future) (collectively, the "Internet"), video and audio cassette, virtual advertising, photograph, including raw footage, out takes and negatives, merchandising and program rights now or hereinafter invented in connection with or based upon the Bouts or the activities pertaining to the Bouts, including, but not limited to, training sessions, interviews and press conferences for the Bouts (the "Pre-Bout Events"), post-fight interviews, press conferences and other events (the "Post-Bout Events") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

(b)    The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the rights granted hereunder and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the rights granted hereunder;

(c)    The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted Promoter hereunder, including the right to promote, exploit and turn to account all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to said rights for the proper production and promotion of radio, television and Internet broadcasts of the Bouts, the Pre-Bout Events and the Post-Bout Events, such as announcers, commercials, artwork and other elements;

(d)    All right, title and interest in and to any recordings of the television, Internet and radio broadcasts and motion picture films and video and audio cassettes of, or based upon the Bouts, the Pre-Bout Events and the Post-Bout Events, including, but not limited to, magnetic tapes, and the right to secure in its own name or that of its nominee copyright and other protection to the extent available throughout the world;

(e)    The right to use in any media the name, likeness and biography of Fighter, his manager, trainers and other persons associated with him who are connected with the Bouts, for the purpose of advertising, promotion, publicity, merchandising and exploitation of the Bouts, the Pre-Bout Events and Post-Bout Events all without compensation or payment to any of the aforesaid parties, provided, however, that in no event may such names, likenesses or biographies be used as an endorsement of any commercial product or service; and

(f)    The non-exclusive right to use a three minute clip of the recording of any prior bout, press conferences, interviews, training sessions or other footage in which Fighter was a participant to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights solely for the purposes of publicizing the Bouts which shall be delivered to Promoter upon request therefore.

**III.    PURSE.** In consideration of Fighter's participation in the Bout and for all of the rights herein granted to Promoter, Promoter shall pay to Fighter and Fighter shall accept the sum of One Million Five Hundred Thousand U.S. Dollars ($1,500,000.00) per March 2, 2020 purse bid, or an amount equal to the purse bid split so designated by the WBA stemming from the March 2, 2020 Purse Bid won by Promoter. Such sum shall be paid to Fighter by check upon completion of the Bout. If Fighter's opponent is not the Opponent specified in the recital above, Fighter's purse at the sole option of Promoter, may be renegotiated in good faith by Promoter and Fighter.

**IV.    TRAINING.** If Promoter shall so request, Fighter will commence training at the site of the Bouts at suitable training facilities to be provided by Promoter to Fighter, no less than Five -5- days prior to the date the Bout is scheduled.

**V.    AIR FARE, ROOM AND BOARD.** Promoter shall furnish to Fighter FIVE -5- round-trip coach airline tickets from GERMANY to the site

Initials:  Promoter _____  Fighter _____  Manager _____

*Exhibit F*



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

of the Bout. Promoter shall also furnish Fighter with FIVE -5- hotel rooms and three meals per day for FIVE -5- persons for a period of FIVE -5- days preceding and including the date of the Bout. It is expressly understood, however, that Promoter shall have no obligation for the cost of long-distance telephone calls, alcoholic beverages, entertainment or similar expenses, all of which shall be borne solely by Fighter, and Fighter shall be required to provide satisfactory credit or cash security to the hotel for such personal expenses. Promoter shall have the right at its option to withhold ten percent of the purse and to pay such expenses there from if Fighter fails to do so. Upon presentation by Fighter to Promoter of satisfactory evidence by Fighter of payment of such expenses, any remaining portion of the withheld amount shall be paid to Fighter. Fighter agrees to conduct himself (to cause his manager, trainers and other persons associated with him at the Bouts to conduct themselves) reasonably while traveling to and from a Bout and while on or about the site of the Bout and the site hotel. Any physical damage to hotel rooms or property of others caused by Fighter or such persons shall be charged to Fighter's account, and Fighter shall assist Promoter in promptly collecting the cost of such damage from Fighter or such persons.

**VI. TRAINING SESSIONS/PROMOTIONAL ACTIVITIES.** Fighter agrees that Promoter may charge admission to Fighter's training sessions and that such proceeds shall be the property of Promoter. Fighter agrees that without additional consideration or compensation he will cooperate and assist in the advertising, publicity, and promotion of the Bouts, including his appearance at such reasonable number of press conferences, interviews and other promotional activities as Promoter may designate. Fighter agrees and acknowledges that a breach of this provision would cause harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay to Promoter as liquidated damages, and not as a penalty, $150,000 if the Bout is being televised or $50,000 if the Bout is non-televised.

**VII. FORCE MAJEURE AND OTHER POSTPONEMENTS.**

(a)      Only in the event that the Bout is postponed or prevented from taking place by any reason of any Act of God (natural disaster/disease/epidemic/pandemic/quarantine), act of government related to said Act of God (i.e. travel restrictions), fire, flood, riot, war, public disaster or any other cause beyond the direct and immediate control of the Promoter, or if Fighter or Opponent shall become disabled or incapacitated by reason of any physical or mental disability, injury or illness which prevents or interferes with his or their participation in such Bout as scheduled, AND a physician licensed by the governmental authority having jurisdiction over such Bout shall certify that Fighter or Opponent cannot participate in such bout as scheduled, then Promoter may, at its sole option, either (a) postpone such Bout to a date no later than 90 days after the originally scheduled date, in which event all of the provisions of this Agreement shall remain in full force and effect and shall apply to the rescheduled date or (b) cancel this Agreement as it relates to such Bout or terminate this Agreement. If a Bout which is the subject matter of this Agreement is on the undercard to any main event and that main event is postponed or canceled for any reason whatsoever, then Promoter may at its sole option either postpone such Bout to a date to coincide with the postponed date of the main event or another main event. in which event all of the provisions of this Agreement, including the provisions of this paragraph, shall remain in full force and effect and shall apply to the rescheduled date or else cancel this Agreement as it relates to such Bout or terminate this Agreement.

(b)      In the event Fighter's opponent for any of the Bouts shall for any reason fail or refuse to participate in such Bout, or shall withdraw therefrom and Promoter shall so notify Fighter, Promoter may at its sole option cancel this Agreement as it relates to such Bout or terminate this Agreement.

(c)      Fighter acknowledges that Promoter's obligations with respect to the Bouts are contingent upon Promoter's entering into agreements satisfactory to Promoter for the live television broadcast of the Bouts and for the site of the Bouts. In furtherance thereof, Fighter agrees that if Promoter shall not enter into such agreements for any reason, or if such agreements grant to a contracting entity the right or option to terminate any such agreement by reason of any cause, act or event beyond the direct and immediate control of Promoter, including, without limitation, any act or omission on the part of Fighter, Opponent, or any other person, and the entity exercises such right, Promoter may, at its sole option, cancel this Agreement as it relates to such Bout or terminate this Agreement. Nothing contained herein shall be deemed to grant to Fighter any right of approval over any agreement Promoter may negotiate with respect to the television broadcast of the Bouts or the sites.

(d)      In the event Promoter exercises its right to cancel this Agreement as it relates to a Bout or terminate this Agreement pursuant to any of the preceding provisions of this paragraph 7, Fighter shall thereupon immediately return to Promoter all sums theretofore advanced or paid to Fighter by Promoter in connection with such Bout, and neither party shall have any further rights or obligations hereunder with respect to such Bout or this Agreement, as applicable.

**VII. FURTHER ASSURANCES.** Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, a standard boxing contract in such form as may be required by the governmental authority with jurisdiction over the Bout and/or the organization(s) sanctioning the Bout if applicable. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby. Additionally, Fighter agrees to be subject to random anti-doping testing pursuant to VADA (collecting blood and urine samples AND at anytime prior to the Bout, including post Bout testing) or any other agent designated by the sanctioning body.

**IX. ATTIRE/CLEARANCES.**

(a)      Fighter agrees that no advertising or promotional material (including, but not limited to, permanent or temporary tattoos or body art) shall appear on the body of or on any item of clothing worn by Fighter, his trainers, seconds, assistants or other members of his team or entourage during and/or at the Bouts, press conferences, training sessions open to the public or press, or while at the site of the Bouts, without the prior written approval of Promoter. If Promoter does not, in its sole discretion, grant such approval, Fighter and/or his trainers, seconds, assistants or team members, as the case may be, shall promptly either take corrective action to remove or cover the disapproved material or shall substitute therefor clothing or equipment provided by Promoter. Fighter agrees and acknowledges that a breach of this provision would cause substantial harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay Promoter (or such third party designated by Promoter) as liquidated damages, and not as a penalty, an amount

Initials: Promoter _____  Fighter _____  Manager _____

57



CASE NO. 21-CV-61654-WPD

equal to (i) Eighty_five percent (85%) of the purse of Fighter if the Bout is not televised or (ii) Five Hundred Thousand U.S. Dollars ($500,000) if the Bout is televised.

(b)     From the date of this Agreement through the date of the Bout and any Future Bouts promoted by Promoter, Fighter agrees that he will not (and will cause his manager, trainers, seconds, assistants and other members of his team not to) attend or participate in any special events or other activities sponsored by, held in, hosted or otherwise affiliated with any casino, hotel or arena without Promoter's prior written approval in its sole and absolute discretion.  Fighter further agrees that he will obtain prior to each of the Bouts on behalf of himself and his manager, trainers, assistants and other persons associated with him who are connected with the Bouts, all without compensation or payment whatsoever by Promoter to any person or entity, any and all required clearances, consents and licenses as is necessary with respect to Promoter's and its licensees' and assignees' worldwide exploitation in perpetuity of the Bouts as permitted in paragraph 2 above, including, without limitation, (i) any music clearances for Fighter's ring walk, (ii) footage licenses for Fighter's prior bouts, training sessions, interviews and other Fighter footage provided to Promoter hereunder by Fighter or third parties on behalf of Fighter, (iii) all consents, permissions and/or approvals for Fighter or his agents to wear, display, mention or exploit during, or in connection with, the Bouts (including, without limitation, during training sessions, press conferences or interviews) any name, logo, copyright, trademark or service mark, common law or other right (including, without limitation, any literary, dramatic, comedic, musical or photoplay right) of any person, firm or corporation, (iv) any performer residuals and consents and/or payments payable to any persons appearing in or rendering services in connection with the Bouts which are engaged by Fighter or his agents, and (v) all copyright clearances and permissions with respect to any of the foregoing.

**X.   ASSIGNMENT.**  Promoter shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, without limitation, the right to co-promote the Bouts in association with any one or more persons or entities of its choosing.

**XI.   FUTURE BOUTS.**

(a)     During the twelve (12) month period from the date hereof (the "Future Period"), the parties agree with respect to each of Fighter's bouts following the Bout (each a "Future Bout" and collectively the "Future Bouts") as follows:

(i)      Fighter shall not participate in any Future Bouts during the Future Period, except as in accordance with the provisions of this Paragraph 11;

(ii)     At any time following the Bout or Future Bout, as the case may be, either party shall have the right to notify the other party in writing that he or it desires to commence negotiations with respect to Fighter's next succeeding Future Bout (the "Next Future Bout");

(iii)    During the 60 day period following the other party's receipt of such written notice, Fighter shall negotiate exclusively and in good faith with Promoter with respect to such Next Future Bout (the "Exclusive Period"), it being understood that Promoter shall have the right to designate the date (but not later than the expiration of the Future Period, unless otherwise mutually agreed upon by the parties herein), site and opponent for such Next Future Bout;

(iv)    (A) So long as Fighter wins the Bout and each subsequent Future Bout hereunder, Fighter's purse for such Next Future Bout shall be negotiated between Promoter and Fighter but shall not be less than PER PROMOTIONAL U.S. Dollars ($PER PROMOTIONAL) in full consideration for all of Fighter's services and all rights with respect to such Next Future Bout, unless otherwise mutually agreed upon by the parties herein.

(B) In the event that Fighter (x) does not win the Bout or (y) does not win any individual Future Bout hereunder (regardless of the outcome of the Bout or any Future Bout prior or subsequent to such individual Future Bout), Fighter's purse for such Next Future Bout shall be negotiated between Promoter and Fighter but shall not be less than the purse that Fighter received in his last bout against an opponent who was not ranked or rated at the time of such last bout in the top 10 by any of the WBA, WBC, IBF or WBO in full consideration for all of Fighter's services and all rights with respect to such Next Future Bout, unless otherwise mutually agreed upon by the parties herein.

(C) For purposes of this Subparagraph 11(a)(iv), the phrase "does not win" encompasses any outcome other than a win, including, without limitation, a loss, draw, no decision, no contest or disqualification.

(v)     In the event that Fighter and Promoter are unable to reach agreement during the Exclusive Period with respect to such Next Future Bout and provided Promoter has not offered Fighter the applicable minimum purse amount for such Next Future Bout as provided in Subparagraph 11(a)(iv) above, Fighter shall be free to negotiate with any other party with respect to such Next Future Bout, including, without limitation, the date, site and Fighter's opponent; provided, however, that (x) in the event that Fighter receives an offer (the "Competing Offer") from any other party (the "Offeror") with respect to such Next Future Bout that is acceptable to Fighter, Fighter shall not accept the Competing Offer without first providing a written document containing the terms and conditions of the Competing Offer signed by the Offeror to Promoter and giving Promoter an opportunity to match the amount of Fighter's purse as contained in the Competing Offer within 15 business days and (y) in the event that Promoter makes an offer (the "Matching Offer") to Fighter which matches the amount of Fighter's purse as contained in the Competing Offer, Fighter must enter into an agreement with Promoter with respect to such Next Future Bout on the terms and conditions set forth in the Matching Offer, including, without limitation, date, site, opponent and all rights therein (it being understood that the date, site and opponent in the Matching Offer may be different from those originally designated by Promoter in Subparagraph 11(a)(iii) above and from those set forth in the Competing Offer);

Initials:  Promoter _____  Fighter _____  Manager _____

58



CASE NO. 21-CV-61654-WPD

(vi)   In the event that Promoter does not make a Matching Offer, Fighter shall be free to participate in such Next Future Bout in accordance with the terms and conditions of the Competing Offer; provided, however, that Fighter shall in no event grant the Offeror or any other party any rights to subsequent Future Bouts during the Future Period; and

(vii)   Promoter's failure to make a Matching Offer as provided above with respect to such Next Future Bout shall not relieve Fighter from his obligations hereunder with respect to subsequent Future Bouts during the Future Period.

(b)   During the three (3) month period preceding the expiration of the Future Period (the "Expiration Period"), Fighter shall negotiate exclusively and in good faith with Promoter with respect to the extension of the term of the Future Period for an additional period of twelve (12) months. In the event that Fighter and Promoter are unable to reach agreement during the Expiration Period with respect to an extension of the Future Period, Fighter shall, subsequent to the expiration of the Expiration Period, be free to negotiate with any other party with respect to Fighter's future bouts; provided, however, that (i) in the event that Fighter receives an offer from any other party with respect to such future bouts that is acceptable to Fighter, Fighter, at Fighter's option, shall be free to provide Promoter with the right to match the amount of Fighter's purse as contained in such other party's offer within 15 business days and (ii) in the event that Promoter makes Fighter an offer which matches the amount of Fighter's purse as contained in such other party's offer, Fighter must enter into an agreement with Promoter with respect to such future bouts on the terms and conditions of such matching offer, including, without limitation, the date, site and opponent.

(c)   Notwithstanding the foregoing, in the event that Fighter and Promoter are parties to a Promotional Agreement, the terms and conditions of the Promotional Agreement shall govern the rights and obligations of the parties with respect to Fighter's bouts following the Bout; provided, however, that if the Promotional Agreement expires, terminates, is challenged or is found unenforceable during the Future Period (or an extension of the Future Period in accordance with Subparagraph 11(b) above), the parties' rights during the Future Period (as the same may be extended) or any portion thereof that may extend past the date of the expiration or termination of the Promotional Agreement shall be governed by Subparagraphs 11(a) and (b) above.

(d)   Notwithstanding the foregoing, in the event that   (i) Opponent, in accordance with Title 15 United States Code ("USC") §6307b(a)(1)(A)(ii), came under contract to Promoter pursuant to a coercive provision described in Title 15 USC §6307b(a)(1)(B), (ii) this Paragraph 11 would not be enforceable against Fighter pursuant to Title 15 USC §6307b(a)(3) or (iii) the Bout is a "mandatory bout" within the meaning of Title 15 USC §6307b(b), the parties understand and agree that this Paragraph 11 shall be null and void.

XII.   EXCLUSIVITY. Fighter will not, except upon the prior written consent of Promoter, which consent Promoter shall be free to withhold in its sole and absolute discretion, engage in any professional boxing bout or exhibition or enter into any contract with any other promoter, between the date hereof and the date of the Bout, including any date to which the Bout may be postponed or rescheduled.

XIII.   INDEPENDENT CONTRACTOR. Nothing herein contained shall be construed to constitute Fighter as an employee of Promoter. Fighter is an independent contractor, responsible for his own actions and expenses and except as otherwise expressly set forth herein, Fighter shall be solely responsible for the payment of any and all costs and expenses incurred by him in connection with the Bouts, including, without limitation, payment of all fees to his manager, trainers, seconds, assistants, sparring partners, maintenance and training expenses, medical bills, sanctioning fees, taxes, boxing licenses, permits and fees, rights clearances, insurance, and travel, food and accommodations in excess of the amounts provided by Promoter pursuant to paragraph 5 above. Fighter shall, at his own cost and expense, be solely responsible for obtaining all licenses, permits, privileges, immunities, approvals, visas and other authorizations from governmental authorities which are necessary to entitle him to participate in the Bouts hereunder. Fighter hereby authorizes Promoter to deduct from his purse any of the foregoing costs and expenses to the extent paid by Promoter, required by law or authorized by the applicable athletic or boxing commission or sanctioning organization(s).

XIV.   EQUITABLE RELIEF. Fighter acknowledges that his services as a professional boxer are special, unique, extraordinary, irreplaceable, and of peculiar value, and that in the event of his breach or threatened breach of this Agreement, Promoter would suffer irreparable damage which would not reasonably or adequately be compensated solely by an action at law. Accordingly, Fighter expressly agrees that in the event of such breach or threatened breach, Promoter shall be entitled, in addition to all other rights and remedies available to it, to obtain equitable relief, including, but not limited to, an injunction against such breach in any court of competent jurisdiction, and that he will not assert as a defense in any such action that Promoter has an adequate remedy at law.

XV.   REPRESENTATIONS, WARRANTIES AND COVENANTS.

(a)   Fighter represents, warrants and covenants to Promoter that he has the full power, right and authority and is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, agreement or understanding, whether oral or written, which conflicts in any material respect with the provisions hereof or which purports to grant similar or conflicting rights to any person, firm, or entity other than Promoter, or which would or might interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by Promoter of any of the rights granted to Promoter under this Agreement. Fighter further represents and warrants to Promoter that there are no claims pending or threatened or any litigations affecting Fighter which would or might interfere with the full and complete exercise or enjoyment by Promoter of any rights granted hereunder.

(b)   Fighter further acknowledges that   Promoter is entering into this Agreement in reliance upon the warranties, representations and covenants herein, and Fighter agrees to indemnify, defend and hold Promoter and its affiliates harmless from and against any and all liability, cost, or expense, including reasonable attorney's fees, Promoter or its affiliates may sustain or incur as a result of the breach or inaccuracy of any of said warranties, representations and covenants.

Initials: Promoter _____   Fighter _____   Manager _____

59



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

(c)  Fighter will submit to medical examination(s) requested by Promoter within five (5) days of Promoter's request, including, without limitation, examinations required by Promoter or its licensees to obtain insurance or to determine Fighter's ability or inability to participate in a Bout. Fighter agrees and acknowledges that a breach of this provision would cause substantial harm to Promoter and is licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay Promoter as liquidated damages, and not as a penalty, an amount equal to (i) Eighty-five percent (85%) of the purse of Fighter if the Bout is not televised or (ii) Five Hundred Thousand U.S. Dollars ($500,000) if the Bout is televised.

XVI     FORUM SELECTION/GOVERNING LAW.  Fighter irrevocably submits to the jurisdiction of the United States District Court, Southern District of New York ("New York Federal Court") over any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined only in such New York Federal Court. Alternatively, if the New York Federal Court shall not have jurisdiction over the subject matter of the action or proceeding, then the action or proceeding may be brought in any State Court of New York in New York County having jurisdiction over the subject matter ("New York State Court"), and Fighter hereby irrevocably submits to the jurisdiction of the New York State Court. As an alternative method of personal service, Fighter irrevocably consents to the service of any and all process in any such action or proceeding by the mailing of copies at the address specified for the mailing of notices in this Agreement. Fighter agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any manner provided by law. Fighter further waives any objection to venue in such New York Federal Court or New York State Court and any objection to any action or proceeding in such New York Federal Court or New York State Court on the basis of forum non conveniens. Except as provided in the last sentence of this paragraph, Fighter further agrees that any such action or proceeding brought hereunder shall be brought only in a New York Federal Court or New York State Court. Nothing in this paragraph shall affect the right of Promoter to serve legal process in any other manner permitted by law. This Agreement shall be governed, construed and enforced in accordance with the substantive law of contracts of the State of New York and without regard to New York choice of law principles or conflicts of law principles. When and if a site for the Bout or any Future Bout pursuant to this Agreement is selected within the State of New York, the parties further mutually agree to, and shall, execute all documents required by the Rules and Regulations of the New York State Athletic Commission pertaining to the conduct of boxing in New York (19 N.Y.C.R.R. Part 205 et seq.) in a timely fashion, and mutually agree to, and shall, fully comply with all other requirements of the New York State Athletic Commission and its applicable Rules and Regulations. The parties further agree that, except by appropriate application to the New York State Athletic Commission pursuant to its Rules and Regulations, neither party shall assert any claim that non-compliance with the Rules and Regulations of the New York State Athletic Commission shall render this contract void or unenforceable.

XVII.   PROMOTIONAL AGREEMENT.  In the event that Fighter has entered into a Promotional Agreement with Promoter, the terms and conditions of that agreement shall remain in full force and effect.

XVIII.  SEVERABILITY.  Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any law, rule or regulation of any governmental authority, and if there shall exist any conflict between any provision of this Agreement and any such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect.

XIX.    WAIVER.  No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced. The payment of any monies by any party shall not be deemed a waiver. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the permitted assigns, successors and affiliated entities of the parties hereto.

XX.     CONFIDENTIALITY.  Fighter shall not disclose to any third party (other than his employees and agents (including consultants), in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event(s) Fighter shall so notify Promoter as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure his banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this paragraph, and (iii) in order to enforce his rights pursuant to this Agreement. Promoter shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement. Promoter shall have the sole right to file this Agreement with any applicable athletic or boxing commissions and sanctioning organizations.

XXI.    BENEFIT.  The provisions of this Agreement are for the exclusive benefit of the parties who are signatories hereto and their permitted successors and assigns, and no third party shall be a beneficiary of, or have any rights by virtue of, this Agreement (whether or not such third party is referred to herein).

XXII.   ENTIRE AGREEMENT.  This Agreement sets forth and integrates the entire understanding between Fighter and Promoter, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof. It may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto. Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. Any ambiguities shall be resolved without reference to which party may have drafted this Agreement.

XXIII.  COUNTERPARTS/FACSIMILE.        This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

Initials: Promoter _____  Fighter _____  Manager _____

60



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

**XXIV   NOTICES.** Any notice required or desired to be given hereunder shall be in writing and sent (i) postage prepaid by certified mail, return receipt requested, (ii) by a recognized overnight courier, or (iii) by confirmed facsimile, addressed as follows:

(a) To Promoter                              (b) To Fighter

Don King Productions, Inc.                 **MAHMOUD CHARR** _____

501 Fairway Drive                          _____

Deerfield Beach, FL 33441                  _____

FAX: (954) 427-0157                        FAX: (   )   -  _____

                                           Social Security No.: ____ - __ - _____

All such notices shall be deemed given when mailed, delivered to the overnight courier or sent by confirmed facsimile.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

DON KING PRODUCTIONS, INC.

By _____           Fighter _____
Its:                                          **MAHMOUD CHARR**

                                           Manager _____

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING. NEITHER PARTY IS REQUIRED TO ACCEPT ANY OF THE TERMS AND CONDITIONS IN THIS AGREEMENT. TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS, OBJECTIVES AND BARGAINING POSITIONS OF ALL INTERESTED PERSONS.

Initials: Promoter _____   Fighter _____   Manager _____

61

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

# EXHIBIT G

62



CASE NO. 21-CV-61654-WPD



# DON KING PRODUCTIONS, INC.

501 FAIRWAY DRIVE □ DEERFIELD BEACH, FLORIDA 53441
PHONE: (954) 418-5800
FAX: (954) 418-0157

## BOUT AGREEMENT

THIS BOUT AGREEMENT (the "Agreement") is made and entered into as March 13, 2020 by and between Don King Productions, Inc., a Delaware corporation, with offices at 501 Fairway Drive, Deerfield Beach, Florida 33441 ("Promoter") and MAHMOUD CHARR ("Fighter").

WHEREAS, the parties desire to enter into an agreement pursuant to which Fighter shall engage in a professional boxing bout (the "Bout") between Fighter and TREVOR BRYAN ("Opponent") and other bouts, upon and subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and agreements hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

I.  THE BOUT.      Fighter will engage in the Bout with Opponent for the WBA World Heavyweight Title for Twelve (12) rounds to a decision to be promoted or co-promoted by Promoter on May 30, 2020 at SOUTH FLORIDA, FLORIDA   or at such other site as Promoter may designate.  Fighter shall weigh in at no more than HEAVYWEIGHT lbs.  The Bout will be conducted and the officials shall be designated in conformity with the rules and regulations of the applicable athletic or boxing commission and the World Boxing Association and/or any other sanctioning organization.

II.  WORLDWIDE RIGHTS TO BOUTS.  Fighter grants to Promoter all worldwide rights, title and interest to the Bout and any Future Bouts (as defined below), if applicable, promoted by Promoter (the Bout and any such Future Bouts shall be collectively referred to herein as the "Bouts") in perpetuity, including, but not limited to:

(a)      The right to all site fees, live-gate receipts, sponsorship fees, and motion picture, radio, television (whether live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable or subscription), telephone, computer, CD-ROM, broadband, digital, and online services, the worldwide web and the "Internet" (as such term is commonly understood currently or in the future) (collectively, the "Internet"), video and audio cassette, virtual advertising, photograph, including raw footage, out takes and negatives, merchandising and program rights now or hereinafter invented in connection with or based upon the Bouts or the activities pertaining to the Bouts, including, but not limited to, training sessions, interviews and press conferences for the Bouts (the "Pre-Bout Events"), post-fight interviews, press conferences and other events (the "Post-Bout Events") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

(b)      The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the rights granted hereunder and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the rights granted hereunder;

(c)      The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted Promoter hereunder, including the right to promote, exploit and turn to account all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to said rights for the proper production and promotion of radio, television and Internet broadcasts of the Bouts, the Pre-Bout Events and the Post-Bout Events, such as announcers, commercials, artwork and other elements;

(d)      All right, title and interest in and to any recordings of the television, Internet and radio broadcasts and motion picture films and video and audio cassettes of, or based upon the Bouts, the Pre-Bout Events and the Post-Bout Events, including, but not limited to, magnetic tapes, and the right to secure in its own name or that of its nominee copyright and other protection to the extent available throughout the world;

(e)      The right to use in any media the name, likeness and biography of Fighter, his manager, trainers and other persons associated with him who are connected with the Bouts, for the purpose of advertising, promotion, publicity, merchandising and exploitation of the Bouts, the Pre-Bout Events and Post-Bout Events all without compensation or payment to any of the aforesaid parties, provided, however, that in no event may such names, likenesses or biographies be used as an endorsement of any commercial product or service; and

(f)      The non-exclusive right to use a three minute clip of the recording of any prior bout, press conferences, interviews, training sessions or other footage in which Fighter was a participant to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights solely for the purposes of publicizing the Bouts which shall be delivered to Promoter upon request therefore.

III.  PURSE.  In consideration of Fighter's participation in the Bout and for all of the rights herein granted to Promoter, Promoter shall pay to Fighter and Fighter shall accept the sum of One Million Five Hundred Thousand U.S. Dollars ($1,500,000.00) per March 2, 2020 purse bid, or an amount equal to the purse bid split so designated by the WBA stemming from the March 2, 2020 Purse Bid won by Promoter.  Such sum shall be paid to Fighter by check upon completion of the Bout.  If Fighter's opponent is not the Opponent specified in the recital above, Fighter's purse at the sole option of Promoter, may be renegotiated in good faith by Promoter and Fighter.

IV.  TRAINING.  If Promoter shall so request, Fighter will commence training at the site of the Bouts at suitable training facilities to be provided by Promoter to Fighter, no less than Five -5- days prior to the date the Bout is scheduled.

V.  AIR FARE, ROOM AND BOARD.  Promoter shall furnish to Fighter FIVE -5- round-trip coach airline tickets from GERMANY to the site

| | Initials: Promoter | Fighter | Manager |
| --- | --- | --- | --- |
| | | | |

*EXhibIT F*

63



CASE NO. 21-CV-61654-WPD

of the Bout. Promoter shall also furnish Fighter with FIVE -5- hotel rooms and three meals per day for FIVE -5- persons for a period of FIVE -5- days preceding and including the date of the Bout. It is expressly understood, however, that Promoter shall have no obligation for the cost of long-distance telephone calls, alcoholic beverages, entertainment or similar expenses, all of which shall be borne solely by Fighter, and Fighter shall be required to provide satisfactory credit or cash security to the hotel for such personal expenses. Promoter shall have the right at its option to withhold ten percent of the purse and to pay such expenses there from if Fighter fails to do so. Upon presentation by Fighter to Promoter of satisfactory evidence by Fighter of payment of such expenses, any remaining portion of the withheld amount shall be paid to Fighter. Fighter agrees to conduct himself (to cause his manager, trainers and other persons associated with him at the Bouts to conduct themselves) reasonably while traveling to and from a Bout and while on or about the site of the Bout and the site hotel. Any physical damage to hotel rooms or property of others caused by Fighter or such persons shall be charged to Fighter's account, and Fighter shall assist Promoter in promptly collecting the cost of such damage from Fighter or such persons.

VI. TRAINING SESSIONS/PROMOTIONAL ACTIVITIES. Fighter agrees that Promoter may charge admission to Fighter's training sessions and that such proceeds shall be the property of Promoter. Fighter agrees that without additional consideration or compensation he will cooperate and assist in the advertising, publicity, and promotion of the Bouts, including his appearance at such reasonable number of press conferences, interviews and other promotional activities as Promoter may designate. Fighter agrees and acknowledges that a breach of this provision would cause harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay to Promoter as liquidated damages, and not as a penalty, $150,000 if the Bout is being televised or $50,000 if the Bout is non-televised.

VII. FORCE MAJEURE AND OTHER POSTPONEMENTS.

(a)     Only in the event that the Bout is postponed or prevented from taking place by any reason of any Act of God (natural disaster/disease/epidemic/pandemic/quarantine), act of government related to said Act of God (i.e. travel restrictions), fire, flood, riot, war, public disaster or any other cause beyond the direct and immediate control of the Promoter, or if Fighter or Opponent shall become disabled or incapacitated by reason of any physical or mental disability, injury or illness which prevents or interferes with his or their participation in such Bout as scheduled, AND a physician licensed by the governmental authority having jurisdiction over such Bout shall certify that Fighter or Opponent cannot participate in such bout as scheduled, then Promoter may, at its sole option, either (a) postpone such Bout to a date no later than 90 days after the originally scheduled date, in which event all of the provisions of this Agreement shall remain in full force and effect and shall apply to the rescheduled date or (b) cancel this Agreement as it relates to such Bout or terminate this Agreement. If a Bout which is the subject matter of this Agreement is on the undercard to any main event and that main event is postponed or canceled for any reason whatsoever, then Promoter may at its sole option either postpone such Bout to a date to coincide with the postponed date of the main event or another main event, in which event all of the provisions of this Agreement, including the provisions of this paragraph, shall remain in full force and effect and shall apply to the rescheduled date or else cancel this Agreement as it relates to such Bout or terminate this Agreement.

(b)     In the event Fighter's opponent for any of the Bouts shall for any reason fail or refuse to participate in such Bout, or shall withdraw therefrom and Promoter shall so notify Fighter, Promoter may at its sole option cancel this Agreement as it relates to such Bout or terminate this Agreement.

(c)     Fighter acknowledges that Promoter's obligations with respect to the Bouts are contingent upon Promoter's entering into agreements satisfactory to Promoter for the live television broadcast of the Bouts and for the site of the Bouts. In furtherance thereof, Fighter agrees that if Promoter shall not enter into such agreements for any reason, or if such agreements grant to a contracting entity the right or option to terminate any such agreement by reason of any cause, act or event beyond the direct and immediate control of Promoter, including, without limitation, any act or omission on the part of Fighter, Opponent, or any other person, and the entity exercises such right, Promoter may, at its sole option, cancel this Agreement as it relates to such Bout or terminate this Agreement. Nothing contained herein shall be deemed to grant to Fighter any right of approval over any agreement Promoter may negotiate with respect to the television broadcast of the Bouts or the sites.

(d)     In the event Promoter exercises its right to cancel this Agreement as it relates to a Bout or terminate this Agreement pursuant to any of the preceding provisions of this paragraph 7, Fighter shall thereupon immediately return to Promoter all sums theretofore advanced or paid to Fighter by Promoter in connection with such Bout, and neither party shall have any further rights or obligations hereunder with respect to such Bout or this Agreement, as applicable.

VII. FURTHER ASSURANCES. Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, a standard boxing contract in such form as may be required by the governmental authority with jurisdiction over the Bout and/or the organization(s) sanctioning the Bout if applicable. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby. Additionally, Fighter agrees to be subject to random anti-doping testing pursuant to VADA (collecting blood and urine samples AND at anytime prior to the Bout, including post Bout testing) or any other agent designated by the sanctioning body.

IX. ATTIRE/CLEARANCES.

(a)     Fighter agrees that no advertising or promotional material (including, but not limited to, permanent or temporary tattoos or body art) shall appear on the body of or on any item of clothing worn by Fighter, his trainers, seconds, assistants or other members of his team or entourage during and/or at the Bouts, press conferences, training sessions open to the public or press, or while at the site of the Bouts, without the prior written approval of Promoter. If Promoter does not, in its sole discretion, grant such approval, Fighter and/or his trainers, seconds, assistants or team members, as the case may be, shall promptly either take corrective action to remove or cover the disapproved material or shall substitute therefor clothing or equipment provided by Promoter. Fighter agrees and acknowledges that a breach of this provision would cause substantial harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay Promoter (or such third party designated by Promoter) as liquidated damages, and not as a penalty, an amount

Initials: Promoter ____ Fighter ____ Manager ____



CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

equal to (i) Eighty_five percent (85%) of the purse of Fighter if the Bout is not televised or (ii) Five Hundred Thousand U.S. Dollars ($500,000) if the Bout is televised.

(b)    From the date of this Agreement through the date of the Bout and any Future Bouts promoted by Promoter, Fighter agrees that he will not (and will cause his manager, trainers, seconds, assistants and other members of his team not to) attend or participate in any special events or other activities sponsored by, held in, hosted or otherwise affiliated with any casino, hotel or arena without Promoter's prior written approval in its sole and absolute discretion. Fighter further agrees that he will obtain prior to each of the Bouts on behalf of himself and his manager, trainers, assistants and other persons associated with him who are connected with the Bouts, all without compensation or payment whatsoever by Promoter to any person or entity, any and all required clearances, consents and licenses as is necessary with respect to Promoter's and its licensees' and assignees' worldwide exploitation in perpetuity of the Bouts as permitted in paragraph 2 above, including, without limitation, (i) any music clearances for Fighter's ring walk, (ii) footage licenses for Fighter's prior bouts, training sessions, interviews and other Fighter footage provided to Promoter hereunder by Fighter or third parties on behalf of Fighter, (iii) all consents, permissions and/or approvals for Fighter or his agents to wear, display, mention or exploit during, or in connection with, the Bouts (including, without limitation, during training sessions, press conferences or interviews) any name, logo, copyright, trademark or service mark, common law or other right (including, without limitation, any literary, dramatic, comedic, musical or photoplay right) of any person, firm or corporation, (iv) any performer residuals and consents and/or payments payable to any persons appearing in or rendering services in connection with the Bouts which are engaged by Fighter or his agents, and (v) all copyright clearances and permissions with respect to any of the foregoing.

**X.   ASSIGNMENT.** Promoter shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, without limitation, the right to co-promote the Bouts in association with any one or more persons or entities of its choosing.

**XI.   FUTURE BOUTS.**

(a)    During the twelve (12) month period from the date hereof (the "Future Period"), the parties agree with respect to each of Fighter's bouts following the Bout (each a "Future Bout" and collectively the "Future Bouts") as follows:

(i)    Fighter shall not participate in any Future Bouts during the Future Period, except as in accordance with the provisions of this Paragraph 11;

(ii)    At any time following the Bout or Future Bout, as the case may be, either party shall have the right to notify the other party in writing that he or it desires to commence negotiations with respect to Fighter's next succeeding Future Bout (the "Next Future Bout");

(iii)    During the 60 day period following the other party's receipt of such written notice, Fighter shall negotiate exclusively and in good faith with Promoter with respect to such Next Future Bout (the "Exclusive Period"), it being understood that Promoter shall have the right to designate the date (but not later than the expiration of the Future Period, unless otherwise mutually agreed upon by the parties herein), site and opponent for such Next Future Bout;

(iv)    (A) So long as Fighter wins the Bout and each subsequent Future Bout hereunder, Fighter's purse for such Next Future Bout shall be negotiated between Promoter and Fighter but shall not be less than PER PROMOTIONAL U.S. Dollars ($PER PROMOTIONAL) in full consideration for all of Fighter's services and all rights with respect to such Next Future Bout, unless otherwise mutually agreed upon by the parties herein.

(B) In the event that Fighter (x) does not win the Bout or (y) does not win any individual Future Bout hereunder (regardless of the outcome of the Bout or any Future Bout prior or subsequent to such individual Future Bout), Fighter's purse for such Next Future Bout shall be negotiated between Promoter and Fighter but shall not be less than the purse that Fighter received in his last bout against an opponent who was not ranked or rated at the time of such last bout in the top 10 by any of the WBA, WBC, IBF or WBO in full consideration for all of Fighter's services and all rights with respect to such Next Future Bout, unless otherwise mutually agreed upon by the parties herein.

(C) For purposes of this Subparagraph 11(a)(iv), the phrase "does not win" encompasses any outcome other than a win, including, without limitation, a loss, draw, no decision, no contest or disqualification.

(v)    In the event that Fighter and Promoter are unable to reach agreement during the Exclusive Period with respect to such Next Future Bout and provided Promoter has not offered Fighter the applicable minimum purse amount for such Next Future Bout as provided in Subparagraph 11(a)(iv) above, Fighter shall be free to negotiate with any other party with respect to such Next Future Bout, including, without limitation, the date, site, and Fighter's opponent; provided, however, that (x) in the event that Fighter receives an offer (the "Competing Offer") from any other party (the "Offeror") with respect to such Next Future Bout that is acceptable to Fighter, Fighter shall not accept the Competing Offer without first providing a written document containing the terms and conditions of the Competing Offer signed by the Offeror to Promoter and giving Promoter an opportunity to match the amount of Fighter's purse as contained in the Competing Offer within 15 business days and (y) in the event that Promoter matches an offer (the "Matching Offer") to Fighter which matches the amount of Fighter's purse as contained in the Competing Offer, Fighter must enter into an agreement with Promoter with respect to such Next Future Bout on the terms and conditions set forth in the Matching Offer, including, without limitation, date, site, opponent and all rights therein (it being understood that the date, site and opponent in the Matching Offer may be different from those originally designated by Promoter in Subparagraph 11(a)(iii) above and from those set forth in the Competing Offer);

Initials:   Promoter _____   Fighter _____   Manager _____

65



CASE NO. 21-CV-61654-WPD

(vi)   In the event that Promoter does not make a Matching Offer, Fighter shall be free to participate in such Next Future Bout in accordance with the terms and conditions of the Competing Offer; provided, however, that Fighter shall in no event grant the Offeror or any other party any rights to subsequent Future Bouts during the Future Period; and

(vii)   Promoter's failure to make a Matching Offer as provided above with respect to such Next Future Bout shall not relieve Fighter from his obligations hereunder with respect to subsequent Future Bouts during the Future Period.

(b)   During the three (3) month period preceding the expiration of the Future Period (the "Expiration Period"), Fighter shall negotiate exclusively and in good faith with Promoter with respect to the extension of the term of the Future Period for an additional period of twelve (12) months. In the event that Fighter and Promoter are unable to reach agreement during the Expiration Period with respect to an extension of the Future Period, Fighter shall, subsequent to the expiration of the Expiration Period, be free to negotiate with any other party with respect to Fighter's future bouts; provided, however, that (i) in the event that Fighter receives an offer from any other party with respect to such future bouts that is acceptable to Fighter, Fighter, at Fighter's option, shall be free to provide Promoter with the right to match the amount of Fighter's purse as contained in such other party's offer within 15 business days and (ii) in the event that Promoter makes Fighter an offer which matches the amount of Fighter's purse as contained in such other party's offer, Fighter must enter into an agreement with Promoter with respect to such future bouts on the terms and conditions of such matching offer, including, without limitation, the date, site and opponent.

(c)   Notwithstanding the foregoing, in the event that Fighter and Promoter are parties to a Promotional Agreement, the terms and conditions of the Promotional Agreement shall govern the rights and obligations of the parties with respect to Fighter's bouts following the Bout; provided, however, that if the Promotional Agreement expires, terminates, is challenged or is found unenforceable during the Future Period (or an extension of the Future Period in accordance with Subparagraph 11(b) above), the parties' rights during the Future Period (as the same may be extended) or any portion thereof that may extend past the date of the expiration or termination of the Promotional Agreement shall be governed by Subparagraphs 11(a) and (b) above.

(d)   Notwithstanding the foregoing, in the event that   (i) Opponent, in accordance with Title 15 United States Code ("USC") §6307b(a)(1)(A)(ii), came under contract to Promoter pursuant to a coercive provision described in Title 15 USC §6307b(a)(1)(B), (ii) this Paragraph 11 would not be enforceable against Fighter pursuant to Title 15 USC §6307b(a)(3) or (iii) the Bout is a "mandatory bout" within the meaning of Title 15 USC §6307b(b), the parties understand and agree that this Paragraph 11 shall be null and void.

XII.   EXCLUSIVITY.   Fighter will not, except upon the prior written consent of Promoter, which consent Promoter shall be free to withhold in its sole and absolute discretion, engage in any professional boxing bout or exhibition or enter into any contract with any other promoter, between the date hereof and the date of the Bout, including any date to which the Bout may be postponed or rescheduled.

XIII.   INDEPENDENT CONTRACTOR.   Nothing herein contained shall be construed to constitute Fighter as an employee of Promoter. Fighter is an independent contractor, responsible for his own actions and expenses and except as otherwise expressly set forth herein, Fighter shall be solely responsible for the payment of any and all costs and expenses incurred by him in connection with the Bouts, including, without limitation, payment of all fees to his manager, trainers, seconds, assistants, sparring partners, maintenance and training expenses, medical bills, sanctioning fees, taxes, boxing licenses, permits and fees, rights clearances, insurance, and travel, food and accommodations in excess of the amounts provided by Promoter pursuant to paragraph 5 above. Fighter shall, at his own cost and expense, be solely responsible for obtaining all licenses, permits, privileges, immunities, approvals, visas and other authorizations from governmental authorities which are necessary to entitle him to participate in the Bouts hereunder. Fighter hereby authorizes Promoter to deduct from his purse any of the foregoing costs and expenses to the extent paid by Promoter, required by law or authorized by the applicable athletic or boxing commission or sanctioning organization(s).

XIV.   EQUITABLE RELIEF.   Fighter acknowledges that his services as a professional boxer are special, unique, extraordinary, irreplaceable, and of peculiar value, and that in the event of his breach or threatened breach of this Agreement, Promoter would suffer irreparable damage which would not reasonably or adequately be compensated solely by an action at law. Accordingly, Fighter expressly agrees that in the event of such breach or threatened breach, Promoter shall be entitled, in addition to all other rights and remedies available to it, to obtain equitable relief, including, but not limited to, an injunction against such breach in any court of competent jurisdiction, and that he will not assert as a defense in any such action that Promoter has an adequate remedy at law.

XV.   REPRESENTATIONS, WARRANTIES AND COVENANTS.

(a)   Fighter represents, warrants and covenants to Promoter that he has the full power, right and authority and is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, agreement or understanding, whether oral or written, which conflicts in any material respect with the provisions hereof or which purports to grant similar or conflicting rights to any person, firm, or entity other than Promoter, or which would or might interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by Promoter of any of the rights granted to Promoter under this Agreement. Fighter further represents and warrants to Promoter that there are no claims pending or threatened or any litigations affecting Fighter which would or might interfere with the full and complete exercise or enjoyment by Promoter of any rights granted hereunder.

(b)   Fighter further acknowledges that Promoter is entering into this Agreement in reliance upon the warranties, representations and covenants herein, and Fighter agrees to indemnify, defend and hold Promoter and its affiliates harmless from and against any and all liability, cost, or expense, including reasonable attorney's fees, Promoter or its affiliates may sustain or incur as a result of the breach or inaccuracy of any of said warranties, representations and covenants.

Initials: Promoter _____   Fighter _____   Manager _____

66

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

(c) Fighter will submit to medical examination(s) requested by Promoter within five (5) days of Promoter's request, including, without limitation, examinations required by Promoter or its licensees to obtain insurance or to determine Fighter's ability or inability to participate in a Bout. Fighter agrees and acknowledges that a breach of this provision would cause substantial harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay Promoter as liquidated damages, and not as a penalty, an amount equal to (i) Eighty-five percent (85%) of the purse of Fighter if the Bout is not televised or (ii) Five Hundred Thousand U.S. Dollars ($500,000) if the Bout is televised.

XVI    FORUM SELECTION/GOVERNING LAW.   Fighter irrevocably submits to the jurisdiction of the United States District Court, Southern District of New York ("New York Federal Court") over any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined only in such New York Federal Court. Alternatively, if the New York Federal Court shall not have jurisdiction over the subject matter of the action or proceeding, then the action or proceeding may be brought in any State Court of New York in New York County having jurisdiction over the subject matter ("New York State Court"), and Fighter hereby irrevocably submits to the jurisdiction of the New York State Court. As an alternative method of personal service, Fighter irrevocably consents to the service of any and all process in any such action or proceeding by the mailing of copies at the address specified for the mailing of notices in this Agreement. Fighter agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any manner provided by law. Fighter further waives any objection to venue in such New York Federal Court or New York State Court and any objection to any action or proceeding in such New York Federal Court or New York State Court on the basis of forum non conveniens. Except as provided in the last sentence of this paragraph, Fighter further agrees that any such action or proceeding brought hereunder shall be brought only in a New York Federal Court or New York State Court. Nothing in this paragraph shall affect the right of Promoter to serve legal process in any other manner permitted by law. This Agreement shall be governed, construed and enforced in accordance with the substantive law of contracts of the State of New York and without regard to New York choice of law principles or conflicts of law principles. When and if a site for the Bout or any Future Bout pursuant to this Agreement is selected within the State of New York, the parties further mutually agree to, and shall, execute all documents required by the Rules and Regulations of the New York State Athletic Commission pertaining to the conduct of boxing in New York (19 N.Y.C.R.R. Part 205 et seq.) in a timely fashion, and mutually agree to, and shall, fully comply with all other requirements of the New York State Athletic Commission and its applicable Rules and Regulations. The parties further agree that, except by appropriate application to the New York State Athletic Commission pursuant to its Rules and Regulations, neither party shall assert any claim that non-compliance with the Rules and Regulations of the New York State Athletic Commission shall render this contract void or unenforceable.

XVII.   PROMOTIONAL AGREEMENT.   In the event that Fighter has entered into a Promotional Agreement with Promoter, the terms and conditions of that agreement shall remain in full force and effect.

XVIII.   SEVERABILITY.   Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any law, rule or regulation of any governmental authority, and if there shall exist any conflict between any provision of this Agreement and any such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect.

XIX.   WAIVER.   No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced. The payment of any monies by any party shall not be deemed a waiver. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the permitted assigns, successors and affiliated entities of the parties hereto.

XX.   CONFIDENTIALITY.   Fighter shall not disclose to any third party (other than his employees and agents (including consultants), in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event(s) Fighter shall so notify Promoter as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to his banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this paragraph, and (iii) in order to enforce his rights pursuant to this Agreement. Promoter shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement. Promoter shall have the sole right to file this Agreement with any applicable athletic or boxing commissions and sanctioning organizations.

XXI.   BENEFIT.   The provisions of this Agreement are for the exclusive benefit of the parties who are signatories hereto and their permitted successors and assigns, and no third party shall be a beneficiary of, or have any rights by virtue of, this Agreement (whether or not such third party is referred to herein).

XXII.   ENTIRE AGREEMENT.   This Agreement sets forth and integrates the entire understanding between Fighter and Promoter, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof. It may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto. Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. Any ambiguities shall be resolved without reference to which party may have drafted this Agreement.

XXIII.   COUNTERPARTS/FACSIMILE.   This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

Initials:   Promoter _____   Fighter _____   Manager _____

67

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

**XXIV    NOTICES.** Any notice required or desired to be given hereunder shall be in writing and sent (i) postage prepaid by certified mail, return receipt requested, (ii) by a recognized overnight courier, or (iii) by confirmed facsimile, addressed as follows:

| (a)  To Promoter | (b)  To Fighter |
|---|---|
| Don King Productions, Inc. | MAHMOUD CHARR |
| 501 Fairway Drive | |
| Deerfield Beach, FL  33441 | |
| FAX: (954) 427-0157 | FAX: (      )     - |
| | Social Security No.: _____ - __ - _____ |

All such notices shall be deemed given when mailed, delivered to the overnight courier or sent by confirmed facsimile.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

DON KING PRODUCTIONS, INC.

By _____          Fighter _____

Its:                                                         **MAHMOUD CHARR**

                                                              Manager _____

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT.  IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.  NEITHER PARTY IS REQUIRED TO ACCEPT ANY OF THE TERMS AND CONDITIONS IN THIS AGREEMENT.  TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS, OBJECTIVES AND BARGAINING POSITIONS OF ALL INTERESTED PERSONS.

Initials: Promoter _____  Fighter _____  Manager _____

68

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

World Boxing Association

Purse Bid Bout Contract

This Agreement, dated the 19th day of March, 2020, is made between Don King Productions, Inc. a duly commission-licensed boxing promoter ("Promoter") who is a registered and in good standing with World Boxing Association ("WBA") in good standing having paid all licenses and fees, and Mahmoud Charr ("Boxer") with Federal Tax Identification No. _____, represented by Christian Jaeger , his duly authorized manager pursuant to a manager agreement on file with the local boxing commission located in Germany.

The parties hereto agree to hold a WBA Championship title contest in the Heavyweight Division within the maximum weight limit of __N/A____ lbs between Boxer and his opponent, Trevor Bryant, ("Bout") under the following terms and conditions:

1.      The Bout will be twelve (12) rounds and held at South Florida on the 30th day of May, 2020.

2.      The WBA Rules and Regulations ("Rules") govern the Bout and are hereby incorporated and made a part of this Agreement. All Boxers and Promoters are deemed to be aware of the Rules. The Bout will also be conducted in compliance with the local boxing commission rules. As long as the local commission is recognized by the WBA, the WBA will defer to the local rules, when they conflict with the Rules, however, in cases where the local contest rules deviate from the WBA contest rules, the ABC's Unified Rules will govern the bout.

Boxer and Promoter shall comply with the Rules, including payment of all fees and expenses. Any violation of the Rules may result in withdrawal of Bout sanction, disqualification of the Boxer or Promoter, loss of the WBA Championship title, lowered ratings, or other penalties as provided under the Rules, including loss of recognition. Boxer shall comply with all WBA championship defense obligations in the Rules.

3.      Boxer and Promoter understand and agree that the Bout, as sanctioned by the WBA, and the designation of a boxer as a WBA Champion, are titles which are the property of, and belong exclusively to, the WBA. Such designations are not rights, vested or otherwise, held, owned or enjoyed by Boxer, except as provided in the Rules. The WBA reserves the right, in its discretion and pursuant to its rules, to suspend or withdraw recognition of any champion, or withhold sanction of the Bout, for failure to comply with the Rules.

4.      As full compensation for all claims and demands and for the services and performances rendered by Boxer hereunder, Promoter shall pay Boxer, and Boxer accepts the sum of U.S. one million five hundred thousand Dollars ($1,500,000.00) as Boxer's Purse as defined in WBA Rule A(6). Boxer shall pay any and all of Boxer's representatives or agents, including, but not limited to, his promoter, manager, trainer, etc. from said purse.

 

69

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

5.  For the champion, Promoter shall provide a minimum of five (5) round trip coach air travel to the site of the Bout (unless local to the fighter), accommodations for not less than five (5) persons for seven (7) nights, payment for all required visas, and for the reasonable cooperation of the contestants to promote the Bout. For the challenger, Promoter shall provide a minimum of four (4) round trip coach air travel to the site of the Bout (unless local to the fighter), accommodations for not less than four (4) persons for seven (7) nights, payment for all required visas, and for the reasonable cooperation of the contestants to promote the Bout  Reasonable cooperation may include, but is not limited to, those pre fight events required by the winning promoter's contracts with broadcasters, site owners and sponsors, including press conferences or announcements.

6.  **Boxer understands that, pursuant to the Rules, a sanction fee in the amount of three percent (3%) of Boxer's purse as defined in WBA Rule A(6), including amounts received for training expenses and monies paid to Boxer's manager, promoter, etc., is due and owing to the WBA for sanction of the Bout. Boxer agrees the aforesaid sanction fee will be withheld by Promoter from the purse otherwise payable to Boxer for the Bout, and paid to the WBA by the Promoter. Boxer and Promoter agree that the Bout will not be recognized as a WBA Championship Bout if the aforesaid sanction fee is not paid in full prior to the Bout.**

7.  Boxer shall submit to such medical, illicit drug, and antidoping tests required by the local commissions, the Rules, and as agreed to between the parties, and understands and agrees that Boxer may be disqualified, fined, suspended or otherwise disciplined if Boxer fails to take such tests or if the results of Boxer's illicit drug or antidoping test are positive. Boxer will not take, imbibe or have administered to Boxer any illicit drug, prohibited substance or any other substance that will or could possibly affect his performance in the ring, or physical and mental capabilities, and represents that he has not done so during the six (6) months prior to the date of this Agreement. Boxer has registered with VADA as required by the WBA.

8.  The parties acknowledge that the WBA reserves the right to withdraw sanction of the Bout as a Championship Bout if Boxer refuses or fails to submit the above mentioned reports, documents or fails to submit to the required or agreed upon drug, antidoping or medical tests.

9.  The non-scoring referee and three judges for the Bout will be selected, designated, and approved by the WBA in accordance with the Rules and in cooperation with the local commission.

10.  Each Boxer may choose the brand and model of commercially reasonably available gloves subject to the approval of the WBA and the local commission. Each Boxer shall advise Promoter of the brand and style of gloves to be used at least twenty-one (21) days prior to the scheduled Bout. If Boxer fails to do so, Boxer shall be provided the same brand and style used by the opponent.  Promoter shall provide the requested and approved gloves for each Boxer in factory sealed packaging at the Rules meeting. The weight of the gloves must comply with the weights stated in the Rules or the rules of the local commission.



70

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

11.     Boxer shall cooperate and assist Promoter in publicizing, advertising and promoting of the Bout, and agrees to arrive at the site of the Bout at least seven (7) days prior to the Bout, including participating in press conferences as reasonably scheduled by Promoter at Promoter's expense.

12.     Boxer represents, warrants and agrees that Boxer is free to enter into this Agreement and has not heretofore entered into, and will not prior to the Bout, enter into any contracts or agreements which might interfere with the performance of Boxer's obligations under this Agreement, and that Boxer is not a party to any pending claims, litigation or impediments that might affect the obligations and rights of the parties under this Agreement.

13.     Promoter represents and warrants that it is a duly registered promoter in good standing that will pay all applicable fees and expenses in accordance with the WBA Rules and fee schedule, and that Promoter holds a valid boxing commission promoter's license from a recognized boxing jurisdiction

14.     In the event of a disagreement or controversy regarding this Agreement, Boxer and Promoter shall submit the same to the WBA for determination with a fee to be determined by the WBA. The parties agree to be bound by the Rules and decisions of the WBA concerning any such disagreement or controversy.

15.     Promoter will ensure that there will be a minimum of one ambulance and two doctors present at the Bout at all times.

16.     Promoter shall pay life and hospital insurance policies for the Bout participants and the card as required by the local commission.

17.     Boxer shall enter the ring for the Bout displaying the championship belt (if recognized as WBA Champion), and to participate in any championship belt ceremony.

18.     All visas and other governmental documentation necessary for Boxer to participate in the Bout shall be the responsibility of Promoter, provided, however, that Boxer shall fully and timely cooperate in the obtaining of such visa.

19.     This Agreement shall also be signed by Boxer's duly authorized manager if a current valid Manager/Boxer contract has been registered with his local commission, federation and/or the WBA.

20.     Boxer shall engage in a good faith exhibition of Boxer's skills, compete to the best of Boxer's ability, and immediately disclose to the WBA and Promoter any impediment to doing so, including but not limited to any injury.

21.     The WBA will not recognize the Bout as a Championship Bout until this Agreement is fully executed by all parties and approved by the President and Championships Chairman.



71

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

22.    Boxer and Promoter may voluntarily agree to additional terms or conditions regarding the Bout. In the event a local commission form of contract is required, Boxer agrees to execute same.

IN WITNESS WHEREOF, the parties have freely and voluntarily executed this Agreement on the day and year first above written.

**PROMOTER**                                    **BOXER'S LICENSED MANAGER**

                                                 Christian Jaeger

By: _____

Date: _____              Date: _19.03.2020_____

Address: _____                   Address: _Panoramaweg 623___

_____                    _AT-6100 Seefeld/Tirol____

Email: _____             Email: _cj@ugj,biz_____

Phone: _____             Phone: _+436677500000_____

**BOXER**                                        **WBA SANCTION APPROVAL**

Mahmoud Charr

Date: _19.03.2020_____                   Date: _____

72

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

# EXHIBIT H

73



CASE NO. 21-CV-61654-WPD

World Boxing Association

Purse Bid Bout Contract

This Agreement, dated the 8th day of December, 2020, is made between **Don King Productions, Inc., a Delaware corporation, with offices at 501 Fairway Drive, Deerfield Beach, Florida 33441** a duly commission-licensed boxing promoter ("Promoter") who is a registered and in good standing with World Boxing Association ("WBA") in good standing having paid all licenses and fees, and **Mahmoud Charr ("Boxer")** with Federal Tax Identification No. _____, represented by Erol Ceylan, his duly authorized promoter pursuant to a promotional agreement on file with the local boxing commission located at Istanbul/Turkey.

The parties hereto agree to hold a WBA Championship title contest in the Heavyweight Division within the maximum weight limit of Heavyweight between Boxer and his opponent, **Trevor Bryan, ("Bout")** under the following terms and conditions:

1.      The Bout will be twelve (12) rounds and held at _South Florida_ on the **29th day of January, 2021.**

2.      The WBA Rules and Regulations ("Rules") govern the Bout and are hereby incorporated and made a part of this Agreement. All Boxers and Promoters are deemed to be aware of the Rules. The Bout will also be conducted in compliance with the local boxing commission rules. As long as the local commission is recognized by the WBA, the WBA will defer to the local rules, when they conflict with the Rules, however, in cases where the local contest rules deviate from the WBA contest rules, the ABC's Unified Rules will govern the bout.

Boxer and Promoter shall comply with the Rules, including payment of all fees and expenses. Any violation of the Rules may result in withdrawal of Bout sanction, disqualification of the Boxer or Promoter, loss of the WBA Championship title, lowered ratings, or other penalties as provided under the Rules, including loss of recognition. Boxer shall comply with all WBA championship defense obligations in the Rules.

3.      Boxer and Promoter understand and agree that the Bout, as sanctioned by the WBA, and the designation of a boxer as a WBA Champion, are titles which are the property of, and belong exclusively to, the WBA. Such designations are not rights, vested or otherwise, held, owned or enjoyed by Boxer, except as provided in the Rules. The WBA reserves the right, in its discretion and pursuant to its rules, to suspend or withdraw recognition of any champion, or withhold sanction of the Bout, for failure to comply with the Rules.

4.      As full compensation for all claims and demands and for the services and performances rendered by Boxer hereunder, Promoter shall pay Boxer, and Boxer accepts the sum of **1,500,000,00 U.S. Dollars ($ 1,500,000,00)** as Boxer's Purse as defined in WBA Rule

74

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

2

A(6). Boxer shall pay any and all of Boxer's representatives or agents, including, but not limited to, his promoter, manager, trainer, etc. from said purse.

5.    For the champion, Promoter shall provide a minimum of five (5) round trip coach air travel to the site of the Bout (unless local to the fighter), accommodations for not less than five (5) persons for seven (7) nights, payment for all required visas, and for the reasonable cooperation of the contestants to promote the Bout. For the challenger, Promoter shall provide a minimum of four (4) round trip coach air travel to the site of the Bout (unless local to the fighter), accommodations for not less than four (4) persons for seven (7) nights, payment for all required visas, and for the reasonable cooperation of the contestants to promote the Bout. Reasonable cooperation may include, but is not be limited to, those pre fight events required by the winning promoter's contracts with broadcasters, site owners and sponsors, including press conferences or announcements.

6.    **Boxer understands that, pursuant to the Rules, a sanction fee in the amount of three percent (3%) of Boxer's purse as defined in WBA Rule A(6), including amounts received for training expenses and monies paid to Boxer's manager, promoter, etc., is due and owing to the WBA for sanction of the Bout. Boxer agrees the aforesaid sanction fee will be withheld by Promoter from the purse otherwise payable to Boxer for the Bout, and paid to the WBA by the Promoter. Boxer and Promoter agree that the Bout will not be recognized as a WBA Championship Bout if the aforesaid sanction fee is not paid in full prior to the Bout.**

7.    Boxer shall submit to such medical, illicit drug, and antidoping tests required by the local commissions, the Rules, and as agreed to between the parties, and understands and agrees that Boxer may be disqualified, fined, suspended or otherwise disciplined if Boxer fails to take such tests or if the results of Boxer's illicit drug or antidoping test are positive. Boxer will not take, imbibe or have administered to Boxer any illicit drug, prohibited substance or any other substance that will or could possibly affect his performance in the ring, or physical and mental capabilities, and represents that he has not done so during the six (6) months prior to the date of this Agreement.

8.    The parties acknowledge that the WBA reserves the right to withdraw sanction of the Bout as a Championship Bout if Boxer refuses or fails to submit the above mentioned reports, documents or fails to submit to the required or agreed upon drug, antidoping or medical tests.

9.    The non-scoring referee and three judges for the Bout will be selected, designated, and approved by the WBA in accordance with the Rules and in cooperation with the local commission.

10.   Each Boxer may choose the brand and model of commercially reasonably available gloves subject to the approval of the WBA and the local commission. Each Boxer shall advise Promoter of the brand and style of gloves to be used at least twenty-one (21) days prior to the scheduled Bout. If Boxer fails to do so, Boxer shall be provided the same brand and style used by the opponent. Promoter shall provide the requested and approved gloves for each Boxer

75

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

3

in factory sealed packaging at the Rules meeting. The weight of the gloves must comply with the weights stated in the Rules or the rules of the local commission.

11.     Boxer shall cooperate and assist Promoter in publicizing, advertising and promoting of the Bout, and agrees to arrive at the site of the Bout at least seven (7) days prior to the Bout, including participating in press conferences as reasonably scheduled by Promoter at Promoter's expense.

12.     Boxer represents, warrants and agrees that Boxer is free to enter into this Agreement and has not heretofore entered into, and will not prior to the Bout, enter into any contracts or agreements which might interfere with the performance of Boxer's obligations under this Agreement, and that Boxer is not a party to any pending claims, litigation or impediments that might affect the obligations and rights of the parties under this Agreement.

13.     Promoter represents and warrants that it is a duly registered promoter in good standing that will pay all applicable fees and expenses in accordance with the WBA Rules and fee schedule, and that Promoter holds a valid boxing commission promoter's license from a recognized boxing jurisdiction

14.     In the event of a disagreement or controversy regarding this Agreement, Boxer and Promoter shall submit the same to the WBA for determination with a fee to be determined by the WBA. The parties agree to be bound by the Rules and decisions of the WBA concerning any such disagreement or controversy.

15.     Promoter will ensure that there will be a minimum of one ambulance and two doctors present at the Bout at all times.

16.     Promoter shall pay life and hospital insurance policies for the Bout participants and the card as required by the local commission.

17.     Boxer shall enter the ring for the Bout displaying the championship belt (if recognized as WBA Champion), and to participate in any championship belt ceremony.

18.     All visas and other governmental documentation necessary for Boxer to participate in the Bout shall be the responsibility of Promoter, provided, however, that Boxer shall fully and timely cooperate in the obtaining of such visas.

19.     This Agreement shall also be signed by Boxer's duly authorized manager if a current valid Manager/Boxer contract has been registered with his local commission, federation and/or the WBA.

20.     Boxer shall engage in a good faith exhibition of Boxer's skills, compete to the best of Boxer's ability, and immediately disclose to the WBA and Promoter any impediment to doing so, including but not limited to any injury.

76

**BlackSrebnick**

CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

4

21.    The WBA will not recognize the Bout as a Championship Bout until this Agreement is fully executed by all parties and approved by the President and Championships Chairman.

22.    Boxer and Promoter may voluntarily agree to additional terms or conditions regarding the Bout. In the event a local commission form of contract is required, Boxer agrees to execute same.

IN WITNESS WHEREOF, the parties have freely and voluntarily executed this Agreement on the day and year first above written.

**PROMOTER**                                    **BOXER'S LICENSED Promoter**

Don King Productions, Inc.

By: _____

Date: _____        Date: 8th day of December 2020

Address: _____
Address: _____

_____        Erol Ceylan

Email: _____        Email: erolceylan@ecboxing.de

Phone: _____        Phone: 0049(0)1636655611

Witness: _____        Witness: _____

77

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

s

**BOXER**

**WBA SANCTION APPROVAL**

Mahmoud Charr

Date:  8ᵗʰ day of December 2020

Address:

Im Zollhafen Nr. 12

50678 Köln-Rheinauhafen

Germany

Date: _08. 12. 070_

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

# EXHIBIT I



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

From: thomas.schmidt@ecboxing.de
To: carllewis@carllewislaw.com
Cc: gilberticowba@wbaboxing.com, Norygil@wbaboxing.com, Norygil@outlook.com,
jthyme@wbaboxing.com, chavezc176@gmail.com, Dking@donking.com,
erolceylan@ecboxing.de, dinesandenglish@aol.com, mc@diamondboypromotion.com,
chavezc176@icloud.com, gilberticoboxing@wbaboxing.com,
rmack@smithallinglane.com, joliverg@wbanews.com, RingMIA@aol.com
Sent: 12/19/2020 7:55:17 AM Eastern Standard Time
Subject: AW: AW: DKP Bout Agreement for Charr v. Bryan January 29, 2021 WBA Bout

Please find annexed signed contract. We are signing and sending this under protest for the reasons
set forth in Mr. English's email of December 15 (I´m sending separately again following this
email). The threat to take Mr. Charr's title when he has twice signed a WBA bout contract
we believe is completely improper, but in light of that threat there is no choice but to execute this
document. We have been advised to cross out the objectionable parts of the DKP contract which we
have done. We have also made appropriate corrections to reference the proper athletic commission
since this bout is to be in Florida, and not New York, and other interlineations to make it closer to
the WBA form contract.

Mr. Charr feels helpless. He wants to fight and defend his title. By signing the WBA form contract
(now twice) he complied with his responsibilities under WBA Resolution 20200221911702. Yet the
WBA is threatening to take his title if he does not sign the DKP form of contract. He feels
that DKP is engaging in extortion in this regard.

Faced with the choice of complying to the threats or losing his title, Mr. Charr is executing the
DKP form of contract as modified, which is enclosed. He urges, however, that DKP act in an
honorable way and execute the WBA form, previously sent.

Obviously all rights are reserved.

@Mr. Lewis: have not received an answer yet on my email below from Monday 14th of December, have
you started the Visa application process for P1 visa in the meantime?

Best regards

80



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

Thomas Schmidt

EC Boxpromotion GmbH & Co. KG | Normannenweg 16-18 | 20537 Hamburg | Tel: +49 40
20949758 |Fax: +49 40 23800076 | Mobil: +49 (0)162 293 99 18
| thomas.schmidt@ecboxing.de

Sitz der Gesellschaft: Hamburg | Geschäftsführer: Erol Ceylan

HRB: Hamburg 111699 | Rechtsform: GmbH & Co. KG |

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD



## DON KING PRODUCTIONS, INC.

501 FAIRWAY DRIVE □ DEERFIELD BEACH, FLORIDA 33441
PHONE: (954) 418-5800
FAX: (954) 418-0157

### BOUT AGREEMENT

THIS BOUT AGREEMENT (the "Agreement") is made and entered into December 4, 2020 by and between Don King Productions, Inc., a Delaware corporation, with offices at 501 Fairway Drive, Deerfield Beach, Florida 33441 ("Promoter") and MAHMOUD CHARR ("Fighter").

WHEREAS, the parties desire to enter into an agreement pursuant to which Fighter shall engage in a professional boxing bout (the "Bout") between Fighter and TREVOR BRYAN ("Opponent") and other bouts, upon and subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and agreements hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

I.   **THE BOUT.**   Fighter will engage in the Bout with Opponent for the WBA World Heavyweight Title for Twelve (12) rounds a decision to be promoted or co-promoted by Promoter on January 29, 2021 at SOUTH FLORIDA, FLORIDA ~~or at such other time as Promoter may designate~~. Fighter shall weigh in at no more than HEAVYWEIGHT lbs. The Bout will be conducted and the officials shall be designated in conformity with the rules and regulations of the applicable athletic or boxing commission and the World Boxing Association and/or any other sanctioning organization.

II.   **WORLDWIDE RIGHTS TO BOUTS.**   Fighter grants to Promoter all worldwide rights, title and interest to the Bout ~~and any future Bouts (as defined below) hereinafter,~~ promoted by Promoter (the Bout ~~and any such Future Bouts~~ shall be collectively referred to herein as the "Bouts") in perpetuity, including, but not limited to:

(a)      The right to all site fees, live-gate receipts, sponsorship fees, and motion picture, radio, television (whether live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable or subscription), telephone, computer, CD-ROM, broadband, digital, and online services, the worldwide web and the "Internet" (as such term is commonly understood currently or in the future) (collectively, the "Internet"), video and audio cassette, virtual advertising, photograph, including raw footage, out takes and negatives, merchandising and program rights now or hereinafter invented in connection with or based upon the Bouts or the activities pertaining to the Bouts, including, but not limited to, training sessions, interviews and press conferences for the Bouts (the "Pre-Bout Events"), post-fight interviews, press conferences and other events (the "Post-Bout Events") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

(b)      The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the rights granted hereunder and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the rights granted hereunder;

(c)      The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted Promoter hereunder, including the right to promote, exploit and turn to account all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to said rights for the proper production and promotion of radio, television and Internet broadcasts of the Bouts, the Pre-Bout Events and the Post-Bout Events, such as announcers, commercials, artwork and other elements;

(d)      All right, title and interest in and to any recordings of the television, Internet and radio broadcasts and motion picture films and video and audio cassettes of, or based upon the Bouts, the Pre-Bout Events and the Post-Bout Events, including, but not limited to, magnetic tapes, and the right to secure in its own name or that of its nominee copyright and other protection to the extent available throughout the world;

(e)      The right to use in any media the name, likeness and biography of Fighter, his manager, trainers and other persons associated with him who are connected with the Bouts, for the purpose of advertising, promotion, publicity, merchandising and exploitation of the Bouts, the Pre-Bout Events and Post-Bout Events all without compensation or payment to any of the aforesaid parties, provided, however, that in no event may such names, likenesses or biographies be used as an endorsement of any commercial product or service; and

(f)      The non-exclusive right to use a three minute clip of the recording of any prior bout, press conferences, interviews, training sessions or other footage in which Fighter was a participant to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights solely for the purposes of publicizing the Bouts which shall be delivered to Promoter upon request therefore.

III.   **PURSE.**   In consideration of Fighter's participation in the Bout and for all of the rights herein granted to Promoter, Promoter shall pay to Fighter and Fighter shall accept the sum of **One Million Five Hundred Thousand U.S. Dollars ($1,500,000.00)** per March 2, 2020 purse bid, ~~all payment terms as Promoter may determine reasonable for the WBA stipulation from the March 2020 Purse Bid won by Promoter~~. Such sum shall be paid to Fighter by check upon completion of the Bout. ~~Any down payment specified is to be paid to Manager-Coach Lebanon Fighters as an expense of Promoter may be recuperated from purse funds won by Fighter.~~

IV.   **TRAINING.**   If Promoter shall so request, Fighter will commence training at the site of the Bouts at suitable training facilities to be provided by Promoter to Fighter, no less than Five -5- days prior to the date the Bout is scheduled.

V.   **AIR FARE, ROOM AND BOARD.**   Promoter shall furnish to Fighter FIVE -5- round-trip coach airline tickets from GERMANY to the site

Initials:   Promoter _____   Fighter _____   Manager _____



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

of the Bout. Promoter shall also furnish Fighter with FIVE -5- hotel rooms and three meals per day for FIVE -5- persons for a period of FIVE -5- days preceding and including the date of the Bout. It is expressly understood, however, that Promoter shall have no obligation for the cost of long-distance telephone calls, alcoholic beverages, entertainment or similar expenses, all of which shall be borne solely by Fighter, and Fighter shall be required to provide satisfactory credit or cash security to the hotel for such personal expenses. Promoter shall have the right at its option to withhold ten percent of the purse and to pay such expenses there from if Fighter fails to do so. Upon presentation by Fighter to Promoter of satisfactory evidence by Fighter of payment of such expenses, any remaining portion of the withheld amount shall be paid to Fighter. Fighter agrees to conduct himself (to cause his manager, trainers and other persons associated with him at the Bouts to conduct themselves) reasonably while traveling to and from a Bout and while on or about the site of the Bout and the site hotel. Any physical damage to hotel rooms or property of others caused by Fighter or such persons shall be charged to Fighter's account. Fighter shall assist Promoter in promptly collecting the cost of such damage from Fighter or such persons.

**VI. TRAINING SESSIONS/PROMOTIONAL ACTIVITIES.** Fighter agrees that Promoter may charge admission to Fighter's training sessions and that such proceeds shall be the property of Promoter. Fighter agrees that without additional consideration or compensation he will cooperate and assist in the advertising, publicity, and promotion of the Bouts, including his appearance at such reasonable number of press conferences, interviews and other promotional activities as Promoter may designate. Fighter agrees to acknowledges that a breach of this provision would cause harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay to Promoter as liquidated damages, and not as a penalty, $150,000 if the Bout is being televised or $50,000 if the Bout is non-televised.

**VII. FORCE MAJEURE AND OTHER POSTPONEMENTS.**

(a) Only in the event that the Bout is postponed or prevented from taking place by any reason of any Act of God (natural disaster/disease/epidemic/pandemic/quarantine), act of government related to said Act of God (i.e. travel restrictions), fire, flood, riot, war, public disaster or any other cause beyond the direct and immediate control of the Promoter, or if Fighter or Opponent shall become disabled or incapacitated by reason of any physical or mental disability, injury or illness which prevents or interferes with his or their participation in such Bout as scheduled, AND a physician licensed by the governmental authority having jurisdiction over such Bout shall certify that Fighter or Opponent cannot participate in such bout as scheduled, then Promoter may, at its sole option, either (a) postpone such Bout to a date no later than 90 days after the originally scheduled date, in which event all of the provisions of this Agreement shall remain in full force and effect and shall apply to the rescheduled date or (b) cancel this Agreement as it relates to such Bout or terminate this Agreement. For Bout which is the subject matter of this Agreement is represented to be undersold to any main event and that main event is postponed or cancelled for any reason whatsoever, then Promoter may at its sole option either postpone Bout to a date to coincide with the postponed date of the main event or another main event, in which event all of the provisions of this Agreement, including the provisions of this paragraph, shall remain in full force and effect and shall apply to the rescheduled date or else cancel this Agreement as it relates to such Bout or terminate this Agreement.

(b) In the event Fighter's opponent for any of the Bouts shall for any reason fail because to participate in such Bouts or shall withdraw therefrom and, Promoter shall so notify Fighter, Promoter may at its sole option cancel this Agreement as it relates to such Bout or terminate this Agreement.

(c) Fighter acknowledges that Promoter's obligations with respect to the Bouts are contingent upon Promoter's entering into agreements satisfactory to Promoter for the live television broadcast of the Bouts and for the site of the Bouts. In furtherance thereof, Fighter agrees that if Promoter shall not enter into such agreements for any reason, or if such agreements grant to a contracting entity the right or option to terminate any such agreements for any cause, act or event beyond the direct and immediate control of Promoter, including, without limitation, any act or omission on the part of Fighter, Opponent, or any other person, and the entity exercises such right, Promoter may, at its sole option, cancel this Agreement as it relates to such Bout or terminate this Agreement. Nothing contained herein shall be deemed to grant to Fighter any right of approval over any agreement Promoter may negotiate with respect to the television broadcast of the Bouts or the sites.

(d) In the event Promoter exercises its right to cancel this Agreement as it relates to a Bout or terminate this Agreement pursuant to any of the preceding provisions of this paragraph 7, Fighter shall thereupon immediately return to Promoter all sums theretofore advanced or paid to Fighter by Promoter in connection with such Bout, and neither party shall have any further rights or obligations hereunder with respect to such Bout or this Agreement as applicable.

**VII. FURTHER ASSURANCES.** Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, a standard boxing contract in such form as may be required by the governmental authority with jurisdiction over the Bout and/or the organization(s) sanctioning the Bout if applicable. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby. Additionally, Fighter agrees to be subject to random anti-doping testing pursuant to VADA (collecting blood and urine samples AND at anytime prior to the Bout, including post Bout testing) or any other agent designated by the sanctioning body.

**IX. ATTIRE/CLEARANCES.**

(a) Fighter agrees that no advertising or promotional material (including, but not limited to, permanent or temporary tattoos or body art) *prior Title all to be approved by* WITHELD shall appear on the body of or on any item of clothing worn by Fighter, his trainers, seconds, assistants or other members of his team or entourage during and/or at the Bouts, press conferences, training sessions open to the public or press, or while at the site of the Bouts, without the prior written approval of Promoter. If Promoter does not, in its sole discretion grant such approval, Fighter and/or his trainers, seconds, assistants or team members, as the case may be, shall promptly either take corrective action to remove or cover the disapproved material or shall substitute therefor clothing or equipment provided by Promoter. Fighter agrees and acknowledges that a breach of this provision would cause substantial harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay Promoter (or such third party designated by Promoter) as liquidated damages, and not as a penalty, an amount

Initials: Promoter _____ Fighter _____ Manager _____

83

CASE NO. 21-CV-61654-WPD

~~equals to (i) Eighty-five percent (85%) of the purse of Fighter if the Bout is not televised or (ii) Five Hundred Thousand U.S. Dollars ($500,000) if the Bouts is televised~~

(b)    From the date of this Agreement through the date of the Bout and any Future Bouts promoted by Promoter, Fighter agrees that he will not (and will cause his manager, trainers, seconds, assistants and other members of his team not to) attend or participate in any special events or other activities sponsored by, held in, hosted or otherwise affiliated with any casino, hotel or arena without Promoter's prior written approval in its sole and absolute discretion. Fighter further agrees that he will obtain prior to each of the Bouts on behalf of himself and his manager, trainers, assistants and other persons associated with him who are connected with the Bouts, all without compensation or payment whatsoever by Promoter to any person or entity, any and all required clearances, consents and licenses as is necessary with respect to Promoter's and its licensees' and assignees' worldwide exploitation in perpetuity of the Bouts as permitted in paragraph 2 above, including, without limitation, (i) any music clearances for Fighter's ring walk, (ii) footage licenses for Fighter's prior bouts, training sessions, interviews and other Fighter footage provided to Promoter hereunder by Fighter or third parties on behalf of Fighter, (iii) all consents, permissions and/or approvals for Fighter or his agents to wear, display, mention or exploit during, or in connection with, the Bouts (including, without limitation, during training sessions, press conferences or interviews) any name, logo, copyright, trademark or service mark, common law or other right (including, without limitation, any literary, dramatic, comedic, musical or photoplay right) of any person, firm or corporation, (iv) any performer residuals and consents and/or payments payable to any persons appearing in or rendering services in connection with the Bouts which are engaged by Fighter or his agents, and (v) all copyright clearances and permissions with respect to any of the foregoing.

X.    **ASSIGNMENT.** Promoter shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, _—but not obligation—_ without limitation, the right to co-promote the Bouts in association with any one or more persons or entities of its choosing.

XI.    ~~FUTURE BOUTS.~~

~~(a)    During the twelve (12) month period from the date hereof (the "Future Period"), the parties agree with respect to each of Fighter's bouts following the Bout (each a "Future Bout" and collectively, the "Future Bouts") as follows:~~

~~(i)    Fighter shall not participate in any Future Bouts during the Future Period, except as in accordance with the provisions of this Paragraph 11;~~

~~(ii)    At any time following the Bout or Future Bout, as the case may be, either party shall have the right to notify the other party in writing that he or it desires to commence negotiations with respect to Fighter's next succeeding Future Bout (the "Next Future Bout");~~

~~(iii)    During the 60 day period following the other party's receipt of such written notice, Fighter shall negotiate exclusively and in good faith with Promoter with respect to such Next Future Bout (the "Exclusive Period"), it being understood that Promoter shall have the right to designate the date (but not later than the expiration of the Future Period, unless otherwise mutually agreed upon by the parties herein), site and opponent for such Next Future Bout;~~

~~(iv)    (A) So long as Fighter wins the Bout and each subsequent Future Bout hereunder, Fighter's purse for such Next Future Bout shall be negotiated between Promoter and Fighter but shall not be less than PER PROMOTIONAL U.S. Dollars ($PER PROMOTIONAL) in full consideration for all of Fighter's services and all rights with respect to such Next Future Bout, unless otherwise mutually agreed upon by the parties herein.~~

~~(B) In the event that Fighter (x) does not win the Bout or (y) does not win any individual Future Bout hereunder (regardless of the outcome of the Bout or any Future Bout prior or subsequent to such individual Future Bout), Fighter's purse for such Next Future Bout shall be negotiated between Promoter and Fighter but shall not be less than the purse that Fighter received in his last bout against an opponent who was not ranked or rated at the time of such last bout in the top 10 by any of the WBA, WBC, IBF or WBO in full consideration for all of Fighter's services and all rights with respect to such Next Future Bout, unless otherwise mutually agreed upon by the parties herein.~~

~~(C) For purposes of this Subparagraph 11(a)(iv), the phrase "does not win" encompasses any outcome other than a win, including, without limitation, a loss, draw, no decision, no contest or disqualification.~~

~~(v)    In the event that Fighter and Promoter are unable to reach agreement during the Exclusive Period with respect to such Next Future Bout and provided Promoter has not offered Fighter the applicable minimum purse amount for such Next Future Bout as provided in Subparagraph 11(a)(iv) above, Fighter shall be free to negotiate with any other party with respect to such Next Future Bout, including, without limitation, the date, site, and Fighter's opponent; provided, however, that (x) in the event that Fighter receives an offer (the "Competing Offer") from any other party (the "Offeror") with respect to such Next Future Bout that is acceptable to Fighter, Fighter shall not accept the Competing Offer without first providing a written document containing the terms and conditions of the Competing Offer signed by the Offeror to Promoter and giving Promoter an opportunity to match the amount of Fighter's purse as contained in the Competing Offer within 15 business days and (y) in the event that Promoter makes an offer (the "Matching Offer") to Fighter which matches the amount of Fighter's purse as contained in the Competing Offer, Fighter must enter into an agreement with Promoter with respect to such Next Future Bout on the terms and conditions set forth in the Matching Offer, including, without limitation, date, site, opponent and all rights therein (it being understood that the date, site and opponent in the Matching Offer may be different from those originally designated by Promoter in Subparagraph 11(a)(iii) above and from those set forth in the Competing Offer);~~

Initials:  Promoter _____    Fighter _____    Manager _____

84

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

(vi) ~~In the event that Promoter does not make a Matching Offer, Fighter shall be free to participate in such Next Future Bout in accordance with the terms and conditions of the Competing Offer, provided, however, that Fighter shall in no event grant the Offeror or any other party any rights to subsequent Future Bouts during the Future Period; and~~

(vii) ~~Promoter's failure to make a Matching Offer as provided above with respect to such Next Future Bout shall not relieve Fighter from his obligations hereunder with respect to subsequent Future Bouts during the Future Period.~~

~~(b)      During the three (3) month period preceding the expiration of the Future Period (the "Expiration Period"), Fighter shall negotiate exclusively and in good faith with Promoter with respect to the extension of the term of the Future Period for an additional period of twelve (12) months.  In the event that Fighter and Promoter are unable to reach agreement during the Expiration Period with respect to an extension of the Future Period, Fighter shall, subsequent to the expiration of the Expiration Period, be free to negotiate with any other party with respect to Fighter's future bouts; provided, however, that (i) in the event that Fighter receives an offer from any other party with respect to such future bouts that is acceptable to Fighter, Fighter, at Fighter's option, shall be free to provide Promoter with the right to match the amount of Fighter's purse as contained in such other party's offer within 15 business days and (ii) in the event that Promoter makes Fighter an offer which matches the amount of Fighter's purse as contained in such other party's offer, Fighter must enter into an agreement with Promoter with respect to such future bouts on the terms and conditions of such matching offer, including, without limitation, the date, site and opponent.~~

~~(c)      Notwithstanding the foregoing, in the event that Fighter and Promoter are parties to a Promotional Agreement, the terms and conditions of the Promotional Agreement shall govern the rights and obligations of the parties with respect to Fighter's bouts following the Bout; provided, however, that if the Promotional Agreement expires, terminates, is challenged or is found unenforceable during the Future Period (or an extension of the Future Period in accordance with Subparagraph 11(b) above), the parties' rights during the Future Period (as the same may be extended) or any portion thereof that may extend past the date of the expiration or termination of the Promotional Agreement shall be governed by Subparagraphs 11(a) and (b) above.~~

~~(d)      Notwithstanding the foregoing, in the event that   (i) Opponent, in accordance with   Title 15 United States Code ("USC" §6307b(a)(1)(A)(i), come under contract to Promoter pursuant to a coercive provision described in Title 15 USC §6307b(a)(1)(B), (ii) this Paragraph 11 would not be enforceable against Fighter pursuant to Title 15 USC §6307b(a)(3) or (iii) the Bout is a "mandatory bout" within the meaning of Title 15 USC §6307b(b), the parties understand and agree that this Paragraph 11 shall be null and void.~~

**XII.   EXCLUSIVITY.**  Fighter will not, except upon the prior written consent of Promoter, which consent Promoter shall be free to withhold in its sole and absolute discretion, engage in any professional boxing bout or exhibition or enter into any contract with any other promoter, between the date hereof and the date of the Bout, including any date to which the Bout may be postponed or rescheduled.

**XIII.   INDEPENDENT CONTRACTOR.**  Nothing herein contained shall be construed to constitute Fighter as an employee of Promoter. Fighter is an independent contractor, responsible for his own actions and expenses and except as otherwise expressly set forth herein, Fighter shall be solely responsible for the payment of any and all costs and expenses incurred by him in connection with the Bouts, including, without limitation, payment of all fees to his manager, trainers, seconds, assistants, sparring partners, maintenance and training expenses, medical bills, sanctioning fees, taxes, boxing licenses, permits and fees, rights clearances, insurance, and travel, food and accommodations in excess of the amounts provided by Promoter pursuant to paragraph 5 above. Fighter shall, at his own cost and expense, be solely responsible for obtaining all licenses, permits, privileges, immunities, approvals, signs and other authorizations from governmental authorities which are necessary to enable him to participate in the Bouts hereunder.  Fighter hereby authorizes Promoter to deduct from his purse any of the foregoing costs and expenses to the extent paid by Promoter, required by law or authorized by the applicable athletic or boxing commission or sanctioning organization(s). *Promoter will obtain a visa for Fighter and Fighter will expense to a foreign zone.*

**XIV.   EQUITABLE RELIEF.**  Fighter acknowledges that his services as a professional boxer are special, unique, extraordinary, irreplaceable, and of peculiar value, and that in the event of his breach or threatened breach of this Agreement, Promoter would suffer irreparable damage which would not reasonably or adequately be compensated solely by an action at law.  Accordingly, Fighter expressly agrees that in the event of such breach or threatened breach, Promoter shall be entitled, in addition to all other rights and remedies available to it, to obtain equitable relief, including, but not limited to, an injunction against such breach in any court of competent jurisdiction, and that he will not assert as a defense in any such action that Promoter has an adequate remedy at law.

**XV.   REPRESENTATIONS, WARRANTIES AND COVENANTS.**

(a)      Fighter represents, warrants and covenants to Promoter that he has the full power, right and authority and is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, agreement or understanding, whether oral or written, which conflicts in any material respect with the provisions hereof or which purports to grant similar or conflicting rights to any person, firm, or entity other than Promoter, or which would or might interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by Promoter of any of the rights granted to Promoter under this Agreement.  Fighter further represents and warrants to Promoter that there are no claims pending or threatened or any litigations affecting Fighter which would or might interfere with the full and complete exercise or enjoyment by Promoter of any rights granted hereunder.

(b)      Fighter further acknowledges that  Promoter is entering into this Agreement in reliance upon the warranties, representations and covenants herein, and Fighter agrees to indemnify, defend and hold Promoter and its affiliates harmless from and against any and all liability, cost, or expense, including reasonable attorney's fees, Promoter or its affiliates may sustain or incur as a result of the breach or inaccuracy of any of said warranties, representations and covenants.

Initials:   Promoter _____   Fighter _____   Manager _____

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

CASE NO. 21-CV-61654-WPD

(c)  Fighter will submit to medical examination(s) requested by Promoter within five (5) days of Promoter's request, including, without limitation, examinations required by Promoter or its licensees to obtain insurance or to determine Fighter's ability or inability to participate in a Bout. Fighter agrees and acknowledges that a breach of this provision would cause substantial harm to Promoter and its licensees of rights to the Bout and that actual damages would be difficult to quantify. Therefore, in the event of a breach of this provision, Fighter agrees to pay Promoter as liquidated damages, and not as a penalty, an amount equal to (i) Eighty-five percent (85%) of the purse of Fighter if the Bout is not televised or (ii) Five Hundred Thousand U.S. Dollars ($500,000) if the Bout is televised.

**XVI    FORUM SELECTION/GOVERNING LAW.** Fighter irrevocably submits to the jurisdiction of the United States District Court, Southern District of New York ("New York Federal Court") over any action or proceeding arising out of or relating to this Agreement and hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined only in such New York Federal Court. Alternatively, if the New York Federal Court shall not have jurisdiction over the subject matter of the action or proceeding, then the action or proceeding may be brought in any State Court of New York in New York County having jurisdiction over the subject matter ("New York State Court"). And Fighter hereby irrevocably submits to the jurisdiction of the New York State Court. As an alternative method of personal service, Fighter irrevocably consents to the service of any and all process in any such action or proceeding by the mailing of copies at the address specified for the mailing of notices in this Agreement. Fighter agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any manner provided by law. Fighter further waives any objection to venue in such New York Federal Court or New York State Court and any objection to any action or proceeding in such New York Federal Court or New York State Court on the basis of forum non conveniens. Except as provided in the last sentence of this paragraph, Fighter further agrees that any such action or proceeding brought hereunder shall be brought only in a New York Federal Court or New York State Court. Nothing in this paragraph shall affect the right of Promoter to serve legal process in any other manner permitted by law. This Agreement shall be governed, construed and enforced in accordance with the substantive law of contracts of the State of New York and without regard to New York choice of law principles or conflicts of law principles. When and if a site for the Bout or any Future Bout pursuant to this Agreement is selected within the State of New York, the parties further mutually agree to, and shall, execute all documents required by the Rules and Regulations of the New York State Athletic Commission pertaining to the conduct of boxing in New York (19 N.Y.C.R.R. Part 205 et seq.) in a timely fashion, and mutually agree to, and shall, fully comply with all other requirements of the New York State Athletic Commission and its applicable Rules and Regulations. The parties further agree that, except by appropriate application to the New York State Athletic Commission pursuant to its Rules and Regulations, neither party shall assert any claim that non-compliance with the Rules and Regulations of the New York State Athletic Commission shall render this contract void or unenforceable.

**XVII.    PROMOTIONAL AGREEMENT.** In the event that Fighter has entered into a Promotional Agreement with Promoter, the terms and conditions of that agreement shall remain in full force and effect.

**XVIII.    SEVERABILITY.** Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any law, rule or regulation of any governmental authority, and if there shall exist any conflict between any provision of this Agreement and any such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect.

**XIX.    WAIVER.** No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced. The payment of any monies by any party shall not be deemed a waiver. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the permitted assigns, successors and affiliated entities of the parties hereto.

**XX.    CONFIDENTIALITY.** Fighter shall not disclose to any third party (other than his employees and agents (including consultants), in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event(s) Fighter shall so notify Promoter as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to his banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this paragraph, and (iii) in order to enforce his rights pursuant to this Agreement. Promoter shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement. Promoter shall have the sole right to file this Agreement with any applicable athletic or boxing commissions and sanctioning organizations.

**XXI.    BENEFIT.** The provisions of this Agreement are for the exclusive benefit of the parties who are signatories hereto and their permitted successors and assigns, and no third party shall be a beneficiary of, or have any rights by virtue of, this Agreement (whether or not such third party is referred to herein).

**XXII.    ENTIRE AGREEMENT.** This Agreement sets forth and integrates the entire understanding between Fighter and Promoter, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof.  It may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.  Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. Any ambiguities shall be resolved without reference to which party may have drafted this Agreement.

**XXIII.    COUNTERPARTS/FACSIMILE.**    This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

Initials:    Promoter _____    Fighter _____    Manager _____

86

**BlackSrebnick**

CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

CASE NO. 21-CV-61654-WPD

XXIV    NOTICES. Any notice required or desired to be given hereunder shall be in writing and sent (i) postage prepaid by certified mail, return receipt requested, (ii) by a recognized overnight courier, or (iii) by confirmed facsimile, addressed as follows:

(a)  To Promoter                                    (b)  To Fighter

Don King Productions, Inc.                    **MAHMOUD CHARR**

501 Fairway Drive                               _Im Zollhafen No. 12_

Deerfield Beach, FL  33441                      _50678 Köln – Rheinauhafen/Germany_

FAX: (954) 427-0157                             FAX: (    )    -

                                                Social Security No.: ____ - __ - ____

All such notices shall be deemed given when mailed, delivered to the overnight courier or sent by confirmed facsimile.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

DON KING PRODUCTIONS, INC.

By _____                       Fighter _____

Its:                                            **MAHMOUD CHARR**

                                                Manager _____

                                                _Fighter's Manager_

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT.  IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.  NEITHER PARTY IS REQUIRED TO ACCEPT ANY OF THE TERMS AND CONDITIONS IN THIS AGREEMENT.  TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS, OBJECTIVES AND BARGAINING POSITIONS OF ALL INTERESTED PERSONS.

Initials:  Promoter _____  Fighter _____  Manager _____

87

CASE NO. 21-CV-61654-WPD

# EXHIBIT J

88



CASE NO. 21-CV-61654-WPD

On Tue, Jan 26, 2021, 4:28 PM Patrick English <dinesandenglish@aol.com> wrote:
Dear Carl

It is now 10:30 p.m. in Europe. When I sent my email it was still within the working day in Europe.
Obviously that is no longer so.
You know the time constraints. We do not believe a P-1 Visa is necessary but we believe we can obtain
one if DKP simply sends us a countersigned contract. But it would have to be now because otherwise it
will be impossible for Mr. Charr to go to the consulate and at the same time make his flight given the time
differences,

Patrick C. English
Dines and English L.L.C.
685 Van Houten Avenue
Clifton, NJ  07013
973-778-7575 (O)
973-778-7633 (F)
201-396-7200  (mobile)

This e-mail is intended for the use of he addressee and may contain  privileged or confidential information. Any copying, forwarding, printing or
use of this e-mail by persons other than the addressee is not authorized. If you are not the intended recipient, please notify us by return e-mail and
delete and discard all copies of this e-mail. Nothing herein should be construed as tax advice. For such advice consult your tax advisor.
In a message dated 1/26/2021 9:41:45 AM Eastern Standard
Time, dinesandenglish@aol.com writes:

To emphasize, time is of the essence here.

Patrick C. English
Dines and English L.L.C.
685 Van Houten Avenue
Clifton, NJ  07013
973-778-7575 (O)
973-778-7633 (F)
201-396-7200  (mobile)

This e-mail is intended for the use of he addressee and may contain  privileged or confidential information. Any copying, forwarding, printing or
use of this e-mail by persons other than the addressee is not authorized. If you are not the intended recipient, please notify us by return e-mail and
delete and discard all copies of this e-mail. Nothing herein should be construed as tax advice. For such advice consult your tax advisor.
In a message dated 1/26/2021 9:39:27 AM Eastern Standard
Time, carllewislaw@gmail.com writes:

I will convey to DKP.

On Tue, Jan 26, 2021, 9:33 AM Patrick English <dinesandenglish@aol.com> wrote:
Dear Mr Lewis

This email is not for the purpose of posturing. Mr. Charr has, as you know, a Visa. We believe it is
sufficient but you claim otherwise. However he has again been in contact with the Consulate and can pick
up a P-1 visa with just one additional document which is an executed contract. If DKP wishes to go

89



CASE NO. 21-CV-61654-WPD

On Tue, Jan 26, 2021, 4:28 PM Patrick English <dinesandenglish@aol.com> wrote:
Dear Carl

It is now 10:30 p.m. in Europe. When I sent my email it was still within the working day in Europe. Obviously that is no longer so.
You know the time constraints. We do not believe a P-1 Visa is necessary but we believe we can obtain one if DKP simply sends us a countersigned contract. But it would have to be now because otherwise it will be impossible for Mr. Charr to go to the consulate and at the same time make his flight given the time differences,

Patrick C. English
Dines and English L.L.C.
685 Van Houten Avenue
Clifton, NJ 07013
973-778-7575 (O)
973-778-7633 (F)
201-396-7200 (mobile)

This e-mail is intended for the use of he addressee and may contain  privileged or confidential information. Any copying, forwarding, printing or use of this e-mail by persons other than the addressee is not authorized. If you are not the intended recipient, please notify us by return e-mail and delete and discard all copies of this e-mail. Nothing herein should be construed as tax advice. For such advice consult your tax advisor.
In a message dated 1/26/2021 9:41:45 AM Eastern Standard Time, dinesandenglish@aol.com writes:

To emphasize, time is of the essence here.

Patrick C. English
Dines and English L.L.C.
685 Van Houten Avenue
Clifton, NJ 07013
973-778-7575 (O)
973-778-7633 (F)
201-396-7200 (mobile)

This e-mail is intended for the use of he addressee and may contain  privileged or confidential information. Any copying, forwarding, printing or use of this e-mail by persons other than the addressee is not authorized. If you are not the intended recipient, please notify us by return e-mail and delete and discard all copies of this e-mail. Nothing herein should be construed as tax advice. For such advice consult your tax advisor.
In a message dated 1/26/2021 9:39:27 AM Eastern Standard Time, carllewislaw@gmail.com writes:

I will convey to DKP.

On Tue, Jan 26, 2021, 9:33 AM Patrick English <dinesandenglish@aol.com> wrote:
Dear Mr Lewis

This email is not for the purpose of posturing. Mr. Charr has, as you know, a Visa. We believe it is sufficient but you claim otherwise. However he has again been in contact with the Consulate and can pick up a P-1 visa with just one additional document which is an executed contract. If DKP wishes to go

90

**BlackSrebnick**
CIVIL | CRIMINAL

CASE NO. 21-CV-61654-WPD

forward with this bout simply send back a countersigned contract and Mr. Charr will go to the Consulate to pick up a P-1 Visa in addition to the Visa he currently has.

Patrick C. English
Dines and English L.L.C.
685 Van Houten Avenue
Clifton, NJ  07013
973-778-7575 (O)
973-778-7633 (F)
201-396-7200  (mobile)

This e-mail is intended for the use of he addressee and may contain privileged or confidential information. Any copying, forwarding, printing or use of this e-mail by persons other than the addressee is not authorized. If you are not the intended recipient, please notify us by return e-mail and delete and discard all copies of this e-mail. Nothing herein should be construed as tax advice. For such advice consult your tax advisor

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006