**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

MAHMOUD CHARR,

       Plaintiff,

v.   Case No. 21-CV-61654-WPD

DON KING, individually,
DON KING PRODUCTIONS, INC, a
foreign corporation,
EPIC SPORTS AND ENTERTAINMENT,
INC., a Florida corporation,
WORLD BOXING ASSOCIATION, INC., a
foreign corporation, and
GILBERTO MENDOZA, JR., individually,

       Defendants.
_____/

**WORLD BOXING ASSOCIATIONS, INC.'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS COUNTS I, II, VI, AND VII OF THE AMENDED COMPLAINT**

Defendant World Boxing Association, Inc. ("WBA"), by and through its undersigned counsel, respectfully submits this Reply in support of its Motion to Dismiss (the "Motion").

**INTRODUCTION**

WBA has a simple rule about champions: they must defend the title if they want to keep it. Charr did not take the steps necessary to defend his championship title, and so he lost it. More specifically, Charr failed to secure the visa he needed to travel to the bout to defend his title within the designated time limits applicable to every WBA champion, and so Charr forfeited the championship, exactly as stipulated in the same WBA Rules that established the title itself.

Instead of defending his title in the ring, Charr opted for the courtroom, where he has made an increasingly complicated series of allegations against a widening circle of supposed malefactors. WBA's Motion to Dismiss methodically sets out how Charr has failed to state a

claim, in that the newest Amended Complaint that attempts to add WBA to the list of supposed bad actors, is speculative, contradictory, and implausible. Charr's allegations boil down to a confused and confusing theory of conspiracy – namely, that WBA is both a colluding participant in a RICO enterprise and the victim of the pressure of that enterprise.

Charr's opposition brief doubles down on his baseless, implausible claim that the WBA conspired with others to deprive him of his title. But the opposition doesn't move his argument forward at all, relying instead on block quotations from the Amended Complaint that are both unnecessary and irrelevant. Charr repeatedly attempts to gloss over the defects in his pleading by referring to the length of the Amended Complaint or the presence of boilerplate *ad damnum* clauses without ever explaining *how* the sentences in the pleading actually demonstrate the existence of a claim against WBA or any harm that WBA caused Charr.

Reduced to its essence, Charr's theory is that WBA not only engaged in a pay-for-play scheme (who paid whom, we are never told), but WBA also apparently rigged the Bryan-Stiverne title bout (why, we are never told) in furtherance of this corrupt bargain. There are no plausible facts pleaded to support this wild accusation, simply Charr's statement that it was so.

This is no basis for a viable complaint in federal court. The *Twombly-Iqbal* standard gives plaintiffs the latitude they need to allege a case without needing to build a case-in-chief before the action begins. And an imperfect claim can, and should, survive a motion to dismiss as long as the facts, as alleged, demonstrate that the plaintiff has not put a conspiracy theory on paper. But that is precisely what has happened here. Charr has strung together a series of unrelated and baseless accusations about a hidden, wide-ranging enterprise – a shotgun pleading.

No athlete wants to lose a title, and Charr is a fierce competitor. But the WBA has clear rules about titleholders, rules that it has enforced for everyone who has ever held a championship

belt. Charr did not comply with the WBA Rules, but does not want to be bound by the consequences. This case, then, is an attempt to force the WBA to set aside its rules and give Charr special treatment. This the WBA will not do; the Court should not either. Because the Amended Complaint is implausible and untenable, and because nothing in Charr's opposition brief can undo those defects, the Amended Complaint must be dismissed.

### I.      Charr's Arguments Regarding the Exhaustion Doctrine are Flawed

In his opposition brief, Charr cannot dispute, and in fact concedes, that the WBA Rules apply to him. Nor can he identify any act or rule that WBA violated when it stripped him of his title. The closest he comes is the contention that he lacked sufficient time to file an appeal of his title stripping. (Opp. Br. at 8). Of course, time was the one thing Charr had in abundance: more than three years without a title defense, and ample notice of the pendency of his title being held in Recess, the removal of his title, and the pendency of the Bryan-Stiverne bout. He had every opportunity to protest or appeal, but, once again, he failed to take the actions necessary to defend his title. The allegation that the Bryan-Stiverne bout occurred just days after the removal of Charr's undefended title does not change the fact that Charr had the opportunity within ten days to challenge WBA decisions, but failed to do so. The continuing, normal course of boxing did not rob Charr of his remedies. In fact, he waited more than a year to bring any claim of wrongdoing against WBA, and only after certain of his claims against the King Defendants were dismissed.

As WBA made clear in its motion, Charr had an obligation to pursue administrative remedies in a timely fashion before bringing this suit, which, as to WBA, is based on allegations that WBA failed to follow its rules. Charr's response is that pursuing the contractual remedies he

agreed to follow would have been futile. (Opp. Br. at 3). Not only is this argument impermissible because it was not pleaded in the Amended Complaint,[1] it is also baseless.

The test for futility is whether the remedy would *actually* have been unavailing, not merely that the claimant assumes that he would have lost his appeal. *Jimenez v. Collier Transit Mgmt., Inc.*, 337 F. App'x. 804, 807 (11th Cir. 2009) is illustrative. There, the plaintiff alleged that the defendant, who would also be the decisionmaker in a mandatory internal grievance process that required the plaintiff to exhaust internal remedies, "had already made up her mind to fire him" so pursuing the internal process would be futile. *Id.* at 808. The court rejected the futility argument. *Id.* It ruled that the futility exception "requires more than that the grievance procedures be unpromising. 'The test for futility is not . . . whether the employees' claims would succeed, but whether the employees could have availed themselves of the grievance procedure.' To claim futility, the 'employee may not simply *assert* that his use of the grievance procedures would have been futile: he must ordinarily at least have *attempted* to use them.'" *Id.* (internal citations omitted) (quoting *Mason, III v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1224 (11th Cir. 1985), *Parham v. Carrier Corp.*, 9 F.3d 383, 390-91 (5th Cir. 1993)); *see also Springer v. Wal-Mart Assoc. Grp. Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990) ("[T]he fact that 'internal appellate reviewer is basically the same entity as the initial internal decider' . . . is insufficient as a matter of law . . . to establish futility"). Charr's futility argument, impermissibly raised for the first time in his Opposition brief, is no more and no less than this one the courts have squarely rejected.

Charr has no response to this. With all respect to Sir Edward Coke's 17th century legal acumen,[2] WBA is not asking to be the "judge in [its] own case." Instead, WBA is seeking to

---

[1] "[A] complaint may not be amended by briefs in opposition to a motion to dismiss" *McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015).
[2] *See* Charr's Opposition to Motion to Dismiss at 18.

enforce the very rules Charr has agreed underly his own case; the rules that ensure rankings and championship decisions are made fairly and orderly without undue delay. In the Eleventh Circuit, the WBA Rules mandating exhaustion of administrative remedies are binding and bar Charr's claims from being brought directly in federal court in the first instance. *See Jimenez*, 337 F. App'x. at 809 (affirming the district court's grant of summary judgment where the plaintiff failed to exhaust administrative remedies agreed to between the parties).

In service of his flawed futility argument, Charr relies on the First Circuit case, *Trout v. Organizacion Mundial de Boxeo, Inc.*, 965 F.3d 71 (1st Cir. 2020), a case involving a boxer's lawsuit against the World Boxing Organization ("WBO"). But that case had nothing to do with the exhaustion of administrative remedies requirement. The WBO sought not to require participation in its internal process before turning to a court, but to replace *all* potential dispute-resolution measures, including the judicial process itself, with its own unilateral authority to select an arbitrator. *Id.* at 78-79. WBA has never sought to permanently forbid Charr from filing a federal lawsuit as the WBO did. If Charr's dispute survived WBA's internal Request for Reconsideration and Appeals process, his path to court would remain open. Rather, the WBA seeks "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" with total "disregard of [its] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 150-51, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992)); *see also Schulz v. U.S. Boxing Ass'n*, 105 F.3d 127 (3d Cir. 1997) (bout rules controlled boxer's interactions with U.S. Boxing Association).[3]

---

[3] Charr's reliance on *Schulz*'s "two-part test" concerning a court's involvement in membership decisions of private organizations is entirely inapposite to this matter; Charr's "membership" in WBA is simply not a relevant issue; all parties agree that the WBA Rules control. Charr's Opp. to Mot. to Dismiss at 15; *Schulz*, 105 F.3d at 132-34.

## II.     Count I is Procedurally Barred and Substantively Baseless

Charr fails to make a meaningful argument that Count I (as asserted against WBA) states a claim upon which relief may be granted under the Ali Act.  He simply points to allegations in the Amended Complaint without demonstrating *how* those allegations relate to a cognizable, plausible assertion of both harm and causation, both required for standing.  Put another way, the Amended Complaint hypothesizes and insinuates about many conspiratorial misdeeds with its sweeping, but vague, allegations of corruption and bribery, but none of those allegations identify how Charr suffered a redressable harm caused by WBA. As to WBA, Charr ignores both the "harm" and "causation" requirements of standing and the Ali Act.

A plaintiff must plausibly allege *both* an injury-in-fact, *and* "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Here, the "third party" is before the Court and Charr has sued the third party: DKP and the other King Defendants. When explaining how any of his expansive alleged facts tie into *his* claims *against WBA* and how *WBA actions* harmed *him*, Charr backs off almost entirely. Charr provides, as his exclusive showing of an injury-in-fact, the removal of his champion status and his lost earnings from an originally planned bout against boxer Trevor Bryan. (*See* Opp. Br. at 10; Am. Compl. at ¶¶ 55, 61). Yet, Charr's own Complaint alleges that those losses are attributable entirely to the King Defendants and Charr's inability to secure a visa. (*See* Am. Compl. at ¶¶ 74-76). When Charr failed to defend his title, the WBA revoked his championship status. When Charr could not enter the United States for the bout, it was cancelled. (*See id*. at ¶¶ 77-78). To the extent any unlawful activity at all caused

Charr's injuries, the allegations in the Amended Complaint attribute that harm exclusively to the King Defendants' breach of their purported agreement to help Charr enter the United States. Charr's travel woes and contract disputes with his bout promoter have nothing to do with WBA. As to WBA specifically, Charr only alleges that it sanctioned a bout he then failed to fight in. Charr has not alleged that WBA's sanctioning of the cancelled bout violates the Ali Act or caused Charr harm in any way.

Charr's additional Ali Act allegations concern the WBA's failure to file "disclosures" under 15 U.S.C. § 6307d and to solicit gifts from the King Defendants and unspecified parties. But Charr makes no effort to link *any* of this alleged misconduct to any harm he has suffered. Instead, he reverts back to the very same damages allegedly caused by the King Defendants: his missed potential purse money from the canceled bout and his championship status. Charr identifies no way in which any unlawful gift solicited by the WBA or any unfiled disclosure has ever caused him any harm. Charr's claims lie against the King Defendants, not WBA.

### III. The RICO Claim Misunderstands the Enterprise Requirement and Patently Fails to Meet It

Charr's attempt to shoehorn a RICO claim into the Amended Complaint has failed every time he has tried.  He offered no explanation for how his allegations against WBA are not subject to dismissal for the same reason that this Court dismissed the RICO claims against other defendants.  WBA stands on the arguments made in its Motion, but offers the following additional explanation for why the RICO claim must be dismissed.

In Charr's Opposition Brief, he once again confuses what it takes to create an enterprise under RICO and, more importantly, when an entity constitutes a participant in the enterprise. Charr's contention is that certain officials at WBA participated in a conspiracy against him, but other than Mendoza, he pleaded no facts regarding who these individuals are or how they were in

7

a position to direct WBA to participate in the conspiracy. Simply stating that someone, sometime, somehow participated in the conspiracy, is wholly inadequate. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-65 (2001) (finding that to make a RICO claim there must be two distinct entities: a person and an enterprise and acknowledging that circumstances, including the defendant's conduct and actions, determine if a RICO claim can survive dismissal).

*Ray v. Spirit Airlines, Inc.*, too, offers guidance on this point. There, the Eleventh Circuit held: "Indeed the [*Cedric*] Court explicitly disclaimed deciding the 'quite different' issue, arising in this case, where the defendant 'person' is a corporation and is alleged to have engaged in an enterprise with its officers, employees and agents." 836 F.3d 1340, 1356 (11th Cir. 2016). It is impossible for a corporation to form a RICO "enterprise" with its own vice presidents because a corporation can only act through its own employees and agents. *See id.* In *Ray*, the court explicitly held that "a defendant corporation cannot form a RICO enterprise with its own employees or agents who are carrying on the normal work of the corporation." *Id.* at 1356-57. The court went on:

> [The] plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees when acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees. For our purposes, there is no distinction between the corporate person and the alleged enterprise. When an individual defendant acts through a corporation, he may have formed an association-in-fact with an entity distinct from himself. In that situation, the rule announced in *Cedric Kushner* makes sense. In contrast to an individual, a corporation cannot act except through its officers, agents, and employees. Thus, a corporate defendant acting through its officers, agents and employees is simply a corporation. Labeling it as an enterprise as well would only amount to referring to the corporate 'person' by a different name.

*Ray*, 836 F.3d at 1357. In other words, WBA cannot constitute a RICO "enterprise" by conspiring with Mendoza (its President) because the WBA itself acts *through* Mendoza and it cannot conspire with itself. This fatal defect offers another basis to dismiss the RICO claim against WBA.

8

### IV. Charr's Venue Arguments are Misplaced

Charr alleges that federal statute 18 U.S.C. § 1865 supersedes the binding forum-selection clause that controls this case. (Opp. Br. at 16). Charr misreads the law. Where a contractual forum-selection clause "limits the forum of litigation to all state and federal courts within" a particular state, dismissal is appropriate of an action brought outside that state. *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 700 (2018).

Charr alleges that "[o]ne of the contracts at the core of this case expressly states . . . that the exclusive forum for any disputes **shall be the Courts located in Broward County in the State of Florida**." (Opp. Br. at 16.)[4] But that very same contract relates to a purse bid and a bout that "will be governed by, and conducted in accordance with . . . the WBA rules and regulations." (Am. Compl. at Ex. B ¶ 4). The WBA Rules do not, as Charr alleges, simply allow the WBA as a Defendant to "choose where [the] action is filed." (Opp. Br. at 16). Rather, the WBA Rules, agreed upon by *all parties* to control matters relating to the Charr-Bryan bout, establish a specific litigation venue and choice of law: "[T]he courts of Pierce County, State of Washington, United States of America" and Washington law. (*See* WBA Rules (ECF No. 74-1), at F.18(a), (b)).

The existence of multiple, valid and enforceable forum-selection clauses with multiple, distinct defendants, does not render any of the agreements void. The Court in *St. Francis Holdings, LLC v. Cynosure, Inc.*, No. 8:20-cv-1101-T-02AAS, 2020 WL 9601509 (M.D. Fla. Sept. 23, 2020), addressed exactly this situation. It considered a plaintiff's lawsuit against multiple defendants, with each of whom the plaintiff had signed a contract containing a forum-selection clause. *Id.* at *2-3. Because both clauses were valid and mandatory, the Court ruled that the

---

[4] It is unclear what document Charr is quoting. The executed Charr/DKP contracts he attached to the Amended Complaint as Exhibits A and B require disputes to be resolved in "courts located in the state of Florida" but WBA sees no reference to Broward County.

plaintiff's claims against each defendant must proceed in the respective forum as required by that particular contract, and granted each defendant's motion to transfer, effectively severing the case into pieces. *Id.* at *5. The same remedy is appropriate in this case. To the extent Charr and the King Defendants came to a binding agreement as to a forum other than Pierce County, Washington, Charr must litigate each claim where he agreed to do so, and his claims must be severed.

Charr relies on various federal statutes that, in the absence of a contractually-selected forum, allow for various venues. But "[m]andatory forum-selection clauses are 'presumptively valid and enforceable' absent a 'strong showing that enforcement would be unfair or unreasonable under the circumstances.'" *Slater v. Energy Servs. Grp. Int'l., Inc.*, 634 F.3d 1326, 1331 (11th Cir. 2011) (quoting *Krenkel v. Kerzner Int'l Hotels, Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)).

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendant World Boxing Association, Inc. respectfully requests that this Court dismiss Defendant World Boxing Association as a defendant in this case and award Defendant World Boxing Association, Inc. such other and further relief as the Court deems proper.

Dated: February 17, 2023                                    Respectfully submitted,

*/s/ Stacy J. Rodriguez*
Stacy J. Rodriguez
Fla. Bar No. 44109
James J. Ward
Fla. Bar No. 93651
ACTUATE LAW, LLC
641 W. Lake Street, 5th Floor
Chicago, Illinois 60661
Phone: 312-462-0543
stacy.rodriguez@actuatelaw.com
james.ward@actuatelaw.com

Robert E. Mack (*admitted pro hac vice*)
Gabriel Hinman (*admitted pro hac vice*)
Smith Alling, P.S.

                                                                                1501 Dock Street
Tacoma, Washington 98402
Phone: (253) 627-1091
rmack@smithalling.com
gabe@smithalling.com

*Counsel for World Boxing Association, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 17, 2023, a true and correct copy of this Reply was furnished to all parties receiving electronic notification in this case via the Clerk of the Court's CM/ECF system, as stated on the following service list.

                                                                   */s/ Stacy J. Rodriguez*
                                                                   Attorney

## Service List

| | |
|---|---|
| Donald J. Hodson, Esq.<br>Kandell, Kandell, P.A.<br>2665 S. Bayshore Drive<br>Grand Bay Plaza, Suite 603<br>Miami, FL 33131<br>dhodson@royblack.com | Patrick C. English, Esq.<br>Dines and English, LLC<br>685 Van Houten Ave.<br>Clifton, NJ 07013<br>dinesandenglish@aol.com |
| Jared M. Lopez, Esq.<br>Black Srebnick Kornspan & Stumpf<br>201 S. Biscayne Blvd., Ste. 1300<br>Miami, FL 33131<br>jlopez@royblack.com | Alejandro Brito, Esq.<br>Brito, PLLC<br>2121 Ponce de Leon Blvd., Ste. 650<br>Coral Gables, FL 33134<br>abrito@britopllc.com |
| Joseph J. Portuondo, Esq.<br>110 Merrick Way<br>Coral Gables, FL 33134<br>jjp@portuondolaw.com | |