UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO. 21-CV-61654-WPD

MAHMOUD CHARR,

    Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a
foreign corporation,
EPIC SPORTS and ENTERTAINMENT,
INC., a Florida corporation,
WORLD BOXING ASSOCIATION, INC., a
foreign corporation, and
GILBERTO MENDOZA, JR., individually,

    Defendants.

_____/

## **PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION**

Plaintiff, Mahmoud Charr ("Charr"), by and through his undersigned counsel, hereby moves for reconsideration of decision dismissing the Counts against the World Boxing Association, Counts I, II, VI and VII. The Order doing so was issued on March 15, 2023 and is ECF 88 on the docket.

### **INTRODUCTION**

We are well aware that a motion for reconsideration faces a high burden. While a motion for reconsideration is employed sparingly, (e.g., *Burger King v. Ashland Equities, Inc.*, 181 F. Supp. 1366, 1370 (S.D. Florida 2002)) a motion for reconsideration, however, is appropriate where 1) there is an intervening change in the controlling law, 2) the availability of new evidence, or 3) the need to correct clear error or prevent manifest injustice. *Hood v. Perdue*, 300 F. App'x 600

CASE NO. 21-CV-61654-WPD

(11th Cir 2008). A motion to reconsider is also "appropriate where, for example, the Court has patently misunderstood a party, . . . or has made an error not of reasoning but of apprehension". *Kapilla v. Grant Thornton, LLP*, No. 14-61104-CIV. 2017 WL 3638199 at *1 (S.D. Flo. August 23, 2017) quoting *ZK Marine Inc. v. M/V Archigetis*, 808 F Supp 1561, 1563 (S.D. Fla. 1992). This Motion is made pursuant to subsections one and three of the standard articulated in *Hood*. Just the week before last, in *Perez v. Sturgis Public Schools, 589 U.S.\_\_\_\_* (March 21, 2023) the United States Supreme Court issued an opinion which we believe clarifies certain aspects of the law regarding exhaustion of remedies.[1] Further there is a need here to "correct clear error or prevent manifest injustice."

Since this is a ruling on a motion to dismiss the standard for dismissal is also relevant. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion to dismiss, the Court "must accept the facts as pleaded to be true and resolve them in the light most favorable to the plaintiff." *Kaloe Shipping Co. v. Goltens Serv.*, 315 F. App'x 877, 879 (11th Cir. 2009). The Court "need not engage in extensive analysis of" fact-intensive inquiries. *Blue Cross Blue Shield*, 2017 WL 2797267, at *7 (quoting *In re Webkinz Antitrust Litig.*, 2010 WL 4168845, at *3 (N.D. Cal. Oct. 20, 2010) (there, reasonable interchangeability and cross-elasticity of demand)). To this end, "[d]ismissal under Rule 12(b)6 is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would

---

[1] The Court noted other arguments by the WBA but ruled exclusively on the exhaustion of remedies argument. March 15, 2023 Opinion at page 7.

CASE NO. 21-CV-61654-WPD

entitle him to relief." *Magluta v Samples*, 375 F. 3rd 1269, 1273 (11th Cir. 2004) (citation omitted).

## Argument
## Point 1
### The Affirmative Defense of Futility Need Not Be Counter Pled

The Court stated in its Opinion of March 15 that "Charr's response of futility is unavailing. The argument is impermissibly raised in the response brief, as it was not pled in the Amended Complaint. " Opinion at page 7. Yet the Supreme Court, in *Jones v. Brock,* 549 U.S. 199 (2007) has ruled otherwise. Exhaustion of remedies is an affirmative defense. *Jones* at 204; *Wright v. Universal Maritime Service,* 525 U.S. 70 at 75 (1998). As such it can be raised in an answer but need not be pled in the complaint. *Jones* at 204. This decision is quite logical. No plaintiff can possibly guess what affirmative defenses a defendant may raise. One raised a plaintiff should be allowed to meet the assertion at the appropriate time with proofs, thus the assertion of futility not belatedly raised .[2]

We note further that a plaintiff has no duty, once an affirmative defense is raised to counter plead to them and that the federal rules of civil procedure deem any affirmative defense automatically denied or avoided. See FRCP 8 (b) 6 ("if a responsive pleading is not required, an allegation is considered denied or avoided").[3]

Finally, we note that the Court cites *Boger v. A. Gallerani, M.D., PLLC* 220 WL 10142134 (S.D. Fla. July 20 2020). *Boger* involved a statutory scheme – ERISA. Respectfully, a

---

[2] It was of course raised in the memorandum responding to the motion to dismiss. For the Convenience of the Court that memorandum is annexed as Exhibit A.

[3] Once an affirmative defense is raised a <u>defendant</u> has the burden of proof. E.G. *Grayson v Warden, Commissioner* 869 F.3rd 1204, 1224 (11th Cir 2017). *Taylor v. Sturgill* 553 U.S. 880 at 907 (2008) citing *Jones* v. *Bock*, 549 U.S. 199, 204 (2007).

3

CASE NO. 21-CV-61654-WPD

Congressional statutory requirement is far different that the situation here. In that case (where the Court did not dismiss the case but instead stayed it) there was the opportunity for plaintiff to exhaust remedies. No opportunity was available here as we will explain below. This is a dispositive difference between the Boger case and the circumstances of the instant matter.

**Point 2**

**Putting Aside Everything Else, It is Demonstrable that WBA Gave No Opportunity For An Appeal**

The Court opined that Mr. Charr should have filed an internal appeal. Yet the allegations of the Complaint, combined with the documents annexed to the Complaint—which are the only allegations relevant to the Court's analysis at this stage—indeed show that Charr was champion on January 26, 2021 and by January 29, 2021, was inexplicably stripped of his title by the WBA <u>immediately</u> after which the WBA crowned the King defendants' fighter, Bryan, as the new champion thus, affirmatively preventing Charr from appealing the decision or fighting to recapture his title. As a result, it was clearly impossible for Charr to exhaust "internal remedies" even if this were the appropriate route (which it was not) for the claims asserted against the WBA under Counts I, II, VI, and VII.  We believe this is an evidential issue, but for the purposes the motion to dismiss, Charr was stripped of his title on January 26, 2021 and Bryan was installed as champion on January 29, 2021.[4] *See* Compl., Exhibit J. Thus, the WBA did not give

---

2 There is a typo in the Amended Complaint which in paragraph 83 references January 30, 2021. The correct date is January 29, 2021. Mr. Bryan's record, which is an official and public document may be found at https://boxrec.com/en/proboxer/584916. An official record of this may be considered by the Court.

If we were not constrained at this point by the pleadings we would show in at trial that the Stripping and filling of the spot was even less in time, but at this point we are constrained by the pleadings.

CASE NO. 21-CV-61654-WPD

Charr time to file an appeal. The stripping was a *fait accompli* since the Championship spot was filled by another. What was done could not be undone.

**Point 3**

**The Court Did Not Address the Argument Raised That A Demonstrably Biased Appeal Procedure Voided Any Requirement That It Be Followed**

The WBA's argument that Charr should have first submitted his claims to a Committee Chair of the very entity that violated his rights (the WBA) and then to an appeals panel <u>appointed by the president of that organization (Mendoza)</u> who perpetrated tortious conduct against him, is, on its face, preposterous. We refer your Honor to *Trout v. Organización Mundial de Boxeo, Inc.*, 961 F.3rd 71 (1st Cir 2020) addressed <u>a similar situation</u> and held that a comparable process was invalid stating:

> **"…we agree with Trout [a boxer] that the arbitration may not proceed under the Appeal Regulations, as we are not persuaded by the WBO's only arguments as to why, by permitting the WBO to act as -- in Trout's words -- "party and judge," the arbitration agreement is not so "unreasonable and unjust" as to be unconscionable…"**

Trout was a boxer who made damages claim against the World Boxing Organization (WBO). The District Court had ruled that Trout had not exhausted internal remedies. The internal panel of the WBO was a panel appointed by the President. The WBO raised as an affirmative defense failure to exhaust remedies, The Circuit Court was clear that Trout need not do so given the inherent bias of the procedure, there is no reason for this Court to rule differently. We submit that though it does not bind this Court, the First Circuit was correct. The only distinction between the cases is that the panel appointed by the organization's president in *Trout* purported to be a final decision. Meanwhile, in this case, what is worse, it was the WBA's president, Mendoza, who made the final decision with respect to the WBA stripping Charr's title. This is also supported by WBA Rule F.13, which reads in relevant part:

5

CASE NO. 21-CV-61654-WPD

> **"…based upon the record presented to him for his review, the President may adopt in whole or in part the preliminary decision and may modify it before approving it. He may also remand it to the appeals panel for further consideration."**

This is the same Gilberto Mendoza who is a defendant and subject to damages in this case.

It seems the venerable maxim, "*No one can be a judge in his own cause*" (*Nemo Judex in causa sua*), one of the fundamental principles of law, thus applies. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 426 - 429 (1995). *See Edward Coke*, INSTITUTES OF THE LAWS OF ENGLAND, § 212, 141 (1628); Harris. *An Introduction to Law*. 8th Ed. 2016. p 474; ARBITRATOR BIAS Transnational Dispute Management (TDM), January, 2015 Boston University School of Law Public Law & Legal Theory Paper No. 15-39 William W. Park Boston University School of Law. *See* also *McCarthy v. Madigan*, 503 U.S. 140 (1992) and cases cited therein at p. 148.

We use by analogy**,** the Federal Arbitration Act (FAA) Section 10. It provides the exclusive grounds for a federal court to set aside or 'vacate' an award:

**(1) where the award was procured by corruption, fraud, or undue means;**

**(2) where there was evident partiality or corruption in the arbitrators, or either of them;**

**(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or**

**(3) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.**

There is evident partiality where the WBA and its President are permitted to Judge their own actions.

The *Trout* Court was right and we respectfully request that it be considered along with the arguments contained herein, addressed and that in light of what we submit was a clear and manifest injustice, the Court reconsider and withdraw its opinion.

CASE NO. 21-CV-61654-WPD

## Point 4

### We Have Had Recent Guidance From The Supreme Court Which is Relevant

Just recently in, *Perez v. Sturgis Public Schools,* 589 U.S.\_\_\_\_\_ (March 21, 2023)[5] the United States Supreme Court issued an opinion which we believe clarifies certain aspects of the law regarding exhaustion of remedies.

In *Perez* the Plaintiff sought damages under a claimed violation of a Federal Statute. The issue was whether the Plaintiff could seek damages without exhausting the statute's administrative processes.

Speaking for a unanimous Court, Justice Gorsusch wrote:

**This case presents an analogous but different question—whether a suit admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes <u>if the remedy a plaintiff seeks is not one IDEA provides.</u> In both cases, the question is whether a plaintiff must exhaust administrative processes under IDEA that cannot supply what he seeks. And here, as in *Fry*, *Fry* v. *Napoleon Community Schools*, 580 U.S. 154 (2017) we answer in the negative.**

The analogy here is that there is nothing in the WBA rules permitting an award of damages, a right specifically granted by Congress in both the Muhammad Ali Act and RICO. Nothing allows a grant of counsel fees or punitive damages as permitted under the Muhammad Ali Act or RICO. The Muhammad Ali Act expressly states at 15 U.S.C. 6390(d).

**Any boxer who suffers economic injury as a result of a violation of any provision of this chapter may bring an action in the appropriate Federal or State court and recover the damages suffered, court costs, and reasonable attorney's fees and expenses.**

These are not remedies contemplated by the WBA appeals process RICO states at 18 U.S.C. § 1964:

"Any person injured in his business or property by reason of a violation of Section 1962 of this Chapter [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

---

[5] The Supreme Court's *Perez* decision squarely overruled prior Eleventh Circuit law. Compare *N.B. v. Alachua County School Board*, 84 F. 3rd 1376 (1996).

CASE NO. 21-CV-61654-WPD

These are no remedies contemplated by the WBA grievance procedure. Thus, Perez is applicable since it makes clear that an exhaustion of remedies argument is unavailing where the remedies are not available under the internal procedure which a defendant claims must be followed.

## Point 5

**The Court's Ruling Takes Away a Right Expressly given by Congress**

As a corollary to the last point, we would submit to the Court that Boxers have been given express rights by Congress which the March 15 ruling appears to take away. This is a manifest injustice.

We begin by citing the reason for the Muhammad Ali Act, outlined in the Congressional findings.

**SEC. 2. FINDINGS.**

**The Congress makes the following findings:**

**(1) Professional boxing differs from other major, interstate professional sports industries in the United States in that it operates without any private sector association, league, or centralized industry organization to establish uniform and appropriate business practices and ethical standards. This has led to repeated occurrences of disreputable and coercive business practices in the boxing industry, to the detriment of professional boxers nationwide.**

**(2)** State officials are the proper regulators of professional boxing events, and must protect the welfare of professional boxers and serve the public interest by closely supervising boxing activity in their jurisdiction. State boxing commissions do not currently receive adequate information to determine whether boxers competing in their jurisdiction are being subjected to contract terms and business practices which may violate State regulations, or are onerous and confiscatory.

**(3)** Promoters who engage in illegal, coercive, or unethical business practices can take advantage of the lack of equitable business standards in the sport by holding boxing events in States with weaker regulatory oversight.

**(4) The sanctioning organizations which have proliferated in the boxing industry have not established credible and objective criteria to rate professional boxers, and operate with virtually no industry or public oversight. Their ratings are susceptible to manipulation, have deprived boxers of fair opportunities for advancement, and have undermined public confidence in the integrity of the sport.**

**(5)** Open competition in the professional boxing industry has been significantly interfered with by restrictive and anticompetitive business practices of certain

8

**promoters and sanctioning bodies, to the detriment of the athletes and the ticket-buying public. Common practices of promoters and sanctioning organizations represent restraints of interstate trade in the United States.**

**(6) It is necessary and appropriate to establish national contracting reforms to protect professional boxers and prevent exploitive business practices, and to require enhanced financial disclosures to State athletic commissions to improve the public oversight of the sport. (Emphasis added).**

**SEC. 3. PURPOSES.**

**The purposes of this Act are--**

**(<u>1) to protect the rights and welfare of professional boxers on an interstate basis by preventing certain exploitive, oppressive, and unethical business practices;</u>**

**(2) to assist State boxing commissions in their efforts to provide more effective public oversight of the sport; and**

**(3) to promote honorable competition in professional boxing and <u>enhance the overall integrity of the industry.</u>**

**Emphasis added**

The Muhammad Ali Act sets forth certain prohibitions which we have alleged were violated by the WBA. In the event the prohibitions were violated Congress gave Boxers the following right:

**Section 6 (d) PRIVATE RIGHT OF ACTION- Any boxer who suffers economic injury as a result of a violation of any provision of this Act may bring an action in the appropriate Federal or State court and recover the damages suffered, court costs, and reasonable attorney's fees and expenses.**

The Act, which is remedial in nature and therefore to be liberally construed (*SEC v. CM Joiner Leasing Corp*, 320 U.S. 344,353 (1947)) is completely clear. If a Muhammad Ali Act violation has been alleged then a boxer has the right to sue "for damages, court costs and reasonable attorney's fees and expenses." There is no suggestion in the Act that would require a Boxer to go through a grievance process run by the very organization which wronged him in the first place and in which an individual alleged to be a primary wrongdoer

would be the ultimate decision maker and which would effectively eliminate a claim for damages .[6]

The same is true under RICO. Persons injured by reasons of a RICO violation have a civil cause of action under the terms of the act. 18 U.S.C. §§ 1962(c), 1964(c)) provides for liability in civil suits brought by any person injured 'in his business or property' by a RICO violation, with a compulsory award of treble damages, costs, and attorneys fees and makes it unlawful for 'any person' who is employed by or associated with 'any enterprise' affecting interstate commerce to 'participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

While there exist statutes requiring exhaustion of remedies prior to the filing of an action[7], RICO (and the Muhammad Act) are not among them. We repeat that it literally makes no sense to engraft upon statutes which give clear recourse to the courts any requirement that Boxer to go through a grievance process run by the very organization which wronged him in the first place and in which an individual alleged to be a primary wrongdoer would be the ultimate decision maker and which would effectively eliminate a claim for damages, and there has been no prior ruling by any Court we can locate after diligent research which holds that such a requirement can be engrafted onto a clear statute giving Court recourse.

[T]he "courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme." *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982). The intent here was to allow Court recourse.

---

[6] Prior to enactment of the Muhammad Ali Act we could show at trial, if necessary, that a prior counsel for the WBA had stated he created the elaborate grievance procedure to "due process" a complainant to death. Section 6 (d) of the Muhammad Ali Act was designed in part to eliminate that.
[7] See, for instance Section 7430 of the Internal Revenue Code.

CASE NO. 21-CV-61654-WPD

**Point 6**

**There Is in The Court's Opinion A Suggestion that Plaintiff Never Referenced a Rule Which Was Allegedly Violated. This is Flatly Incorrect**

The Court in its Opinion at page 4 suggests that no specific Rules violations were referenced. This does not appear to be a basis for the dismissal, but we will briefly address it.

We Assert in our Complaint that the WBA Form Bout Contract constitutes part of its Rules. We will not spend a great deal of time on this point because it is very clear that one of the gravamen of the Complaint was the fact, as asserted, that the WBA did not enforce its own regulations, decisions and rules to ensure that its standard bout contract was executed. See, e.g., Paragraphs 47, 47, 58, 59, 60, 68, 70 and Exhibit C to the Complaint. We pointed this out in our Response to the Motion To Dismiss. Thus, this assertion is simply an error.

**Point 7**

**The Gravamen of Plaintiff's Complaint Is Not Simply a Rules Violation.  It is Affirmative Action by those Who Run the WBA To Injure the Plaintiff**

While the WBA Rules are mentioned in the Amended Complaint, the gravamen of Charr's statutory claims against the WBA are not Rule-based as is clear from the allegations: Neither the criminal act of "sports bribery", which are predicate allegations for the RICO claim, nor the WBA's violations of the Muhammad Ali Act fall within the scope of the Rules. Likewise, while the civil conspiracy claim references the Rules (when discussing the WBA's standard bout contract),[8] this claim, too, arises from the same facts to wit intentional acts to harm plaintiff and help the King Defendants. ¶156.

There are many cases where an action is brought alleging that an entity has violated its own rules. We could cite pages of such cases. But this case is different. Intentional acts in

---

[8] At trial we intend to show that certain WBA resolutions as well as "Exhibit C" of the Amended Complaint are part of the "WBA Rules" governing the alleged torts. See e.g., Compl., Exhibit E.

11

CASE NO. 21-CV-61654-WPD

violation of Federal Law with the purpose of injuring plaintiff and helping the King Defendants is the "guts" of the complaint as to the WBA. We have conducted a diligent search and can find no case where a Court has ruled that an intentional tort is governed by internal remedies governed under the very entity alleged to have committed the intentional tort. We respectfully suggest to the Court that where affirmative wrongdoing is alleged an exhaustion of remedies defense is illogical and ought not be countenanced.

**Point 9**

**The Court Incorrectly Suggests That Instances of An actual Impermissible Payment are not Specified**

Again, this does not appear to be the basis of the Dismissal, but we will briefly respond. It is specifically alleged that the allegations are Non Specific.

Using just one example in the Complaint, "King and DKP [allowed] the WBA to retain money "deposited" by King and DKP for scheduled bouts, which should otherwise have been returned by the WBA to King and DKP under league rules. Paragraph 38 of the Complaint. That is a specific allegation. Without discovery we do not have an accounting of the amounts (Discovery which issued prior to the Court's Ruling), but that is certainly not necessary at this stage of the proceedings.

Similarly, it is alleged that:

**. . . King and DKP have engaged in these deals with Mendoza since at least 2015 by making payments and/or providing gifts to Mendoza through at least one third-party: Sports Consulting Services, LLC ("SCS"). Mendoza's son and at least one other WBA employee are believed to have been employed by and/or maintained an ownership interest in SCS since August 2018. ¶35.**

**. . . [I]t is believed that all payments and/or gifts provided to SCS by King and DKP from August 2018 to the present have been passed along to Mendoza and other WBA**

**officials in exchange for Mendoza and the WBA fraudulently improving the ranking of King's and DKP's fighters . . . ¶36**

These are specific allegations Referenced in both our Responding Brief and the Complaint itself. We do not know all the funds passing through SCS as, again, further discovery is required, but we know that some did and can identify at least one check even now.

We recognize that this was not the basis for the dismissal but thought it appropriate to correct the record.

## Point 10

### The Court Has Jurisdiction Over Charr's Claims Against the WBA

Again, though the Court did not rule on this basis clarification is prudent on the issue of venue the WBA contends this lawsuit should have been brought in Pierce County, Washington, and thus should be dismissed on these grounds as well. Again, this argument flows from the WBA's position that this action involves a mere dispute over its Rules (which is without merit for the reasons just discussed). The following allegations (addressing the language in the contracts at issue) prove the proper venue is with this Court: 1. One of the contracts at the core of this case expressly states . . . that the exclusive forum for any disputes **shall be the Courts located in Broward County in the State of Florida** (Compl., Ex. A and B); and 2. RICO provides that in 18 U.S.C. 1865:

> "In any action under section 1964 of this Chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof."

The cited provision is also not governed by the Rules cited in the WBA's motion nor do the Rules govern Charr's claims against Mendoza or the King defendants. Additionally, 15 U.S.C. 6309 states that "any boxer who suffers economic injury as a result of a violation of any

provision of this Act **may bring an action in the appropriate Federal or State court** and recover the damages suffered, court costs, and reasonable attorney's fees and expenses." *Id.* The statute does not allow a <u>defendant</u> to simply choose where an action is filed as the WBA now attempts in its Motion to Dismiss. Moreover, and no less significantly, the bouts at issue also occurred in Broward County, Florida, where Charr's claims accrued. *See* Cmpl., Exhibits F, G, and H; *see also* ¶83. Thus, there is no basis for the WBA to demand this action be brought in Pierce County, Washington as this is the appropriate venue.

There are also practical consequences. As we noted above the WBA Rules do not govern Charr's claims against Mendoza or the King defendants. We know of no connection any of them has to the State of Washington though all are found in Florida as is the WBA. Any Dismissal based upon a requirement that an action be brought in Pierce County, Washington, would fragment this case and run directly counter to the requirements of Federal Rules of Civil Procedure 19 (a) 1) (A) and (B) i and ii. See e.g., *Hammond v. Clayton*, 83 F3rd 191,195 (7th Cir. 1993).

Once again, we note that the Court did not opine on this issue in its decision but we wish to be prophylactic.

## Point 11

### Should The Court Not Grant Reconsideration, Clarification Is Necessary so that Plaintiff Can Know Whether it can move to Amend

The Court's Opinion commented that futility of exhaustion of remedies was not raised in the Amended Complaint. In Points 1 through 5 of this memorandum we believe we have shown that this was not necessary. However, if the Court denies this Motion for Reconsideration the Opinion reads though no Amendment will be permitted. We respectfully request clarification on

this point in the event the Court denies the Motion for Reconsideration as we can certainly plead futility.

Dated: April 4, 2023

Respectfully submitted,

BLACK SREBNICK, P.A.
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
305-371-6421 Telephone
305-358-2006 Fax

By:   Jared Lopez
    Jared Lopez, Esq.
    Florida Bar No. 103616
    Donald J. Hodson, Esq.
    Florida Bar No. 120256
    JLopez@RoyBlack.com
    DHodson@RoyBlack.com
    civilpleadings@royblack.com

*Counsel for Plaintiff Mahmoud Charr*

DINES AND ENGLISH LLC
685 Van Houten Avenue
Clifton, New Jersey 07013
973-778-7575 Telephone
973-778-7633 Fax
By:   /s/ Patrick C. English
    Patrick English, Esq.
New Jersey Bar No. 023811978
dinesandenglish@aol.com

*Counsel for Plaintiff Mahmoud Charr*

CASE NO. 21-CV-61654-WPD

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY a true and correct copy of the foregoing was filed with the Court this 4th day of April, 2023 and electronically served via the CM/ECF Court E-Filing system on: Alejandro Brito, Esq., Brito, PLLC, 2121 Ponce de Leon Boulevard, Coral Gables, Florida 33134, abrito@britopllc.com, apiriou@britopllc.com; Stacy J. Rodriguez, Actuate Law, 545 NW 26 St., Suite 640, Miami, Florida 33127, stacy.rodriguez@actuatelaw.com; Joseph J. Portuondo, Esq., 110 Merrick Way, Suite 3-B, Coral Gables, Florida 33134, jjp@portuondolaw.com.

By: /s/ Jared Lopez
Jared Lopez, Esq.