UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

MAHMOUD CHARR,

    Plaintiff,

v.                                                         Case No. 21-CV-61654-WPD

DON KING, individually,
DON KING PRODUCTIONS, INC, a
foreign corporation,
EPIC SPORTS AND ENTERTAINMENT,
INC., a Florida corporation,
WORLD BOXING ASSOCIATION, INC., a
foreign corporation, and
GILBERTO MENDOZA, JR., individually,

    Defendants.
_____/

**WORLD BOXING ASSOCIATION, INC.'S RESPONSE TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

      Mahmoud Charr's claims against the World Boxing Association, Inc. ("WBA") were dismissed on March 15, 2023 because Charr failed to exhaust administrative remedies available under the WBA Rules. Dkt. 88. The Court subsequently denied Charr's request for reconsideration. Dkt. 101. After the deadline for amendment of pleadings has passed, Charr now seeks leave of Court to file a Second Amended Complaint that addresses none of his First Amended Complaint's fatal deficiencies. Because it is untimely, Charr has shown no diligence or good cause for delay, and because his proposed amendments would be futile, this Court should deny Charr's motion.

**I. PROCEDURAL HISTORY**

      Charr filed his complaint against Defendants Don King, Don King Productions, Inc. ("DKP"), and Epic Sports and Entertainment, Inc. ("Epic") (collectively the "King Defendants") on August 10, 2021—nearly two years ago. Dkt. 1. A year later, after dismissal of some of Charr's

1

claims, the Court granted Charr's motion to amend his complaint and he added new allegations against the existing defendants, as well as against Defendants WBA and its president, Gilberto J. Mendoza, Jr. ("Mendoza"). Dkt. 43, 44.

Given the addition of these new claims and parties, the parties jointly submitted a proposed updated scheduling order to reset all pretrial deadlines and set a new a new trial date for March 4, 2024. Dkt. 75. The Court accepted the parties joint proposal and entered the scheduling order as agreed-upon on January 10, 2023. Dkt. 76. Under that updated schedule, the deadline for motions to amend pleadings or add parties was July 1, 2023. *Id.*

On March 15, 2023, the Court granted WBA's motion to dismiss all claims against it. Dkt. 88. At that time, the deadline to amend pleadings was still months away. But Charr did not move for leave to amend his complaint. Instead, he filed a motion for reconsideration of the dismissal order on April 4. Dkt. 89. In addition to what Charr labeled 10 "Points" seeking reconsideration, Charr requested "clarification" as follows:

> The Court's Opinion commented that futility of exhaustion of remedies was not raised in the Amended Complaint. In Points 1 through 5 of this memorandum we believe we have shown that this was not necessary. However, if the Court denies this Motion for Reconsideration the Opinion reads though [sic] no Amendment will be permitted. We respectfully request clarification on this point in the event the Court denies the Motion for Reconsideration as we can certainly plead futility.

Dkt. 89 at 14-15. In responding to this request, WBA noted that "Charr never requested leave to amend his claims against WBA when briefing the dismissal issues" and "still ha[d] not sought leave to amend" at the time of his request for clarification. Dkt. 90 at 14-15. Because Charr's "clarification" request appeared to be a Motion for Leave to Amend his Complaint without complying with any of the relevant rules, WBA opposed Charr's request. *Id.* WBA also pointed out that any effort to amend his pleading would not remedy the fatal flaws in his claims against

2

WBA because Charr admits he never made any effort to comply with the WBA Rules' administrative process for reconsideration or appeal of a Championship decision. *Id.* at 15-16.

When Charr filed his Reply in Support of his Motion for Reconsideration on May 2, 2023, he still had approximately two months to file a motion for leave to amend his complaint in compliance with the scheduling order deadline of July 1, 2023. Dkt. 93. He did not do so. Instead, several days before the July 1 deadline, Charr filed a motion to reset the trial date and extend all deadlines by sixty days, which would have made the new deadline for amendment of pleadings September 1, 2023. Dkt. 95. The Court denied this motion without waiting for a response, finding that "[t]he Court does not normally extend deadlines once set in a scheduling order, the Court has already extended the deadlines in this case by a full year, and the Court does not find good cause to grant the requested extensions here." Dkt. 96.

Nonetheless, Charr waited until the July 1, 2023 deadline expired and filed his untimely motion to amend on July 24, 2023. Dkt. 109.

## II.  ARGUMENT

### A.  Charr's Motion is Untimely

"[W]here a party seeks leave to amend after the deadline to do so has passed, the movant must do more than argue leave is due under Rule 15(a). That is, the movant must also show 'good cause' under Rule 16(b) in order to obtain the right to amend." *Nunez v. City of Pompano Beach*, Case No. 20-62626-CIV-DIMITROULEAS, 2021 WL 9957665, at *1 (S.D. Fla. Sept. 22, 2021) (quoting *Banuchi v. City of Homestead et al.*, No. 20-25133-CIV, 2021 WL 4264254, at *3 (S.D. Fla. Sept. 20, 2021)). Rule 16(b)(4) provides that the Court's scheduling order "may be modified only for good cause and with the judge's consent." "Only if 'good cause' for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely

3

given when justice so requires, come into play." *Nunez*, 2021 WL 9957665 at *1 (quoting *Banuchi*, 2021 WL 4264254, at *3)). "If [the Court] considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Charr has utterly failed to show good cause to ignore the Court's scheduling order. In fact, Charr has already moved to reset the scheduling deadlines in this case and his motion was denied because the "Court [did] not find good cause to grant the requested extensions." Dkt. 96 at 1. Good cause similarly does not support an exception to the scheduling order for the following reasons.

**B.     Charr's Request for Clarification Does Not Excuse His Late Filing**

Charr states in his Motion that "[on] July 5, 2023 the Court issued an Order denying the Motion for Reconsideration but granting leave to move to file an amended complaint." Motion ¶ 13. But Charr has never needed "leave" to move to file an amended complaint—he has been free to seek leave to amend at any time since his claims against WBA were dismissed without prejudice on March 15. Dkt. 88. Indeed, WBA specifically pointed this out in its response to Charr's motion for reconsideration and clarification. Dkt. 90 at 14-15 (noting that Charr had not sought leave to amend and any such request must comply with the relevant rules). Instead of filing his motion after the March 15 ruling, Charr waited more than four months until the time to do so had expired.

In responding to Charr's request for "clarification," the Court did *not* grant Charr leave to amend his complaint, as he appears to recognize. Rather, the Court stated:

> Because the Dismissal Order did not state that it dismissed Plaintiff's claims against the WBA with prejudice, the dismissal of those claims was without prejudice. It did not prohibit Plaintiff from seeking leave to file an amended complaint, ***to the extent Plaintiff could do so in accordance with Rule 11 and the Court's rulings in the Dismissal Order***.

4

Dkt. 101 at 7 (emphasis added). The Dismissal Order, entered March 15, did not prohibit Charr from seeking leave to amend his complaint. He has been free to do so since that date. However, neither the Dismissal Order nor the Clarification Order changed the terms of the scheduling order or granted any special leave or permission to Charr—all the Court clarified was that the ordinary rules apply and the dismissal was without prejudice. To amend his complaint, Charr must still follow the ordinary applicable rules and obtain leave of Court, as well as show good cause in compliance with Rule 16(b).

### C.  Charr Has Failed to Show Good Cause or Diligence

As stated above, a party seeking to amend after the scheduling order deadline has passed must "show 'good cause' under Rule 16(b)." *Nunez*, 2021 WL 9957665, at *1. Rule 16(b)'s good cause requirement "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1419 (quoting Fed. R. Civ. P. 16 advisory committee's notes). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (internal citations omitted).

Here, Charr has made no effort to show diligence of any kind. His motion does not even acknowledge its untimeliness, the scheduling order, or Rule 16(b). Instead, Charr cites to Rule

5

15(a) and its application in *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). *See* Motion ¶ 15-16, 22. Charr provides no explanation for why he did not seek leave to amend months ago when his claims against WBA were dismissed without prejudice. Instead, he conclusively states that "[t]here has been no undue delay here" without any explanation. Motion ¶ 20. Because Charr has not even attempted to show the diligence required to disregard the scheduling order under Rule 16(b) his request for untimely leave to amend his complaint should be denied.

D.   **Charr's New Allegations Do Not Constitute Good Cause**

Charr alleges that "[s]ince the Court's ruling new information has come to light . . . that King and DKP have overpaid the World Boxing Association" and "a witness has come forward . . . who would testify that he heard a conversation." Motion ¶ 17. Charr neither provides his alleged "new information" to the Court, nor does he identify his new "witness." None of Charr's new allegations have anything to do with the reason his claims against WBA were dismissed: he failed to exhaust his administrative remedies under the WBA Rules. *See infra* (explaining why allowing Charr's amendment would be futile).

Further, Charr's belief that he has uncovered new evidence does not constitute a showing of diligence or good cause under Rule 16(b). Even where a party discovers new evidence after the deadline to amend pleadings, the scheduling order should only be modified if the Plaintiff demonstrated diligence in obtaining the evidence. *See Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1242 (11th Cir. 2009) (affirming denial of leave to amend because moving party "lacked diligence," even where it discovered new evidence). The facts of *Southern Grouts* are almost directly on point—there, the plaintiff "slid [its new] allegations into its motion for summary judgment," then filed its motion for leave to amend and add the new allegations a month later,

6

after the scheduling order deadline. *Id.* at 1243. The "proper procedure . . . would have been to file a motion for leave to amend its complaint. By filings its motion for leave to amend its complaint a month later, [the plaintiff] waited too late." *Id.* The same is true of Charr. Instead of seeking leave to amend and add claims of futility of the WBA administrative process at the time of the motion to dismiss pleadings, Charr waited four months after the motion to dismiss had been granted and until after the scheduling order deadline had passed before seeking to add allegations he first "slid" into his motion briefing.

E.     **Charr's Proposed Amendments Would be Futile**

Leave to amend a pleading "may be denied because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005) (quoting *Forman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). As discussed above, Charr has provided no reason for the delay of his motion until expiration of the scheduling order deadline, requiring denial of his motion for undue delay. His proposed amendments are futile as well because they do not correct the deficiencies in his pleadings against WBA. Charr's proposed amendments do nothing to address the reason his claims against WBA were dismissed to begin with: he failed to exhaust the administrative remedies available under the WBA Rules. Where, as here, the complaint as proposed to be amended "is still subject to dismissal[,]" the "denial of leave to amend is justified." *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999).

Charr alleges:

> The proposed Second Amended Complaint makes it very clear in the pleadings that any appeal would have been futile in the face of clear violations of the Muhammad

7

> Ali Act and, inter alia, the Sports Bribery statutes. The futility of internal an appeal [sic] through an organization which had, in essence, been bribed is self-evident.

Motion ¶ 18. Charr's proposed Second Amended Complaint simply adds a single unsupported allegation that "[n]o opportunity was given for appeal as Charr's title was filled before any opportunity to do so." Proposed Second Amended Complaint ¶ 97.[1] Charr does not even identify what WBA decision he purportedly was unable to "appeal"—he simply inserts this allegation at the end of his lengthy narrative documenting numerous WBA decisions. In any event, the WBA Rules are clear that, as this Court has ruled, "A person directly affected by a decision of the Ratings Committee may file a formal Request for Ratings Information or Request for Reconsideration, or both." Dkt. 88 at 5 (quoting WBA Rules F.1). The same is true of decisions of the Championships Committee. WBA Rules F.2. Charr has not explained any basis for why he was unable to pursue the process explained in both the Rules and this Court's Order that the Court did not already reject in its rulings on this issue. Charr's insertion of his already-defeated legal argument into a new draft complaint would be wholly futile.

Next, in proposed additions to his Muhammad Ali Act cause of action, Charr alleges that "[t]here is no exhaustion requirement in 15 U.S.C. 6309 (d)" and that "exhaustion would have been futile since: A. The specific King payments were only disclosed through discovery very recently and, B. Any Appeal would have been to the corrupt organization itself as set forth herein." Proposed Second Amended Complaint ¶ 116. In any case, there was no opportunity to appeal as the stripping and filling of the title occurred within days. Once the title was filled the deed was a *fait accompli*." Proposed Second Amended Complaint ¶¶ 115-16. These proposed additions repeat

---

[1] Charr also alleges that he had "no right of appeal" of the March 6, 2019, WBA Resolution requiring him to defend his title against Bryan. Proposed Second Amended Complaint ¶ 48. While flatly inconsistent with this Court's interpretation of the WBA Rules earlier in this case, this allegation does not appear related to any decision that allegedly harmed Charr.

8

the arguments the Court already rejected when it granted WBA's motion to dismiss and denied Charr's motion for reconsideration. In both of those already-decided motions, Charr argued that an appeal under the WBA Rules would be impossible because the championship had been filled. *See* Dkt. 84 at 17 ("the WBA gave no time for Charr to file an appeal"); Dkt. 89 at 4 ("[T]he WBA crowned the King defendants' fighter, Bryan, as the new champion thus, affirmatively preventing Charr from appealing the decision . . . . As a result, it was clearly impossible for Charr to exhaust 'internal remedies.'"). The Court rejected Charr's argument both times. Inclusion in Charr's Second Amended Complaint does not change the law—"Charr's response of futility is unavailing." Dkt. 88 at 7. "Plaintiff must ordinarily at least have attempted to use the administrative remedies as set forth in the WBA Rules and have been denied meaningful relief." *Id.* (citing *Jiminez v. Collier Transit Mgmt., Inc.*, 337 F. App'x 804, 808 (11th Cir. 2009)).

Charr's proposed amendments simply do not remedy the fatal flaw in his First Amended Complaint. When Charr was named Champion in Recess after he failed to defend his title for over a year for arguably justifiable reasons, he did not seek reconsideration or appeal under the WBA Rules. A year later, when Charr's Champion in Recess title was revoked because that title may not last longer than the applicable defense period, Charr again did not seek reconsideration or appeal under the WBA Rules. ***No allegation*** in Charr's proposed Second Amended Complaint rebuts these facts. Because no allegation in Charr's Second Amended Complaint could override this Court's existing rulings dismissing Charr's claims for failure to exhaust administrative remedies, amendment would be futile and Charr's motion should be denied.

### III. CONCLUSION

WBA respectfully requests that this Court deny Charr's untimely Motion for Leave to File Second Amended Complaint.

Dated: August 7, 2023					Respectfully submitted,

/s/ *Stacy J. Rodriguez*
Stacy J. Rodriguez
Fla. Bar No. 44109
ACTUATE LAW, LLC
641 W. Lake Street, 5th Floor
Chicago, Illinois 60661
Phone: 312-462-0543
stacy.rodriguez@actuatelaw.com
james.ward@actuatelaw.com

Robert E. Mack (*admitted pro hac vice*)
Gabriel Hinman (*admitted pro hac vice*)
Smith Alling, P.S.
1501 Dock Street
Tacoma, Washington 98402
Phone: (253) 627-1091
rmack@smithalling.com
gabe@smithalling.com

*Counsel for World Boxing Association, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 7, 2023, a true and correct copy of this Opposition brief was furnished to all parties receiving electronic notification in this case via the Clerk of the Court's CM/ECF system, as stated on the following service list.

                                           */s/ Stacy J. Rodriguez*
                                           Attorney

## **Service List**

Patrick C. English, Esq.
Dines and English, LLC
685 Van Houten Ave.
Clifton, NJ 07013
dinesandenglish@aol.com

| | |
|---|---|
| Jared M. Lopez, Esq. | Alejandro Brito, Esq. |
| Black Srebnick Kornspan & Stumpf | Brito, PLLC |
| 201 S. Biscayne Blvd., Ste. 1300 | 2121 Ponce de Leon Blvd., Ste. 650 |
| Miami, FL 33131 | Coral Gables, FL 33134 |
| jlopez@royblack.com | abrito@britopllc.com |

Joseph J. Portuondo, Esq.
110 Merrick Way
Coral Gables, FL 33134
jjp@portuondolaw.com