UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

MAHMOUD CHARR,                                         CASE NO. 21-cv-61654-WPD

    Plaintiff,

v.

DON KING, individually,
DON KING PRODUCTIONS, INC., a foreign corporation,
EPIC SPORTS AND ENTERTAINMENT, INC., a Florida corporation,
WORLD BOXING ASSOCIATION, INC., a foreign corporation, and
GILBERTO MENDOZA, JR., individually
    Defendants.
_____/

**PLAINTIFF MAHMOUD CHARR'S REPLY MEMORANDUM TO DEFENDANT WORLD BOXING ASSOCIATION'S RESPONSE IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

    The response of the World Boxing Association begins with an assertion that the proposed amended complaint does not address alleged deficiencies previously ruled on by the Court. The WBA states again that Charr should have administratively appealed.[1] Yet this Court's ruling of July 5 (D.E. 101) expressly gave leave to file an amended complaint within the confines of Rule 11.

    Much has happened since that ruling. It is set forth in the accompanying Declaration of Mr. English. *See* Exhibit 1. Long ago, counsel for Mr. Charr timely served a subpoena on the World

---

[1] Technically the WBA is out of this case at the moment and has no standing to file. We will not stand on ceremony.

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421 *f* 305-358-2006

Boxing Association (WBA) even before they were initially joined in this action. They also timely served discovery on its President, Gilberto Mendoza, Jr. His counsel was informed that Robert Mack, counsel for the WBA, was responsible for compiling documents on behalf of both the WBA and Mendoza.

For months Mr. English would request the status of document production and disclosure at least twice a week. There is concurrently a motion to compel pending.

On July 10, five days <u>after</u> the Court's ruling, Mr. Charr's counsel received a tranche of documents from the WBA/Mendoza. Upon review of those documents, we discovered an accounting purporting to show a series of payments by Don King/Don King Productions (hereinafter King). This showed that King had paid over five hundred thirty-six thousand dollars ($536,000) to the WBA and were held by the WBA as of the time of the accounting. The accounting showed that as a direct result of the actions taken by the WBA and Mendoza with respect to Charr the WBA netted one hundred ninety-seven thousand dollars ($197,000). These payments were clearly in violation of the Muhammad Ali Act, and we believe they constitute Sports Bribery.[2]

Coincidentally, during the week of July 17, 2023 a witness disclosed that he was present when Don King discussed the balance he had with the WBA in the presence of Gilberto Mendoza, Junior, the President of the WBA. As we set forth in our initial papers, Mendoza is the ultimate decision maker in any internal appeal.

---

[2] The King Defendants of course, also failed to provide this information.

On July 21, 2023 counsel for Mr. Charr received from a third party a copy of a letter purportedly from Gilberto Mendoza, Jr soliciting advance "sanction fees" which in fact appeared to be a bribe. A demand for admission was very quickly sent to Defendant Mendoza.

On the same date we received from a third party a text exchange regarding a meeting pertaining to plaintiff. Neither the letter nor the text exchange had been provided by Mendoza or the WBA. This Motion to Amend was filed on July 26, 2023. As the above timeline shows there was no undue delay at all. There was no lack of diligence as asserted by defendant Mendoza. The motion was in keeping with this Court's Order of July 5, 2023.

The Court stated that we had failed to plead futility. The amended complaint remedies that at paragraphs 105 and 106 of the proposed complaint, which reads:

> 105. There is no exhaustion requirement in 15 U.S.C. 6309 (d). In any case exhaustion would have been futile since:
>
>> A. The specific King payments were only disclosed through discovery very recently and,
>
>> B. Any Appeal would have been to the corrupt organization itself as set forth herein.
>
> 106. In any case, there was no opportunity to appeal as the stripping and filling of the title occurred within days. Once the title was filled the deed was a *fait accompli*.

In subsection A of its responding memorandum, it asserts that that a prior scheduling Order required that the motion to amend be made by July 3. But, as we said with respect to the Mendoza reply, that ignores the clarification made by the Court in its Order of July 5. To us, at least, the original Order of the Court dismissing the WBA was unclear as to whether we could file an amended complaint. That is why the motion for reconsideration, which was filed on April 4, 2023 [D.E. 88] also asked for clarification. Of course, if the reconsideration had been successful there

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

would have been no need to amend as to the WBA. We did not know the outcome of the Reconsideration motion until July 5. Thus, an argument that the July 3 date is binding under the circumstances is nonsensical, and the language in the July 5 Order allowing a motion for leave to amend [D.E. 101] would be meaningless. Without being presumptuous, it was not likely the intent of the Court to grant a meaningless clarification.

We also point out the dilatory tactics of the WBA. It did not produce incriminating documents until after the Court came out with its July 5 ruling and some incriminating documents, they never produced at all, but we received from third parties as set forth above and in the Declaration of Mr. English. The shocking material showing, we contend, sports bribery and Muhammad Ali Act violations was something we believed to exist, but the hard evidence was not in our hands beginning on July 10. We could not allege things we did not have hard evidence of lest we be charged with a Rule 11 violation. Once the first domino fell (the accounting) then other dominoes also began to fall (the third-party solicitation of a bribe and the text messages relating to Charr). The icing on the cake, so to speak was the witness who heard King in the presence of Mendoza, speak of the monies he had given to the WBA.

Subsection C of the reply of the WBA argues "Charr has failed to Show Good Cause or Diligence." This tracks the opposition of Mendoza.

If proof of outright bribery is not "good cause" we do not know what is. If attempting to work with counsel for the WBA and speaking to him about production at least two times a week is not diligence, we do not know what is.

We did not know that an accounting of the nature described herein existed and had no way of knowing it until produced on July 10. We had no idea that the WBA made one hundred and ninety seven thousand dollars in connection with the Charr matter or that a total of Five hundred

4

thirty five thousand dollars from King alone.[3] We did not know of the letter agreeing to an "advance" from a "fixer" until July 21, and we did not know of the witness to the conversation of King and Mendoza until the week of July 17th. There was no lack of diligence.

The WBA raised similar arguments in Subsection D. It claims that the amendment has nothing to do with why claims were dismissed. The claims were dismissed due to failing to allege futility in pursing an internal remedy. We refer the Court to paragraph 31 alleging that Mendoza has "complete control over the WBA" While we believe the allegations contained in the general statement of facts are sufficient with regards to RICO they are supplemented by specifics in paragraphs 98 and 99 of the proposed amended complaint which very specifically allege the bribes made by the King defendants to the WBA. Those allegations are incorporated into the RICO count in paragraph 107 and referenced also in Paragraphs 115 and 117.

Futility is expressly alleged, correcting a fault which the Court believed existed. Paragraph 105 alleges futility:

> "There is no exhaustion requirement in 15 U.S.C. 6309 (d). In any case exhaustion would have been futile since:
>
> > A. The specific King payments were only disclosed through discovery very recently and,
>
> > B. Any Appeal would have been to the corrupt organization itself as set forth herein.
>
> 106. In any case, there was no opportunity to appeal as the stripping and filling of the title occurred within days. Once the title was filled the deed was a *fait accompli*."

---

[3] We know that the letter from Mendoza to which we have referred speaks to $125,000. We have a discovery motion pending which would cause the WBA to disclose its books which we believe would likely show monies paid by other promoters and "fixers."

Futility is clearly pled and supported by evidence. It can be raised as an affirmative defense and it should be up to a jury to weigh the facts and determine whether that affirmative defense is factually valid.

The WBA suggests a flaw that the name of the new witness was not disclosed in the motion. The name would be meaningless to the Court. However, if the WBA wanted to know who it is they need not engage in elaborate discovery. We would have been happy to provide then with the identity. All they needed to do is call. Because of the line in the WBA's memorandum we called counsel for the WBA (Mr. Mack) and disclosed the name of the witness voluntarily.

Section E of the WBA response alleges that amendment would be futile. There is a simple response to this. If the Court on its own determination believes as a matter of law that a wronged party needs to follow the internal appeals mechanisms of a demonstrably corrupt entity which has been, in essence, bribed to wrong him then we lose.

We respectfully suggest we have corrected the Court's belief that futility was not pled by us. We have now been more explicit why it would have been futile to use the WBA internal appeals mechanisms. To put it bluntly, Mendoza and the WBA were bribed, and we have evidence to that effect. They violated the Muhammad Ali Act, and we have evidence of that. The WBA position is akin to positing that a person marked for a "hit" needs to follow the internal appeals procedure of La Cosa Nostra. That may be graphic, but the analogy is accurate.

Many years ago, one of Mr. Charr's counsel had occasion to litigate a case against a now well known (less so at the time) which was subsequently found to be owned by a mobster. The

name of that nightclub was Scores.[4] The magistrate in that was a gentleman of the old school and simply had difficulty believing the level of corruption involved in the case. Eventually, at a hearing his eyes widened, and he grasped the level of corruption involved. That is what we have here in a sense. The level of corruption in the WBA is so deep that no number of internal appeals would have made any difference. A jury should be able to hear that evidence and decide for itself whether, under the facts as pled in the proposed amended complaint and as we can show, support the affirmative defense of failure to exhaust internal remedies would have been futile. We believe not.

## CONCLUSION

The WBA does not focus, quite intentionally, on FRCP 15 (a) (2) which directs district courts to amend "freely give leave when justice so requires". The decision whether to grant leave to amend is, of course, committed to the sound discretion of the trial court. *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618 (11th Cir.1983). However, "'[d]iscretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.'" *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (5th Cir.1981). This policy of Rule 15(a) in liberally permitting amendments to facilitates the determination of claims on the merits circumscribes the exercise of the trial court's discretion; thus, "[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* at 598; *Espey v. Wainwright*, 734 F.2d 748, 759 (11th Cir. 1994).

---

[4] The mobster was subsequently convicted of serious wrongdoing; we have no idea about the current ownership.



www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006

For the reasons set forth herein and in the original motion, the motion of Mahmoud Charr to amend should be granted.

Dated: August 14, 2023

                                                Respectfully submitted,

**BLACK SREBNICK, P.A.**
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
305-371-6421 Telephone
305-358-2006 Fax

By: /s/ Jared Lopez
      Jared Lopez, Esq.
      Florida Bar No. 103616
      Tazio A. Heller, Esq.
      Florida Bar No. 1031521
      JLopez@royblack.com
      THeller@RoyBlack.com
      civilpleadings@royblack.com

*Counsel for Plaintiff Mahmoud Charr*

**DINES AND ENGLISH LLC**
685 Van Houten Avenue
Clifton, New Jersey 07013
973-778-7575 Telephone
973-778-7633 Fax

By: /s/ Patrick C. English
      Patrick English, Esq.
      New Jersey Bar No. 023811978
      dinesandenglish@aol.com

*Counsel for Plaintiff Mahmoud Charr*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY a true and correct copy of the foregoing was filed with the Court this 14th day of August 2023 and electronically served via the CM/ECF Court E-Filing system on: Alejandro Brito, Esq., Brito, PLLC, 2121 Ponce de Leon Boulevard, Coral Gables, Florida 33134, abrito@britopllc.com, apiriou@britopllc.com; Stacy J. Rodriguez, Actuate Law, 545 NW 26 St., Suite 640, Miami, Florida 33127, stacy.rodriguez@actuatelaw.com; Joseph J. Portuondo, Esq., 110 Merrick Way, Suite 3-B, Coral Gables, Florida 33134, jjp@portuondolaw.com.

By: /s/ Jared Lopez
Jared Lopez, Esq.

**BlackSrebnick**
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | p 305.371.6421 f 305-358-2006